1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

STEPHEN HADLEY,

Plaintiff,

v.

KELLOGG SALES COMPANY,

Defendant.

13
14
15
16
17

Case No. 16-CV-04955-LHK

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 44

18

Plaintiff Stephen Hadley ("Plaintiff") brings the instant suit against Defendant Kellogg

19

Sales Company ("Defendant") for allegedly misleading statements on Defendant's food product

20

packaging.  Before the Court is Defendant's Motion to Dismiss.  ECF No. 44 ("Mot.").  Having

21

considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS

22

Defendant's Motion to Dismiss.

23

**I.      BACKGROUND**

24

  **A.      Factual Background**

25

Defendant is a "multi-billion dollar food company that manufactures, markets, and sells a

26

wide variety of cereals and bars, among other foods."  ECF No. 27, First Amended Complaint

27

("FAC") ¶ 109.  Defendant is allegedly "the world's leading producer of cereal."  *Id.*  Defendant

28

United States District Court
Northern District of California

1   allegedly has "positioned itself in the market as a purportedly 'healthy' brand of processed food,

2   by using various labeling statements to suggest its foods, especially its cereals and bars, are

3   healthy choices." *Id.* ¶ 113.

4       Plaintiff "has been a frequent cereal eater for many years." *Id.* ¶ 366. Over the past

5   several years, Plaintiff has purchased Defendant's breakfast cereals and cereal bars. *Id.* ¶ 367–68.

6   During that time period, Plaintiff allegedly "tried to choose healthy options, and has been willing

7   to pay more for cereals he believes are healthy." *Id.* at 366.

8       This case concerns statements on the packaging for breakfast cereals and cereal bars sold

9   by Defendant that allegedly indicate that Defendant's products are healthy when "excess sugar"

10  allegedly causes those products to be unhealthy. Plaintiff alleges that twelve of Defendant's

11  product lines are sold with misleading packaging. *See* FAC ¶¶ 122–23. Those product lines are

12  (1) Kellogg's Raisin Bran, (2) Kellogg's Krave, (3) Kellogg's Frosted Mini-Wheats, (4) Kellogg's

13  Smart Start – Original Antioxidants, (5) Kellogg's Crunchy Nut, (6) Nutri-Grain Cereal Bars, (7)

14  Nutri-grain Soft-Baked Breakfast Bars, (8) Nutri-Grain Oat & Harvest Bars, (9) Nutri-Grain

15  Harvest Hearty Breakfast Bars, (10) Nutri-Grain Fruit Crunch Granola Bars, (11) Nutri-Grain

16  Crunch Crunchy Breakfast Bars, and (12) Nutri-Grain Fruit & Nut Chewy Breakfast Bars. *Id.*

17  Some of these product lines have multiple variants such that there are 53 products total that

18  Plaintiff alleges are being sold with packaging that is misleading. *Id.*

19      In general, Defendant's products are alleged to contain 10 to 19 grams of total sugar per

20  serving and are 20 to 40% sugar by calorie. *Id.* However, the FAC indicates that there is a

21  difference between "total sugar," which is composed of all sugar in a product, including those

22  provided by fruit, and "added sugar," which is composed of sugar that does not naturally occur in

23  the ingredients of the product. *Id.*

24      The FAC alleges that the consumption of added sugar (as opposed to total sugar) can have

25  significant health impacts on individuals. Specifically, the FAC alleges that people in the United

26  States consume excess added sugar, that people can become addicted to added sugar, and that

27  excess added sugar consumption is linked to metabolic syndrome, type 2 diabetes, cardiovascular

28

2

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

disease, liver disease, obesity, inflammation, high cholesterol, hypertension, Alzheimer's disease, and some cancers. FAC ¶¶ 9–108. This link allegedly has been shown in multiple studies where the subjects of the study consumed 35 to 75 grams of added sugar (the amount of sugar in 1 to 2 cans of soda) per day. *Id.*

Moreover, the FAC alleges that the American Heart Association ("AHA") has found that a person is "safe" to consume up to 5% of his or her daily calories in added sugar, which amounts to approximately 25 grams of added sugar on a 2000 calorie diet. *Id.* ¶ 25. On the other hand, the United States Food and Drug Administration ("FDA") has concluded that the Daily Recommended Value ("DRV") of added sugars is 10% of a person's daily calories, or approximately 50 grams of added sugar. Based on these values, Plaintiff alleges that Defendant's products have a higher percentage of total sugar per serving (20–40% of total calories per serving) than the daily "safe" percentage of added sugar recommended by the AHA or the DRV recommended by the FDA. *Id.* The FAC does not explain why the per-serving *total sugar* percentage in the products should be compared to the recommended daily *added sugar* consumption percentage suggested by the AHA and the FDA.

Plaintiff alleges that the packaging for Defendant's products contains multiple statements touting the health and wellness benefits of consuming Defendant's products. For example, the packaging for Defendant's products contains statements like "Heart Healthy," "Great taste that does your heart good," "Start with a healthy spoonful," "Invest in your health invest in yourself," "nutritious," "Good source of whole grains," and "good source of fiber." FAC ¶¶ 127–219.

As an example, Plaintiff alleges that Raisin Bran contains the following "health and wellness" claims:

    a. "HEART HEALTHY"

    b. "Kellogg's Heart Healthy Selection"

    c. "GREAT TASTE THAT DOES YOUR HEART GOOD"

    d. "HEART HEALTHY / Whole grains can help support a healthy lifestyle."

    e. "+ HEART HEALTH + / Kellogg's Raisin Bran / With crispy bran flakes made from whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber."

United States District Court
Northern District of California

f. "Start with a healthy Spoonful"

g. "Invest in your health invest in yourself"

h. "Get health & nutrition tips at Kelloggs.com/HealthyInvestments"

i. "Kellogg's offers a full breakfast portfolio that features essential nutrients to help you start right and make the most of every day."  [picturing Raisin Bran]

j. "NUTRIENTS FOR EVERY DAY / Kellogg's breakfasts offer the nutrients our bodies want to work and feel their best."

k. "A serving of Kellogg's cereals with one cup of low-fat milk offers a tasty combination of carbs and protein that helps recharge your body.  Protein helps you rebuild and carbs help you refuel."

l. "A great way to START THE DAY / A breakfast of Kellogg's cereal and milk is nutritious at its most delicious. Every spoonful has grains to help recharge your body.  So go ahead, pour your favorite bowl of crunchy goodness.  It just fuels right!"

m. "Goodness of Simple Grain"

n. Whole Grains Council Stamp

o. "FIBER / Fiber, like bran fiber, plays a very important party in your digestive health and overall well-being."

p. "MADE WITH REAL FRUIT"

q. "REAL FRUIT / Delicious raisins add a sweetness you'll love to every morning"

r. "BREAKFAST BRAINPOWER"

*Id.* ¶ 128.  In contrast, other products such as Defendant's Nutri-Grain Fruit Crunch Granola Bars and Nutri-Grain Crunch Crunchy Breakfast Bars contain only a single challenged statement: "MADE WITH Real Fruit."  *Id.* ¶ 280.

**B.      Procedural History**

On August 29, 2016, Plaintiff filed a complaint.  ECF No. 1.  On October 31, 2016, Defendant filed a motion to dismiss.  ECF No. 22.  In lieu of filing a response, on November 14, 2016, Plaintiff filed a First Amended Complaint.  ECF No. 27 ("FAC").  The FAC alleged five causes of action including (1) violation of the California False Advertising Law ("FAL"), (2) violation of the California Consumers Legal Remedies Act ("CLRA"), (3) violation of the California Unfair Competition Law ("UCL") under the fraudulent, unfair, and unlawful prongs, (4) breach of express warranty, and (5) breach of the implied warranty of merchantability.  *Id.*

1    On December 8, 2016, Defendant filed the instant motion to dismiss the FAC.  ECF No. 44

2  ("Mot.").  On January 5, 2017, Plaintiff filed an opposition, ECF No. 49 ("Opp'n"), and on

3  January 19, 2017, Defendant filed a reply, ECF No. 50 ("Reply").

**II.     LEGAL STANDARD**

**A.     Rule 8(a)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule

of Civil Procedure 12(b)(6).  The United States Supreme Court has held that Rule 8(a) requires a

plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling

on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable

facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "court may look beyond

the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion

into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a

court required to "'assume the truth of legal conclusions merely because they are cast in the form

of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)

(quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory

allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

*Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B.      Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### C.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and]

6

1    futility of amendment.'" *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892–93 (9th Cir.

2    2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3    **III.    DISCUSSION**

4         The main thrust of Plaintiff's FAC is that Defendant represents that its products are healthy

5    even though Defendant's products contain excess, unhealthy amounts of added sugar.  Defendant

6    challenges Plaintiff's causes of action by arguing that (1) Plaintiff's causes of action under the

7    FAL, the CLRA, and the UCL fail because Plaintiff has inadequately alleged fraud, (2) Plaintiff's

8    cause of action fails under the unlawful prong of the UCL because Plaintiff has not adequately

9    alleged a violation of any law or regulation, (3) the statements on Defendant's packaging are

10   puffery, and therefore cannot create an express warranty, and (4) that the implied warranty of

11   merchantability has not been violated.  Defendant also argues that Plaintiff does not have standing

12   to seek injunctive relief.  Plaintiff and Defendant both include requests for judicial notice in

13   support of the instant motion.  The Court first addresses the parties' requests for judicial notice

14   and then addresses each of the above arguments in turn.

15        **A.    Requests for Judicial Notice**

16        The Court first addresses Defendant's request for judicial notice, ECF No. 45, and

17   Plaintiff's request for judicial notice, ECF No. 49-1.  The Court may take judicial notice of matters

18   that are either "generally known within the trial court's territorial jurisdiction" or "can be

19   accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

20   Fed. R. Evid. 201(b).  Public records, including judgments and other publicly filed documents, are

21   proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.

22   2007) ("[Courts] may take notice of proceedings in other courts, both within and without the

23   federal judicial system, if those proceedings have a direct relation to matters at issue."); *Rothman*

24   *v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public

25   record).

