UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| STEPHEN HADLEY,<br><br>          Plaintiff,<br><br>    v.<br><br>KELLOGG SALES COMPANY,<br><br>          Defendant. | Case No. 16-CV-04955-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 63 |

Plaintiff Stephen Hadley ("Plaintiff") brings the instant suit against Defendant Kellogg Sales Company ("Defendant") for allegedly misleading statements on Defendant's food product packaging. Before the Court is Defendant's Motion to Dismiss Second Amended Complaint. ECF No. 63 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

# I.   BACKGROUND

## A.   Factual Background

Defendant is a "multi-billion dollar food company that manufactures, markets, and sells a wide variety of cereals and bars, among other foods." ECF No. 27, Second Amended Complaint ("SAC") ¶ 108. Defendant is allegedly "the world's leading producer of cereal." *Id.* Defendant

allegedly has "positioned itself in the market as a purportedly 'healthy' brand of processed food, by using various labeling statements to suggest its foods, especially its cereals and bars, are healthy choices." *Id.* ¶ 112.

Plaintiff "has been a frequent cereal eater for many years." *Id.* ¶ 249. Over the past several years, Plaintiff has purchased Defendant's breakfast cereals and cereal bars. *Id.* ¶ 250–51. During that time period, Plaintiff allegedly "tried to choose healthy options, and has been willing to pay more for cereals he believes are healthy." *Id.* ¶ 249.

This case concerns statements on the packaging for breakfast cereals and cereal bars sold by Defendant that allegedly indicate that Defendant's products are healthy when excess added sugar allegedly causes those products to be unhealthy. Plaintiff alleges that eight of Defendant's product lines are sold with misleading packaging. *See* SAC ¶¶ 120–23. Those product lines are (1) Kellogg's Raisin Bran, (2) Kellogg's Frosted Mini-Wheats, (3) Kellogg's Smart Start – Original Antioxidants, (4) Kellogg's Crunchy Nut, (5) Nutri-Grain Cereal Bars, (6) Nutri-grain Soft-Baked Breakfast Bars, (7) Nutri-Grain Oat & Harvest Bars, and (8) Nutri-Grain Harvest Hearty Breakfast Bars. *Id.* Some of these product lines have multiple variants such that there are 29 products total that Plaintiff alleges are being sold with packaging that is misleading. *Id.*

In general, Defendant's products are alleged to contain 9 to 16 grams of total sugar per serving and are 18% to 40% added sugar by calorie. *See id.* App. 1. The SAC alleges that the consumption of added sugar can have significant health impacts on individuals. Specifically, the SAC alleges that people in the United States consume excess added sugar, that people can become addicted to added sugar, and that excess added sugar consumption is linked to metabolic syndrome, type 2 diabetes, cardiovascular disease, liver disease, obesity, inflammation, high cholesterol, hypertension, Alzheimer's disease, and some cancers. SAC ¶¶ 9–107. This link allegedly has been shown in multiple studies where the subjects of the study consumed 35 to 75 grams of added sugar (the amount of sugar in 1 to 2 cans of soda) per day. *Id.*

Moreover, the FAC alleges that the American Heart Association ("AHA") has found that a person is "safe" to consume up to 5% of his or her daily calories in added sugar, which amounts to

approximately 25 grams of added sugar on a 2000 calorie diet. *Id.* ¶ 26. On the other hand, the United States Food and Drug Administration ("FDA") has concluded that the Daily Recommended Value ("DRV") of added sugars is 10% of a person's daily calories, or approximately 50 grams of added sugar. Based on these values, Plaintiff alleges that Defendant's products are unhealthy because they contain a higher percentage of added sugar (18%–40% of total calories per serving) than the daily "safe" percentage of added sugar recommended by the AHA or the DRV recommended by the FDA.

Plaintiff alleges that the packaging for Defendant's products contains multiple statements touting the health and wellness benefits of consuming Defendant's products that are misleading. First, Plaintiff challenges Defendant's use of statements that use the terms "healthy," "nutritious," or "wholesome." SAC ¶ 186–89. Plaintiff alleges that these statements assert that Defendant's products are healthy when they are in fact not healthy because of the presence of added sugar. *Id.* ¶ 189.

Second, Plaintiff alleges that the use of phrases that describe the benefits of "whole grain," and "fiber" content of Defendant's products imply that the products are healthy when the amount of added sugar in Defendant's products cause them to be unhealthy. *Id.* ¶ 208–09.

Third, Plaintiff alleges that Defendant's use of the statement "No High Fructose Corn Syrup" is misleading because the added sugar, and the particular mix of fructose and glucose in Defendant's products, have the same detrimental health effects as high fructose corn syrup. *Id.* ¶ 210–14.

Fourth, Plaintiff alleges that a number of statements such as "lightly sweetened" imply that Defendant's products are lower in sugar, when they actually are composed of 18% to 40% added sugar. *Id.* ¶ 215–19.

Finally, Plaintiff alleges that a number of statements imply that Defendant's products provide benefits, but are misleading because Defendant fails to indicate the health effects of the added sugar in Defendant's products. For example, Defendant's products contain statements like "help[s] keep you full and focused all morning"; "Keeps 'em full. Keeps 'em focused"; "A

balanced breakfast not only kick-starts the metabolism, it sets us up to do our best"; and

"BREAKFAST BRAINPOWER." *Id.* ¶ 196–206.

As an example of a product with many of these statements, Plaintiff alleges that Raisin Bran contains the following "health and wellness" statements:

    a.  HEART HEALTHY

    b.  Kellogg's Heart Healthy Selection

    c.  GREAT TASTE THAT DOES YOUR HEART GOOD

    d.  HEART HEALTHY / Whole grains can help support a healthy lifestyle.

    e.  + HEART HEALTH + / Kellogg's Raisin Bran / With crispy bran flakes made from whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber.

    f.  Start with a healthy Spoonful

    g.  Invest in your health invest in yourself

    h.  FIBER / Fiber, like bran fiber, plays a very important part in your digestive health and overall well-being.

    i.  BREAKFAST BRAINPOWER

*Id.* ¶ 128. In contrast, some products only have a single challenged statement. For example, on the packaging for Nutri-Grain Cereal Bars – Strawberry Greek Yogurt, Plaintiff only challenges the statement "Wholesome Fiber." *Id.*

**B.**    **Procedural History**

On August 29, 2016, Plaintiff filed a complaint. ECF No. 1. On October 31, 2016, Defendant filed a motion to dismiss. ECF No. 22. In lieu of filing a response, on November 14, 2016, Plaintiff filed a First Amended Complaint ("FAC"). ECF No. 27.

On December 8, 2016, Defendant filed a motion to dismiss the FAC. ECF No. 44. On January 5, 2017, Plaintiff filed an opposition, ECF No. 49, and on January 19, 2017, Defendant filed a reply, ECF No. 50. On March 21, 2017, the Court granted Defendant's motion to dismiss. ECF No. 56 ("Prior Order").

On April 5, 2017, Plaintiff filed the SAC.  *See* SAC.  The SAC alleged five causes of action including (1) violation of the California False Advertising Law ("FAL"), (2) violation of the California Consumers Legal Remedies Act ("CLRA"), (3) violation of the California Unfair Competition Law ("UCL") under the fraudulent, unfair, and unlawful prongs, (4) breach of express warranty, and (5) breach of the implied warranty of merchantability.  *Id.*

On April 19, 2017, Defendant filed the instant motion to dismiss the SAC.  *See* Mot.  On May 3, 2017, Plaintiff filed an opposition, ECF No. 65 ("Opp'n"), and on May 10, 2017, Defendant filed a reply, ECF No. 66 ("Reply").

**C.  Judicial Notice**

Defendant has requested judicial notice of 14 documents.  ECF No. 64.  The first nine of these are the exact same federal regulations and rulemaking documents and Congressional House reports for which the Court previously granted Defendant's request for judicial notice.  *See* Prior Order at 7–9.  Accordingly, as to those documents, Defendant's request is DENIED as moot.

Defendant also requests judicial notice of the following documents: (1) Rachel K. Johnson et al., *Dietary Sugars Intake and Cardiovascular Health: A Scientific Statement From the American Heart Association* (Sept. 15, 2009); (2) World Health Organization, *Guideline: Sugars intake for adults and children* (2015); (3) World Health Organization, *WHO calls on countries to reduce sugars intake among adults and children* (March 4, 2015); (4) Alice H. Lichtenstein et al., *Diet and Lifestyle Recommendations Revision 2006: A Scientific Statement From the American Heart Association Nutrition Committee* (July 4, 2006); and (5) Samuel S. Gidding et al., *Dietary Recommendations for Children and Adolescents: A Guide for Practitioners, Consensus Statement from the American Heart Association* (Sept. 27, 2005).

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but which are

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (as amended). Plaintiff's SAC explicitly relies on the first two documents discussed above, the Johnson article on Dietary Sugars and the World Health Organization guidelines. Accordingly, the Court GRANTS judicial notice as to those two documents.

Defendant argues that the Court should take judicial notice of the final three documents because they clarify that the World Health Organization's guidelines on sugar intake are a "draft," and because the documents are "relevant to Plaintiff's assertion that 'the AHA recommends restricting added sugar to 5% of calories.'" ECF No. 64 at 4 n.1. However, the contents of these documents were not alleged in the SAC, and Defendant's arguments indicate that Defendant is requesting the Court to take judicial notice of the truth of the contents of these documents, not merely of their existence. Such a request is not allowed under Federal Rule of Evidence 201. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 WL 5407039, at *6 (N.D. Cal. Sept. 25, 2013) (declining to take judicial notice of American Heart Association website pages because the defendant requested judicial notice of the truth of the contents of those pages). Accordingly, the Court DENIES Defendant's request for judicial notice as to these three documents.

## II.     LEGAL STANDARD

### A.     Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling

6

on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

**B.      Rule 9(b)**

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). "The plaintiff must set forth what is false or misleading about

7

a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### C.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.      DISCUSSION

Defendant argues that all of Plaintiff's causes of action should be dismissed.   Defendant addresses Plaintiff's causes of action in the following groupings: (1) violation of the FAL, the CLRA, and the fraudulent prong of the UCL, (2) breach of express warranty, (3) breach of the implied warranty of merchantability, (4) violation of the unlawful prong of the UCL, and (5) violation of the unfair prong of the UCL.  The Court addresses Plaintiff's causes of actions in the same groupings and order.

### A.      The FAL, CLRA, and Fraudulent Prong UCL Causes of Action

Plaintiff brings causes of actions under the FAL, the CLRA, and the UCL for allegedly misleading statements on Plaintiff's product packaging.  The FAL and the CLRA prohibit false or misleading advertising.  Specifically, the FAL prohibits the dissemination of any statement concerning property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof.

Code § 17500.

The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). One practice proscribed by the CLRA is "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." *Id.* § 1770(a)(7).

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. Each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiff asserts causes of action under all three prongs of the UCL.

Generally, a violation of the FAL or the CLRA is also a violation of the fraudulent prong of the UCL. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 n.8 (2009); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together. *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) ("Courts often analyze these statutes together because they share similar attributes."); *Consumer Advocates*, 113 Cal. App. 4th at 1360–62 (analyzing the UCL, FAL, and CLRA together). The parties do not dispute that Plaintiff's causes of action under the FAL, the CLRA, and the fraudulent prong of the UCL rise or fall together. Accordingly, in this section, the Court addresses the FAL, the CLRA, and the fraudulent prong of the UCL together. In subsequent sections, the Court addresses the unlawful prong and unfair prong of the UCL.

Defendant argues that Plaintiff's FAL, CLRA, and fraudulent prong UCL claims fail for the following reasons: (1) Plaintiff has failed to adequately allege that Defendant's products contain an "excessive" amount of sugar that is unhealthy, (2) some of Plaintiff's claims are

9

preempted, and (3) Plaintiff's claims are not misleading because they are either truthful statements, or are puffery. The Court addresses each argument in turn.

### 1. Allegations of Excessive Amounts of Added Sugar That Are Unhealthy

Plaintiff's complaint is premised on the idea that Defendant represents its products to be healthy while Defendant's products contain an excessive amount of added sugar that is unhealthy. First, Defendant argues that Plaintiff has not adequately alleged that Defendant's breakfast cereals contain an excessive amount of added sugar that is unhealthy. Second, Defendant argues that Federal Drug Administration ("FDA") rulemaking has created a safe harbor for the amount of added sugar in Defendant's cereal and cereal bars. The Court addresses each argument in turn.

### a. Adequacy of Added Sugar and Healthiness Allegations

The Court first addresses whether Plaintiff has adequately alleged an excessive amount of added sugar that is unhealthy in Defendant's products. In this Court's prior order dismissing Plaintiff's FAC, the Court held that "the FAC contains specific allegations only concerning the amount of *total sugar* in each of Defendant's products rather than the amount of *added sugar*." Prior MTD Order at 13–14. Thus, because Plaintiff's theory of relief relied entirely on the amount of added sugar (as opposed to total sugar) in Defendant's products, the Court dismissed the FAC for failing to satisfy the particularity requirements of Rule 9(b).

The SAC now contains specific allegations as to the amount of added sugar in each product, and Defendant no longer argues that Plaintiff has not adequately alleged the amount of added sugar in Defendant's products. *See* SAC ¶ 189–95 (alleging the amount of added sugar in each of Defendant's products); *Id.* App. 1 (same). Instead, Defendant argues that Plaintiff has not adequately alleged that the amount of added sugar in Defendant's products is *excessive* because the amount is *unhealthy*.

The Court first summarizes the parties' theories for why Defendant's products are healthy or unhealthy, and then discusses whether Plaintiff's allegations are sufficient.

### i. The Parties' Arguments

Plaintiff's SAC alleges that the amount of sugar in Defendant's products (18%–40% by

10

calorie, or 9-16 grams per serving) is unhealthy based on scientific studies that show the detrimental health impacts of added sugar. For example, Plaintiffs cite to a scientific study that found that "those who consumed between 10%–24.9% of their calories from added sugars had a 30% greater risk of cardiovascular disease (CVD) mortality than those who consumed 5% or less of their calories from added sugar," while "those who consumed 25% or more . . . had an average 275% greater risk of CVD mortality." SAC ¶ 63. The risk of cardiovascular disease "mortality increased exponentially with increasing [the] usual percentage of calories from added sugar." *Id.* ¶ 64.

Plaintiff also alleges that the liver is the major organ that processes added sugar in the body. *Id.* ¶ 24–25. Allegedly, if the liver is "overloaded" with added sugar, the fructose in added sugar is "turned into liver fat, causing insulin resistance." *Id.* ¶ 28. Plaintiffs allege that this process can eventually lead to "metabolic syndrome," which can then lead to type 2 diabetes. *Id.* ¶ 27. Plaintiffs allege, however, that scientific studies show that the liver can handle a "safe" amount of added sugar without "overload[ing] the liver." *Id.* ¶ 26. Plaintiffs cite to numerous other scientific studies that establish that consuming 35 to 75 grams of added sugar in a single day contributes to health problems such as metabolic syndrome and diabetes. *Id.* ¶¶ 47, 57–60.

Plaintiffs allege that the American Heart Association ("AHA") has adopted a 5% recommendation for daily added sugar consumption based on the above-described liver-overload science. *Id.* ¶ 26. Under a 5% benchmark, the SAC alleges that it is safe for men, women, and children to consume up to the following amounts of added sugar in a particular day: 38 grams of added sugar per day for men (150 calories, assuming a 3000 calorie diet); 25 grams of added sugar per day for women (100 calories, assuming a 2000 calorie diet); and 12–15 grams of added sugar per day for children (50 to 60 calories, assuming a 1000 to 1200 calorie diet). *Id.* Plaintiff also alleges that the World Health Organization has, based on these scientific studies, recommended that "no more than 10%" of an adult's calories (and "ideally less than 5%") should come from added sugar or "natural sugar" (i.e., sugar from sources such as fruit). *Id.* ¶ 106.

With respect to Defendant's products, Plaintiff alleges that Defendant's cereals contain

11

excessive added sugar because Defendant's products are composed of between 18% and 40% added sugar by calorie and contain 9 to 16 grams of added sugar per serving. Plaintiff argues that this percentage of added sugar is greater than the amounts of added sugar that scientific studies have shown increases the risk of cardiovascular disease, metabolic syndrome, and diabetes.

Plaintiff alleges that many people eat more than a single serving. "The term serving or serving size means an amount of food customarily consumed per eating occasion by persons 4 years of age or older which is expressed in a common household measure that is appropriate to the food." 21 C.F.R. § 101.9. Plaintiff cites to a 2014 National Health and Nutrition Examination Survey that found that "at least 10% of Americans eat at one sitting 2 to 2.6 times the amount of cereal as the labeled serving size." SAC ¶ 243. Similarly, "[a] study conducted by General Mills found that children and adolescents 6 to 18 years old typically eat about twice as much cereal [as the serving size] in a single meal." *Id.* ¶ 244. For adult men and women, consuming 2 to 4 servings of Defendant's products would cause that person to consume over 5% of that person's daily calories in added sugar (36 grams for men, 25 grams for women). For children, consuming 1 or 2 servings of Defendant's products would cause the child to consume over 5% of the child's daily calories (12–15 grams). *See id.* ¶ 106.

In response, Defendant cites to FDA regulations that set the DRV for added sugars at 10% of daily calorie consumption and require food manufacturers to list in the product's nutrition fact panel the amount of added sugar and percentage of the DRV a single serving of the product contains. 81 Fed. Reg. 33742, 33849 (May 27, 2016). The requirement that added sugars be listed does not go into effect until 2018. *Id.* Under this 10% DRV, a person eating a 2000 calorie diet can consume 50 grams of added sugar per day without exceeding the 10% DRV. Defendant argues that the FDA's creation of the 10% added sugar DRV shows that "the FDA has made clear that daily consumption of 50 grams of added sugar is consistent with a healthy diet." Mot. at 11.

Defendant argues that Defendant's products cannot be considered unhealthy because to exceed that 10% DRV threshold, consumers would have to engage in overeating of Defendant's products. Defendant argues that the Court should find, based on "common sense," that people

United States District Court
Northern District of California

generally eat more sugary foods for breakfast, and thus the fact that Defendant's products contain a higher percentage of sugar per serving than the 10% DRV will generally not result in people exceeding the 10% DRV.

Moreover, Defendant argues that the AHA and WHO 5% daily added sugar recommendations are merely aspirational recommendations. In fact, Defendant notes that the AHA study publishing the 5% recommendation also stated that "[t]he form in which added sugars are consumed" is relevant to whether a food is healthy, and that "when sugars are added to otherwise nutrient-rich foods, such as . . . sugar-sweetened cereals, the quality of children's and adolescents' diets improves." ECF No. 64-10 at 1012–16. Moreover, Defendant notes that the WHO recommendation that a person consume less than 5% of one's daily calories in sugar was only a "conditional recommendation." ECF No. 64-11 at 16.

### ii. Sufficiency of Plaintiff's Allegations

The Court finds that Plaintiff has adequately alleged that Defendant's products are unhealthy due to excess added sugar for the purposes of the instant motion to dismiss. On a motion to dismiss, the Court must accept the "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Here, as discussed above, Plaintiff provides scientific studies that link added sugar to cardiovascular disease, metabolic syndrome, and diabetes. At least one cardiovascular study states that "mortality increased exponentially with increasing [the] usual percentage of calories from added sugar." *Id.* ¶ 64; *see also id.* ¶ 63 (indicating a 30% increased risk in cardiovascular disease when consuming between 10% to 24.9% of daily calories as added sugar over consuming less than 5% of daily calories as added sugar). Moreover, Plaintiff alleges that Defendant's products are composed of 18% to 40% added sugar by calorie or 9 to 16 grams of added sugar per serving. Thus, at the very least, Plaintiff has alleged that eating Defendant's products would require the individual to eat lower sugar foods throughout the rest of the day to maintain a daily percentage of added sugar intake that is below the two thresholds for added sugar mentioned in the instant suit, the 5% AHA recommendation and the FDA's 10% DRV. *See In re Ferrero Litigation*, 794 F.

13

United States District Court
Northern District of California

Supp. 2d 1107 (S.D. Cal. 2011) (holding that the plaintiff adequately alleged that Nutella was unhealthy because the plaintiff alleged that even though a single serving constituted only 30% to 50% of the DRV for fat it "creat[ed] the high probability that the child w[ould] therefore exceed his or her recommended daily allowance" of fat (quoting S.D. Cal. Case No. 11-CV-00205, ECF No. 14, First Amended Complaint ¶ 39)). This is especially true if, as Plaintiff alleges, a non-negligible number of people typically consume, in a single meal, double the amount of cereal in a single serving. SAC ¶¶ 243–44.

Another court in this district, in *Krommenhock v. Post Foods, LLC*, 2017 WL 2378029 (N.D. Cal. June 1, 2017), addressed essentially identical allegations of excess sugar to those in the instant case. *Id.* at *2–7. The plaintiffs in *Krommenhock*, one of whom is Plaintiff in the instant case, alleged that Post Food's breakfast products, which contain between 6 grams and 16 grams of sugar per serving, contained excessive and unhealthy amounts of added sugar. *Id.* The *Krommenhock* plaintiffs relied on the same scientific studies and standards for added sugar that are alleged in the SAC in the instant case. *Id.* On a motion to dismiss, Post Foods argued that the plaintiffs' claims were implausible because they did not adequately allege that the amount of added sugar was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." *Id.* at 19. The *Krommenhock* court rejected Defendant's argument and held that "relevant studies supporting plaintiffs' theory (at least in part) have been alleged, and determining the full extent of that support is not appropriate on a motion to dismiss." *Id.* at *19. The *Krommenhock* court noted that a motion to dismiss was "not the appropriate time to weigh the competing harms and benefits from Post's products or [the time to address] address whether Post knows (as alleged by plaintiffs) that its products are typically overconsumed." *Id.* As a result, the *Krommenhock* court held that "plaintiffs have plausibly alleged that added sugar created health risks such that Post's 'health' claims were misleading." *Id.* at 19 n.31.

The Court agrees with the *Krommenhock* court. Given the scientific studies supporting the negative health consequences of added sugar and the factual dispute over the typical consumption of Defendant's products, the Court cannot conclude on the instant motion to dismiss that a

1    reasonable consumer would not find Defendant's products to be unhealthy based on the amount of

2    added sugar in those products.

3        Defendant argues that Plaintiff seeks to enforce the AHA's 5% recommendation for daily

4    added sugar consumption and give it the "force of law" in place of the FDA's 10% DRV. A non-

5    government entity like the AHA cannot establish standards that carry the force of law. *See Int'l*

6    *Ass'n of Plumbing & Mechanical Officials v. Cal. Bldg. Stds. Comm'n*, 55 Cal. App. 4th 245, 253

7    (1997) (holding that the legislature is not allowed to delegate the power to establish building codes

8    in California to a private organization). However, on the instant motion to dismiss, the Court need

9    not adopt a 5% "standard" for added sugar to find Plaintiff's allegations to be adequate. As

10   Plaintiff notes in its opposition, "[w]hile AHA and FDA recommendations may be relevant to the

11   issues in this case, the case is not about whether 5% or 10% of calories from added sugar is a more

12   reasonable threshold for a daily sugar consumption limit, but whether it is misleading for Kellogg

13   to label foods with the challenged health and wellness claims when 20%–40% of their calories

14   come from added sugar." Opp'n at 7. The AHA recommendation is based on a number of

15   scientific studies, and thus, the AHA recommendation is relevant to the extent that it reflects what

16   amount of added sugar consumption may be considered healthy or unhealthy. The AHA

17   recommendation is thus relevant evidence, but does not carry the force of law. Indeed, what

18   exactly the AHA recommendation means in the instant suit is subject to dispute. Defendant points

19   out that the study proposing the 5% AHA recommendation also states that "sugar-sweetened

20   cereals [can improve] the quality of children's and adolescents' diets." ECF No. 64-10 at 1012–

21   16. The Court need not resolve the parties' factual dispute because such resolution is not

22   appropriate on a motion to dismiss. *See Manzarek*, 519 F.3d at 1031(holding that on a motion to

23   dismiss courts must take the "factual allegations in the complaint as true and construe the

24   pleadings in the light most favorable to the nonmoving party.").

25        The Court also need not adopt the FDA's 10% DRV as the appropriate "safe" threshold for

26   added sugar. The *Krommenhock* court addressed a similar issue: "There is no evidence that the

27   FDA in its final rule set out to proscribe or prohibit statements regarding health or wellness in

United States District Court
Northern District of California

28

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    connection with an analysis of added sugars. Nor is there evidence that the FDA concluded that

2    consumption of added sugar in the amounts in the challenged products was healthy. Instead, the

3    evidence is that the FDA adopted the 10 percent added-sugar DRV to be used in the FDA

4    mandated Nutrition Facts Panel based on the evidence before it and as 'realistic' based on current

5    consumption pattern[s]." *Krommenhock*, 2017 WL 2378029 at *10.

6         The Court finds the *Krommenhock* court's logic to be persuasive. The FDA's rulemaking

7    on the 10% DRV did not establish that added sugar in the amounts in Defendant's products was

8    healthy. In its rulemaking, the FDA stated that "[w]e disagree that the DRV for added sugars

9    should be lower than 10 percent of calories or that there is adequate evidence at this time to set a

10   DRV for added sugars of less than 5 percent of calories." 81 Fed. Reg. at 33849. This decision

11   was not necessarily based on the healthiness of consuming less than 10% of one's daily calories as

12   added sugar. Instead, the FDA stated: "A DRV of 10 percent of total calories provides a value that

13   is *more realistic considering current consumption of added sugars* in the United States as well

14   added sugars in the food supply." *Id.* (emphasis added). Thus, the FDA's decision to create a

15   10% DRV was not necessarily based on healthiness, but was based on realistic goals for American

16   consumer consumption of added sugar. Accordingly, the FDA's 10% DRV need not be adopted

17   as the definitive threshold for what amount of added sugar in a product is or is not healthy.

18        Thus, taking the "factual allegations in the complaint as true and constru[ing] the pleadings

19   in the light most favorable to the nonmoving party," the Court finds that Plaintiff has adequately

20   alleged for the purposes of the instant motion to dismiss that Defendant's products are unhealthy.

21   *Manzarek*, 519 F.3d at 1031.

22                          **b.    Safe Harbor Doctrine**

23        Defendant also argues that, as a matter of law, the FDA's creation of the 10% DRV

24   "prevents Plaintiff from imposing liability on [Defendant] because it has followed FDA's

25   recommended [DRV] for added sugar." Mot. at 11. "If the Legislature has permitted certain

26   conduct or considered a situation and concluded no action should lie, courts may not override that

27   determination. When specific legislation provides a "safe harbor," plaintiffs may not use the

28
                                              16

general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (finding safe harbor where "California law unequivocally permits Defendants' conduct").

Based on this safe harbor precedent, Defendant argues that (1) Defendant has not exceeded the 10% DRV created by the FDA and thus liability cannot be imposed on Defendant for describing its products as healthy, and (2) to the extent that Plaintiff's claims are based on an omission of information about the health effects of added sugar, Defendant was allowed to omit information about the health effects of added sugar. The Court addresses each contention in turn.

First, Defendant's argument that the 10% DRV value creates a safe harbor regarding the amount of added sugar in its products fails. Defendant relies on *Alaei v. Rockstar*, 224 F. Supp. 3d 992 (S.D. Cal. 2016), in support of Defendant's safe harbor argument. However, *Alaei* is distinguishable. In that case, a district court in the Southern District of California found a safe harbor for labeling a product "Made in the USA" even though it contained "small amounts of foreign-sourced ingredients" because California law explicitly allowed the use of domestic origin labels if less than 5% of the wholesale value of the product consisted of foreign-source ingredients. *Id.* at 997, 1001.

However, in this case, Defendant cites to no statute, regulation, or FDA statement that explicitly states that liability cannot be imposed for characterizing a product as healthy just because a single serving of the product contains less added sugar than the FDA-established DRV. The FDA's establishment of a 10% DRV requires food manufacturers to disclose the amount of added sugar in its products and the amount of added sugar as a percentage of the DRV in the Nutrition Fact Panel for its products. However, that rulemaking did not specify whether products at certain amounts of added sugar can be characterized as healthy or not. *See Krommenhock*, 2017 WL 2378029 at *10 ("Nor is there evidence that the FDA concluded that consumption of added sugar in the amounts in the challenged products was healthy. Instead, the evidence is that the FDA adopted the 10 percent added-sugar DRV to be used in the FDA mandated Nutrition Facts

Panel based on the evidence before it and as 'realistic' based on current consumption pattern[s].").

Thus, Defendant fails to point to FDA rulemaking that shows that the FDA has considered this

particular "situation and concluded no action should lie." *Cel-Tech*, 20 Cal. 4th at 182.

Accordingly, on the record before the Court, the FDA's establishment of the 10% DRV does not

establish that no liability can be imposed for characterizing a product as healthy just because a

single serving of the product does not exceed the 10% DRV.

Second, Defendant argues that to the extent Plaintiff's claims are based on Defendant's

omission of the health effects of added sugar on Defendant's products, Defendant's compliance

with the FDA regulations creates a safe harbor. Defendant relies on *Barber v. Nestle USA, Inc.*,

154 F. Supp. 3d 954 (C.D. Cal. 2015). However, *Barber* does not stand for the broad proposition

that compliance with statutes or regulations precludes a cause of action based on an omission. In

*Barber*, the Central District of California discussed whether a safe harbor existed where a cat food

manufacturer did not disclose on its label that part of the manufacturing process for the cat food

allegedly utilized "forced labor." *Id.* at 959–60. California had previously passed the Supply

Chain Act, which required disclosure that forced labor was used under certain circumstances, but

not in the circumstances at issue in *Barber*. *Id.* The legislative history of the Supply Chain Act at

issue in *Barber* indicated that "companies are 'still completely free to do anything they want about

their efforts to fight human trafficking and slavery,' including nothing at all, so long as they make

the required disclosures." *Id.* at 962. Relying on this legislative history that expressly allowed the

omission of forced labor disclosures other than those in the statute, the *Barber* court held that

"California has spoken directly to the issue of what disclosures companies must make to

customers about potential forced labor in their supply chains," and held that a safe harbor existed

as a result. *Id.*

In contrast, in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), the Ninth Circuit held

that compliance with FDA labeling requirements does not create a safe harbor for all omissions.

*Id.* at 964. In *Ebner*, the product at issue complied with labeling requirements because the label

accurately stated that the packaging contained 4.3 grams of product even though because of the

18

design of the packaging, only 3.3 grams were usable by a consumer. *Id.* at *5. The Ninth Circuit held that compliance with the disclosure requirement of the weight of the product did not preclude a cause of action based on the omission of the actually available weight because "there is no law expressly permitting the omission" of statements that would clarify the amount of product that was actually available to consumers. *Id.*

The allegations in this case are more like *Ebner* than *Barber*. Plaintiff alleges that Defendant's products are labeled with statements indicating that the products are healthy, and omits the fact that the products are unhealthy because the products contain excessive added sugar. As in *Ebner*, and unlike *Barber*, Defendant points to no regulation that "expressly permit[s] the omission of supplemental statements" that a product is unhealthy if other statements on the box represent that the product is healthy. *Id.*

Defendant solely argues that Defendant "has accurately disclosed the ingredients of its products (including added sugar) and has complied with the FDA's labeling guidelines." Mot. at 12. Defendant purports to rely on the FDA's establishment of the 10% DRV for added sugar, but does not cite to any portion of the FDA's rulemaking that, like in *Barber*, might establish that the FDA considered disclosure of information of the kind at issue here and decided that such disclosures did not need to be made. Indeed, the *Krommenhock* court has noted that "the FDA's focus was updating the Nutrition Facts Panel to disclose added sugars and include a DRV," and did not address circumstances where a food manufacturer allegedly "affirmatively misrepresented that the cereals are healthy through labeling statements outside the Nutrition Facts Panel." *Krommenhock*, 2017 WL 2378029 at *12 (citing 81 Fed. Reg. at 33829). Therefore, on the record before the Court, the Court finds that the FDA's 10% DRV, and the FDA's regulations in general, do not preclude Plaintiff's omission claims under the safe harbor doctrine.

Accordingly, the Court finds that Defendant's safe harbor argument fails.

### 2. Preemption of Certain Statements

Defendant argues that express preemption prevents Plaintiff from basing Plaintiff's causes of action on "nutrient content claims" or "health claims" on Defendant's product packaging.

19

Pursuant to the Supremacy Clause of the United States Constitution, "Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. CONST. art. VI, cl. 2). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted).

When analyzing the scope of a preemption statute, a court's analysis must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). This approach is "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.* Therefore, "[p]arties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc) (internal quotation marks omitted).

Turning to the statutory scheme in the instant case, the FDCA, codified at 21 U.S.C. §§ 301 *et seq.*, "gives the FDA the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 U.S.C. § 393(b)(2)(A)). Section 331 expressly prohibits the misbranding of food in interstate commerce, 21 U.S.C. § 331(a)-(c), (k), while Section 343 sets forth conditions under which food is considered "misbranded," 21 U.S.C. § 343. In general, a food is "misbranded" if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a)(1).

In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act of 1990 ("NLEA") to include additional food labeling requirements. Nutritional Labeling and Education Act of 1990, Pub. L. No. 101–535, 104 Stat. 2353 (1990); *see also* H.R. Rep. No. 101–

20

538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337 (stating that the purpose behind the NLEA was "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods"). Part of the NLEA's purpose was also to "create uniform national standards regarding the labeling of food." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing 136 CONG. REC. 5840 (daily ed. July 30, 1990) (Remarks of Rep. Waxman)).

In furtherance of the NLEA's aim of promoting uniform national labeling standards, the NLEA includes an explicit preemption provision, codified at 21 U.S.C. § 343-1(a), which states that "no State . . . may directly or indirectly establish . . . any requirement . . . made in the labeling of food that is not identical to " certain specified FDA labeling requirements. 21 U.S.C § 343-1(a). As relevant in the instant case, section 343-1(a) expressly preempts "any requirement respecting any claim of the type described in section 343(r)(1)," which encompasses "nutrient content claims" and "health claims" about the labeled food. 21 U.S.C § 343–1(a)(5). "'Not identical to' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision . . . or (ii) Differ from those specifically imposed by or contained in the applicable provision . . . ." 21 C.F.R. § 100.1(c)(4); *see also Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("Under this standard, preemption is certainly appropriate when a state law prohibits labeling that is permitted under federal law. But it is *also* appropriate when a state law prohibits labeling that is *not prohibited* under federal law. The standard, in other words, is not whether a state law actively undermines federal law. It is whether state law diverges from federal law *at all*.").

The NLEA's preemption provision does not, however, prohibit states from enacting food labeling requirements that are identical to the FDA requirements. In fact, the NLEA explicitly states that "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C § 343–1(a)]." *See* § 6(c)(1), 104 Stat. at 2364.

Through the Sherman Law, California has expressly adopted the federal labeling requirements as its own. *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See, e.g.*, Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in . . . [21 U.S.C. § 343(r)] . . . .").

In this case, Defendant contends that Plaintiff's suit is preempted to the extent Plaintiff alleges that "nutrient content claims" and "health claims," as defined in 21 U.S.C. § 343(r), are false or misleading because the claims create requirements more stringent than those in § 343(r). In response, Plaintiff argues that Defendant has failed to satisfy Defendant's burden of showing that the claims at issue are nutrient content claims or health claims within the meaning of § 343(r). The Court first addresses Defendant's theory of preemption, and then discusses whether Defendant has satisfied its burden of showing that Plaintiff's claims are nutrient content claims or health claims that are subject to preemption.

### a. The Theory of Preemption in This Case

As noted in the prior section, the preemption provision of the NLEA states that "no State . . . may directly or indirectly establish . . . any requirement of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. § 343-1(a)(5). Section 343(r), alongside FDA regulations, outlines requirements for when a party may or may not use "nutrient content claims" or "health claims" on food labels.

Specifically, 21 C.F.R. §§ 101.14 and 101.65 regulate when nutrient content claims or health claims can be made in the presence of other harmful nutrients. If fats, saturated fats, sodium, or cholesterol reach "disqualifying levels" specified in the FDA regulations, "a food purveyor is *prohibited* from making an unqualified claim touting the health benefits of another

22

nutrient in the food." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1122 (N.D. Cal.

2010). Specifically, § 101.14 prohibits any health claims from being made if any of the four

nutrients are above a certain level. *See* 21 C.F.R. § 101.14 (a)(4). Similarly, § 101.65 prohibits

any nutrient content claim using the term "healthy" if fats, saturated fats, or cholesterol (but not

sodium) are above a certain level. *See* 21 C.F.R. § 101.65(d)(2).

In *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 (E.D.N.Y. July 21, 2010), a district

court in the Eastern District of New York addressed whether California causes of action based on

nutrient content and health claims on the label for "vitaminwater" were preempted. *Id.* at *8.

With respect to health claims governed by § 101.14, the *Ackerman* court noted that the

disqualifying levels of certain nutrients were created through formal rulemaking. In response to

comments that requested that the FDA set a disqualifying level for added sugar, the FDA decided

that it "'would not be appropriate to limit health claims on foods on the basis of added sugars'

because there was 'no sound basis' for doing so." *Id.* (citing 58 Fed. Reg. 2478, 2491 (Jan. 6,

1993)). With respect to implied nutrient content claims governed by § 101.65, the *Ackerman* court

noted that the FDA had made a similar decision with respect to the use of the term "healthy" in

implied nutrient content claims. *Id.* (citing 59 Fed. Reg. 24232, 24244 (May 10, 1994)).

Specifically, the FDA found that:

> The agency has not been persuaded by the comments that it is necessary to
> include a "low calorie" or "low sugar" criterion in the definition of "healthy" for
> the claim to be useful and not misleading to consumers. The information
> provided in the comments did not show that consumers expect "healthy" to be a
> claim about the caloric content of the food. Furthermore, the purpose of defining
> the term would be defeated if the term were defined so narrowly that it is
> appropriate only for people on weight-loss diets. Thus, the agency is not
> requiring that a food be "low calorie" or "low" in sugar to bear the term
> "healthy."

*Id.* (quoting 59 Fed. Reg. at 24244). Based on these FDA statements, the *Ackerman* court held

that "[a]s a matter of federal law, therefore, the presence of sugar is not a disqualifying nutrient

which would prohibit the defendants from 'touting the purported benefits' . . . of the other

ingredients in their beverage, whether through health claims or express or implied claims of

23

nutrient content." *Ackerman*, 2010 WL 2925955 at *8. As a result, the *Ackerman* court concluded that "any claim under state law solely premised on the notion that vitaminwater's high sugar content made its health or implied nutrient content claims misleading is preempted by the FDA's express decision to not recognize sugar as a disqualifying nutrient." *Id.*

In *Chacanaca*, a district court in this district followed *Ackerman* for nutrient content claims and health claims related to trans fat. *Chacanaca*, 752 F. Supp. 2d at 1122. There, the *Chacanaca* court held that because the FDA had expressly decided not to set a disqualifying level of trans fat in food products, the plaintiff's state law causes of action should be dismissed to the extent they "depend[ed] on the presence of trans fats to render the content claims misleading." *Id.* The *Chacanaca* court held that "[e]ssentially, plaintiffs' claim asks this Court to *ascribe* disqualifying status to trans fats where the [FDA] has at least so far declined to do so." *Id.*

Recently, in *Krommenhock*, 2017 WL 2378029, a district court in this district adopted *Ackerman*'s and *Chacanaca*'s reasoning with respect to claims for added sugar in cereals. *See Krommenhock*, 2017 WL 2378029 at *12 ("The FDA has identified disqualifying nutrients, including total fat, saturated fat, cholesterol, and sodium. Sugar is not one of them.").

The Court finds *Ackerman*, *Chacanaca*, and *Krommenhock* to be persuasive. The FDA has set disqualifying levels of certain nutrients for making health claims and implied nutrient content claims. In formal rulemaking, the FDA has expressly decided to *not* set such disqualifying levels for sugar or added sugar. Therefore, Plaintiff's theory that health claims or implied nutrient content claims are misleading because of a certain amount of added sugar in a product would essentially "ascribe disqualifying status" to added sugar. This would create a state law requirement that is different from federal law. Therefore, any such claims are preempted.

### b. Nutrient Content Claims and Health Claims

As discussed above, Plaintiff's causes of action are preempted to the extent they are based on implied nutrient content claims or health claims that are allegedly misleading because of the presence of added sugar. The FDA has expressly decided not to set a disqualifying level of added sugar in food products. Therefore, the Court must determine which of the statements challenged

24

by Plaintiff are implied nutrient content claims or health claims.

A nutrient content claim "expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling." 21 C.F.R. § 101.13(b). Such nutrient content claims can either be "expressed" or "implicit." An "expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" *Id.* § 101.13(b)(1). In contrast, an implied nutrient content claim is a claim that either (1) "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')"; or (2) "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.* § 101.13(b)(2).

A health claim is "any claim . . . that expressly or by implication . . . characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1); *see also* FDA, Guidance for Industry: A Food Labeling Guide, at 81 (Jan. 2013), *available at* https://www.fda.gov/downloads/Food/GuidanceRegulation/UCM265446.pdf ("Both elements of 1) a substance and 2) a disease are present in a health claim."). An implied health claim includes "those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.*

In the instant motion, Defendant argues that "to the extent the 'health and wellness claims' constitute nutrient content or health claims . . . , Plaintiff's claims are 'preempted by the FDA's express decision to not recognize sugar as a disqualifying nutrient.'" *Ackerman*, 2010 WL 2925955 at *8. In response, Plaintiff argues that Defendant's brief does not provide any analysis as to whether certain statements are nutrient content claims or health claims, and thus Defendant has failed to satisfy its burden of demonstrating preemption.

However, Plaintiff expressly argues that the statement "No High Fructose Corn Syrup" is not a nutrient content claim or health claim in its opposition to Defendant's motion to dismiss.

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Moreover, in Defendant's reply brief, Defendant argues that the statements "heart healthy" and "[f]iber . . . plays a very important part in your digestive health and overall well-being" are health claims. The Court addresses these three statements in turn, and in the analysis of these three claims addresses any statements that are closely related to the expressly argued statements.

### i. No High Fructose Corn Syrup

Although Plaintiff previously argued that the statement "No High Fructose Corn Syrup" is an implied nutrient content claim because it implies an absence of sugar in a product, Plaintiff now argues that the statement is not preempted because it is neither a health claim nor an implied nutrient content claim. Plaintiff attributes his change in position to the fact that the Court, in dicta, stated that it doubted that the statement "No High Fructose Corn Syrup" implied that a product contained no sugar at all.

Defendant has also altered its position. Although Defendant previously argued that high fructose corn syrup is merely an ingredient, not a nutrient, Defendant now asserts that "No High Fructose Corn Syrup" is a preempted nutrient content claim or health claim. Defendant provides no justification for this position besides an "x" in a chart listing label statements attached as an appendix to the instant motion.

The Court need not reach whether "No High Fructose Corn Syrup" is a health claim or nutrient content claim. As discussed above, Plaintiff's claims based on the statement "No High Fructose Corn Syrup" is only preempted if it is allegedly misleading because of the presence of a high amount of added sugar in Defendant's products. However, Plaintiff's theory as to why the statement "No High Fructose Corn Syrup" is misleading is not based on the presence of a high amount of added sugar in Defendant's products. Instead, Plaintiff alleges that Defendant "has capitalized on consumer aversion toward high fructose corn syrup . . . by touting the absence of that ingredient, deceptively suggesting that some [of Defendant's products] . . . are healthier because [high fructose corn syrup] is absent." SAC ¶ 210. Plaintiff's complaint alleges that this "strategy leverages consumer confusion over the relative dangers of different forms of added sugar" because "added sugar in virtually any form—and certainly in the forms used to sweeten the

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Kellogg cereals and bars—contains toxic fructose, and thus has essentially the same detrimental health effects" as high fructose corn syrup. *Id.* ¶¶ 211, 214.

Thus, Plaintiff does not allege that the statement "No High Fructose Corn Syrup" is misleading because a certain "disqualifying amount" of added sugar is in a product. Instead, Plaintiff's theory is that the statement "No High Fructose Corn Syrup" implies that the type of sugar in Defendant's products is different, and likely healthier, than high fructose corn syrup even though the sugar in Defendant's products actually has a similar fructose to glucose ratio that has the same detrimental health effects as high fructose corn syrup. This theory is not preempted by the FDA's decision not to create disqualifying levels of added sugar because it is based on the chemical composition of the sugar in a product, not the amount of the sugar in the product itself. Therefore, allowing such a claim to proceed would not "ascribe disqualifying status" to added sugar. *Ackerman*, 2010 WL 2925955 at *8. Therefore, preemption does not apply to the statement "No High Fructose Corn Syrup."

### ii.      Heart Healthy Claims

The Court next considers whether the term "heart healthy" is considered a health claim that is authorized by FDA regulations. As noted above, to be a health claim a product must "characterize[] the relationship of any substance to a disease or health-related condition" or imply that a "relationship exists between the presence or level of a substance in the food and a disease or health-related condition." 21 C.F.R. § 101.14(a)(1). "Substance means a specific food or component of food." *Id.* ¶ 101.14(a)(2).

As to the "disease or health-related condition" requirement, the use of the term "heart" has been found to be sufficient to turn a statement into a health claim. For example, the definition of "health claim" specifically provides the following two examples of health claims: "written statements (e.g., a brand name including a term such as "heart"), [and] symbols (e.g., a heart symbol)." 21 C.F.R. § 101.14(a)(1); *see also* 58 Fed. Reg. at 2483–84 ("[W]hile a claim such as 'Eat a diet low in fat for a healthy heart' may be a health claim, 'Eating five fruits or vegetables a day is a good way to a healthy lifestyle' is not.").

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

As to the "substance" requirement, a substance can be a "specific food or component of food." *Id.* § 101.14(a)(2). Many of Defendant's heart healthy statements are accompanied by statements about whole grains or fiber, such as "HEART HEALTHY/Whole grains can help support a healthy lifestyle" and ""+ HEART HEALTH + / Kellogg's Raisin Bran / With crispy bran flakes made from whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber." SAC ¶ 127. These statements directly link cardiovascular health with fiber or whole grains and thus are health claims.

However, a number of heart healthy statements are alleged as standalone statements without a connection to a statement about whole grains or fiber. *Id.* Defendant does not clearly indicate to what "substance" these heart healthy claims refer, whether it is the "food" that is Defendant's product itself or some other nutrient or ingredient in Defendant's product. Regardless, the Court need not rule definitively whether these heart healthy statements are health claims because, as discussed below, Defendant has not shown that the heart healthy statements are authorized by the FDA regulations.

Defendant's preemption argument is premised on the fact that "federal regulations [] expressly permit the challenged nutrient content and health claims." Mot. at 18. In *In re Quaker Oats Labeling Litigation*, 2012 WL 1034532 (N.D. Cal. March 28, 2012), a court in this district addressed packaging that "combines 'heart healthy' statements and images of hearts with the claim that 'diets rich in whole grain foods and other plant foods and low in saturated fat and cholesterol may help reduce the risk of heart disease.'" *Id.* at *3. The *Quaker* court held that these were health claims "expressly permitted under FDA regulations," and that Plaintiff's challenges to those claims were preempted. *Id.* While the *Quaker* court did not specifically discuss why those statements were expressly allowed under FDA regulations, the *Quaker* court was most likely referring to 21 C.F.R. § 101.77, which allows health claims "associating diets low in saturated fat and cholesterol and high in fruits, vegetables, and grain products that contain fiber, particularly soluble fiber, with reduced risk of heart disease." Thus, under § 101.77 the heart healthy claims were specifically allowed because the packaging stated that "diets low in saturated

1   fat and cholesterol and high in . . . whole grain products" are associated with reduced risk of heart

2   disease. *Id.*

3       Here, in contrast, Plaintiff alleges that the heart healthy statements violate FDA

4   regulations. In response, in Defendant's motion to dismiss, Defendant does not argue that the

5   heart healthy statements on Defendant's packaging are in compliance with FDA regulations. In

6   fact, in Section III.D.3 below, the Court finds that Plaintiff's unlawful prong UCL cause of action

7   survives to the extent it is based on Plaintiff's use of heart healthy statements in violation of FDA

8   regulations. The question then is whether added sugar preemption still applies where the FDA

9   regulations forbid the use of the particular health claim that is at issue.

10      The above cases that applied added sugar preemption, *Ackerman*, *Chacanaca*, and

11  *Krommenhock*, did not address this issue, and Defendant does not argue or brief this issue. The

12  Defendant has the burden of persuasion on the instant motion to dismiss because Defendant is the

13  movant and is the party seeking to show preemption. *Makah Indian Tribe v. Verity*, 910 F.2d 555,

14  558 (9th Cir. 1990) ("The moving party has the burden of persuasion in arguing for dismissal.");

15  *Stengel*, 704 F.3d at 1227 (placing burden on party asserting preemption). Moreover, Defendant's

16  argument for preemption is premised on the fact that "federal regulations [] expressly permit the

17  challenged nutrient content and health claims." Mot. at 18. Therefore, because the heart healthy

18  statements are allegedly not in compliance with the federal regulations, the Court finds that

19  Defendant has not satisfied its burden of demonstrating preemption as to the heart healthy

20  statements for the purposes of the instant motion to dismiss.

21                              **iii.    Fiber**

22      Defendant's products contain statements referring to the benefits of the fiber within

23  Defendant's products: "FIBER/Fiber, like bran fiber, plays a very important part in your digestive

24  health and overall well-being." The Court first discusses whether this statement is a health claim

25  and then discusses whether it is a nutrient content claim. First, this statement is not a "health

26  claim" because it does not clearly link fiber to any specific "disease or health-related condition."

27  Defendant provides no indication as to what disease "digestive health" or "overall well-being"

28

29

refer.  *See* Reply at 13 (arguing that claims about fiber are health claims for the same reason as the statement "heart healthy" without providing any rationale).  Accordingly, Defendant has failed to satisfy its burden of showing that this statement is a health claim.

Second, implied nutrient content claims include statements that "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit or implicit claim or statement about a nutrient."  21 C.F.R. § 101.65(d)(1); *see also* (d)(2) (noting that use of the term "healthy" in connection with a nutrient can be a nutrient content claim).  A specific example of a nutrient content claim involving health is "healthy, contains 3 grams of fat."  The rulemaking discussing "healthy" nutrient content claims clarifies the meaning of "an explicit or implicit claim or statement about a nutrient."  59 Fed. Reg. at 24235.  The rulemaking states that the term "healthy" will be an implied nutrient content claim only where "the term 'healthy' is accompanied by additional language or graphic material or is otherwise presented in a context that explicitly or implicitly suggests that the food has a particular nutrient profile," and thus places the statement in a "nutritional context" by "impl[ying] that the product is useful in achieving dietary recommendations."  *Id.*  The above-mentioned fiber statement identifies a nutrient, i.e., fiber, and then states that fiber is important for digestive health and overall well-being.  That statement is located on the packaging for Raisin Bran, and is accompanied by a picture of a golden wheat frond to signify whole grains, a source of fiber.  SAC ¶ 126.  That same symbol is used elsewhere on the box next to the statement "Excellent Source of Fiber."  *Id.*  Thus, although the above statement does not claim that Defendant's products are "high" in fiber explicitly, the context and other statements on the box imply that the product contains fiber and is healthier as a result.  Therefore, the above fiber statement is an implied nutrient content claim, and Plaintiff's causes of action are preempted to the extent they are based on that statement.  Plaintiff does not allege that this fiber statement violates FDA regulations as is the case with the heart healthy statements discussed above.

The Court notes that a number of other claims involving fiber are, for the same reasons, implied nutrient content claims.  First, the statement "Foods high in fiber help support good

30

health" is essentially the same as the above-discussed nutrient content claim. This statement is made on Frosted Mini Wheats – Big Bite Original, and is accompanied by pictures of wheat fronds, a statement that the product contains "100% Whole Wheat," and a panel that states "Excellent Source of Fiber & Made from 100% Whole Grain." SAC ¶ 140. When read in this context, this claim about the health benefits of fiber is certainly implying in the context of the product packaging that the product contains fiber and is healthier as a result.

Second, Defendant's products contain a number of statements involving the word "wholesome" or "take care of you" in association with fiber: "Wholesome Fiber"; "Whole Grains | Wholesome Fiber | Real Fruit / Take care of you"[1]; and "MORE of the WHOLE GRAINS Your Body Needs." All of these statements identify fiber as a nutrient in Defendant's product or imply the presence of fiber through statements about whole grains. Moreover, the product packaging for each of these products contains pictures or depictions of wheat fronds, which implies the presence of whole grains, and thus fiber, in the product. These statements also connect the presence of fiber with the health of the consumer ("wholesome"; "Take care of you"; "your body needs").

The FDA has issued guidance that establishes that statements such as "nutritious," "wholesome," "best choice," and "good for you" are also implied nutrient content claims when stated next to an "explicit or implicit claim or statement about a nutrient." *See* FDA, *Guidance for Industry: A labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods*, 2008 WL 2155726, at *10 (noting that statements such as "Nutritious, contains 3 grams of fiber," "Best choice, contains 200 mg sodium," and "Good for you, contains 5 grams of fat" are implied nutrient content claims). Like the fiber claim analyzed in more depth above, these statements "[s]uggest[] that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient." *Id.* § 101.13(b)(2); *see also Bruton v. Gerber Prod. Co.*, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) (indicating that statements "As Healthy As Fresh," "Support[ ] Healthy

---

[1] The Court addresses the "Real Fruit" part of this statement below in the sections on truthfulness and puffery.

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Growth & Development," and provide "Nutrition for Healthy Growth & Natural Immune Support" are implied nutrient content claims); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013) (finding the term "wholesome" to be a nutrient content claim).[2]

With respect to all of these claims, Plaintiff alleges that these nutrient content claims imply that Plaintiff's products are healthy, but that they are rendered misleading because of the amount of added sugar in Defendant's product. SAC ¶¶ 186–95 (alleging that these fiber claims imply that Defendant's products are healthy). Thus, as in *Ackerman*, Plaintiff's causes of action are "premised on the notion that [Defendant's products'] high sugar content made its health or implied nutrient content claims misleading," and thus are "preempted by the FDA's express decision to not recognize sugar as a disqualifying nutrient." *Ackerman*, 2010 WL 2925955 at *8. Therefore, because these fiber statements are nutrient content claims that are, according to Plaintiff, misleading statements about the healthfulness of Defendant's products, they are preempted.

For the reasons discussed above, of the three claims identified in the parties' briefing, the Court finds that the No High Fructose Corn Syrup and Heart Healthy claims are not preempted at this stage of the litigation, but that the following fiber claims are preempted: (1) "FIBER/Fiber, like bran fiber, plays a very important part in your digestive health and overall well-being"; (2) Foods high in fiber help support good health"; (3) "Wholesome Fiber"; (4) "Whole Grains | Wholesome Fiber | Real Fruit / Take care of you"; and (5) "MORE of the WHOLE GRAINS Your Body Needs."

### 3.   Whether a Reasonable Consumer Would Be Deceived

As to the remaining statements on Defendant's product packaging that are not preempted, Defendant argues that they cannot be the basis of Plaintiff's FAL, the CLRA, or fraudulent prong

---

[2] The Court notes that in *Chacanaca*, a district court in this district held that the term "wholesome" was not a preempted nutrient content claim. *Chacanaca*, 752 F. Supp. 2d at 1123 ("The word 'wholesome' could, of course, be interpreted implicitly to characterize the bars' nutrients. It is, however, a word with broader meaning than typical claims implying healthfulness."). However, in *Chacanaca*, the term wholesome "d[id] not describe any particular nutrient" and was just a general statement on the defendant's products. In contrast, in this case, the term wholesome is being used to describe the benefits of fiber and whole grains. Therefore, *Chacanaca*'s holding does not affect the Court's preemption analysis.

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

UCL causes of action because the statements are not false or misleading to a reasonable consumer. Claims under "California consumer protection statutes are governed by the 'reasonable consumer' test." *Ebner*, 838 F.3d at 965. "Under this standard, Plaintiff must 'show that members of the public are likely to be deceived.'" *Id.* (internal quotation marks and citations omitted). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams,* 552 F.3d at 938. However, Plaintiff must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508.

Defendant argues that Plaintiff has not adequately alleged a claim under the reasonable consumer test because (1) many of the statements on Defendant's packaging are truthful and not misleading, and (2) many of the statements on Defendant's packaging are puffery.

### a.    Truthful Statements

Defendant argues that many statements on Plaintiff's packaging include true statements that are not misleading. California's consumer protection statutes "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 952 (2002)); *Fisher v. Monster Bev. Corp.*, 656 F. App'x 819, 823 (9th Cir. 2016) ("[T]he statements upon which [plaintiff] relied were not strictly false, [but] it is plausible that they were misleading, which is all that California law requires.").

Defendant argues that the statement "Whole Grains | Wholesome Fiber | Real Fruit" and "No High Fructose Corn Syrup" are factually true statements that are not deceptive.[3] The Court

_____

[3] The Court notes that Defendant argues in its motion that the statement "Made with Whole Grains" is truthful and not misleading. However, Plaintiff's SAC does not challenge the statement

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

addresses each statement in turn.

### i.    Whole Grains | Wholesome Fiber | Real Fruit

As noted in the prior section, the Court has found that the statements "Whole Grains" and "Wholesome Fiber," both of which imply the presence of fiber, are preempted nutrient content claims. The statement "Real Fruit," however, is a distinct statement that does not imply the presence of fiber.

As an initial matter, the Court notes that the statement "Real Fruit" on its own is a truthful statement that is not actionable. In this Court's prior order, the Court held that "the statement 'MADE WITH Real Fruit' is a factually true statement" that Plaintiff had inadequately alleged that it was false or misleading. Prior Order at 18. The same is true in the instant order. Plaintiff does not allege that the statement "Real Fruit" is not a factually true statement.

However, here, the statement "Real Fruit" is accompanied by the statement "Take care of you." This Court's prior order addressed Real Fruit statements on their own, and did not address circumstances where another statement implies that the presence of fruit causes the product to be healthful. As noted above, the statement "take care of you," implies that the contents of the product are healthy and will "take care of" the consumer of that product. In contrast, Plaintiff alleges in the instant suit that Defendant's products are unhealthy because they contain excessive added sugar. The Court must take "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Therefore, Defendant has not established truthfulness as to the statement "Real Fruit / Take care of you."

### ii.    No High Fructose Corn Syrup

Plaintiff alleges that Defendant "has capitalized on consumer aversion toward high

---

"Made with Whole Grains" on any of Defendant's products. Therefore, the Court need not address whether, hypothetically, this statement would or would not be misleading. Defendant also attaches a chart to its opposition in which Defendant marks with an "x" other statements that it asserts are factually true. However, Defendant provides no argument as to why those statements are factually true and not misleading. Thus, the Court has no basis to evaluate those statements.

34

United States District Court
Northern District of California

fructose corn syrup . . . by touting the absence of that ingredient, deceptively suggesting that some [of Defendant's products] . . . are healthier because [high fructose corn syrup] is absent." SAC ¶ 210. Plaintiff's complaint alleges that this "strategy leverages consumer confusion over the relative dangers of different forms of added sugar" because "added sugar in virtually any form— and certainly in the forms used to sweeten the Kellogg cereals and bars—contains toxic fructose, and thus has essentially the same detrimental health effects" as high fructose corn syrup. *Id.* ¶¶ 211, 214.

Plaintiff's allegation is basically that even though it is true that Defendant's products do not contain high fructose corn syrup, the statement "No High Fructose Corn Syrup" is misleading. Plaintiff's theory is that (1) consumers believe that products without high fructose corn syrup are healthier because they lack an unhealthy ingredient, and (2) consumers are unaware that the added sugar in Defendant's products has a similar chemical composition and the same health consequences as high fructose corn syrup. As a result, Plaintiff alleges that consumers are led to believe that they are purchasing a healthy product, but are not.

A district court in this district has rejected a similar theory of relief. In *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *8 (N.D. Cal. June 28, 2012), the plaintiff alleged that a statement that a product contains "0g trans fat" was misleading because "the statement distracts consumers from the product's unhealthy fat and saturated fat content." *Id.* at *8. However, the *Delacruz* court held that "[t]he alleged distraction, however, does not amount to a false statement or misrepresentation." *Id.* Similarly here, Plaintiff is essentially alleging that Defendant's "No High Fructose Corn Syrup" statements distract consumers from the fact that added sugar with a similar chemical composition is in the product. However, as with the accurate "0g trans fat" statement in *Delacruz*, Defendant's statement that the product lacks high fructose corn syrup is not false and does not misrepresent the contents of the product.

Moreover, Plaintiff makes no allegations that Defendant's labels state that the lack of high fructose corn syrup in Defendant's products causes Defendant's products to be healthier. Instead, Plaintiff's theory is based on the premise that "some consumers" think that products without high

United States District Court
Northern District of California

fructose corn syrup are healthier than products that contain other types of added sugar. Just because "some consumers" believe that products without high fructose corn syrup are healthier does not mean that Defendant has engaged in fraudulent activity by accurately stating that the product does not contain high fructose corn syrup.

Plaintiff also argues that it alleges in the SAC that the ingredient "fructose" is actually a form of high fructose corn syrup, and thus the statement "No High Fructose Corn Syrup" is literally false for the products that include "fructose" as an ingredient. However, the allegation in the SAC to which Plaintiff refers states "[f]ood manufacturers have recently begun referring to [a type of high fructose corn syrup] on food label ingredients statements as simply 'fructose.'" SAC ¶ 12. Plaintiff points to no allegation in the SAC that Defendant, as opposed to "food manufacturers" generally, disguises a type of high fructose corn syrup with the ingredient label "fructose." Therefore, Plaintiff has not adequately pled actual falsity.

Accordingly, the Court concludes that the statement "No High Fructose Corn Syrup" does not, on its own, constitute an actionable misrepresentation.

### b. Puffery

"[G]eneralized, vague, and unspecified assertions[] constitute[e] 'mere puffery' upon which a reasonable consumer could not rely," and thus are not actionable under the UCL, FAL, or CLRA. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003). As the Ninth Circuit explained in *Cook, Perkiss, and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242 (9th Cir. 1990), "[t]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.* at 246 ("'Puffing' has been described by most courts as involving outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers."); *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."). Consequently, "[a]dvertising

United States District Court
Northern District of California

which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable." *Cook*, 911 F.2d at 246 (citations and internal quotation marks omitted).

The Ninth Circuit has held that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938 (indicating that dismissal on puffery grounds is a "rare situation"); *see also Bruton*, 2014 WL 172111 at *11 ("[I]ssues of reliance and how [a defendant's] statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." (citing *Chacanaca*, 752 F. Supp. 2d at 1125–26)). Indeed, "the court can dismiss a complaint for failure to state a claim only where it can 'conclude as a matter of law that members of the public are not likely to be deceived by the [advertisement].'" *NJOY*, 2015 WL 12732461 at *9 (C.D. Cal. May 27, 2015). However, a plaintiff cannot avoid dismissal where there is a "mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the question is whether "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, *could* be misled." *Lavie*, 105 Cal. App. 4th at 508 (emphasis added).

Therefore, when evaluating whether statements are puffery, the Court must look to the generality and specificity of the statements and evaluate whether a significant portion of the general consuming public "could" be misled.

The Court addresses the following categories of statements in turn: (1) statements using the terms "Wholesome" and "Nutrients/Nutritious," (2) statements involving the term "healthy" or "Good for You"; (3) "Does Your Heart Good"; (4) "Real Fruit / Take care of you"; (5) statements about the amount of "sweetness" or "honey" in Defendant's products; (6) statements involving the terms "Full and Focused" and "Good Decision"; (7) "great start" statements; (8) the statement "Eat Better All Day"; and (9) "Breakfast Brainpower."

### i. Statements Involving the Terms "Wholesome" or

37

**"Nutrients/Nutritious"**

Defendant's product labels contain the following statements involving the terms wholesome or nutritious that Defendant asserts are puffery: "WHOLESOME SATISFACTION"; "the wholesome goodness you need to shine your brightest"; "the nutrients our bodies want to work and feel their best; "essential nutrients"; "delicious & nutritious"; "positively nutritious"; and "unbelievably nutritious."

As noted above, the question is whether these statements are puffery, that is, "generalized, vague, and unspecified assertions" which are "extremely unlikely to induce reliance" such that they would only mislead "some few consumers viewing [the statements] in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508; *Cook*, 911 F.2d at 246; *Newcal*, 513 F.3d at 1053. To be non-puffery, the statements should refer to "specific or absolute characteristics of a product" such that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, *could* be misled." *Lavie*, 105 Cal. App. 4th at 508 (emphasis added); *Cook*, 911 F.2d at 246.

The question then is whether the statements that a product contains "essential nutrients, is "nutritious," or is "wholesome" constitute puffery. On the one hand, these statements are vague and generalized to some extent because it is difficult to measure whether a product contains "essential" nutrients, is nutritious, or is wholesome. *See Williams*, 552 F.3d at 939 n.3 (noting that the term "nutritious" "were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely"). On the other hand, as Plaintiff alleges, each of these statements implies that the product is healthy or provides health benefits when these statements are placed on the packaging for a food product.

The Court finds the reasoning in *Chacanaca* to be persuasive on this issue. In *Chacanaca*, a district court in this district addressed the term "wholesome" on Quaker Oats products on a motion to dismiss. *Chacanaca*, 752 F. Supp. 2d at 1126. In *Chacanaca*, the plaintiff argued that the use of the term "wholesome" was misleading because the defendant's products contained "dangerous amounts of trans fat." *Id.* at 1114. The *Chacanaca* defendant argued that the term

38

"wholesome" was puffery because the word "is so vague and general that a reasonable consumer would not be misled." *Id.* at 1125–26. However, the *Chacanaca* court held that it could not find the term "wholesome" to be puffery on a motion to dismiss. *Id.* ("[A]t this juncture, the term 'wholesome cannot be deemed to constitute non-actionable puffery"). The *Chacanaca* court reached this decision because even though the term wholesome has multiple potential meanings besides "healthy," "[t]he insistence that a product with (allegedly) dangerous [trans fat] is nonetheless 'wholesome,' . . . arguably *could* mislead a reasonable consumer." *Id.* The *Chacanaca* court did not preclude the possibility that the defendant would eventually be able to show that "the statements in issue are too general or vague to be actionable." *In re Quaker Oats*, 2012 WL 1034532 at *5. Instead, the *Chacanaca* decision was based on the premise that "the issues of reliance and how [product packaging] statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." *Bruton*, 2014 WL 172111 at *11 (citing *Chacanaca*, 752 F. Supp. 2d at 1125–26).

Here, the Court finds the logic underlying *Chacanaca* to be persuasive and finds that it applies to the wholesome and nutritious statements in the instant suit. On the one hand, "nutritious," "essential nutrients," and "wholesome" are general statements because they do not have specific, concrete meanings. However, the question is whether these statements are so general, vague, or overly exaggerated that only "some few consumers viewing [the statements] in an unreasonable manner" would rely on them. *Lavie*, 105 Cal. App. 4th at 508. Plaintiff alleges that these statements imply that Defendant's products are healthy, but that the amount of added sugar in Defendant's products causes the products to be unhealthy. Compl. ¶¶ 181–92. Based on the fact that the terms "nutritious," "essential nutrients," and "wholesome" might cause a reasonable consumer to think that a product is healthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on these statements. *See Bruton*, 2014 WL 172111 at *11 (denying motion to dismiss where "the Court cannot conclude as a matter of law that no consumer would rely on Gerber's 'Healthy' label statements."). Thus, these statements involve "questions of fact ill-suited for resolution on a motion to dismiss." *Bruton*, 2014 WL 172111 at

United States District Court
Northern District of California

*11 (citing *Chacanaca*, 752 F. Supp. 2d at 1125–26).

Regardless, the Court notes that the statements "unbelievably nutritious" and "positively nutritious" are the exceptions to the above principle. These two statements use the adverbs "unbelievably" and "positively" before the word nutritious. In *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013), a district court in the Southern District of Florida addressed a puffery challenge to the statement that a motorcycle was "'unbelievably smooth, quiet[,] and vibration[-]free.'" *Id.* at 1341. The Court held that this statement was puffery because "[i]t appears obvious that no motorcycle can be completely free of vibration while in motion on a roadway, and thus it seems incredulous that any buyer would rely on the veracity of that statement in making a purchase." *Id.* With respect to the adverb "unbelievably," the *Aprigliano* court held that the adverb "plac[ed] the statement squarely in the realm of opinion. How 'unbelievably vibration-free' a motorcycle is or is not cannot be quantified, as it is completely subjective to each individual rider." *Id.*

The Court finds that the adverbs "unbelievably" and "positively" cause the statements containing "nutritious" to be puffery. Whether or not Defendant's products are believably or "unbelievably" nutritious depends on a subjective determination that is more exaggerated than the "nutritious" statement alone. The use of the words "unbelievably" and "positively" sound much more like advertising lingo, that is, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). Thus, such statements do not describe "specific or absolute characteristics" of a product, but rather involve "[g]eneralized, vague, and unspecified assertions." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting *Glen Holly*, 343 F.3d at 1005). Accordingly, the Court finds that the "unbelievably nutritious" and "positively nutritious" statements are puffery, but that the "nutritious," "essential nutrients," and "wholesome" statements cannot be dismissed as puffery in the instant motion to dismiss.

ii.     **Statements involving the Terms "Health," "Healthy," "Good For You," or "Balanced Breakfast"**

40

The statements "Start with a healthy spoonful" and "Invest in your health invest in yourself" use the term "healthy." As discussed in the discussion of the allegations of healthiness above, Plaintiff alleges that the quantity of added sugar in Defendant's products causes Defendant's products to be unhealthy, and backs that assertion up with various scientific studies that show the health effects of added sugar. As with the statements "nutritious," "essential nutrients," and "wholesome," the use of the word "healthy" indicates that consuming the product will be good for the consumer's health. In *Bruton*, this Court previously held that the statements "As Healthy As Fresh," "Nutrition for Healthy Growth & Natural Immune Support," and "Supports Healthy Growth & Development" did not constitute puffery. *Bruton*, 2014 WL 172111 at *11. This Court noted that the word "healthy" was subject to FDA regulations, both in the context of health claims and nutrient content claims, and that those regulations "assume that consumers rely on health-related claims on food products in making purchasing decisions." *Id.* Moreover, as discussed above, the Court noted that "issues of reliance and how Gerber's statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss." *Id.*

*Bruton*'s logic applies here as well. The fact that the FDA regulates the use of the term "healthy" implies that "consumers rely on health-related claims on food products in making purchasing decisions." *Id.* Moreover, just as with the "nutritious," "essential nutrients," and "wholesome" statements, the Court cannot conclude as a matter of law that no reasonable consumer would rely on such statements. Instead, the questions of reliance and how the term healthy will be understood is a question of fact "ill-suited for resolution on a motion to dismiss." *Id.* The same can be said for the statement "good for you," which is a synonym of healthy. *See Red v. Kraft Foods, Inc.*, 2011 WL 938297, at *4 (C.D. Cal. Jan. 13, 2011) (holding that, among other statements, "Steps to a Healthier You" survived a motion to dismiss because it was potentially misleading where "consumption of the products at issue is, overall, unhealthy"). Similarly, the statement "balanced breakfast" carries health implications that prevent the Court from finding such a statement to be puffery.

41

This case differs from the cases involving healthy statements relied on by Defendant. In *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010), a district court in the Central District of California noted that "[l]ike nutritiousness, healthiness is difficult, if not impossible, to measure concretely" where there is "no method of measuring the healthiness of a particular product." *Id.* at 1129. Thus, because no such "method of measuring [] healthiness" was provided by the plaintiff in *Yumul*, the *Yumul* court held that "[t]he reference to 'healthy,' therefore, can only provide context in assessing whether the other statement on the packaging is misleading." *Id.* However, here, Plaintiff provides an alleged "method of measuring [] healthiness." *Id.* Plaintiff alleges that the quantity of added sugar in Defendant's products causes Defendant's products to be unhealthy, and backs that assertion up with various scientific studies that show the health effects of added sugar. Specifically, Plaintiff relies on scientific studies that discuss the negative health consequences of consuming added sugar. Therefore, unlike *Yumul*, the meaning of the word "healthy" or "health" in this case can be measured against whether or not Defendant's products are found to be unhealthy based on the scientific studies and evidence provided by Plaintiff.

Moreover, this case is different from *PETA v. Whole Foods Mkt. Cal., Inc.*, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016). In *PETA*, a district court in this district addressed the claim "Great-Tasting Meat from Healthy Animals. That Means No Added Hormones No Antibiotics Ever." *Id.* at *3–4. The *PETA* court noted that the plaintiffs did *not* allege that the meat came from unhealthy animals or that the meat contained added hormones or antibiotics. *Id.* Because there was no allegation that the animals were unhealthy, the *PETA* court concluded that the plaintiff provided no allegation from which the *PETA* court could conclude that the statement "Healthy Animals" was false or misleading. *Id.* The only aspect of the statement left, therefore, was the statement "Great-Tasting Meat," which the *PETA* court held was a non-actionable "taste representation[] that [was] not quantifiable." *Id.* Here, in contrast to the lack of allegations that the animals were unhealthy in *PETA*, Plaintiff alleges that Defendant's products are not healthy because they contain an excessive amount of added sugar. *PETA* solely stands for the proposition

42

that where unhealthiness is not alleged by the plaintiff, a "healthy" statement is not actionable. Therefore, *PETA* is inapposite.

Therefore, the Court finds that the statements "Start with a healthy spoonful," "Invest in your Health invest in yourself," "good for you," and "balanced breakfast" cannot be dismissed as puffery in the instant motion to dismiss.

### iii. Does Your Heart Good

The statement "Does Your Heart Good" implies that use of Defendant's products will be good for a consumer's heart. This statement is similar to the "heart healthy" claims that Defendant asserts are preempted, but does not challenge on the basis of puffery. This statement explicitly describes Defendant's product as "good" for the consumer's heart, thus implying that the product has health benefits. As noted in the prior section, Plaintiff alleges that Defendant's products are actually unhealthy, and are bad for heart health, because of the amount of added sugar in Defendant's products. Accordingly, there is a means by which to determine whether Defendant's product "Does [a consumer's] Heart Good." Therefore, for the same reasons as the "healthy" statements above, the Court finds that the statement "Does Your Heart Good" cannot be dismissed as puffery in the instant motion to dismiss.

### iv. Real Fruit/Take Care of You

The statement "Real Fruit/Take care of you" implies that the Real Fruit in Defendant's products will provide health benefits to the consumer. The Court notes that the statement "take care of you" is not as clearly a synonym of healthy as is "Does Your Heart Good" or "Good for You." However, in the context of describing the benefits of "Real Fruit," the statement "Take care of you" implies that eating the product will be healthy for the consumer. As with the healthy statements described above, because Plaintiff has adequately alleged that Defendant's products are unhealthy, the Court cannot conclude as a matter of law that no reasonable consumer would rely on such a statement and believe that Defendant's products bearing this statement were healthy. Therefore, for the same reasons as the "healthy" statements above, the Court finds that the statement "Real Fruit / Take care of you" cannot be dismissed as puffery in the instant motion to

43

dismiss.

### v. Descriptions of the Amount of Sweetness in Defendant's Products

Defendant argues that a number of statements that provide a general statement about the amount of sweetener in a product are puffery, namely: "with a Touch of Golden Honey"; "Drizzled with Honey"; "Touch of Sweetness"; "Lightly Sweetened"; "lightly frosted"; and "just the right amount of sweetness."

First, the Court addresses the statements "Lightly Sweetened" and "lightly frosted." Plaintiff argues that these statements characterize the level of sweetness in Defendant's products, and thus imply that they are low in sugar. Opp'n at 12. As discussed above, Plaintiff alleges that the quantity of added sugar in Defendant's products is "excessive" such that Defendant's products are unhealthy. In the instant motion to dismiss, the Court cannot conclude that no reasonable consumer would rely on statements like "Lightly Sweetened" and "lightly frosted" and conclude that the amount of added sugar in the product is, at the very least, not so high that the product is unhealthy. *See Bruton*, 2014 WL 172111 at *11 ("[I]ssues of reliance and how Gerber's statements would be understood by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss.").

Moreover, the Court notes that, in the context of nutrient content claims, the term "light" or "lite" is regulated and carries specific requirements. 21 C.F.R. § 101.56. The fact that the FDA regulates the use of the term "light" implies that consumers rely on the use of such terminology, at least to some extent, when making decisions about what products to purchase. *See Bruton*, 2014 WL 172111 at *11 (holding that FDA regulation of the word "healthy" implies that a reasonable consumer rely on such terms). Accordingly, the Court cannot conclude as a matter of law that the statements "Lightly Sweetened" or "lightly frosted" are puffery as a matter of law.

Second, the Court finds that the statements "just the right amount of sweetness"; "with a Touch of Golden Honey"; "Touch of Sweetness"; and "Drizzled with Honey" constitute nonactionable puffery. The statement "[j]ust the right amount of sweetness" does not provide a

means of measuring what "just the right amount" of sweetness would be. *See* Reply at 10

("[D]espite Plaintiff's assertions to the contrary, [there is no] way to determine whether Kellogg's

Frosted Mini-Wheats Harvest Delights have "[j]ust the right amount of sweetness."). The right

amount of sweetness could refer to the amount of "sweetness" needed to create a great tasting

product, a healthy product, or the amount of sweetness needed to attain some other unknown goal.

Thus, this statement is nonactionable puffery.

The Court also finds the statements "with a Touch of Golden Honey" and "Touch of

Sweetness" to be puffery. Plaintiff does not allege the existence of a benchmark for determining

whether a product has a "touch" of honey or sweetness. Instead, that is a subjective determination.

A reasonable consumer would not be able to determine what is meant by a "touch" of golden

honey or sweetness, and thus would not expect any specific amount of honey or sweetness.

Moreover, unlike the term "lightly," which is regulated by FDA regulations, the term "touch" is

not regulated. Indeed, unlike the term "lightly," the term "touch" is more akin to "sales patter" on

which a reasonable consumer would not rely. *See Tylka v. Gerber Prod. Co.*, 1999 WL 495126, at

*8 (N.D. Ill. July 1, 1999) (finding statements nonactionable puffery where they sounded like

"sales patter"). This conclusion is supported by *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304

(E.D. Cal. 2014). The *Salazar* court held that the statement "just a tad sweet" was nonactionable

puffery because the term "tad" "lack[s] any clear, objective indication of the[] level[]" of

sweetness. *Id.* at 1316. "Touch" and "tad" are synonyms, and neither term provides a clear,

objective indication of the level of the sweetness. Accordingly, the Court finds these "touch"

statements to be puffery.

Finally, the statement "drizzled with golden honey" is puffery. Plaintiff argues that, like

the above statements about sweetness, honey, and frosting, it misleadingly states that Defendant's

products are low in sugar. However, the statement "drizzled" discusses a method for applying

honey and does not imply a specific amount of honey. To the extent that "drizzled" does, to some

extent imply a low amount of honey, the statement "drizzled" is similar to "touch." It "lack[s] any

clear, objective indication of the[] level[]" of honey in the product. *Salazar*, 74 F. Supp. 3d at

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1316. Therefore, the drizzle statement is puffery and not misleading.

### vi. "Full and Focused" and "Good Decision" Statements

Defendant also argues that the statement "Keeps 'em full keeps 'em focused" or "help[s] keep you full and focused all morning," and the statement "one good decision can lead to another" are nonactionable puffery. The Court addresses each type of statement in turn.

With respect to the "full and focused" claims, the Court finds that these statements (1) are not misleading in the context of the instant suit, and (2) are puffery. First, as discussed above, Plaintiff's SAC is based on the premise that the statements on Defendant's products imply that Defendant's products are healthy when added sugar causes Defendant's products to be unhealthy. However, the statement "keep[s] you full and focused" does not imply that Defendant's products are healthy. Instead, the statement simply implies that eating Defendant's products will cause a consumer to be full and focused. Plaintiff alleges that Defendant's "representation that its high-sugar cereals will promote satiety and focus is contradicted by the science demonstrating that sugar consumption may increase hunger, and that consumption of sugary foods interferes with the brain's satiety signals and thus may result in overeating." SAC ¶ 206. It is unclear what "science" the SAC refers to, but it may be referring to the allegation that "fructose interferes with the brain's communication with leptin, which *may* result in overeating. And while glucose suppresses ghrelin, thus reducing hunger, fructose has no effect on ghrelin." SAC ¶ 35 (emphasis added). The statement "keep[s] you full and focused" is not rendered false or misleading based on science that indicates that fructose *may* lead to overeating. This is especially true where the complaint also alleges that glucose, the other component of the sugar in Defendant's products, "suppresses ghrelin, thus reducing hunger." *Id.* At the very least, Plaintiff's allegations show that the science is unclear on this point, and thus Plaintiff has failed to adequately allege with particularity that the "full and focused" statements are misleading.

Second, the "full and focused" statements are puffery. Whether or not a product can keep someone full and focused throughout the morning is a subjective determination based on how much that person eats and the level of "fullness" or "focus" the person can achieve and expects.

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Therefore, these "full and focused" statements do not describe "specific or absolute characteristics" of the product, but rather involve "[g]eneralized, vague, and unspecified assertions." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly*, 343 F.3d at 1005); *see also Sterling Drug, Inc. v. F.T.C.*, 741 F.2d 1146, 1150 (9th Cir. 1984) (describing puffery as "claims [that] are either vague or highly subjective").

With respect to the statement "one good decision leads to another," the Court finds that this statement is nonactionable puffery. This statement implies that eating Defendant's products is a "good decision." However, like with full and focused, what is or is not a good decision is a subjective determination. *Sterling*, 741 F.2d at 1150 (noting that puffery includes statements that are "highly subjective"). Such a statement does not describe "specific or absolute characteristics" of the products, but rather involves "[g]eneralized, vague, and unspecified assertions." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly*, 343 F.3d at 1005). Accordingly, this statement is puffery.

### vii. Great Start Statements

Plaintiff challenges a number of "Great Start" claims, such as "A great way to START THE DAY." As alleged with the other statements, Defendant argues that the great start statements are non-actionable puffery because they are "generalized, vague, and unspecified assertions." *Lavie*, 105 Cal. App. 4th at 508. In contrast to the terms such as nutritious, wholesome, and healthy above, terms like "great start" and "sets us up to do our best" do not describe "specific or absolute characteristics" of the product, but involve "[g]eneralized, vague, and unspecified assertions." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly*, 343 F.3d at 1005). Accordingly, the Court finds the "great start" statements to be puffery.

The Court is aware of only one case addressing "great start" statements. In *Coe v. General Mills, Inc.*, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016), a district court in this district addressed claims that Cheerios Protein would provide a "great start to your day" and "kick-start your day," which were accompanied by "images depicting healthy and successful kids and parents." *Id.* The *Coe* court held that the plaintiff had adequately alleged that the amount of sugar in Cheerios

47

Protein was excessive for children, and that the amount of sugar caused negative health effects. *Id.* As a result, the *Coe* court held that the "'implied claims of healthfulness on the Cheerios Protein label' are therefore misleading." *Id.*

With respect to the "great start" claims specifically, the *Coe* court held that the "great start" statements survived a motion to dismiss because such statements could "arguably contribute to the alleged 'deceptive context of the packaging as a whole,'" and thus held that claims based on those statements could not be dismissed. *Id.* (quoting *Williams*, 552 F.3d at 939 n.3). *Coe*'s holding relied on the Ninth Circuit's discussion of the term "nutritious" in *Williams*. *Id.*

In *Williams*, the Ninth Circuit held that even though the statement "nutritious" arguably was puffery, the statement contributed to the deceptive context of the product as a whole. *Williams*, 552 F.3d at 939 n.3. However, in *Williams*, the statement "nutritious" was paired with other, more specific allegedly false statements. *Id.* For example, the product was called a "fruit juice snack[]" and its packaging had pictures of fruit on the front, which suggested falsely that the featured fruits were in the product. *Id.* Moreover, the product was labeled as containing "fruit juice and other all natural ingredients," which falsely implied that the ingredients in the product were natural. *Id.* The term "nutritious" was held to be actionable because it contributed "to the deceptive context of the product" that was created by the more-specific allegations of falsity. *Id.*

Here, the Court is solely addressing whether the "great start" statements are themselves non-actionable puffery because the parties provide no argument as to the deceptive context of the packaging as a whole. If such "great start" statements are paired with other, non-puffery statements, then as in *Williams* and *Coe*, the "great start" statements may still be actionable as part of the "deceptive context of the product as a whole." *Id.* However, as standalone statements, for the reasons discussed above, the Court finds these great start statements to be puffery.

### viii.    Eat Better Statement

On two of Defendant's challenged products, Plaintiff challenges the statement "Nutri-Grain / Eat Better All Day." When words like "better" are used, statements are usually found to be puffery unless the advertisement provides a means of quantifying what "better" means. *See*

48

*Edmunson v. Procter & Gamble Co.*, 2011 WL 4041495, at *3 (S.D. Cal. Sept. 8, 2011) ("Plaintiff does not allege that P & G's advertisements or packaging listed, referenced, or otherwise incorporated its patents or any criteria for measuring a "better" shave."); *Southland*, 108 F.3d at 1145 (holding "less is more" is not measurable and thus nonactionable puffery, while "50% less mowing" is "a specific and measurable advertisement claim of product superiority based on product testing and, as such, is not puffery"). The use of the term "eat better" is puffery because the advertising here provides no means by which to determine what it means to "eat better" in the context of these products' packaging. Indeed, the term "eat better" could carry any number of meanings, including the taste or quality of the food, or simply eating the right amount of food. This statement does not describe "specific or absolute characteristics" of Defendant's product, but rather involves a "[g]eneralized, vague, and unspecified assertion[]" about "eating better." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly*, 343 F.3d at 1005). Accordingly, the Court finds this statement to be puffery.

### ix. Breakfast Brainpower

Defendant asserts that the statement "Breakfast Brainpower" is puffery. The Court agrees. This statement is not asserting any particular characteristic of Defendant's products. Instead, it is a "[g]eneralized, vague, and unspecified assertion[]" that simply states "Breakfast Brainpower." *Anunziato*, 402 F. Supp. 2d at 1139 (quoting *Glen Holly*, 343 F.3d at 1005).

Moreover, at least on Defendant's Crunchy Nut cereal, directly below the "Breakfast Brainpower" statement is a quiz which asks the consumer "One serving of **Kellogg's** cereal and milk costs about a. 65¢ b. $1 c. 50¢." Thus, the statement "BREAKFAST BRAINPOWER" is referring to the math required to find the right answer, not that the cereal itself is providing additional brain power to a consumer. Finally, Plaintiff's complaint contains no allegation as to why the statement "BREAKFAST BRAINPOWER" is itself false or misleading. Accordingly, the Court finds this statement to be puffery.

Above, the Court found that a number of the statements Plaintiff challenges are preempted, not misleading, or are puffery. The Court notes that based on these holdings, Plaintiff's causes of

49

action can be dismissed as to a number of products because Plaintiff solely challenges non-actionable statements on the packaging for those products. Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's FAL, CLRA, and fraudulent prong UCL causes of action with respect to the following 5 products:

| Products | Challenged Statements | Reason for Dismissal |
|----------|----------------------|---------------------|
| Frosted Mini Wheats Harvest Delights – Blueberry with Vanilla Drizzle<br><br>Frosted Mini Wheats Harvest Delights – Cranberry with Yogurt Drizzle | • "Positively Nutritious"<br>• "Just the right amount of sweetness" | Both of the challenged statements are puffery. Therefore, these products contain no actionable statements. |
| Nutri-Grain Cereal Bars – Strawberry Greek Yogurt | • "Wholesome Fiber" | Plaintiff only challenges the statement "Wholesome Fiber," which the Court held is preempted. Therefore, this product contains no actionable statements. |
| Nutri-Grain Cereal Bars – Strawberry<br><br>Nutri-Grain Cereal Bars – Cherry | • "No High Fructose Corn Syrup"<br>• "Wholesome Fiber" | The statement "No High Fructose Corn Syrup" is not misleading and the statement "Wholesome Fiber" is preempted. Therefore, these products contain no actionable statements. |

All dismissals are with prejudice. The original complaint was filed on August 29, 2016. ECF No. 1. On October 31, 2016, Defendant filed a motion to dismiss the original complaint. ECF No. 22. On November 14, 2016, Plaintiff filed the FAC as of right, ECF No. 27, and on November 15, 2016, the Court denied Defendant's motion to dismiss the original complaint as moot, ECF No. 31. In the order denying Defendant's motion to dismiss the original complaint as moot, the Court warned Plaintiff that "if the Court grants any future motion to dismiss the amended complaint based on the[] deficiencies [identified in the motion to dismiss the original complaint], the Court will dismiss the amended complaint with prejudice." *Id.* On December 8, 2016, Defendant filed a motion to dismiss the FAC. ECF No. 44. The Court granted Defendant's

50

motion to dismiss on March 21, 2017. ECF No. 56. The Court granted leave to amend because the Court dismissed on a number of bases that had not been identified in the motion to dismiss in the original complaint. *Id.* In the order granting the motion to dismiss the FAC, the Court stated that "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's deficient causes of action." *Id.* at 41. Thus, after three motions to dismiss, Plaintiff has failed to state a claim with respect to the above-identified products. Therefore, the Court finds that further amendment would be futile, would cause undue delay, and would be prejudicial to Defendant. *Carvalho*, 629 F.3d at 892 (holding that futility, undue delay, and prejudice are grounds for not providing leave to amend).

The Court, in contrast, DENIES Defendant's Motion to Dismiss as to the following 24 products: (1) Raisin Bran, (2) Raisin Bran Crunch, (3) Frosted Mini Wheats Original, (4) Frosted Mini Wheats Touch of Fruit in the Middle – Raspberry, (5) Frosted Mini Wheats Little Bites – Chocolate, (6) Smart Start – Original Antioxidants, (7) Crunchy Nut Cereal, (8) Nutri-Grain Soft-Baked Breakfast Bars – Cherry, (9) Nutri-Grain Soft-Baked Breakfast Bars – Blueberry, (10) Nutri-Grain Soft-Baked Breakfast Bars – Strawberry, (11) Nutri-Grain Soft-Baked Breakfast Bars – Variety Pack, (12) Nutri-Grain Harvest Hearty Breakfast Bars – Blueberry Bliss, (13) Nutri-Grain Fruit & Oat Harvest Bars – Blueberry Bliss, (14) Nutri-Grain Fruit & Oat Harvest Bars – Country Strawberry, (15) Nutri-Grain Cereal Bars – Blueberry, (16) Nutri-Grain Soft-Baked Breakfast Bars – Raspberry, (17) Nutri Grain Cereal Bars – Apple Cinnamon, (18) Nutri-Grain Cereal Bars – Mixed Berry, (19) Frosted Mini Wheats – Maple Brown Sugar, (20) Frosted Mini-Wheats – Strawberry, (21) Frosted Mini Wheats Little Bites – Cinnamon Roll, (22) Frosted Mini-Wheats – Blueberry, (23) Frosted Mini Wheats Big Bite – Original, and (24) Frosted Mini Wheats Touch of Fruit in the Middle – Mixed Berry. The Court does not dismiss these products because they contain statements that the Court cannot find would not mislead a reasonable consumer as a matter of law.[4]

United States District Court
Northern District of California

---

[4] The Court notes that Plaintiff also challenges these labels as giving rise to a deceptive omission theory of relief. Plaintiff alleges that Defendant "hides" and "omits . . . information regarding the

51

### B.    Breach of Express Warranty

Plaintiff asserts a breach of express warranty under California law.  Cal. Com. Code § 2313.  Under § 2313, an express warranty is created through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  *Id.*  "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986).  To satisfy the first element, the plaintiff must "'identify a specific and unequivocal written statement' about the product that constitutes an 'explicit guarantee[].'"  *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *10 (N.D. Cal. Sept. 29, 2015).  A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.  *See* Cal. Com. Code § 2313(1)(a)–(b).

This Court previously dismissed Plaintiff's express warranty claim because Plaintiff provided a list of nearly 100 statements without indicating to which products each statement was attached.  Therefore, the Court concluded that Plaintiff had failed to plead "the exact terms of the

_____

products' high sugar content."  SAC ¶ 209.  Defendant argues that Plaintiff has not adequately alleged a material omission because "the packaging here discloses the exact amount of sugar in the Nutrition Facts Box."  Mot. at 16.  Plaintiff responds that Plaintiff's theory is not that Defendant misrepresents the amount of added sugar in its products, but that Defendant fails to disclose that "the amount of added sugar in [Defendant's] cereals and bars is sufficiently high for their regular consumption to have detrimental health effects, and what those effects are."  Opp'n at 11.  A party may be held liable for an omission if there was the "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  Cal. Civ. Code § 1710.  A duty to disclose arises "when the defendant makes partial representations but also suppresses some material fact."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citation omitted).  Thus, if Plaintiff has adequately alleged that Defendant's products are represented to be healthy, but added sugar causes Defendant's products to be unhealthy, the omission of that latter fact would give rise to an actionable omission claim.  Above, the Court granted in part and denied in part Plaintiff's FAL, CLRA, and unlawful prong UCL causes of action because Plaintiff adequately alleges that Defendant's product packaging misleadingly states the product is healthy as to some products, but not as to others.  Accordingly, the Court GRANTS in part and DENIES in part Plaintiff's deceptive omission theory to the same extent.  *See Krommenhock*, 2017 WL 2378029 at *10 (holding that omission claim in added sugar challenge against a cereal company survives motion to dismiss).

52

warranty." Prior Order at 36.

In Plaintiff's SAC, Plaintiff now indicates which statements it asserts create an "express warranty" for each product. Plaintiff alleges that the same statements that serve as the basis of Plaintiff's FAL, CLRA, and fraudulent prong UCL causes of action also serve as the basis of the alleged express warranties. Plaintiff alleges that Defendant "breached its express warranties by selling products that do not meet the above affirmations and product descriptions because they are not healthy, and not heart healthy, but in fact detrimentally affect health, increasing risk of [coronary heart disease], stroke, and other morbidity." SAC ¶ 307.

Plaintiff cites a number of district court cases that have recognized a cause of action for breach of express warranty based on affirmations of fact regarding the "healthiness" of the products. In *In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011), a district court in the Southern District of California held that an express warranty claim survived a motion to dismiss where the complaint alleged that Nutella was "an example of a healthy and balanced breakfast" and was a "healthy" and "nutritious" breakfast food. *Id.* at 1118 ("[T]he challenged statements are sufficiently specific and unequivocal to constitute an affirmation of fact or promise."). In *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701 (C.D. Cal. June 6, 2016), a district court in the Central District of California denied a motion to dismiss an express warranty claim where "[t]he label states the Coconut Oil is a 'healthful and delicious oil,' and that the product provides 'health benefits.'" *Id.* at *10. In *Hunter v. Nature's Way Prod., LLC*, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016), a district court in the Southern District of California held that an express warranty claim challenging "healthy" and "Ideal for exercise and weight loss programs" statements survived a motion to dismiss. *Id.* at *9.

In all three of these cases, the district courts found these statements of the products' health properties to be sufficiently "specific and unequivocal" to survive a motion to dismiss. In doing so, these district courts relied on *Keith v. Buchanan*, 173 Cal. App. 3d 13 (1985), which held that "[t]he determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and

53

circumstances existing at the time the statement is made." *Id.* at 21. Thus, much like the determination of puffery in the FAL, CLRA, and fraudulent prong UCL causes of action, these courts found that a final determination as to what statements create express warranties should not necessarily be determined on a motion to dismiss.

Here, Defendant raises two arguments to challenge Plaintiff's express warranty claim. First, Defendant argues that Plaintiff has failed to adequately allege that Defendant's products contain an excessive amount of added sugar that is unhealthy. Second, Plaintiff argues that "all of the statements Plaintiff cites in support of his breach of warranty claims constitute non-actionable puffery." Mot. at 24. The Court addresses each in turn.

First, as to Defendant's argument that Plaintiff has failed to adequately plead an amount of excessive sugar that is unhealthy, the Court disagrees. As the Court discussed in section III.A.1 above, Plaintiff plausibly alleges that Defendant's products contain an excessive amount of added sugar that is unhealthy.

Second, Defendant challenges "all" of the statements that Plaintiff alleges create an express warranty as puffery. In the context of Plaintiff's FAL, CLRA, and unlawful prong UCL causes of action in section III.A.3.b above, the Court has already addressed whether the statements on Defendant's products are puffery. The statements the Court found were puffery in the context of the FAL, CLRA, and unlawful UCL causes of action are also puffery in the express warranty context. *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012) (finding nonactionable puffery under express warranty where the court had already found puffery under the UCL). In the FAL, CLRA, and fraudulent prong UCL analysis in section III.A.3.b above, the Court found that the following statements were puffery: "help[s] keep you full and focused"; "Keeps 'em full, keeps 'em focused"; "Touch of Sweetness"; "Touch of Golden Honey"; "Just the right amount of sweetness"; "drizzled with honey"; "unbelievably nutritious"; "positively nutritious"; "ONE GOOD DECISION LEADS TO ANOTHER"; "Eat Better All Day"; "Great Start"; "A great way to START THE DAY"; and "Breakfast Brainpower." Moreover, the Court found that the statement "No High Fructose Corn Syrup" was not misleading. In contrast,

54

statements such as "[s]tart with a healthy spoonful," "nutritious," and "eat something wholesome," among others, were found to be actionable.

Based on these findings, the Court dismissed 5 products because Plaintiff did not challenge any actionable statements on the packaging for those products, that is, the packaging on those products solely contained statements that were preempted, not misleading, or puffery. Turning to the instant express warranty inquiry, the Court finds that because none of those 5 products contain actionably misleading statement, the statements on those products also cannot create an express warranty. Therefore, as with the FAL, CLRA, and unlawful prong UCL causes of action, the Court GRANTS Defendant's motion to dismiss Plaintiff's express warranty cause of action as to (1) Frosted Mini Wheats Harvest Delights – Blueberry with Vanilla Drizzle, (2) Frosted Mini Wheats Harvest Delights – Cranberry with Yogurt Drizzle, (3) Nutri-Grain Cereal Bars – Strawberry Greek Yogurt, (4) Nutri-Grain Cereal Bars – Strawberry, and (5) Nutri-Grain Cereal Bars – Cherry.

The dismissal as to these products is with prejudice. The original complaint was filed on August 29, 2016. ECF No. 1. On October 31, 2016, Defendant filed a motion to dismiss the original complaint. ECF No. 22. On November 14, 2016, Plaintiff filed the FAC as of right, ECF No. 27, and on November 15, 2016, the Court denied Defendant's motion to dismiss the original complaint as moot, ECF No. 31. In the order denying Defendant's motion to dismiss the original complaint as moot, the Court warned Plaintiff that "if the Court grants any future motion to dismiss the amended complaint based on the[] deficiencies [identified in the motion to dismiss the original complaint], the Court will dismiss the amended complaint with prejudice." *Id.* On December 8, 2016, Defendant filed a motion to dismiss the FAC. ECF No. 44. The Court granted Defendant's motion to dismiss on March 21, 2017. ECF No. 56. The Court granted leave to amend because the Court dismissed on a number of bases that had not been identified in the motion to dismiss in the original complaint. *Id.* In that order granting Defendant's motion to dismiss the FAC, the Court stated that "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiff's deficient causes of action." *Id.* at 41. Thus, after

55

three motions to dismiss, Plaintiff has failed to state a claim with respect to the above-identified products. Therefore, the Court finds that further amendment would be futile, would cause undue delay, and would be prejudicial to Defendant. *Carvalho*, 629 F.3d at 892 (holding that futility, undue delay, and prejudice are grounds for not providing leave to amend).

As to the remaining statements, the Court notes that the following statements remain after removing the statements the Court has already found to be puffery, truthful, and preempted:

(1) Raisin Bran ("Heart Healthy; Does Your Heart Good; Start with a Healthy Spoonful; Invest in your health invest in yourself");

(2) Raisin Bran Crunch ("Heart Healthy; Does Your Heart Good; Start with a Healthy Spoonful");

(3) Frosted Mini Wheats Original ("Nutritious");

(4) Frosted Mini Wheats Touch of Fruit in the Middle – Raspberry ("Good for You");

(5) Frosted Mini Wheats Little Bites – Chocolate ("Nutritious");

(6) Smart Start – Original Antioxidants ("Heart Healthy; Start with a Healthy Spoonful; Invest in your health invest in yourself; Lightly Sweetened; Nutrients for Every Day; Nutrients our bodies want");

(7) Crunchy Nut Cereal ("Nutritious");

(8) Nutri-Grain Soft-Baked Breakfast Bars – Cherry ("[T]he wholesome goodness you need to shine your brightest");

(9) Nutri-Grain Soft-Baked Breakfast Bars – Blueberry ("[T]he wholesome goodness you need to shine your brightest");

(10) Nutri-Grain Soft-Baked Breakfast Bars – Strawberry ("[T]he wholesome goodness you need to shine your brightest");

(11) Nutri-Grain Soft-Baked Breakfast Bars – Variety Pack ("[T]he wholesome goodness you need to shine your brightest");

(12) Nutri-Grain Harvest Hearty Breakfast Bars – Blueberry Bliss ("[T]he wholesome goodness you need to shine your brightest");

1    (13) Nutri-Grain Fruit & Oat Harvest Bars – Blueberry Bliss ("eat something

2 wholesome");

3    (14) Nutri-Grain Fruit & Oat Harvest Bars – Country Strawberry ("eat something

4 wholesome");

5    (15) Nutri-Grain Cereal Bars – Blueberry ("Real Fruit / Take care of you");

6    (16) Nutri-Grain Soft-Baked Breakfast Bars – Raspberry ("Real Fruit / Take care of you");

7    (17) Nutri Grain Cereal Bars – Apple Cinnamon ("Real Fruit / Take care of you");

8    (18) Nutri-Grain Cereal Bars – Mixed Berry ("Real Fruit / Take care of you");

9    (19) Frosted Mini Wheats – Maple Brown Sugar ("LIGHTLY SWEETENED");

10    (20) Frosted Mini-Wheats – Strawberry ("LIGHTLY SWEETENED");

11    (21) Frosted Mini Wheats Little Bites – Cinnamon Roll ("LIGHTLY SWEETENED");

12    (22) Frosted Mini-Wheats – Blueberry ("LIGHTLY SWEETENED");

13    (23) Frosted Mini Wheats Big Bite – Original ("LIGHTLY SWEETENED"); and

14    (24) Frosted Mini Wheats Touch of Fruit in the Middle – Mixed Berry ("LIGHTLY

15 SWEETENED").

16    As to the above 24 products, the Court finds that these statements are sufficiently specific

17 to survive a motion to dismiss. As with *Ferrero*, *Boswell*, and *Hunter*, the three district court

18 cases the Court cited above, the Court notes that "[t]he determination as to whether a particular

19 statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is

20 dependent upon the facts and circumstances existing at the time the statement is made." *Keith*,

21 173 Cal. App. 3d at 21. Much like the puffery determination in the FAL, CLRA, and fraudulent

22 prong UCL cause of action, a determination of reliance and what statements constitute

23 affirmations of fact is better suited for a determination following a motion to dismiss. For the

24 purpose of the instant motion, the Court must take the "factual allegations in the complaint as true

25 and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519

26 F.3d at 1031. When doing so, the Court cannot find as a matter of law that the above statements

27 are not affirmations of fact. The Court also notes that courts in this district regularly hold that

28
57

stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty. *See Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (finding that because the plaintiffs had satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty" (citing *Garrison v. Whole Foods Market Grp., Inc.*, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014))); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (finding that the plaintiff had stated California consumer protection claims because the defendant's waffle labels could deceive a reasonable consumer and denying a motion to dismiss the plaintiff's breach of express warranty claim "for the same reasons as the consumer protection . . . claims").

Accordingly, the Court DENIES Defendant's Motion to Dismiss as to the above-listed 24 products because these products contain at least one statement that the Court found was not preempted, non-misleading, or puffery as a matter of law.

### C.     Implied Warranty of Merchantability

Plaintiff also asserts that Defendant has violated the implied warranty of merchantibility. Under California law, the implied warranty can be violated if (1) the product is not "fit for the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2); *see Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2315(2)(c), (f)). Defendant argues that a breach of the implied warranty of merchantability can only exist if the product is not fit for its ordinary purpose and the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). However, Defendant does not address the other basis for finding a breach of the implied warranty, non-conformance with "promises or affirmations" on the product packaging.

Plaintiff concedes that Defendant's products are "fit for the ordinary purpose" for which Defendant's products are used. Opp'n at 26–27. However, Plaintiff argues that Defendant's products do not "[c]onform to the promises or affirmations of fact" on the packaging for

1  Defendant's products. When an implied warranty of merchantability cause of action is based

2  solely on whether the product in dispute "[c]onforms to the promises or affirmations of fact" on

3  the packaging of the product, the implied warranty of merchantability claim rises and falls with

4  express warranty claims brought for the same product. *See Hendricks v. StarKist Co.*, 30 F. Supp.

5  3d 917, 933 (N.D. Cal. 2014) (applying the same analysis to the "[c]onforms to the promises or

6  affirmations of fact" analysis as to the express warranty analysis).

7  Therefore, because the Court granted in part and denied in part Plaintiff's express warranty

8  cause of action, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss

9  Plaintiff's claim for the implied warranty of merchantability claim to the same extent as Plaintiff's

10  express warranty cause of action. All dismissals are with prejudice for the same reasons explained

11  for the express warranty cause of action.

12  **D.  Unlawful Prong of the UCL**

13  Under Plaintiff's unlawful prong UCL cause of action, Plaintiff alleges that Defendant has

14  violated three federal regulations. First, Plaintiff alleges that Defendant's products violate

15  § 343(a) because they are "false or misleading in any particular." Second, Plaintiff alleges that

16  Defendant has unlawfully omitted material information that must be disclosed under § 1.21.

17  Third, Plaintiff alleges that Defendant's products contain claims that improperly link

18  cardiovascular disease and fiber. The Court addresses each alleged violation of federal law in

19  turn.

20  **1.  False or Misleading In Any Particular**

21  Under § 343(a), a food is mislabeled if it is "false or misleading in any particular."

22  Defendant argues that the statements on Defendant's products are not false or misleading in any

23  particular for the same reasons that Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of

24  action are not false or misleading. Accordingly, to the extent that the Court found above that

25  Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action survive, Plaintiff's unlawful

26  prong UCL cause of action under § 343(a) also survives. Therefore, the Court GRANTS in part

27  and DENIES in part Defendant's Motion to Dismiss Plaintiff's unlawful prong UCL cause of

28

action based on § 343(a) to the same extent that the Court granted and denied Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action. All dismissals are with prejudice for the same reasons discussed under Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action.

### 2. Omission of Material Facts

Plaintiff alleges that Defendant's products are misbranded under 21 C.F.R. § 1.21 because Defendant's products contain "health and wellness statements" and "fail[] to reveal" the "detrimental health consequences of consuming added sugars" and "the increased risk of serious chronic disease likely to result from the usual consumption of its cereals in the customary manner." SAC ¶¶ 294–95. Under 21 C.F.R. § 1.21, labeling is deemed misleading "if it fails to reveal facts that are . . . [m]aterial in light of other representations made or suggested by statement, word, design, device or any combination thereof." 21 C.F.R. § 1.21.

As noted above in the FAL, CLRA, and fraudulent prong UCL section, the Court held that certain statements in Defendant's products are actionable on the grounds that they emphasize the health benefits of Defendant's cereal. Once Defendant emphasizes that a product is healthy, the fact that the product contains excess added sugar that is unhealthy becomes "[m]aterial in light of other representations" that have been made. 21 C.F.R. § 1.21. Therefore, to the extent that Defendant's products contain statements that misleadingly imply the health benefits of Defendant's products and are not preempted or otherwise non-actionable statements, the Court finds that those statements may give rise to an omission claim.

Defendant's only challenge to Plaintiff's § 1.21 unlawful prong cause of action is that "this regulation imposes no general duty to disclose violations of FDA regulations or health risks associated with consuming a product." Mot. at 23. Defendant's argument is based on *Gitson v. Trader Joe's Co.*, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014), and *Brazil v. Dole Food Co.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013). *Gitson* and *Brazil* stand for the following proposition:

> On its face, [§ 1.21] does not immediately appear to impose a duty to disclose one's own violations of federal labeling regulations on the very labels that violate those regulations. Rather, it appears to impose a duty to disclose facts about the

60

food product itself—either facts that may be needed to render other representations on the label not misleading, or those that may be material in light of how the food is typically consumed.

*Gitson*, 2014 WL 1048640 at *12 (quoting *Brazil*, 2013 WL 5312418 at *10). Thus, in *Brazil* and *Gitson*, the issue was whether there was a duty to disclose the fact that the defendant had engaged in misbranding. In contrast, Plaintiff's theory of the case is that Defendant's statements that Defendant's products are healthy create a duty to disclose the fact that added sugar causes those products to be unhealthy. Plaintiff does not allege that Defendant is required to disclose the fact that the products are misbranded. Thus, unlike *Brazil* and *Gitson*, this is a case where Plaintiff alleges that the Defendant had "a duty to disclose facts about the food product itself," not a case where Plaintiff alleges that Defendant had "a duty to disclose [Defendant's] own violations of federal labeling regulations on the very labels that violate those regulations." *Gitson*, 2014 WL 1048640 at *12. Accordingly, *Brazil* and *Gitson* are inapposite to the instant case.

Therefore, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiff's unlawful prong UCL cause of action based on § 1.21 to the same extent that the Court granted and denied Defendant's Motion to Dismiss Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action. All dismissals are with prejudice for the same reasons discussed under Plaintiff's CLRA, FAL, and fraudulent prong UCL causes of action.

### 3.    Unauthorized Health Claims Linking Whole Grains to Dietary Fiber

The SAC alleges that Defendant's products contain forbidden heart healthy statements that link fiber and cardiovascular disease in violation of 21 U.S.C. § 101.14 and 21 C.F.R. § 101.71(a). Section 101.14 forbids a product's packaging from making health claims that are not explicitly authorized under "Subpart E" of the section of the Code of Federal Regulations concerning food labeling. Subpart E encompasses 21 C.F.R. §§ 101.70–83. There are two relevant provisions under Subpart E that apply to the link between fiber and cardiovascular disease. First, under 21 C.F.R. § 101.71(a), "[h]ealth claims [are] not authorized" that link "[d]ietary fiber and cardiovascular disease." 21 C.F.R. § 101.71(a). Second, under 21 C.F.R. § 101.77, despite § 101.71(a), a food manufacturer may make health claims that "diets low in saturated fat and

61

United States District Court
Northern District of California

cholesterol and high in fruits, vegetables, and grain products that contain fiber 'may' or 'might' reduce the risk of heart disease." 21 C.F.R. § 101.77; *see In re Quaker Oats*, 2012 WL 1034532 at *3 (finding "heart healthy" claims to be explicitly allowed under FDA regulations where the requirements of § 101.77 were satisfied).

In this Court's prior order dismissing Plaintiff's FAC, the Court held that Plaintiff had failed to state a claim as to these heart healthy and fiber statements because Plaintiff had alleged a "bare technical violation" of § 101.71. *See* Prior Order at 24–27. In doing so, this Court relied on *Bruton v. Gerber Products Co.*, 2014 WL 7206633 (N.D. Cal. Dec. 18, 2014), in which this Court had previously held that a plaintiff must meet the "reasonable consumer test" for unlawful prong UCL causes of action where the cause of action at issue is grounded in fraud. *Id.* at *8. However, the Ninth Circuit recently reversed *Bruton* on appeal in part, and held that "the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." *Bruton v. Gerber Prod. Co.*, 2017 WL 3016740, at *2 (9th Cir. July 17, 2017). The Ninth Circuit noted that the "FDA regulations include no requirement that the public be likely to experience deception," and thus, the "reasonable consumer test" is not an element of the FDA regulations. *Id.* Therefore, the Ninth Circuit held that this Court had erred by imposing a "reasonable consumer" test for unlawful prong UCL causes of action predicated on violations of the FDA regulations. As a result, Defendant's argument that Plaintiff was required to plead a violation of the reasonable consumer test rather than a "bare technical violation" fails.

In response, Defendant raises for the first time in its reply an argument that Plaintiff has not satisfied Article III standing by alleging a "bare procedural violation." Reply at 14. The Court need not consider this argument as it is raised for the first time in Defendant's reply brief. *See Ellison Framing, Inc. v. Zurich Am. Ins. Co.*, 805 F. Supp. 2d 1006, 1011 n.1 (E.D. Cal. 2011) (noting that "[t]he court typically cannot consider arguments first raised in reply"). Accordingly, the Court need not address Defendant's newly raised Article III standing argument. Moreover, Defendant seemingly bases this argument on the assumption that Defendant was successful in dismissing Plaintiff's other causes of action. *See* Reply at 14 (arguing that there is no allegation of

62

1  injury "[a]side from [Plaintiff's] allegation that [the products'] labels misled him into believing the

2  Breakfast Products do not contain 'excessive' added sugar, which fails for numerous independent

3  reasons").  However, as noted above, Plaintiff's causes of action have survived, at least to some

4  extent.

5  Therefore, the Court DENIES Defendant's Motion to Dismiss Plaintiff's unlawful prong

6  UCL cause of action as to heart healthy statements.

7  **E.     Unfair Prong of the UCL**

8  Defendant argues that Plaintiff's unfair prong UCL cause of action should be dismissed

9  because it completely overlaps with Plaintiff's fraudulent prong and unlawful prong UCL causes

10  of action and the latter two causes of action should be dismissed.  As this Court held in its prior

11  order dismissing Plaintiff's claims, "courts in this district have held that where the unfair business

12  practices alleged under the unfair prong of the UCL overlap entirely with the business practices

13  addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

14  survive if the claims under the other two prongs of the UCL do not survive."  Prior Order at 35;

15  *see also Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that

16  cause of action under the unfair prong of the UCL did not survive where "the cause of action

17  under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under the FAL,

18  CLRA, and fraudulent prong of the UCL); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at

19  *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing unfair prong

20  UCL cause of action where "plaintiffs' unfair prong claims overlap entirely with their claims of

21  fraud").  However, because this Court held above that Plaintiff's fraudulent and unlawful prong

22  UCL causes of action survive, at least to some extent, Defendant's challenge to Plaintiff's unfair

23  prong UCL cause of action fails.  Defendant does not raise any other basis besides the failure of

24  the fraudulent and unlawful prong UCL causes of action to dismiss Plaintiff's unfair prong UCL

25  cause of action.  Accordingly, the Court GRANTS in part and DENIES in part Defendant's

26  Motion to Dismiss Plaintiff's unfair prong UCL cause of action to the extent that the fraudulent

27  prong and unlawful prong UCL causes of action have been granted and denied.  All dismissals are

28

with prejudice for the reasons described in the sections addressing Plaintiff's fraudulent prong and unlawful prong UCL causes of action.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss. All dismissals are with prejudice.

**IT IS SO ORDERED.**

Dated: August 10, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge