**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN HADLEY, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>KELLOGG SALES COMPANY,<br><br>Defendant. | Case No: 5:16-cv-04955-LHK<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56]<br><br>Judge:   Hon. Lucy H. Koh<br>Date:    TBD<br>Time:    1:30 p.m.<br>Place:   Courtroom 8 – 4th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

REPLY .................................................................................................................................................1

    I.    THE "+HEART HEALTH+" CLAIM VIOLATES 21 C.F.R. § 101.71(a) ............................1

    II.   THE "HEART HEALTHY/WHOLE GRAINS" CLAIM VIOLATES 21 C.F.R. § 101.14(e) .......................................................................................................................2

    III.  THE COURT SHOULD REJECT KELLOGG'S POLICY ARGUMENTS .........................6

# TABLE OF AUTHORITIES

**Cases**

*Bruton v. Gerber Prods. Co.*,
  703 Fed. Appx. 468 (9th Cir. 2017) ................................................................................. 7

*Guttmann v. Nissin Foods (U.S.A.) Co.*,
  2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ................................................................. 7

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................................... 5

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................. 1, 2, 6, 7

*In re Quaker Oats Labeling Litig.*,
  2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ................................................................. 5

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ............................................................................. 5

*Ogden v. Bumble Bee Foods, LLC*,
  2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ................................................................ 3, 4, 5

**Statutes**

21 U.S.C. § 343(r)(1) ................................................................................................................. 2

21 U.S.C. § 343(r)(2)(G)(ii)(I) .................................................................................................. 5

21 U.S.C. § 343(r)(3)(A) ........................................................................................................... 3

21 U.S.C. § 343(r)(3)(B) ........................................................................................................... 3

21 U.S.C. § 343(r)(3)(C) ........................................................................................................... 3

21 U.S.C. § 343(r)(3)(C)(i) ....................................................................................................... 3

21 U.S.C. § 343(r)(3)(C)(ii) ...................................................................................................... 3

21 U.S.C. § 343(r)(3)(C)(iii) ..................................................................................................... 3

21 U.S.C. § 343(r)(3)(C)(iv) ..................................................................................................... 3

21 U.S.C. § 343(r)(3)(D) ........................................................................................................... 3

Food and Drug Modernization Act of 1997, Pub. L. No. 105-115, 111 Stat. 2296 .................. 1

**Other Authorities**

58 Fed. Reg. 2478 (Jan. 6, 1993) ................................................................................................. 7

Guidance for Industry Notification of a Health Claim or Nutrient Content Claim
    Based on an Authoritative Statement of a Scientific Body ................................................. 4

Health Claim Notification for Whole Grain Foods ........................................................................ 4

**Regulations**

21 C.F.R. § 101.14(a)(1) ............................................................................................................ 2, 6

21 C.F.R. § 101.14(d)(2) ................................................................................................................ 6

21 C.F.R. § 101.14(d)(2)(iv) .......................................................................................................... 5

21 C.F.R. § 101.14(e) .................................................................................................................... 6

21 C.F.R. § 101.54 ..................................................................................................................... 1, 2

21 C.F.R. § 101.56 ......................................................................................................................... 2

21 C.F.R. § 101.60 ......................................................................................................................... 2

21 C.F.R. § 101.61 ......................................................................................................................... 2

21 C.F.R. § 101.62 ......................................................................................................................... 2

21 C.F.R. § 101.71(a) ............................................................................................................. 1, 2, 6

21 C.F.R. § 101.75 ................................................................................................................ 1, 2, 5

**REPLY**

Plaintiff's motion detailed why two health claims on Kellogg's Raisin Bran were unauthorized, rendering those products misbranded. Kellogg's opposition is full of superfluous information and argument,[1] but when stripped of the excess, its response to Plaintiff's motion is actually very simple.

First, Kellogg argues that the challenged "+HEART HEALTHY+" claim is not unlawful because it is not a single, unlawful statement, but rather two separate, lawful statements. That argument runs contrary to common sense and the Court's previous finding that the "statement[] directly link[s] cardiovascular health with fiber . . . and thus [is a] health claim[]." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1076 (N.D. Cal. 2017) (Koh, J.). Moreover, 21 C.F.R. § 101.71(a) does not include an exception for when an unauthorized health claim leverages a nutrient content claim.

Second, Kellogg argues that the challenged "HEART HEALTHY / Whole grains" statement is a health claim authorized under the Food and Drug Modernization Act of 1997 ("FDAMA"), Pub. L. No. 105-115, 111 Stat. 2296, rather than an unauthorized health claim. The FDAMA, however, dictates the "exact words" of an authorized health claim, and Kellogg did not use any such claims, nor anything remotely close.

Finally, Kellogg's policy arguments attempt to prejudice the Court but have no bearing on whether the challenged statements violate the law.

Because Kellogg has failed to undermine Plaintiff's showing that the Misbranded Statements violate FDA regulations, the Court should grant Plaintiff's motion.

## I.   THE "+HEART HEALTH+" CLAIM VIOLATES 21 C.F.R. § 101.71(a)

Kellogg argues that Raisin Bran's "+HEART HEALTH+" claim does not violate 21 C.F.R. § 101.71(a), because, rather than "a single unauthorized labeling statement, it actually consists of two separate claims," which are each "expressly authorized," namely a "Heart Health" claim, and a "Good Source of Fiber" nutrient content claim. Opp. at 8-9; *see also id.* at 1 ("The '+Heart Health+' statement consists of two FDA-approved health claims: a 'Heart Healthy' claim (which is expressly authorized by 21 C.F.R. § 101.75); and a 'Good Source of Fiber' claim (which is expressly authorized by 21 C.F.R. § 101.54)."). Kellogg argues that, "[e]ven if these two statements are in close proximity to one another, Plaintiff does not identify a single

---

[1] Plaintiff resists the temptation in this Reply to address these superfluous issues, because they have already been addressed at length in briefing regarding Kellogg's partial summary judgment motion on preemption.

FDA regulation requiring them to be a certain distance apart from one another," so that the "+HEART HEALTH+" claim is permitted. *Id.* at 10.[2]

Kellogg's convoluted defense defies common sense. Contrary to its lawyer argument that "the packaging makes clear[] the '+Heart Health+' claim is not a single labeling statement," *id.*, the Court has already considered the challenged claim and held that the "statement[] directly link[s] cardiovascular health with fiber . . . and thus [is a] health claim[]." *Hadley*, 273 F. Supp. 3d at 1076. Moreover, Kellogg fails to recognize that 21 C.F.R. § 101.71(a) *is* an "FDA regulation requiring" statements about dietary fiber and cardiovascular disease to be "a certain distance apart from one another," *see* Opp. at 10: that is, a distance sufficiently far apart so as not to "directly link cardiovascular health with fiber," *see Hadley*, 273 F. Supp. 3d at 1076; *compare* 21 C.F.R. § 101.71(a).

Kellogg's argument is also contrary to the regulations. First, implied health claims are "those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or *level* of a substance in the food and a disease or health-related condition." 21 C.F.R. § 101.14(a)(1) (emphasis added). Under the regulations, the way manufacturers communicate levels of substances in foods is through nutrient content claims for "excellent source," "good source," "high," "low," etc. *See id.* §§ 101.54 - 101.62. Thus, the regulations expressly contemplate that a nutrient content claim—like "good source of fiber" in the "+HEART HEALTH+" claim—may be part of a health claim if used to imply a relationship between the nutrient and a disease. Likewise, § 101.71(a), prohibiting health claims associating dietary fiber with heart disease, does not contain an exception when the reference to dietary fiber is an otherwise authorized nutrient content claim.

## II.     THE "HEART HEALTHY/WHOLE GRAINS" CLAIM VIOLATES 21 C.F.R. § 101.14(e)

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), a food is misbranded if it bears a nutrient content or health claim, unless the claim is permitted and made in accordance with all requirements. *See* 21 U.S.C. § 343(r)(1); *compare Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("Under the FDA

---

[2] Kellogg claims "Plaintiff does not dispute that Raisin Bran, Raisin Bran Crunch, and Smart Start meet all of the applicable requirements to bear both of these labeling claims," Opp. at 1, but like its summary judgment motion, Kellogg's obfuscates the difference between the CHD Health Claim prescribed by 21 C.F.R. § 101.75, and the additional "heart healthy" language the Class challenges, like "Kellogg's Heart Healthy Selection." As set forth in Plaintiff's response to Kellogg's motion for summary judgment, Plaintiff very much disputes Kellogg's entitlement to use the Challenged Heart Healthy Claims.

regulations, the general rule is that 'nutrient content claims' are not permitted on food labels."). Generally, health claims must be promulgated in regulations to be permissible. *See* 21 U.S.C. §§ 343(r)(3)(A)-(B).

In 1997, however, Congress passed the FDAMA. Relevant here, the FDCA was amended to permit health claims "not authorized by the Secretary in a regulation" if certain requirements are met. *See* 21 U.S.C. § 343(r)(3)(C). Those requirements are: (i) a scientific body must have published an authoritative statement about the relationship between a nutrient and a disease or health-related condition; (ii) a manufacturer must, at least 120 days before using a health claim, submit to the FDA "the exact words used in the claim," as well as support for its validity; (iii) the claim and food must be in compliance with other requirements; and (iv) the claim must be "stated in a manner so that the claim is an accurate representation of the authoritative statement," and "so that the claim enables the public to comprehend the information provided in the claim and to understand the relative significance of such information in the context of a total daily diet." *See id.* §§ 343(r)(3)(C)(i)-(iv). *Compare Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *8-9 (N.D. Cal. Jan. 2, 2014) (describing FDAMA petition process). If those criteria are satisfied, then "[a] claim submitted under the requirements of clause (C) may be made until" the claim is later prohibited, modified, or found by a district court not to have complied with clause (C) in the petition process. 21 U.S.C. § 343(r)(3)(D).

Conceding as it must that the FDCA's implementing regulations do not allow health claims linking whole grains and cardiovascular disease, Kellogg asserts that its health claim linking whole grains and cardiovascular disease, "HEART HEALTHY / Whole Grains can help support a heart-healthy lifestyle," is instead an "authorized FDAMA claim." Opp. at 11 (header capitalization and emphasis disregarded). Kellogg's opposition identifies two FDAMA health claims that mention both "whole grain" and "heart disease." *See id.* at 5 & Smith Decl. Exs. 3-4. But Kellogg plainly did not use either:[3]

///
///
///
///

---

[3] Accordingly, Kellogg's contention that "claims authorized by the FDAMA are just as valid . . . as health claims authorized by formal FDA regulations," Opp. at 11, is beside the point: Kellogg did not use such a claim that was authorized by anything.

| Kellogg's Claim | FDAMA Health Claim Notification for Whole Grain Foods (July 8, 1999) | FDAMA Health Claim Notification for Whole Grain Foods with Moderate Fat Content (Dec. 9, 2003) |
|---|---|---|
| "HEART HEALTHY / Whole grains can support a heart-healthy lifestyle." | "Diets rich in whole grain foods and other plant foods and low in total fat, saturated fat, and cholesterol, may help reduce the risk of heart disease and certain cancers." | "Diets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease." |

Recognizing this, Kellogg argues that its failure to "precisely track the language approved by the FDA . . . does not render" its "Heart Healthy/Whole Grains" claim "an unauthorized health claim" because, when "read alongside the FDA-compliant disclaimer language" to which its "HEART HEALTHY/Whole Grains" claim refers, the "message is substantively identical to an approved FDAMA claim," *see* Opp. at 11-12. Kellogg provides no authority that manufacturers may deviate from the "exact words" of a prescribed FDAMA claim whenever they purport to believe unapproved language conveys a "substantively identical" message, and the contention is contrary to the statute and the materials on which Kellogg itself relies.

In "Guidance for Industry Notification of a Health Claim or Nutrient Content Claim Based on an Authoritative Statement of a Scientific Body," for example, the FDA notes that—just as required in the statute—an FDAMA application must set forth "the exact words" of the proposed claim. Smith Decl. Ex. 2 at 2, 3. Then, in "Health Claim Notification for Whole Grain Foods," the FDA quotes the exact words that may be used, stating "manufacturers may use the following claim on the label and in labeling of any product that meets the eligibility criteria described in the notification: 'Diets rich in whole grain foods and other plant foods and low in total fat, saturated fat, and cholesterol, may help reduce the risk of heart disease and certain cancers.'" Smith Decl. Ex. 3 at 2.

In *Ogden*, the court rejected an argument similar to Kellogg's. There, Bumble Bee argued that an "ONC Nutrient Content Claim Notification" under the FDAMA "rendered its own Omega-3 statements lawful," but the court was "not persuaded" because "[t]he language of the ONC Nutrient Content Claim Notification [wa]s materially different from the Omega-3 statements that appear on Bumble Bee's products," *Ogden*, 2014 WL 27527, at *9. Moreover, Bumble Bee "offer[ed] no support for the proposition that a food manufacturer may rely on a Section 343(r)(2)(G) notification submitted by one manufacturer to place a materially different nutrient content claim on its own product labels," and "such a conclusion would appear

to be inconsistent with the plain language of Section 343(r)(2)(G), which requires a party seeking authorization of a novel nutrient content claim to 'include the *exact* words used in the claim' when submitting the nutrient content claim notification." *Id.* (emphasis in original) (citing 21 U.S.C. § 343(r)(2)(G)(ii)(I)).[4]

Kellogg's assertion that, in making its unauthorized "HEART HEALTHY / Whole Grains" health claim, it accidentally stumbled into an authorized FDAMA claim because its novel language supposedly sends a "substantively identical" message, is also wrong. *See* Opp. at 11-12.[5] Kellogg's argument relies on the inclusion in the "HEART HEALTHY / Whole Grains" claim of an asterisk linked to the CHD Health Claim prescribed under 21 C.F.R. § 101.75, *i.e.*, "while many factors affect heart disease, diets low in saturated fat and cholesterol may reduce the risk of heart disease."[6] According to Kellogg, when combined, these statements "communicate[] that many factors affect the risk of heart disease, but that consumption of whole grains as part of a diet low in saturated fat and cholesterol may reduce the risk of heart disease." Opp.

---

[4] This is the statute setting forth the FDAMA procedure for petitioning the FDA to use novel nutrient content claims, but it is the same procedure that is set forth with respect to health claims in § 343(r)(3)(C).

[5] Kellogg twice misrepresents *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017) as *holding* that "the FDA allows claims that draw a connection between whole grains and the risk of heart disease." *See* Opp. at 2, 11 (quoting 255 F. Supp. 3d at 959). However, the language Kellogg quotes was just Post's argument: "**Post first argues** that the challenged health claims relating to heart disease at paragraph 299 c.-n. are impermissible, as the FDA allows claims that draw a connection between whole grains and the risk of heart disease." 255 F. Supp. 3d at 959 (emphasis added). The court, however, never addressed Post's argument; rather, the plaintiffs withdrew certain allegations and the court gave them leave to amend to plead how the "statements might violate some other regulations." *See id.* at 959 & n.24.

[6] Kellogg admits there is "intervening material" between the challenged claim and the CHD Health Claim prescribed under 21 C.F.R. § 101.75, but asserts that "Plaintiff does not argue that the use of a symbol to direct the reader to the text of the disclaimer statement" (the term Kellogg uses for the CHD Health Claim) "renders the '+Heart Health+' claim unlawful." Opp. at 9 n.6. That is wrong. Plaintiff's Complaint alleged Raisin Bran was misbranded precisely for this reason. *See* Dkt. No. 1, Compl. ¶¶ 296-97. Plaintiff did not advance this as a basis for summary judgment because the Court earlier dismissed the claim with prejudice as waived, and Plaintiff did not want to be in contempt of the Court's Order. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017) (Koh, J.). Kellogg has now put the claim back at issue, and is wrong on the law, which requires that "[a]ll information required to be in the [health] claim appears in one place without other intervening material, *except that the principal display panel of the label . . . may bear [a] reference statement*" to "the location of the labeling containing the health claim," 21 C.F.R. § 101.14(d)(2)(iv) (emphasis added). Kellogg's reliance on *In re Quaker Oats Labeling Litig.*, 2012 WL 1034532 (N.D. Cal. Mar. 28, 2012), is misplaced. *See* Opp. at 9 n.6. Because the *Quaker* decision noted that "[t]he regulation expressly provides for a reference statement directing the consumer to further information located elsewhere on the packaging," 2012 WL 1034532, at *3, it could only have been addressing claims on the *principal display panel*, not claims, like Kellogg's, on the back panel, where intervening material is never allowed.

at 11-12 (citing Ex. 6). This message, though, is missing two elements that are part of the FDAMA claims: that diets must be "rich" in whole grains; and that diets must *also* be "rich" in "other plant foods." *See* Smith Decl. Ex. 3 at 2; *id.* Ex. 4 at 1.

Moreover, even if Kellogg had used an FDAMA-approved health claim, any additional language constituting a health claim—like "Heart Healthy" or "Whole grains can help support a heart-healthy lifestyle"—would be unauthorized. Such claims would not be directly authorized either by the FDAMA or the FDCA's implementing regulations, and thus prohibited health claims. *See* 21 C.F.R. § 101.14(e). Then, even if, under 21 C.F.R. § 101.14(d)(2), such claims may be made, under some circumstances, based on health claims the FDA has formally promulgated *in regulations*, that section expressly does not apply to claims based on health claims permitted under the FDAMA process. *See id.* ("When FDA has *adopted a regulation in subpart E of this part* providing for a health claim, firms may make claims based on the regulation in subpart E of this part . . . ." (emphasis added)).

Finally, Kellogg notes that the "HEART HEALHTY / Whole grains" claim "does not mention fiber at all," such that it does not violate 21 C.F.R. § 101.71(a). *See* Opp. at 13 (emphasis disregarded). However, health claims can be made "by implication," 21 C.F.R. § 101.14(a)(1). The Court previously held that statements such as this "identify fiber as a nutrient in Defendant's product or imply the presence of fiber through statements about whole grains." *Hadley*, 273 F. Supp. 3d at 1078. Thus, while this was not the primary basis for Plaintiff's argument that the statement is an unlawful health claim, as Plaintiff argued, "*[i]nasmuch as* the statements' references to whole grains imply the presence of fiber, making any statement linking '[d]ietary fiber and cardiovascular disease' is also 'not authorized,'" under § 101.71(a). *See* Mot. at 7. Section 101.71(a) does not contain an exception for implying, rather than stating a link between fiber and heart disease expressly.

### III. THE COURT SHOULD REJECT KELLOGG'S POLICY ARGUMENTS

Kellogg argues that the Court should allow its non-compliance with FDA regulations to slide in favor of supposed policies encouraging the consumption of its cereal. It argues that "Plaintiff's attempt to hold Kellogg liable for using" statements in violation of the regulations "is completely at odds with their purpose" of allowing manufacturers to make health claims so as to encourage consumers to eat healthy foods. Opp. at 2. Asserting that its unauthorized health claims are "substantively identical" to authorized health claims it

did not use, Kellogg argues that "Plaintiff offers no evidence" its statements are "likely to deceive reasonable consumers or that Kellogg acted with deceptive intent." Opp. at 12. "Rather than protecting consumers from deception," Kellogg argues, holding it liable for misbranding "would deter food manufacturers like Kellogg from encouraging consumers to make healthy food choices for fear of lawsuits from 'self-appointed inspector general[s] roving the aisles of our supermarkets.'" *Id.* (quoting *Guttmann v. Nissin Foods (U.S.A.) Co.*, 2015 WL 4881073, at *3 (N.D. Cal. Aug. 14, 2015)). Kellogg claims "[t]hat is plainly not the result the FDA intended." *Id.*

These arguments are inflammatory, an attempt to prejudice the Court, and should be disregarded. As the Court has made clear, the reasonable consumer standard is not part of the Class's misbranding claims. *See Hadley*, 273 F. Supp. 3d at 1098 (citing *Bruton v. Gerber Prods. Co.*, 703 Fed. Appx. 468, 472 (9th Cir. 2017)). Nevertheless, the avoidance of consumer confusion is exactly why the FDA's implementing regulations exist. "Congress enacted the health claims provisions of the 1990 amendments" to the FDCA "to help U.S. consumers maintain healthy dietary practices and to protect these consumers from unfounded health claims. . . . [T]he statement of the House Floor Managers noted that 'There is a great potential for defrauding consumers if food is sold that contains inaccurate or unsupportable health claims.'" 58 Fed. Reg. 2478, 2478 (Jan. 6, 1993) (citation omitted). Kellogg's suggestion that federal policy *encourages* its violations is thus as much nonsense as its erroneous premise that the challenged cereals are healthy.

Dated: June 21, 2019                              Respectfully submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

***Class Counsel***