26        However, to the extent any facts in documents subject to judicial notice are subject to

27   reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee v. City of L.A.*,

28

7

United States District Court
Northern District of California

250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

In ECF Number 45, Defendant requests judicial notice of the following documents:

- An image of the packaging for Kellogg's Raisin Bran during the alleged class period;

- *Food Labeling; General Requirement for Health Claims for Food*, 58 Fed. Reg. 2478 (Jan. 6, 1993);

- *Food Labeling: Nutrient Content Claims, Definition of Term: Healthy*, 59 Fed. Reg. 24232 (May 10, 1994);

- *Food Labeling: Added Sugars; Availability of Citizen Petition*, 65 Fed. Reg. 39414 (June 26, 2000);

- *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33742 (May 27, 2016);

- *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 79 Fed. Reg. 11880 (Mar. 3, 2014);

- *Food Labeling; Serving Sizes*, 58 Fed. Reg. 2229, 2284 (Jan. 6, 1993).

- H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337;

- H.R. Rep. No. 114-205 (2015-2016);

As to Defendant's request for judicial notice of an image of the packaging for Raisin Bran, the Court notes that the FAC already contains an image of the packaging in question, but omits the nutrition labeling on the side of the packaging for Raisin Bran. "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (as amended). Moreover, "[c]ourts addressing motions to dismiss product-labeling

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

claims routinely take judicial notice of images of the product packaging." *Kanfer v. Pharmacare*

*US, Inc.*, 142 F. Supp. 3d 1091, 1098–99 (S.D. Cal. 2015).  Accordingly, the Court GRANTS

Defendant's request for judicial notice of an image of the packaging for Raisin Bran.

As to Defendant's request for judicial notice of the remaining documents, six of the

documents are published in the Federal Register and the remaining two documents are publicly

available congressional records.  The documents in the federal register are subject to judicial

notice.  *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially

noticed....").  Similarly, courts regularly take judicial notice of congressional records.  *See, e.g.*,

*Morning Star Packing Co. v. S.K. Foods, L.P.*, 2015 WL 3797774, at *2 (E.D. Cal. June 18, 2015)

(taking judicial notice of congressional records).  Accordingly, the Court GRANTS Defendant's

request for judicial notice as to the documents in the federal register and the congressional records.

In ECF No. 49-1, Plaintiff requests judicial notice of eighteen different "facts" from

various sources, such as a website, a book, newspapers, and a scientific report.  These eighteen

facts originate from the following five sources:

- *Raisin Bran Deconstructed – Sugar and Fiber Math*, HUFFINGTON POST BLOG (June 28, 2010), *available at* http://www.huffingtonpost.com/hemi-weingarten/raisin-brandeconstructed_b_552981.html.
- Anahad O'Connor, *How the Sugar Industry Shifted Blame to Fat*, N.Y. TIMES (Sept. 12, 2016).
- Gary Taubes and Cristen Couzens, *Big Sugar's Sweet Little Lies, How the Industry Kept Scientists from Asking: Does Sugar Kill?*, MOTHER JONES (November/December 2012).
- FREDERICK J. STARE, ADVENTURES IN NUTRITION (1991).
- Scientific Report of the 2015 Dietary Guidelines Advisory Committee, *available on* the Office of Disease Prevention and Health Promotion's website at https://health.gov/dietaryguidelines/2015-scientific-report/

As to the first four sources, a Court may only take judicial notice of publications to

"indicate what was in the public realm at the time, not whether the contents of those articles were

in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.

2010); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir.1999)

("When considering a motion for judgment on the pleadings, this court may consider facts that

'are contained in materials of which the court may take judicial notice.' We take judicial notice

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   that the market was aware of the information contained in news articles submitted by the

2   defendants").

3          From these first four publications, Plaintiff seeks judicial notice of the fact that these

4   publications have published factual statements about the level of sugar in Raisin Bran and various

5   actions taken by the "sugar industry" to suppress research on the health effects of sugar.  *See, e.g.*,

6   ECF No. 49-1 (seeking judicial notice of the fact that "[a]ccording to a September 12, 2016 New

7   York Times article, 'internal sugar industry documents . . . suggest that five decades of research

8   into the role of nutrition and heart disease, including many of today's dietary recommendations,

9   may have been largely shaped by the sugar industry.'").  Indeed, Plaintiff specifies that he is only

10  seeking judicial notice of the fact that certain statements were made in the publications, not for the

11  truth of those statements.  ECF No. 49-2.

12         However, the fact that publications made statements about the sugar industry or about the

13  level of sugar in Raisin Bran, thus putting that information in the public realm, is not relevant to

14  determining whether the labeling on Defendant's packaging is actually false or misleading, or

15  whether an express warranty or the implied warranty of merchantability has been breached.

16  *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015) (denying

17  request for judicial notice of press releases and news articles because "it is irrelevant, for purposes

18  of defendants' motion to dismiss, that the information in the press releases and news articles was

19  publicly available").  The underlying facts in those articles might be relevant, but Plaintiff cannot

20  use a request for judicial notice of the fact that publications have published material as a backdoor

21  avenue for introducing evidence of the facts themselves.  *Id.*  Accordingly, the Court DENIES

22  Plaintiff's request for judicial notice of the first four articles listed above.

23         However, as to the Scientific Report of the 2015 Dietary Guidelines Advisory Committee,

24  the Court GRANTS judicial notice of the document because it is a document published on a

25  government website.  *See id.* at 1033 ("[T]he court can take judicial notice of '[p]ublic records and

26  government documents available from reliable sources on the Internet,' such as websites run by

27  governmental agencies.").  However, as noted above, the Court does not take judicial notice of

28

10

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   facts subject to reasonable dispute within the document.  *See Lee*, 250 F.3d at 689 ("A court may

2   take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact

3   that is subject to reasonable dispute.").

4   **B.     The FAL, CLRA, and UCL Causes of Action**

5       Plaintiff brings causes of actions under the FAL, the CLRA, and the UCL for allegedly

6   misleading statements on Plaintiff's product packaging.[1]  The FAL and the CLRA prohibit false or

7   misleading advertising.  Specifically, the FAL prohibits the dissemination of any statement

8   concerning property or services "which is untrue or misleading, and which is known, or which by

9   the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof.

10  Code § 17500.

11      The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or

12  practices undertaken by any person in a transaction intended to result or which results in the sale

13  or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  One practice

14  proscribed by the CLRA is "[r]epresenting that goods or services are of a particular standard,

15  quality, or grade . . . if they are of another."  *Id.* § 1770(a)(7).

16      The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair,

17  or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of the UCL provides a separate

18  and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th

19

20  ───────────────────

21  [1] In addition to Defendant's product packaging, the FAC contains multiple allegations concerning
    statements made on Defendant's website.  FAC ¶¶ 316–53.  Defendant argues that Plaintiff does
22  not have standing to bring causes of action under the FAL, CLRA, or UCL for statements made on
    Defendant's website about Defendant's products.  Mot. at 27.  Article III standing requires
23  Plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct
    of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo,*
24  *Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (as amended).  Plaintiff's FAC contains no allegation
    that Plaintiff ever even visited Defendant's website.  Therefore, Plaintiff's alleged injury is not
25  "fairly traceable" to any statements made on Defendant's website.  Accordingly, the Court
    GRANTS Defendant's Motion to Dismiss with respect to Plaintiff's standing to bring causes of
26  action based on the contents of Defendant's website.  This dismissal is with prejudice because
    Plaintiff's FAC failed to cure this deficiency identified in Defendant's motion to dismiss the
27  original complaint.  Accordingly, in this section, the Court addresses whether Plaintiff has stated a
    claim under the FAL, CLRA, and UCL based solely on the allegedly misleading statements made
28  on Defendant's product packaging, not statements made on Defendant's website.

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

Cir. 2007).  Plaintiff asserts causes of action under all three prongs.  Generally, a violation of the FAL or the CLRA is also a violation of the fraudulent prong of the UCL.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 n.8 (2009); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  The Court first addresses the FAL, the CLRA, and the fraudulent prong of the UCL together, then addresses the unlawful prong, and finally addresses the unfair prong of the UCL.

### 1.  The FAL, CLRA, and the Fraudulent Prong of the UCL

Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together.  *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) ("Courts often analyze these statutes together because they share similar attributes."); *Consumer Advocates*, 113 Cal. App. 4th at 1360–62 (analyzing the UCL, FAL, and CLRA together).

The parties do not dispute that Plaintiff's causes of action under the FAL, the CLRA, and the fraudulent prong of the UCL rise or fall together.  Accordingly, the Court considers these three causes of action together.  In the instant case, Plaintiff alleges that Defendants misrepresented that Defendant's products are healthy when they allegedly are not healthy due to either: (1) the presence of excess, unhealthy amounts of added sugar, and (2) as to a small subset of products, the use of trans fats in the products.  The Court addresses each argument in turn.

### a.  Causes of Action Based on Added Sugar

Plaintiff's added sugar-based FAL, CLRA, and UCL fraudulent prong causes of action are based on the following logical steps: (1) Defendant's labeling indicates that Defendant's cereals and cereal bars are healthy, (2) Defendant's cereals and cereal bars contain excessive added sugar, (3) excessive added sugar is unhealthy, and therefore (4) Defendant's statements that its cereal and cereal bars are healthy are false or misleading.  Mot. at 7 ("Plaintiff's entire [FAC] is predicated

12

1    on the assumption that '[e]xcessive consumption of added sugar is toxic to the human body,' and

2    that [Defendant's] Products cannot be marketed as healthy because they contain 'excessive' added

3    sugar.").  Plaintiff agrees in his opposition that his causes of action are largely premised on

4    Defendant's "excessive" use of added sugar.  Opp'n at 3–4.

5          Defendant argues that Plaintiff has failed to state a claim because Plaintiff has inadequately

6    alleged the amount of added sugar in Defendant's products, as opposed to total sugar, and that

7    Plaintiff has inadequately alleged that the amount of added sugar is excessive to the point of being

8    unhealthy.  The Court agrees.  Plaintiff has inadequately alleged the amount of added sugar in

9    Defendant's products, and thus has inadequately alleged that the amount of added sugar could

10   plausibly be considered excessive and unhealthy.

11         Federal Rule of Civil Procedure 9(b) requires specific factual pleading that indicates why

12   allegedly fraudulent statements are false or misleading.  *See In re Glenfed*, 42 F.3d at 1548 ("The

13   plaintiff must set forth what is false or misleading about a statement, and why it is false.").

14   Plaintiff must satisfy this standard for *each* product with packaging that Plaintiff alleges contains

15   false or misleading satements.  *Id.*  As noted above, Plaintiff alleges that Defendant's labeling is

16   fraudulent due to the presence of excessive added sugar.  However, the FAC contains specific

17   allegations only concerning the amount of *total sugar* in each of Defendant's products rather than

18   the amount of *added sugar*.  Plaintiff's FAC even notes that "the product[s'] total sugar content is

19   not entirely added sugar" because "in some cases, Kellogg's foods include fruit," which contribute

20   to the total sugar amount, but not to the added sugar amount.  FAC ¶ 114 n.91; Opp'n at 3.

21   However, Plaintiff's FAC does not specify the difference between the amount of added sugar and

22   total sugar in each of the 53 products in dispute.

23         Plaintiff's FAC also alleges in a footnote that "even discounting sugars that are not added,

24   Kellogg's products still contain high levels of added sugar that greatly exceed science-based

25   recommendations for maximum caloric consumption."  FAC ¶ 114 n.91.  This conclusory

26   allegation is insufficient to satisfy the requirements of Rule 9(b).  Moreover, Plaintiff refers to

27   science-based recommendations in plural without specifying what "science-based"

28
Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    recommendation for added sugar has been exceeded by Defendant's products.  The Court notes

2    that Plaintiff often refers in the FAC to the American Heart Association's recommendation that a

3    person limit his or her added sugar intake to 5% of daily calories.  However, the FAC contains no

4    allegation that, after subtracting the sugar from fruit from the total sugar, the amount of added

5    sugar exceeds that specific benchmark.  Instead, the FAC states merely that the amount of added

6    sugar after subtracting the sugar from fruit is still "excessive" or greater than "science-based

7    recommendations."  *Id.* ¶¶ 114 n.91, 224, 225, 228.

8         Plaintiff argues that he need not allege the amount of added sugar "in exactitudes" because

9    "the precise amount of added sugar in these products is currently within Kellogg's exclusive

10   knowledge."  Opp'n at 3 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

11   However, "neither the [FAC] nor Plaintiff's opposition to Defendants' instant motion demonstrate

12   that the evidence of the alleged fraud is exclusively within Defendants' possession or that

13   Plaintiffs have no knowledge of the relevant facts."  *Sacramento E.D.M., Inc. v. Hynes Aviation*

14   *Indus., Inc.*, 965 F. Supp. 2d 1141, 1151 (E.D. Cal. 2013).  In the instant suit, Plaintiff alleges that

15   Defendant's product labels, which allegedly indicate that Defendant's products are healthy, are

16   false or misleading because the levels of added sugar in Defendant's products cause them to be

17   unhealthy.  Thus, unless Plaintiff's claims are groundless, Plaintiff must have access to at least

18   some knowledge concerning the amount of added sugar in Plaintiff's products.  Presumably,

19   Plaintiff conducted a proper Rule 11 investigation before filing the instant suit.  Moreover, even if

20   the *precise* amount of added sugar in Defendant's products is in Defendant's exclusive possession,

21   Plaintiff still fails to even allege for which of the 53 products there is a discrepancy between the

22   amounts of added sugar and total sugar.  Instead, Plaintiff simply uses the amount of total sugar

23   throughout the FAC to make the added sugar content seem higher than it is in reality.

24        Moreover, despite Plaintiff's argument that he has no knowledge of how much added sugar

25   is in each of Defendant's products—and the lack of such information in the FAC—Plaintiff's

26   opposition to the instant motion provides an estimate of the amount of added sugar in Raisin Bran.

27   Plaintiff uses information from a newspaper article about the number of raisins in Raisin Bran, and

28
                                          14

1    the sugar content of raisins, to estimate the amount of added sugar in Raisin Bran.  These

2    calculations show that added sugar composes only half of Raisin Bran's alleged quantity of total

3    sugar per serving.  Opp'n at 4 (noting that the alleged 18 grams of total sugar per serving in Raisin

4    Bran is only composed of 9 grams of added sugar).[2]  Rather than supporting Plaintiff's allegations,

5    Plaintiff's calculations in his opposition undermine the contention that information about added

6    sugar is exclusively in Defendant's knowledge.  Moreover, the wide disparity between the alleged

7    total sugar content in the FAC for Raisin Bran (18 grams total sugar per serving) and the

8    calculated amount of added sugar in Plaintiff's opposition (9 grams added sugar per serving)

9    underscores the need for more detailed factual allegations.

10    The Ninth Circuit has stated that "Rule 9(b) serves three purposes: (1) to provide

11    defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the

12    filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose

13    reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit []

14    plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and

15    economic costs absent some factual basis.'"  *Kearns*, 567 F.3d at 1125.  Here, as noted above,

16    Plaintiff's theory of the case—the reason the labels are misleading and the reason Plaintiff has

17    suffered harm—is based on the presence of excessive added sugar in Defendant's product.

18    However, the FAC does not allege the amount of added sugar for each product and that the

19    specific amount of added sugar for each product is unhealthy.  Thus, Plaintiff has failed to provide

20    an adequate factual basis for its assertion that Defendant's product labels are false or misleading,

21    and fails to satisfy the requirements of Rule 9(b).

22    Thus, the Court GRANTS Defendant's motion to dismiss on Plaintiff's causes of action for

23    violation of the FAL, CLRA, and the fraudulent prong of the UCL.

24

25    _____

26    [2] Plaintiff provides this information pursuant to a request for judicial notice of a Huffington Post
      blog post.  However, the Court above denied Plaintiff's request for judicial notice of the
      Huffington Post blog post.  Moreover, Plaintiff's request for judicial notice sought judicial notice

27    solely of the fact that the Huffington Post published this information, not the truth of the facts
      contained in the article.  Therefore, these allegations do not satisfy Rule 9(b).

28
                                                    15
      Case No. 16-CV-04955-LHK
      ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    The Court notes that Defendant moved to dismiss Plaintiff's original complaint based on

2    Plaintiff's failure to adequately plead the amount of added sugar and that the amount of added

3    sugar is unhealthy.  ECF No. 22 at 14.  After Plaintiff filed the FAC on November 14, 2016, the

4    Court denied Defendant's motion to dismiss as moot.  ECF No. 31.  In that order, the Court noted

5    that "Plaintiff has now amended the complaint in light of the deficiencies identified in Defendant's

6    motion to dismiss" and that "if the Court grants any future motion to dismiss the amended

7    complaint based on these deficiencies, the Court will dismiss the amended complaint with

8    prejudice." *Id.*  Although the Court is granting Defendant's motion to dismiss based on

9    deficiencies Defendant identified in Plaintiff's original complaint, the Court provides leave to

10   amend because this information may be in Defendant's exclusive control.

### b.    Causes of Action Based on the Presence of Trans Fat

12   Plaintiff also alleges that two product types—Nutri-Grain Fruit Crunch Granola Bars and

13   Nutri-Grain Crunch Crunchy Breakfast Bars (both types of Nutri-Grain bar come in two flavors,

14   Apple Cobbler and Strawberry Parfait) (collectively, the "Nutri-Grain bars")—include partially

15   hydrogenated vegetable oil, which allegedly "is the single worst nutrient (the only nutrient worse

16   than sugar) in terms of its effect on bodily health, and particularly heart health."  FAC ¶¶ 290–91.

17   The only challenged statement on the Nutri-Grain bars' packaging is "MADE WITH Real Fruit."

18   Defendant argues that Plaintiff does not have a cause of action based on these statements

19   because (1) the statement "MADE WITH Real Fruit" is preempted, and (2) the statement is not

20   misleading.  The Court finds below that Plaintiff has failed to adequately allege how "MADE

21   WITH Real Fruit" is misleading and thus need not reach whether a cause of action based on the

22   statement is preempted.

23   As noted above, to state a claim under the FAL, the CLRA, or the fraudulent prong of the

24   UCL, Plaintiff must allege that the packaging for Defendant's products is "likely to deceive" a

25   "reasonable consumer."  *Williams*, 552 F.3d at 938.  "[T]hese laws prohibit 'not only advertising

26   which is false, but also advertising which[,] although true, is either actually misleading or which

27   has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Kasky v. Nike, Inc.,* 27

16

1   Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar,* 39 Cal. 3d 609, 626 (1985)).  "[W]hether a

2   business practice is deceptive will usually be a question of fact not appropriate for decision on

3   demurrer."  *Williams,* 552 F.3d at 938.  However, Plaintiff must allege "more than a mere

4   possibility that the advertisement might conceivably be misunderstood by some few consumers

5   viewing it in an unreasonable manner."  *Brod v. Sioux Honey Ass'n, Co-op,* 927 F. Supp. 2d 811,

6   828 (N.D. Cal. 2013) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct.

7   App. 2003)).

8        Here, the statement "MADE WITH Real Fruit" is a factually true statement.  Plaintiff does

9   not contest that it is factually true that the Nutri-Grain bars are made with real fruit.  The statement

10   "MADE WITH Real Fruit" does not reference the presence, or lack thereof, of trans fat.  In fact,

11   the product packaging for the Nutri-Grain bars does not mention trans fat at all.  Defendant's

12   factually true statement would not cause a reasonable consumer to believe that the Nutri-Grain

13   Bars are free of trans fat.

14        Indeed, many courts in this circuit have addressed similar factually true statements on

15   product labels and have found that reasonable consumers would not be misled.  For example, in

16   *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243 (N.D. Cal. April 11. 2012), a district court in this

17   district addressed the labeling for "Muscle Milk Bars."  *Id.* at *2.  The Muscle Milk bars allegedly

18   contained 11 grams of total fat and 8 grams of saturated fat and "unhealthy ingredients like

19   fractionated palm kernel oil, and partially hydrogenated palm oil."  *Id.*  The World Health

20   Organization had linked these ingredients to "increased risk of cardiovascular disease."  *Id.*

21   Despite these ingredients, the court held that the statements "25g Protein for Healthy, Sustained

22   Energy" and "0g Trans Fat" were not misleading because "Plaintiff does not claim that the bars do

23   not contain twenty-five grams of protein" or that the fats in the bar "are trans fats."  *Id.* at *7.

24        Similarly, in *Red v. Kraft Foods, Inc.*, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), a

25   district court in the Central District of California held that the statement "Made with Real

26   Vegetables" was not misleading on a box of crackers.  Id. at *2.  The *Red* court held that "it strains

27   credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is

28

17

United States District Court
Northern District of California

1    healthful or contains huge amounts of vegetables simply because there are pictures of vegetables

2    and the true phrase 'Made with Real Vegetables' on the box."  Id. at *4.

3           Nevertheless, Plaintiff argues that the statement "MADE WITH Real Fruit" "is 'calling

4    out' the supposedly beneficial aspects of its cereals and bars, and particularly their whole grain,

5    fiber, or 'real fruit' content."  Opp'n at 7; FAC ¶ 255.  However, Plaintiff fails to allege what

6    benefit from real fruit is false.  In addition, Plaintiff's FAC alleges that the "health and wellness"

7    claims on the Nutri-Grain bar packaging are made despite the presence of unhealthy trans fat.

8    FAC ¶ 290.  However, Plaintiff fails to provide any authority for the contention that a food

9    manufacturer cannot state that a food product contains a certain ingredient, whether it is real fruit

10   or some other ingredient such as whole grains, if that product also contains trans fat.

11          The one case Plaintiff cites for the principle that the factually true statement "MADE

12   WITH Real Fruit" could be misleading is *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D.

13   Cal. 2012).  However, the *Lam* court held that the statement in that case was misleading because

14   even though the packaging at issue featured the word "strawberry," the real fruit in the product

15   were "pears from concentrate."  *Id.*  Here, Plaintiff does not contend that the type of fruit inside

16   the Nutri-Grain bars was anything other than what was represented on the product packaging for

17   the Nutri-Grain bars.  It is not misleading for a product to state it is made with real fruit when that

18   statement accurately represents that the product contains real fruit and does not misrepresent the

19   type of fruit the product contains.  *See Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899

20   (N.D. Cal. 2012) ("Thus, where a court can conclude as a matter of law that members of the public

21   are not likely to be deceived by the product packaging, dismissal is appropriate.").

22          Accordingly, the Court GRANTS Plaintiff's motion to dismiss Plaintiff's claims for

23   violation of the FAL, CLRA, and fraudulent prong of the UCL with respect to Plaintiff's

24   allegations concerning the claim "MADE WITH Real Fruit" and trans fats.  Defendant's motion to

25   dismiss the original complaint identified the same deficiency with Plaintiff's "MADE WITH Real

26   Fruit" claims.  The Court warned Plaintiff that failure to correct the deficiencies identified in

27   Defendant's motion to dismiss would result in Plaintiff's claims being dismissed with prejudice.

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff's FAC fails to cure the deficiencies with Plaintiff's "MADE WITH Real Fruit" claims. Accordingly, the Court finds that amendment would be futile on this issue. *Carvalho*, 629 F.3d at 892 (holding that futility is a ground for not providing leave to amend). Therefore, the dismissal is with prejudice.

### 2. Unlawful Prong of the UCL

Plaintiff alleges that Defendant's labeling violates the unlawful prong of the UCL. "By proscribing any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011) (alteration and internal quotation marks omitted). "Virtually any law—federal, state or local—can serve as a predicate for an action under [the UCL]." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) (internal quotation marks omitted).

Where Plaintiff has alleged a "unified course of fraudulent conduct," Rule 9(b)'s particularity requirement applies to the unlawful and unfair prong of the UCL in addition to the above-discussed fraudulent prong. *See Kearns*, 567 F.3d at 1126–27 ("We held in *Vess* [*v. Ciba–Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003),] that if "the claim is said to be 'grounded in fraud' . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *see also Wilson v. Frito–Lay N. Am., Inc.*, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) ("[T]he rule is that plaintiffs need not satisfy Rule 9(b) as to the UCL's unlawful prong when the basis of their claim does not sound in fraud. However, when it does, and especially when a plaintiff alleges a unified course of fraudulent conduct that forms the basis of their UCL claims, plaintiffs must plead the UCL claims with specificity." (citing *Vess*, 317 F.3d at 1105–06)).

Here, Plaintiff alleges that Defendant has violated the unlawful prong of the UCL through Defendant's violation of four other statutes: (1) the FAL; (2) the CLRA; (3) the California

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Sherman Food, Drug, and Cosmetic law, Cal. Health & Safety Code § 109875 *et seq.* (the

2   "Sherman law"); and (4) the federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 *et seq.*

3   ("FDCA").  The Court first addresses the FAL and the CLRA and then addresses the Sherman law

4   and the FDCA.

5          With respect to Plaintiff's unlawful prong UCL cause of action based on violations of the

6   FAL and the CLRA, Plaintiff alleges the same fraudulent conduct the Court found was

7   inadequately alleged in the prior section.  Therefore, because the Court concluded above that

8   Plaintiff has inadequately alleged a violation of the FAL and CLRA under the requirements of

9   Rule 9(b), that holding also precludes Plaintiff from basing his unlawful prong UCL cause of

10  action on violations of those two statutes.  *See Stokes*, 2014 WL 4359193 at *11 ("If a plaintiff

11  cannot state a claim under the predicate law, however, [the UCL] claim also fails.").

12         Regarding the Sherman law and the FDCA, Plaintiff alleges Defendant violated these

13  statutes by violating FDA regulations promulgated under the FDCA.  Through the Sherman law,

14  California has expressly adopted the federal labeling requirements described in the FDCA.  *See*

15  Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those

16  regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after

17  that date shall be the food labeling regulations of this state.").  Accordingly, because the Sherman

18  law adopts federal labeling requirements, whether Plaintiff has violated the FDCA through

19  violations of implementing FDA regulations will also determine whether Plaintiff has violated the

20  Sherman law.

21         The FDCA governs whether a product is "misbranded" because of improper labeling.  The

22  FDCA identifies multiple ways to misbrand a food product.  *See* 21 U.S.C. § 343(a)–(y).  One way

23  to misbrand a food product is to use nutrient content claims or health claims under 21 U.S.C.

24  § 343(r).  Under § 343(r), a product is considered to be "misbranded" if it contains a claim that

25  "(A) characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or

26  (q)(2) to be in the label" or "(B) characterizes the relationship of any nutrient which is of the type

27  required by paragraph (q)(1) or (q)(2) . . . to a disease or health-related condition" unless the claim

28
                                                20

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   is made in accordance with the requirements under the statute.  21 U.S.C. § 343(r).

2        The FDA regulations that implement § 343(r) specify that there are three types of claims

3   under § 343(r)(A) and (B): expressed nutrient content claims, implied nutrient content claims, and

4   health claims. *See* 21 C.F.R. §§ 101.13 (addressing express and implied nutrient content claims),

5   101.65 (implied nutrient content claims), 101.14 (health claims).  "An expressed nutrient content

6   claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium'

7   or 'contains 100 calories.'" *Id.* § 101.13(b)(1).  An implied nutrient content claim, in contrast,

8   encompasses statements that either "[d]escribe[] the food or an ingredient therein in a manner that

9   suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran")," or

10  "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy

11  dietary practices." *Id.* § 101.13(b)(2).  A health claim is "any claim . . . that expressly or by

12  implication, . . . characterizes the relationship of any substance to a disease or health-related

13  condition. *Id.* § 101.14(a)(1).  These implementing regulations provide specific requirements for

14  making nutrient content claims and health claims.

15       Plaintiff alleges that Defendant's products are misbranded because (1) Defendant's

16  products make forbidden health claims that improperly link fiber and cardiovascular disease;

17  (2) Defendant improperly places intervening material between health claims and required

18  information; (3) Defendant's nutrient content claims are in a larger font than allowed by FDA

19  regulations; (4) Defendant makes misleading nutrient content claims about the protein content of

20  the products; (5) Defendant makes a misleading nutrient content claim by stating that some

21  products contain "No High Fructose Corn Syrup"; and (6) Defendant omits relevant information

22  from the labels that are required under 21 C.F.R. § 1.21.[3]  In response, Defendant argues that it has

23  not violated any of the FDA regulatory provisions and that, even if the regulatory provisions have

24

25  _____

26  [3] Defendant argues in the instant motion that, to the extent Plaintiff alleges that the use of the
    terms "wholesome," "nutritious," and "healthy" violates 21 C.F.R. § 101.65 as improper implied
27  nutrient content claims, such an allegation would fail.  However, the FAC does not specifically
    allege a violation of § 101.65, and Plaintiff did not address the argument in its opposition to the
28  instant motion.  Accordingly, the Court need not reach the issue.

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    technically been violated, these "bare technical violations" of the FDA regulations do not mislead

2    reasonable consumers or harm Plaintiff.  The Court addresses each of the alleged violations in

3    turn.

4                    a.      **Health Claims Linking Fiber to Cardiovascular Disease**

5           The FAC alleges that Defendant's products contain forbidden health claims that link fiber

6    and cardiovascular disease under 21 U.S.C. § 101.14 and 21 C.F.R. § 101.71(a).  Section 101.14

7    forbids a product's packaging from making health claims that are not explicitly authorized under

8    "Subpart E" of the section of the Code of Federal Regulations concerning food labeling.  Subpart

9    E encompasses 21 C.F.R. §§ 101.70–83.  There are two relevant provisions under Subpart E that

10   apply to the link between fiber and cardiovascular disease.  First, under 21 C.F.R. § 101.71(a),

11   "[h]ealth claims [are] not authorized" that link "[d]ietary fiber and cardiovascular disease."  21

12   C.F.R. § 101.71(a).  Second, under 21 C.F.R. § 101.77, despite § 101.71(a), a food manufacturer

13   may make health claims that "diets low in saturated fat and cholesterol and high in fruits,

14   vegetables, and grain products that contain fiber 'may' or 'might' reduce the risk of heart disease."

15   21 C.F.R. § 101.77; *see In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *3 (N.D. Cal.

16   Mar. 28, 2012) (finding "heart healthy" claims to be explicitly allowed under FDA regulations

17   where the requirements of § 101.77 were satisfied).

18          The FAC alleges that one of Defendant's products, Raisin Bran Cinnamon Almond,

19   contains health claims that impermissibly link fiber to cardiovascular disease by stating that fiber

20   helps with "'weight loss,' ''bad' cholesterol' levels, 'blood pressure,' and 'blood sugar levels.'"

21   *See* FAC ¶ 299 ("[F]iber can help promote weight loss and healthier eating patterns"; "Fiber-rich

22   diets can help lower 'bad' cholesterol, lower blood pressure, and help control blood sugar

23   levels.").  Moreover, the FAC alleges that other products contain forbidden health claims such as

24   "HEART HEALTHY/Whole grains can help support a healthy lifestyle" because "whole grains

25   impl[y] the presence of fiber.[4]  *Id.* ¶ 302.

26

27   [4] This allegation includes the following products:  Raisin Bran, Raisin Bran Crunch, Arisin Bran
     with Cranberries, and Raisin Bran Omega-3 250 mg ALA from Flaxseed.

28
     Case No. 16-CV-04955-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1          The Court first addresses whether Plaintiff has alleged a violation of §§ 101.14 and

2     101.71(a).  The Court then turns to whether Plaintiff has alleged "bare technical violations" that do

3     not mislead reasonable consumers.

4                              **i.       Violation of Federal Regulations**

5          The sole argument Defendant raises in its motion to dismiss with respect to the fiber-

6     related health claims is that the Raisin Bran Cinnamon Almond health claims do not violate 21

7     C.F.R. § 101.71(a) because those claims do not actually link fiber to heart disease, but solely refer

8     to risk factors for heart disease.  Mot. at 22.  The FDA has provided a compliance guide that

9     describes when a claim made on packaging refers to a specific disease.  *See* FDA, *Guidance for*

10    *Industry: Structure/Function Claims, Small Entity Compliance Guide*, Jan. 9, 2002, *available at* ht

11    tps://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/ucm10

12    3340.htm.[5]  In that FDA compliance guide, the FDA states that: "You can look to medical texts

13    and other objective sources of information about disease to determine if a label statement implies

14    treatment or prevention of a disease."  *Id.*  Moreover, the FDA compliance guide states that claims

15    that a food product "'inhibits platelet aggregation' or 'reduces cholesterol' are such characteristic

16    signs or symptoms associated with stroke and cardiovascular disease and interventions to treat

17    those diseases that any claim about them would be an implied disease claim."  *Id.*  This guidance

18    clearly indicates that a link between fiber and cholesterol is essentially a link to heart disease.

19    Moreover, given that sources such as "medical texts and other objective sources" are required to

20    determine if a claim implies treatment of disease, it is a factual question whether claims

21    concerning risk factors such as weight loss, blood pressure, and blood sugar also "impl[y]

22    treatment or prevention of [heart] disease."  *Id.*  Accordingly, the Court finds that Plaintiff's

23    allegations that Defendant's products state that fiber is linked to weight loss, cholesterol levels,

24    blood pressure, and blood sugar is sufficient at the pleading stage to allege that Defendant's

25

26    _____

27    [5] This FDA guidance was published for a different kind of claim that is regulated under 21 C.F.R.
      § 101.93 rather than 21 C.F.R. § 101.71(a).  However, the Court finds the guidance relevant to the
      instant inquiry as to whether the claim at issue refers to a specific disease.

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

products link fiber and cardiovascular disease.

In Defendant's reply brief, Defendant argues for the first time that these health claims actually comply with 21 C.F.R. § 101.77, and therefore are permitted health claims. The Court need not reach arguments that are raised for the first time in a reply brief. *See Ellison Framing, Inc. v. Zurich American Ins. Co.*, 805 F. Supp. 2d 1006, 1011 n.1 (E.D. Cal. 2011) (noting that "[t]he court typically cannot consider arguments first raised in reply"). Accordingly, the Court need not address whether 21 C.F.R. § 101.77 precludes Plaintiff's unlawful prong UCL cause of action.[6]

### ii. Bare Technical Violation

Defendant argues that Plaintiff's cause of action involves allegations of "a bare violation of a statute or regulation [that] does not entitle a plaintiff to relief absent a showing that a reasonable consumer would be misled or injured as a result." Mot. at 25. Thus, the Court construes Defendant's "bare technical violation" argument as an argument that Plaintiff has failed to satisfy the "reasonable consumer test." Under the reasonable consumer test, "a plaintiff must 'show that members of the public are likely to be deceived.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Defendant contends that the "reasonable consumer" test applies to the unlawful

---

[6] Moreover, even if the Court were to address the argument, Defendant's argument fails because Defendant fails to meet its burden of persuasion as the moving party. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) ("The moving party has the burden of persuasion in arguing for dismissal.") (citing *Sierra Club v. Watt*, 608 F. Supp. 305, 312 (E.D. Cal. 1985)); *cf. Brum v. Cty. of Merced*, 2013 WL 2404844, at *3–4 (E.D. Cal. May 31, 2013) (discussing the allocation of burdens of proof on a motion under Rule 19 and noting the consensus that the moving party bears the burden of persuasion). Although Defendant states that the wording of the health claims are similar to 21 C.F.R. § 101.77, Defendant does not address how they are similar. Under § 101.77, a food manufacturer is only allowed to make health claims that link fiber and cardiovascular disease where the statement also makes the point that "diets low in saturated fat and cholesterol and high in fruits, vegetables, and grain products that contain fiber 'may' or 'might' reduce the risk of heart disease." *Id.* The statements that are allegedly in violation of the FDA regulations do not contain statements that reference diets "low in saturated fat" and "high in fruits, vegetables and grain products." If the packaging of the products contains statements that comply with these requirements, Defendant fails to point to them, and the Court declines to search the complaint to rescue Defendant's challenge to the FAC. "Judges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Therefore, Defendant has failed to satisfy its burden of persuasion.

24

prong of the UCL.  Moreover, this Court has previously held that a Plaintiff must meet the "reasonable consumer test" for unlawful prong UCL causes of action where the cause of action at issue is grounded in fraud.  *See Bruton v. Gerber Prod. Co.*, 2014 WL 7206633, at *8 (N.D. Cal. Dec. 18, 2014) (applying reasonable consumer test to unlawful prong UCL claims grounded in fraud).

The Court looks to the "gravamen" of Plaintiff's causes of action to determine if the causes of action are grounded in fraud.  *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1144 (N.D. Cal. 2013) ("It is clear from Plaintiffs' SAC that the behavior that Plaintiffs allege violated FDA regulations and the Sherman Law is misrepresentation or deception, because Plaintiffs are asserting that Defendant used deceptive labeling practices to hide the truth of the Products' ingredients.").  Usually, violations of the Sherman law and FDA labeling regulations constitute misleading actions that are grounded in fraud.  *See Kane v. Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (finding unlawful UCL claim grounded in fraud where the plaintiff alleged a violation of "the UCL's unlawful prong based on Defendant's violations of the advertising and misbranding provisions of the Sherman Law").

Here, as currently alleged in the FAC, Plaintiff's challenge to Defendant's use of health claims linking fiber and cardiovascular disease is grounded in fraud.  As discussed above, the gravamen of Plaintiff's complaint is that Defendant has made deceptive health claims on its product packaging that are false due to the presence of added sugar.  Moreover, the particular FDA regulation that prohibits health claims linking fiber and cardiovascular disease are intended to prevent misleading statements about soluble fiber.  58 Fed. Reg. 2552, 2571, 2573 (1993) ("[T]he attribution of [beneficial cardiovascular] effects to soluble fiber per se, when foods contain a wide range of vitamins, minerals, and other substances, is misleading"; "[I]t would be misleading to place undue emphasis on soluble fiber standing alone.").  Plaintiff even concedes that the FDA regulations at issue are intended to prevent the consuming public from being misled.  *See* Opp'n at 19 ("[Plaintiff] alleges Kellogg uses some of the most highly-regulated aspects of food labeling— nutrient content and health claims—in violation of regulations enacted expressly to ensure

1  consumers are not misled."). Accordingly, Plaintiff's unlawful prong UCL cause of action based

2  on Defendant's statements linking fiber and cardiovascular disease is grounded in fraud.

3          The question then is whether a reasonable consumer would be confused by Defendant's

4  statements concerning soluble fiber. "Generally, the question of whether a business practice is

5  deceptive [under the reasonable consumer standard] presents a question of fact not suited for

6  resolution on a motion to dismiss." *Robert McCrary v. The Elations Co., LLC*, 2014 WL

7  12591473, at *3 (C.D. Cal. Mar. 24, 2014) (citing *Williams*, 552 F.3d at 938). However, the court

8  may in certain circumstances consider the viability of the alleged consumer law causes of action

9  based on its review of the product packaging. *See Jones*, 912 F. Supp. 2d at 899. "Thus, where a

10 court can conclude as a matter of law that members of the public are not likely to be deceived by

11 the product packaging, dismissal is appropriate." *Id.* (quotation and citation omitted).

12         Here, as with the rest of the FAC, the claim could be misleading because the claim linking

13 fiber and cardiovascular disease implies that Raisin Bran Cinnamon Almond is healthy when it is

14 not because of excessive added sugar. However, that cannot be the basis for finding the claims

15 misleading here because, as discussed above, Plaintiff has inadequately alleged the amount of

16 added sugar under Rule 9(b).

17         Plaintiff has made no other allegation about how the claims linking fiber and heart disease

18 are misleading. Rule 9(b) requires a Plaintiff to "set forth what is false or misleading about a

19 statement, and why it is false." *In re Glenfed*, 42 F.3d at 1548. Although Plaintiff's FAC alleges

20 that the statements linking fiber and heart disease violate § 101.71(a), Plaintiff does not "set forth

21 what is false or misleading" about the particular claims such that a reasonable consumer would be

22 misled. That is, even if the claim violates the regulation, under Rule 9(b), "Plaintiff[] must

23 connect the dots showing how the alleged misbranding misled plaintiffs in a way that a reasonable

24 consumer would be deceived." *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal.

25 Aug. 9, 2013). Thus, Plaintiff must do more than simply state that the claim at issue violated

26 § 101.71(a).

27         Thus, because Plaintiff has failed to adequately allege a violation of the reasonable

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

consumer test, the Court GRANTS Defendant's motion to dismiss the unlawful prong UCL cause of action as to the health claims linking fiber and cardiovascular disease on the packaging for Raisin Bran Cinnamon Almond.  The Court provides leave to amend because Plaintiff may be able to allege facts that will satisfy the reasonable consumer test.[7]

### b. Intervening Material Between Health Claims and Required Information

Plaintiff alleges that Plaintiff has improperly placed intervening material between Plaintiff's health claims and information that is required to accompany such health claims.  *See* 21 C.F.R. § 101.14(d)(2)(iv) (requiring that "[a]ll information required to be included in [a health] claim appears in one place without other intervening material.").  Defendant argues that it has not violated this provision, and that, even if it has, that violation is a "bare technical violation" that does not give rise to a cause of action under the unlawful prong of the UCL.

A district court may find a cause of action waived where a plaintiff fails to defend the cause of action in opposition to a motion to dismiss.  *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009), *aff'd*, 646 F.3d 1240 (9th Cir. 2011) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").  Here, Plaintiff has failed to respond to Defendant's argument concerning the intervening material between Defendant's health claims and required statements.  Therefore, the Court finds that Plaintiff has waived the issue.

Accordingly, the Court GRANTS Defendant's motion to dismiss as to Plaintiff's unlawful prong UCL cause of action based on intervening material between health claims and statements

---

[7] Moreover, the Court notes that Defendant has challenged Plaintiff's allegations that Defendant violated § 101.71(a) by stating that whole grains are "heart healthy" on Plaintiff's other products. *See* FAC ¶ 302.  Defendant asserts that the heart healthy statements are preempted and do not violate the FDA regulations.  ECF No. 44-1.  The Court finds Plaintiff's claims to be defective for the same reason as Plaintiff's claims about the statements linking fiber and cardiovascular disease on Raisin Bran Cinnamon Almond.  Specifically, Plaintiff has not adequately alleged that reasonable consumers would be misled by Defendant's heart healthy statements.  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's heart healthy claims.  The Court provides leave to amend because Plaintiff may be able to allege facts that will satisfy the reasonable consumer test.

27

1    required to accompany those health claims.  The dismissal is with prejudice because Plaintiff has

2    waived the issue.  Moreover, Defendant's motion to dismiss the original complaint identified the

3    same deficiency with Plaintiff's "intervening material" claim.  ECF No. 22 at 21 n.4.  The Court

4    warned Plaintiff that failure to correct the deficiencies identified in Defendant's motion to dismiss

5    would result in Plaintiff's claims being dismissed with prejudice.  ECF No. 31.  Plaintiff's FAC

6    fails to cure the deficiencies with Plaintiff's "intervening material" claim.  Accordingly, the Court

7    finds that amendment would be futile.  *Carvalho*, 629 F.3d at 892 (holding that futility is a ground

8    for not providing leave to amend).  Therefore, the dismissal is with prejudice.

9                                   **c.    Size of Nutrient Content Claims**

10          Under 21 C.F.R. § 101.13(f), a nutrient content claim "shall be in a type size no larger than

11   two times the statement of identity and shall not be unduly prominent in type style compared to

12   the statement of identity."  Defendant argues that Plaintiff has failed to adequately allege a

13   violation of 21 C.F.R. § 101.13(f) because Plaintiff has failed to identify any statements in the

14   FAC that violate this provision, and because Plaintiff has only alleged a "bare technical violation"

15   with no allegation as to why a reasonable consumer would be misled.

16          A statement of identity is a statement on the product that identifies the product.  *See Coe v.*

17   *Gen. Mills, Inc.*, 2016 WL 4208287, at *3 (N.D. Cal. Aug. 10, 2016) (indicating that the statement

18   of identity for Muscle Milk was "Protein Nutrition Shake" or "Nutrition Shake").  Here, Plaintiff's

19   FAC provides a single conclusory allegation that "[m]ost or all of Kellogg's products also violate

20   21 C.F.R. § 101.13(f) because they make nutrient content claims that are 'larger than two times the

21   statement of identity,' or are 'unduly prominent in type style compared to the statement of

22   identity."  FAC ¶ 305.  Plaintiff does not identify any particular statements or products that violate

23   § 101.13(f).  Plaintiff thus fails to satisfy the pleading requirements of *Twombly* and *Iqbal*, which

24   require Plaintiff to plead facts, not conclusory allegations.  *See Iqbal*, 556 U.S. at 678 ("A claim

25   has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the

26   reasonable inference that the defendant is liable for the misconduct alleged."  (emphasis added)).

27          Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's unlawful

28
Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   prong UCL cause of action to the extent it is based on the type size of nutrient content claims.  The

2   Court provides leave to amend because Defendant's prior motion to dismiss the original complaint

3   did not identify this particular deficiency in Plaintiff's § 101.13(f) cause of action.

### d.    Protein Content of Products

5          Under 21 C.F.R. § 101.13(i)(3), an express nutrient content claim is allowed if it "is not

6   false or misleading in any respect."  Plaintiff alleges that Defendant has violated § 101.13(i)(3) by

7   misrepresenting the amount of protein in Defendant's cereals by listing on the front of the box the

8   amount of protein that is contained in one serving of the cereal with one serving of low-fat milk

9   (for example, for Raisin Bran, "9g Protein") rather than the amount of protein in the cereal alone

10  (for Raisin Bran, 5 grams).  FAC ¶ 306.[8]

11         Defendant argues that the statement concerning the amount of protein is not misleading.

12  Specifically, Defendant notes that the statement "9g Protein" is part of an infographic in a

13  bordered area on the front of Defendant's product packaging.  Directly below the statement "9g

14  Protein" is a picture of a cereal bowl labeled "5g," followed by a plus sign, followed by a picture

15  of a milk carton labeled "4g."  Together, the infographic creates the equation "cereal + milk," with

16  a 5 gram protein contribution from cereal and 4 gram protein contribution from milk to equal the

17  total 9 grams of protein.

18         The Court agrees with Defendant that Defendant's protein label is not misleading.

19  Although the label states "9g Protein" in large font, directly below that statement are symbols

20  indicating that the protein contribution of cereal is added to the protein contribution of milk.

21  Plaintiff argues that this infographic is misleading because the combined protein amount is in a

22  larger font than the protein contributions from the cereal and milk, and therefore will be more

23  likely to catch a shopper's eye.  However, the symbols for cereal and milk are approximately the

24

---

25  [8] The following products allegedly misrepresent the amount of protein: Raisin Bran, Raisin Bran
    Crunch, Raisin Bran Omega-3 250mg ALA From Flaxseed, Raisin Bran with Cranberries, Frosted
26  Mini-Wheats in Original and Blueberry flavors, Frosted Mini-Wheats Little Bites in Original and
    Chocolate flavors, Frosted Mini-Wheats Fruit in the Middle in Raspberry flavor, and Frosted
27  Mini-Wheats Harvest Delights in Blueberry with Vanilla Drizzle and Cranberry with Yoghurt
    Drizzle flavors.  FAC ¶ 306.

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

same size as the lettering indicating "9g Protein" and are located directly below the "9g Protein" amount in the same bordered area.  In *Morgan v. Wallaby Yogurt Company Inc.*, 2013 WL 5514563 (N.D. Cal. Oct 4, 2013), a court in this district held that the inclusion of "evaporated cane juice" in the ingredients did not misleadingly hide the presence of sugar because the nutrition panel just above the ingredient list disclosed that the product contained sugar.  *Id.* at *8.  Similarly here, the information concerning the amount of protein originating from milk and cereal is located directly below the allegedly misleading statement.  A reasonable consumer viewing this infographic would conclude that the amount of protein represented comes from a combination of cereal and milk.  *Cf.* 21 C.F.R. § 101.13(i)(2) (noting that a disclaimer can be used to make a "statement on the food [that] implicitly characterizes the level of the nutrient in the food" that is unclear to be not misleading).

Accordingly, Plaintiff GRANTS Defendant's motion to dismiss Plaintiff's unlawful prong UCL cause of action to the extent it is based on the allegations concerning the amount of protein in the product.  The Court dismisses this claim with prejudice because amendment would be futile.  *See Carvalho*, 629 F.3d at 892 (holding that futility is a ground for not providing leave to amend).  The Court finds futility for two reasons.  First, the Court finds that the label is not misleading as a matter of law.  *See Jones*, 912 F. Supp. 2d at 899 ("Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.").  Second, Defendant's motion to dismiss the original complaint identified the same deficiency with Plaintiff's protein-label claim.  ECF No. 22 at 21–22.  The Court warned Plaintiff that failure to correct the deficiencies identified in Defendant's motion to dismiss would result in Plaintiff's claims being dismissed with prejudice.  ECF No. 31.  Plaintiff's FAC fails to cure the deficiencies with Plaintiff's protein-label claim.  For the above two reasons, the Court finds that amendment would be futile.  *See Carvalho*, 629 F.3d at 892 (holding that futility is a ground for not providing leave to amend).  Therefore, the dismissal is with prejudice.

### d.   Express Claims Concerning High Fructose Corn Syrup

Plaintiff alleges that the statement "No High Fructose Corn Syrup" used on some of

30

United States District Court
Northern District of California

Defendant's Nutri-Grain cereal bars violates 21 C.F.R. § 101.13(e).[9]  Under § 101.13(e), a food manufacturer may only label a food as being "free" of or "low" in the amount of a particular nutrient if the food has been "specially processed, altered, formulated, or reformulated so as to lower the amount of the nutrient in the food." 21 U.S.C. § 101.13(e)(1).  However, "[a]ny claim for the absence of a nutrient in a food . . . when the food has not been specially processed, altered, formulated, or reformulated to qualify for that claim shall indicate that the food inherently meets the criteria and shall clearly refer to all foods of that type . . . (e.g., 'corn oil, a sodium-free food')." *Id.* § 101.13(e)(2).

Plaintiff argues that use of the statement "No High Fructose Corn Syrup" is a violation of § 101.13(e) because the Nutri-Grain cereal bars labeled with "No High Fructose Corn Syrup" have not been "specially processed, altered, formulated, or reformulated" to lower the amount of high fructose corn syrup in the cereal bars.  As noted above, under § 101.13(e), where a product has not been "specially processed, altered, formulated, or reformulated" to lower the amount of nutrient, a food label cannot state that the product is "free" of the nutrient, but instead must "indicate that the food inherently" lacks the nutrient.  Thus, Plaintiff contends that Defendant's Nutri-Grain cereal bars should be labeled with a statement like "cereal bars, a high fructose corn syrup free food" rather than the statement "No High Fructose Corn Syrup."

However, the FAC's sole allegation that the Nutri-Grain cereal bars have not been "specially processed, altered, formulated, or reformulated" to lower the amount of high fructose corn syrup is the statement that "none of Kellogg's food products in their natural state contain high fructose corn syrup, a man-made sweetener."  FAC ¶ 304.  Plaintiff does not define Kellogg's food products' "natural state."  Moreover, Plaintiff's statement is conclusory and does not plead sufficient facts to conclude that Plaintiff's Nutri-Grain cereal bars have not been "specially processed, altered, formulated, or reformulated" to lower the amount of high fructose corn syrup.

---

[9] The statement "No High Fructose Corn Syrup" appears on the following products: Nutri-Grain Cereal Bars in Apple Cinnamon, Blueberry, Strawberry, Cherry, and Mixed Berry flavors; Nutri-Grain Soft-Baked Breakfast Bars in Blueberry, Strawberry, and Variety Pack flavors; and Nutri-Grain Fruit & Oat Harvest Bars in Country Strawberry and Blueberry Bliss flavors.

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads *factual*

2    *content* that allows the court to draw the reasonable inference that the defendant is liable for the

3    misconduct alleged." (emphasis added)).  Indeed, it may be that "none of Kellogg's products"

4    contain high fructose corn syrup because those products have all been "specially processed,

5    altered, formulated, or reformulated" to lower the amount of high fructose corn syrup.

6         Furthermore, Plaintiff makes no allegation that other cereal bars do not contain high

7    fructose corn syrup.  FDA guidance provides that if other foods of the same type do contain a

8    nutrient, § 101.13(e) cannot be violated by stating that the product lacks that nutrient.  *See*

9    *Guidance for Industry: A Food Labeling Guide*, Chp. 8: Claims, at 75 (January 2013), *available*

10   *at* https://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf ("N24. If a

11   product is made that does not have a regular version, such as a spice mix, and salt is not included

12   in it, may the product be labeled 'sodium free?' Answer: Yes.  FDA would consider that the food

13   was formulated so as not to include the nutrient in the food and therefore it would be eligible to

14   bear a "sodium free" claim if the product otherwise meets the criteria for the term 'sodium free.'").

15   Accordingly, the Court finds that Plaintiff has not adequately alleged a violation of § 101.13(e).[10]

16        Nonetheless, Plaintiff argues for the first time in his opposition that the term "No High

17   Fructose Corn Syrup" is actually an implied nutrient content claim about the level of *sugar* in the

18   product.  Thus, according to Plaintiff, Defendant's "No High Fructose Corn Syrup" statements are

19   actually statements that Defendant's products have no sugar at all and thus violate the

20   requirements for stating that a product is "low in sugar" or "sugar free" as defined in 21 C.F.R.

21   § 101.13(i) and 21 C.F.R. § 101.60(c).  However, the FAC contains no allegation that reasonable

22   consumers find statements about high fructose corn syrup to be equivalent to statements about

23   sugar.  Regardless, the Court need not consider causes of action that were not raised in the

24   complaint. *McMichael v. Napa Cty.*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) ("Because none of

25

26   [10] The Court also notes that high fructose corn syrup may be an "ingredient" and not a "nutrient"
     regulated by § 101.13(e).  However, the Court need not reach this issue because even if high
27   fructose corn syrup were a nutrient within the meaning of the FDA regulations, Plaintiff has failed
     to adequately plead a violation of § 101.13(e).

28
     Case No. 16-CV-04955-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the state law claims were included in the complaint, we need not consider them.").  Although the

2   Court doubts that the highly specific statement "No High Fructose Corn Syrup" would lead a

3   reasonable consumer to believe that there is no sugar in a product, *see Delacruz*, 2012 WL

4   1215243at *4 (finding that a statement of "0g trans fat" did not imply that the product was low in

5   fat or saturated fat), the Court need not reach this argument because violations of the "low in

6   sugar" and "sugar free" regulations were not alleged in the FAC.

7            Accordingly, Defendant's use of the term "No High Fructose Corn Syrup" cannot be the

8   basis for Plaintiff's UCL cause of action under the unlawful prong.  Thus, the Court GRANTS

9   Defendant's motion to dismiss as to Plaintiff's causes of action based on the statement "No High

10  Fructose Corn Syrup."  The Court provides leave to amend because Plaintiff did not raise UCL

11  unlawful prong violations based on the statement "No High Fructose Corn Syrup" in the original

12  complaint, and thus Plaintiff has not already amended this particular claim in light of deficiencies

13  identified by Defendant's motion to dismiss the original complaint.  Moreover, Plaintiff may be

14  able to allege a violation of §§ 101.13(e), 101.13(i), or 101.60(c) due to Defendant's use of the

15  term "No High Fructose Corn Syrup."

16                      **e.        Omission of Presence of Sugar under 21 C.F.R. § 1.21**

17           Plaintiff alleges that Defendant's products are misbranded under 21 C.F.R. § 1.21 because

18  Defendant's products contain "health and wellness statements" and "fail[] to reveal" the

19  "detrimental health consequences of consuming added sugars" and "the increased risk of serious

20  chronic disease likely to result from the usual consumption of its cereals in the customary

21  manner."  FAC ¶¶ 294–95.  Under 21 C.F.R. § 1.21, labeling is deemed misleading "if it fails to

22  reveal facts that are . . . [m]aterial in light of other representations made or suggested by statement,

23  word, design, device or any combination thereof."  21 C.F.R. § 1.21.

24           As with the FAL and the CLRA, Plaintiff's § 1.21 claim alleges that Defendant has made

25  health and wellness claims that are not true because of excess added sugar in Defendant's product.

26  As with the FAL and the CLRA, this argument fails because Plaintiff has failed to adequately

27  allege the amount of added sugar in Defendant's products and that the amount of added sugar is

28
                                                    33

United States District Court
Northern District of California

1    excessive and unhealthy.  Accordingly, the Court GRANTS Plaintiff's unlawful prong UCL cause

2    of action based on § 1.21.  The Court provides leave to amend because Plaintiff may be able to

3    allege more details concerning the amount of added sugar in each of Defendant's products and that

4    the amount of added sugar is excessive and unhealthy.

5        In summary, the Court GRANTS Defendant's motion to dismiss as to all of the statements

6    Defendant challenged in the FAC.

7                    **3.       Unfair Prong of the UCL**

8        The unfair prong of the UCL prohibits a business practice that "violates established public

9    policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

10   which outweighs its benefits." *McKell v. Wash. Mut.*, Inc., 142 Cal. App. 4th 1457, 1473 (2006).

11   California law is currently unsettled with regard to the standard applied to consumer claims under

12   the unfair prong of the UCL.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th

13   Cir. 2012) (citing *Lozano*, 504 F.3d at 735–36).  The California Supreme Court has rejected the

14   traditional balancing test for UCL claims between business competitors and instead requires that

15   claims under the unfair prong be "tethered to some legislatively declared policy."  *See Cel-Tech*

16   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999).  However, the *Cel-Tech*

17   court explicitly limited its holding to claims alleging unfairness to business competitors, and

18   California courts are divided as to the correct test to apply to consumer actions.  *See Lozano*, 504

19   F.3d at 735–36. Pending resolution of this issue by the California Supreme Court, the Ninth

20   Circuit has approved the use of either the balancing or the tethering tests in consumer actions.  *Id.*

21   In this case, Plaintiff's allegations cite to both the traditional balancing test and specific legislative

22   policies found in the FAL, CLRA, FDA regulations, and Sherman law.  *See* FAC ¶ 421–23.

23   Accordingly, both tests apply in the instant case.

24        Under the traditional balancing test, "an act or practice is unfair if the consumer injury is

25   substantial, is not outweighed by any countervailing benefits to consumers or to competition, and

26   is not an injury the consumers themselves could reasonably have avoided." *Berryman*, 152 Cal.

27   App. 4th at 1555.  Under the *Cel-Tech* test, a business practice is unfair if Plaintiff alleges that

28
                                                34

1   Defendant violated a "legislatively declared policy or proof of some actual or threatened impact on

2   competition."  *Cel-Tech*, 20 Cal. 4th at 186.

3       Regardless of the test, courts in this district have held that where the unfair business

4   practices alleged under the unfair prong of the UCL overlap entirely with the business practices

5   addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

6   survive if the claims under the other two prongs of the UCL do not survive.  *See Punian v. Gillette*

7   *Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that cause of action under the

8   unfair prong of the UCL did not survive where "the cause of action under the unfair prong of the

9   UCL overlaps entirely with Plaintiff's claims" under the FAL, CLRA, and fraudulent prong of the

10  UCL); *see also In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009),

11  *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing unfair prong UCL cause of action where

12  "plaintiffs' unfair prong claims overlap entirely with their claims of fraud").

13      Here, Plaintiff alleges that Defendant violated the unfair prong of the UCL because

14  Defendant "label[ed], advertis[ed], and s[old] [] high sugar cereals" and because Plaintiff's

15  product packaging violated the FAL, CLRA, FDCA, and the Sherman law.  FAC ¶¶ 421–23.

16  These allegations indicate that Plaintiff's unfair prong UCL cause of action is based on the same

17  contentions discussed above that either (1) Plaintiff fraudulently sold unhealthy products while

18  representing they were healthy, or (2) violated specific provisions of the FDA regulations.

19  However, the Court concluded above that Plaintiff has inadequately alleged a violation of the

20  FAL, CLRA, and fraudulent prong of the UCL.  Moreover, the Court granted Defendant's motion

21  to dismiss Plaintiff's unlawful prong UCL cause of action as to all of the statements that Plaintiff

22  alleges are in violation of the FDCA and the Sherman law.

23      Accordingly, for the same reasons the Court granted Defendant's motion to dismiss as to

24  the FAL, CLRA, fraudulent prong UCL cause of action, and unlawful prong UCL cause of action,

25  the Court GRANTS Defendant's motion to dismiss Plaintiff's unfair prong UCL cause of action.

26  The Court provides leave to amend to the same extent that the Court provided leave to amend for

27  Plaintiff's claims under the FAL, CLRA, fraudulent prong of the UCL, and unlawful prong of the

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

UCL.

### B.        Express Warranty

Plaintiff asserts a breach of express warranty under California law.  Cal. Com. Code § 2313.  Under § 2313, an express warranty is created through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  *Id.*  "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.  *See* Cal. Com. Code § 2313(1)(b).

Plaintiff has inadequately pled a cause of action for breach of implied warranty because Plaintiff has failed to "allege the exact terms of the warranty" for each product at issue.  *Beechnut*, 185 Cal. App. 3d at 142.  Plaintiff alleges that a litany of statements, undifferentiated by product variant, constitute the express warranty.  FAC ¶¶ 427 (listing 65 different statements without indicating for which of the 53 products those statements provide a warranty).  Such a list of statements does not indicate the exact terms of the warranty for each product at issue.  Moreover, an express warranty claim requires that the statements be part of the "basis of the bargain," and the "basis of the bargain" for each product would only include the statements made on the packaging for that specific product variant.  Accordingly, Plaintiff must differentiate exactly what express warranty Plaintiff is claiming as to each product.  As already noted above, "[j]udges are not like pigs, hunting for truffles buried in briefs."  *Independence Towers*, 350 F.3d at 929 (quoting *Dunkel*, 927 F.2d at 956.  The same is true for allegations, especially in a complaint that is 155 pages in length that alleges 65 different statements from 53 products.  Plaintiff must be clear on what express warranty is being claimed as to each product variant.

Accordingly, the Court GRANTS Defendant's motion to dismiss as to Plaintiff's warranty

36

United States District Court
Northern District of California

1   cause of action with leave to amend.  The Court provides leave to amend because Plaintiff may be

2   able to indicate what statements constitute the claimed warranty as to each product.

3           **C.**      **Implied Warranty of Merchantability**

4          Plaintiff also asserts that Defendant has violated the implied warranty of merchantibility.

5   Under California law, the implied warranty can be violated if (1) the product is not "fit for the

6   ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or

7   affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314(2); *see Hauter*

8   *v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2315(2)(c), (f)).  Defendant

9   argues that a breach of the implied warranty of merchantability can only exist if the product is not

10  fit for its ordinary purpose and the product "did not possess even the most basic degree of fitness

11  for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  However,

12  Defendant does not address the other basis for finding a breach of the implied warranty, non-

13  conformance with "promises or affirmations" on the product packaging.

14         Plaintiff concedes that Defendant's products are "fit for the ordinary purpose" for which

15  Defendant's products are used.  Opp'n at 26–27.  However, Plaintiff argues that Defendant's

16  products do not "[c]onform to the promises or affirmations of fact" on the packaging for

17  Defendant's products.  When an implied warranty of merchantability cause of action is based

18  solely on whether the product in dispute "[c]onforms to the promises or affirmations of fact" on

19  the packaging of the product, the implied warranty of merchantability claim rises and falls with

20  express warranty claims brought for the same product.  *See Hendricks v. StarKist Co.*, 30 F. Supp.

21  3d 917, 933 (N.D. Cal. 2014) (applying the same analysis to the "[c]onforms to the promises or

22  affirmations of fact" analysis as to the express warranty analysis).  Above, the Court held that the

23  express warranty cause of action was insufficiently pled because it failed to differentiate which

24  statements applied to which product.  For the same reason, the Court also finds that the implied

25  warranty of merchantability cause of action is insufficiently pled.

26         Therefore, the Court GRANTS Defendant's motion to dismiss with leave to amend as to

27  Plaintiff's cause of action for violation of the implied warranty of merchantability.  The Court

28  

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    provides leave to amend because Plaintiff may be able to indicate what statements constitute the

2    claimed warranty as to each product.

3        **D.    Standing for Injunctive Relief**

4        Article III standing requires that the Plaintiff "(1) suffered an injury in fact, (2) that is

5    fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by

6    a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. To establish standing for prospective

7    injunctive relief, a plaintiff must demonstrate that "[s]he has suffered or is threatened with a

8    concrete and particularized legal harm coupled with 'a sufficient likelihood that [s]he will again be

9    wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

10   (citation and internal quotation marks omitted). A plaintiff must establish a "real and immediate

11   threat of repeated injury." *Id.* (citation omitted); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*,

12   631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive

13   relief . . . [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the

14   future."). "Past exposure to illegal conduct does not in itself show a present case or controversy

15   regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

16   *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Finally, a named plaintiff must show that she

17   herself is subject to a likelihood of future injury. Allegations that a defendant's conduct will

18   subject unnamed class members to the alleged harm is insufficient to establish standing to seek

19   injunctive relief on behalf of the class. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45

20   (9th Cir. 1999).

21       In false advertising cases, "where a plaintiff has no intention of purchasing the product in

22   the future, a majority of district courts have held that the plaintiff has no standing to seek

23   prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly

24   misleading advertising has no standing to seek prospective injunctive relief." *Davidson v.

25   Kimberly-Clark Corp.*, 2014 WL 7247398, at *4 (N.D. Cal. Dec. 19, 2014). This Court has

26   consistently adopted the majority position that "[a plaintiff] must allege that [he or she] intends to

27   purchase the products at issue in the future" to establish standing for injunctive relief. *See, e.g.*,

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at *9 (N.D. Cal. May 23, 2014).

2         Moreover, this Court has rejected the proposition that a plaintiff's awareness of allegedly

3   misleading advertising eliminates standing to seek prospective injunctive relief.  *In re Yahoo Mail*

4   *Litig.*, 308 F.R.D. 577, 588 (N.D. Cal. 2015) ("This Court, among others in this circuit, has

5   rejected this proposition as overly narrow in the consumer protection context.").  Indeed, "'[i]f the

6   Court were to construe Article III standing . . . as narrowly as the Defendant advocates, federal

7   courts would be precluded from enjoining false advertising under . . . consumer protection laws

8   because a plaintiff who had been injured would always be deemed to avoid the cause of the injury

9   thereafter ('once bitten, twice shy') and would never have Article III standing.'"  *Id.* (quoting

10  *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (S.D. Cal. Apr. 11, 2011)).  Thus, this Court

11  has concluded that knowledge of an alleged falsehood does not eliminate Article III standing so

12  long as the plaintiff "'allege[s] that [he or she] intends to purchase the products at issue in the

13  future,' even after a consumer discovers the alleged misrepresentation."  *Id.* (quoting *Werdebaugh*,

14  2014 WL 2191901 at *9).  In the product labeling context, this Court has noted that such an

15  allegation of intent to purchase the Defendant's products can be conditioned on the Defendant

16  curing the misrepresentations on the product label.  *See Werdebaugh*, 2014 WL 2191901 at *9

17  ("[I]t is not impossible that a consumer would be interested in purchasing the products at issue if

18  they were labeled correctly."  (citing *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *4 (N.D.

19  Cal. Dec. 10, 2013)); *see also Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *4 (S.D.

20  Cal. May 13, 2013) ("There are cases where a consumer would still be interested in purchasing the

21  product if it were labeled properly—for example, if a food item accurately stated its ingredients.").

22        Here, Plaintiff contends that it has satisfied the standing requirement for injunctive relief

23  by pleading that Plaintiff would "consider purchasing Kellogg products" again in the future "if

24  [P]laintiff could be assured that *un*healthy Kellogg products—those high in added sugar—are

25  appropriately priced."  Opp'n at 28.  Rather than stating that Plaintiff *intends* to purchase

26  Defendant's products again in the future, Plaintiff solely alleges that Plaintiff would *consider*

27  making such a purchase if the price were to decrease to a level that is "appropriate."

28

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

Courts in this district have indicated that it is sufficient to allege that "willingness to consider a future purchase is sufficient" to confer standing for injunctive relief. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015); *see also Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *13 (N.D. Cal. June 13, 2014) (indicating that the plaintiff would have standing if he testified that "he might purchase Hunt's products in the future if they were properly labeled"). The *Lilly* court reasoned that "[t]he harms Plaintiffs seek to avoid by bringing this litigation are not just the harms related to purchasing or consuming a mislabeled product, but also the harm of being a consumer in the marketplace who cannot rely on the representations made by Defendants on their product labels." *Lilly*, 2015 WL 1248027 at *5. The *Lilly* court held that an injunction would thus satisfy the redressability requirement of standing because an injunction would "enable[] the Plaintiffs and other consumers to have confidence that the information they receive about the challenged products at the time of purchase is accurate." *Id.*

However, the *Lilly* holding does not address situations where a plaintiff alleges that he or she would only "consider" purchasing the products if they are "appropriately priced." An injunction on Defendant's food labeling practices might prevent a plaintiff from consuming a mislabeled product, but the Court has no control over whether the price of a product will be changed to an "appropriate" level. Indeed, Plaintiff fails to even allege what price for Defendant's products would be "appropriate." Therefore, the Court finds Plaintiff's allegation for standing to be insufficient.

Accordingly, the Court GRANTS Defendant's motion to dismiss with respect to Plaintiff's prayer for injunctive relief. The Court provides leave to amend because Plaintiff may be able to allege an intent to purchase Defendant's products that meets the requirements of Article III.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss. Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, Plaintiff shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a

United States District Court
Northern District of California

40

dismissal with prejudice of Plaintiff's deficient causes of action.  Plaintiff may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: March 21, 2017

_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-04955-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS