**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:          (312) 222-9350
Facsimile:     (312) 527-0484

**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street Suite 3600
Los Angeles, CA 90071-2054
Phone:          (213) 239-5100
Facsimile:     (213) 239-5199

Attorneys for Defendant
Kellogg Sales Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HADLEY, on behalf of himself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> KELLOGG SALES COMPANY <br><br> Defendant. | Case No. 5:16-cv-04955 LHK <br><br> **REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date:      August 1, 2019 <br> Hearing Time:      1:30 p.m. <br> Judge:          Hon. Lucy H. Koh <br> Courtroom:      8 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    Plaintiff's Claims Premised on the "Heart Healthy" Statement Are Expressly Preempted .................................................................................................................2

        A.    The Kellogg Heart Health Claims Are Expressly Authorized by Federal Law ..........2

        B.    The Court's Earlier Rulings Do Not Preclude Kellogg From Asserting Preemption...................................................................................................8

        C.    Alternatively, This Court Can — and Should — Reconsider Its Earlier Order.........11

    II.    The Court Should Grant Summary Judgment on Plaintiff's Punitive Damages Claim .........14

CONCLUSION.....................................................................................................................15

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agricola Baja Best, S. De R.L. de C.V. v. Harris Moran Seed Co.*,
   44 F. Supp. 3d 974 (S.D. Cal. 2014) ................................................................8, 9

*Alcarmen v. J.P. Morgan Chase Bank*,
   No. 13-1575, 2014 WL 3368647 (N.D. Cal. July 8, 2014) ................................9

*Askins v. U.S. Dep't of Homeland Security*,
   899 F.3d 1035 (9th Cir. 2018) .........................................................................13

*Barboza v. Cal. Ass'n of Prof. Firefighters*,
   651 F.3d 1073 (9th Cir. 2011) ...........................................................................7

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005)...........................................................................................3

*Berroyer v. Hertz*,
   672 F.2d 334 (3d Cir. 1982)..............................................................................14

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 505 (1992)...........................................................................................3

*City of Los Angeles v. Santa Monica Baykeeper*,
   254 F.3d 882 (9th Cir. 2000) ...........................................................................13

*Coen Co. v. Pan Int'l, Ltd.*,
   307 F.R.D. 498 (N.D. Cal. 2015)......................................................................11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   709 F. App'x 440 (9th Cir. 2017) .....................................................................10

*Dachauer v. NBTY, Inc.*,
   913 F.3d 844 (9th Cir. 2019) .............................................................................7

*De La Paz v. Bayer Healthcare LLC*,
   159 F. Supp. 3d 1085 (N.D. Cal. 2016) .............................................................4

*Dreith v. Nu Image, Inc.*,
   648 F.3d 779 (9th Cir. 2011) ...........................................................................11

*Figueroa v. Berryhill*,
   No. 17-26, 2018 WL 2176386 (C.D. Cal. May 10, 2018) ...............................13

*Fornoff v. Parke Davis & Co.*,
   434 N.E.2d 793 (Ill. Ct. App. 1982) ................................................................15

*Gustavson v. Wrigley Sales Co.*,
No. 12-1861, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014)................................................................7

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................................1, 6, 8

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ......................................................................4, 10

*Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*,
679 F.2d 803 (9th Cir. 1982) ......................................................................................9

*Hernandez v. Creative Concepts, Inc.*,
295 F.R.D. 500 (D. Nev. 2013)....................................................................................9

*In re Gilman*,
887 F.3d 956 (9th Cir. 2018) ......................................................................................8

*In re Quaker Oats Labeling Litig.*,
No. 10-502, 2012 WL 1034532 (N.D. Cal. Mar. 28, 2012) ............................................3, 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
MDL No. 2672, 2019 WL 693224 (N.D. Cal. Feb. 19, 2019).............................................15

*In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ......................................................................15

*Kroessler v. CVS Health Corp.*,
No. 19-277, 2019 WL 2164054 (S.D. Cal. May 16, 2019) ................................................7

*Leicester v. Warner Bros.*,
232 F.3d 1212 (9th Cir. 2000) ...................................................................................12

*Leslie Salt Co. v. United States*,
55 F.3d 1388 (9th Cir. 1995) ....................................................................................13

*Magana v. Commonwealth of Northern Mariana Islands*,
107 F.3d 1436 (9th Cir. 1997) .....................................................................................9

*Meaunrit v. ConAgra Foods, Inc.*,
No. 09-2220, 2010 WL 2867393 (N.D. Cal. July 20, 2010) ..............................................4

*Merck Sharp & Dohme Corp. v. Albrecht*,
139 S. Ct. 1668 (2019)................................................................................................4

*Moofly Prods., LLC v. Favila*,
682 F. App'x 584 (9th Cir. 2007) ..................................................................................9

*Nemphos v. Nestle Waters N. Am., Inc.*,
   775 F.3d 616 (4th Cir. 2015) ................................................................................12

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ...................................................................................8

*Pearson v. Dennison*,
   353 F.2d 24 (9th Cir. 1965) ...................................................................................13

*Pena v. Seguros La Comercial, S.A.*,
   770 F.2d 811 (9th Cir. 1985) ...................................................................................8

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014) ...............................................................................13

*Perry v. Brown*,
   667 F.3d 1078 (9th Cir. 2012) ...............................................................................11

*PG&E Co. v. Superior Court*,
   24 Cal. App. 4th 1150 (2018) ................................................................................14

*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*,
   754 F.3d 754 (9th Cir. 2014) .................................................................................11

*Reese v. Odwalla, Inc.*,
   30 F. Supp. 3d 935 (N.D. Cal. 2014) .....................................................................12

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ...................................................................................2

*Richards v. Michelin Tire Corp.*,
   21 F.3d 1048 (11th Cir. 1994) ...............................................................................15

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008)..................................................................................................3

*Roybal v. Equifax*,
   No. 05-1207, 2008 WL 4532447 (E.D. Cal. Oct. 9, 2008)....................................15

*Sadid v. Vailas*,
   943 F. Supp. 2d 1125 (D. Idaho 2013) .....................................................................9

*Satcher v. Honda Motor Co.*,
   52 F.3d 1311 (5th Cir. 1995) .............................................................................2, 14

*Semtek International, Inc. v. Lockheed Martin Corp.*,
   531 U.S. 497 (2001)..................................................................................................9

*Smith v. Cobb*,
   No. 15-176, 2017 WL 2350443 (S.D. Cal. May 30, 2017) ....................................................9

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2002) ...................................................................................................9

*Tomaselli v. Transamerica Ins. Co.*,
   25 Cal. App. 4th 1269 (1994) ...............................................................................................14

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) .................................................................................................12

*United States v. Houser*,
   804 F.2d 565 (9th Cir. 1986) .................................................................................................11

*United States v. Signed Personal Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ...............................................................................................8

*United States v. Smith*,
   389 F.3d 944 (9th Cir. 2004) .................................................................................................13

*Willis v. Buffalo Pumps Inc.*,
   34 F. Supp. 3d 1117 (S.D. Cal. 2014)....................................................................................15

*Yan v. Gen. Pot, Inc.*,
   78 F. Supp. 3d 997 (N.D. Cal. 2015) .....................................................................................11

**STATUTES**

21 U.S.C. § 343-1 ....................................................................................................................12

Cal. Civ. Code § 3294(a) ..........................................................................................................14

**OTHER AUTHORITIES**

21 C.F.R. § 1.21 ....................................................................................................................2, 7

21 C.F.R. § 101.14 ..............................................................................................................*passim*

21 C.F.R. § 101.21 ......................................................................................................................7

21 C.F.R. § 101.54 ................................................................................................................3, 11

21 C.F.R. § 101.75 ..............................................................................................................*passim*

21 C.F.R. § 101.77 ................................................................................................................1, 8

58 Fed. Reg. 2462 (Jan. 6, 1993) ............................................................................................12

58 Fed. Reg. 2478 (Jan. 6, 1993) ..........................................................................................5, 6

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

79 Fed. Reg. 11880 (Mar. 3, 2014).............................................................................................14

PROSSER & KEETON ON TORTS, § 36 (5th ed. 1984) ...................................................................15

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# INTRODUCTION

The "Heart Healthy" statement that appears on the majority of the labeling of Raisin Bran, Raisin Bran Crunch, and Smart Start complies to the letter with the relevant FDA regulation, 21 C.F.R. § 101.75. This Court has never held otherwise; in fact, it has never addressed the effect of this regulation at all. Plaintiff nonetheless claims that this Court's ruling on preemption at the motion to dismiss stage, and its subsequent decision to "strike" Kellogg's preemption defense, precludes Kellogg from raising a preemption defense at this juncture. Plaintiff is wrong, and this Court should not reward his gamesmanship.

This Court's ruling that Kellogg had not "satisfied its burden of demonstrating preemption as to the Heart Healthy statements *for purposes of the instant motion to dismiss*" plainly does not preclude Kellogg from raising a preemption defense at the summary judgment stage. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1076-77 (N.D. Cal. 2017) (emphasis added). Nor does the Court's determination that Kellogg had not satisfied its burden of establishing preemption under 21 C.F.R. § 101.77 — a regulation Kellogg never invoked — preclude the Court from determining now that Kellogg's "Heart Healthy" labeling complies with 21 C.F.R. § 101.75. And even if the Court "struck" Kellogg's preemption defense, nothing — including the law of the case doctrine, which does not prevent district courts from reconsidering their own interlocutory orders — bars it from revisiting that decision now. Refusing to consider Kellogg's preemption argument would defy the Ninth Circuit's admonition to resolve disputes on their merits, give Plaintiff a tremendous windfall, and undermine nationwide uniformity in food labeling standards. Even if Plaintiff is correct that the Court must revisit its earlier Order to consider Kellogg's preemption defense, it is hard to imagine a more appropriate time to do so.

On the merits, Plaintiff's arguments rely on the faulty premise that the "Heart Healthy" and "+Heart Health+" statements on the challenged products (the "Kellogg Heart Health Claims") must be viewed in isolation from the associated explanatory text, which discloses the link between diets low in saturated fat and cholesterol and decreased risk of heart disease. Plaintiff argues nonsensically that the FDA regulation expressly permitting "health claims" regarding "dietary saturated fat and cholesterol and risk of coronary heart disease" governs the explanatory disclosure, but not the "Heart Healthy" call-out itself. Contrary to Plaintiff's contention, the Kellogg Heart Health Claims — which must be viewed in tandem with the associated disclosure — are plainly permitted by 21 C.F.R. § 101.75, which expressly authorizes health

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

claims associating foods low in saturated fat and cholesterol with decreased risk of heart disease.

Moreover, the Kellogg Heart Health Claims comply with the additional technical requirements of 21 C.F.R. § 101.14(d)(2). Plaintiff's assertion that the FDA only permits manufacturers to associate certain *substances* (*i.e.*, cholesterol and saturated fat) with cardiovascular disease risk is untenable, as it would mean that no manufacturer could ever label a food as "Heart Healthy." Plaintiff's argument that the Kellogg Heart Health Claims are not "complete, truthful, and not misleading" because of the presence of added sugar must be rejected as an impermissible end-run around the FDA's decision *not* to treat sugar as a "disqualifying" nutrient for purposes of making such health claims. And to the extent Plaintiff suggests that the Kellogg Heart Health Claims run afoul of 21 C.F.R. § 1.21 because they fail to disclose that the challenged products actually *increase* the risk of heart disease, he is mistaken. No court has ever applied this regulation to proscribe a health claim — let alone one that is *specifically authorized* by the FDA regulations. This Court should not be the first.

Finally, this Court should grant summary judgment with respect to Plaintiff's punitive damages claim. Although Plaintiff claims to have adduced evidence of a "scientific consensus" about the purportedly harmful effects of added sugar consumption, he ignores evidence — including the pronouncements of the FDA and the admissions of his own expert — demonstrating that this is a minority viewpoint. Even if Plaintiff has put forth evidence sufficient to establish a genuine scientific dispute about the effects of consuming added sugar, that does not permit him to seek punitive damages; to the contrary, Kellogg cannot be liable for punitive damages when there is a "genuine dispute in the scientific community" about the safety of its products. *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995). That, coupled with undisputed evidence that Kellogg complies with all applicable FDA regulations governing the labeling of the challenged products, precludes Plaintiff from seeking punitive damages.

## **ARGUMENT**

I.  **Plaintiff's Claims Premised on the "Heart Healthy" Statement Are Expressly Preempted.**

A.  **The Kellogg Heart Health Claims Are Expressly Authorized by Federal Law.**

Plaintiff does not dispute that the preemption analysis in this case hinges on "whether the challenged statements are authorized by the FDA's regulations or other pronouncements of similar legal effect." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Plaintiff also does not dispute that

the FDA permits food manufacturers to make health claims that associate diets low in saturated fat and cholesterol with reduced risk of cardiovascular disease and that the Kellogg Heart Health Claims are accompanied by disclaimer language that tracks the FDA's model claim.  *See* 21 C.F.R. § 101.75.  And Plaintiff concedes that Raisin Bran, Raisin Bran Crunch, and Smart Start cereals are "low" in fat, saturated fat, and cholesterol (as required by 21 C.F.R. § 101.75(c)(2)(ii)), do not contain "disqualifying levels" of total fat, saturated fat, cholesterol, or sodium (as required by 21 C.F.R. § 101.14(e)(3)), and contain at least 10% of the daily reference value of fiber and other nutrients (as required by 21 C.F.R. § 101.14(e)(6)).

Kellogg's compliance with this regulation makes Raisin Bran, Raisin Bran Crunch, and Smart Start eligible to bear a "Heart Healthy" claim, and any claims premised on the use of the statement "Heart Healthy" are accordingly preempted.  *See In re Quaker Oats Labeling Litig.*, No. 10-502, 2012 WL 1034532, at *3 (N.D. Cal. Mar. 28, 2012) (holding that analogous "claims arising from the use of the 'Heart Healthy' statement and heart images" were preempted because they were "expressly permitted under FDA regulations").  Plaintiff's challenge to the "+Heart Health+" statement is also preempted: because Raisin Bran and Raisin Bran Crunch both contain more than 10% of the daily reference value of dietary fiber and less than 3 grams of total fat per serving, they are eligible to bear a "Good Source of Fiber" claim in addition to a "Heart Healthy" claim.  *See* 21 C.F.R. § 101.54.

Unable to establish that Kellogg's labeling fails to comply with 21 C.F.R. §§ 101.54 and 101.75, Plaintiff attempts to assert that Kellogg has violated *other* regulations and that not all of his claims are preempted.  These arguments are unpersuasive:

First, Plaintiff claims that preemption does not apply to his breach-of-warranty claims because a warranty is not a requirement "imposed under State law."  ECF No. 282 ("Opp'n") at 11.  But the Supreme Court has expressly held that an analogous provision of the FDCA preempts state-law implied warranty claims because they effectively impose requirements that are "different from, or in addition to, federal requirements" imposed by the FDA.[1]  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008).  Courts have specifically held that breach-of-warranty claims are preempted when they would conflict with the FDA's express approval of a particular labeling statement, such as the FDA's approval of the "Heart Healthy"

---

[1] In contrast, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 505 (1992) and *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) did not implicate the preemptive effect of FDA regulations.

statement at issue here.  *See De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1098 (N.D. Cal. 2016) ("Any claim for breach of express warranty based on those statements would require a determination that [the challenged product] did not conform to the descriptions approved by the FDA.  Such claims are preempted.").  And courts have held that FDA food labeling regulations preempt breach-of-warranty claims in similar false advertising cases.  *See, e.g.*, *Meaunrit v. ConAgra Foods, Inc.*, No. 09-2220, 2010 WL 2867393, at *5-6 (N.D. Cal. July 20, 2010) (holding breach of warranty claims were preempted insofar as they "seek to impose different requirements on labeling" than those imposed by federal law).

Second, Plaintiff claims that preemption does not apply to the extent his claims are premised on non-label food advertising.  But as the Court is aware, Plaintiff's claims are premised on the theory that consumers were deceived by, and paid a price premium due to, Kellogg's *labeling statements*.  His experts attempt to assess price premium damages associated with the *challenged statements* — not with any supposed "non-label advertising."  Indeed, in addressing Kellogg's lack-of-exposure argument at class certification, the Court held that Plaintiff could establish class-wide exposure only because he "defined the Raisin Bran subclass to include only the persons in California who bought Raisin Bran or Raisin Bran Crunch in a package *stating 'heart healthy*.'"  *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1097 (N.D. Cal. 2018) (internal quotation marks omitted) (emphasis in original).  It is accordingly beside the point that non-label food advertising is not subject to preemption.

Third, Plaintiff attempts to manufacture "disputed issues of fact" with respect to whether its labeling complies with the FDA regulations.  Opp'n at 12.  As a threshold matter, the Supreme Court has made clear that FDA preemption is not a jury question, even if it turns on "contested brute facts."  *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1680 (2019).  The Court accordingly can — and should — resolve any "subsidiary factual disputes that are part and parcel of the broader legal question."  *Id.* (citation and internal quotation marks omitted).  More importantly, however, the "disputed issues of fact" Plaintiff identifies are not factual disputes at all; instead, they are arguments about how this Court should apply the relevant regulations, and they are uniformly misguided.

Here, the Kellogg Heart Health Claims are expressly authorized by 21 C.F.R. § 101.75, which permits food manufacturers to make claims about the relationship between "dietary saturated fat and cholesterol" and the "risk of coronary heart disease" in qualifying food products.  Plaintiff does not — and

cannot — dispute that the challenged products comply with this regulation.  Rather, in an attempt to sidestep this insurmountable hurdle, Plaintiff argues erroneously that the Kellogg Heart Health Claims on the challenged products (which Plaintiff terms the "Challenged Heart Health Claims") must be viewed in isolation from the FDA-approved model health claim on the packaging of Kellogg's cereals (which Plaintiff terms the "CHD Health Claim").  Plaintiff asserts that, while the CHD Health Claim is expressly covered and permitted by 21 C.F.R. § 101.75, the Challenged Heart Health Claims are instead subject to (and run afoul of) 21 C.F.R. § 101.14, the general regulation governing health claims.

Plaintiff's reading of these regulations is misguided.  The FDA has anticipated the precise argument Plaintiff raises, and it has made clear that manufacturers can use the term "heart" on food labeling "where this term is placed on a product that qualifies for an express health claim on cardiovascular disease," so long as "such a claim is appropriately included *elsewhere in the labeling*."  58 Fed. Reg. 2478, 2483 (Jan. 6, 1993) (emphasis added); *see also* 21 C.F.R. § 101.14(d)(2)(iv) ("[W]here any graphic material (e.g., a heart symbol) constituting an explicit or implied health claim appears on the label or labeling, the reference statement or the complete claim shall appear in immediate proximity to such graphic material.").[2]  That is exactly what Kellogg did in associating the "Hearty Healthy" call-out with the FDA-approved model claim.

Consistent with the FDA's guidance, other courts have permitted manufacturers to use the claim "Heart Healthy," so long as it is accompanied by other language that tracks the FDA-approved "heart health" claims.  *See In re Quaker Oats*, 2012 WL 1034532, at *3 (noting that the term "Heart Healthy" was "expressly permitted" by the FDA).  Indeed, Plaintiff's own regression model — which incorporates data for *dozens* of other cereals bearing a "Heart Healthy" claim — underscores that food manufacturers universally understand this to be an FDA-approved claim.[3]  *See* Ex. 40 (list of cereals used in Colin Weir's regression noting presence of "Heart Health").  In contrast, Plaintiff's position that the FDA *only* allows manufacturers to use the detailed model health claim, but *not* the term "Heart Healthy," is unsupported.[4]

---

[2] Plaintiff himself concedes that, because the "[Heart Healthy] statements and their corresponding heart vignettes appear in proximity to the CHD Health Claim, they are implied health claims." Opp'n at 14.

[3] Unless otherwise stated, all exhibits are attached to the Omnibus Declaration appearing at ECF No. 268.

[4] Further, as Plaintiff acknowledges, 21 C.F.R. § 101.14(e) allows manufacturers to make health claims "based on" a claim authorized elsewhere in the regulations — including 21 C.F.R. § 101.75(e).

Doubling down on this faulty premise regarding the inapplicability of 21 C.F.R. § 101.75 to the Kellogg Heart Health Claims, Plaintiff also challenges these claims based on two sub-provisions of 21 C.F.R. § 101.14 — neither of which Kellogg has even remotely violated:

*21 C.F.R. § 101.14(d)(2)(ii).*  Plaintiff argues that the Kellogg Heart Health Claims violate 21 C.F.R. § 101.14(d)(2)(ii) because they are not "limited to describing the value that ingestion . . . of the substance, as part of a total dietary pattern, may have on a particular disease or health-related condition." Opp'n at 16.  But the labels clearly do so: they represent that Raisin Bran, Raisin Bran Crunch, and Smart Start are "Heart Healthy" because they are low in cholesterol and saturated fat, which is consistent with the FDA's expressed conclusion that "diets low in saturated fat and cholesterol may reduce the risk of [heart] disease."  21 C.F.R. § 101.75(e)(1).  As Plaintiff admits, the FDA has made clear that the "substance" associated with the health claim may be *either* a "specific food" (such as Raisin Bran) or a "component of food" (such as saturated fat or cholesterol).  21 C.F.R. § 101.14(a)(2).  If there were any doubt about the meaning of the term "substance" in this regulation, the FDA has resolved it.  *See* 58 Fed. Reg. at 2480 (explaining that a health claim can associate a food with a health-related condition, so long as "a consumer could reasonably interpret a claim about the relationship of a food to a disease or health-related condition to be an implied claim about a substance in that food").

*21 C.F.R. § 101.14(d)(2)(iii).*  Plaintiff also argues that the Kellogg Heart Health Claims violate the FDA's requirement that health claims must be "complete, truthful, and not misleading."  *See* Opp'n at 15.  The unspoken premise of this argument is that these health claims are misleading because Kellogg's cereals are not "Heart Healthy" because of their purportedly "excessive" added sugar content.  This argument is a transparent attempt to circumvent the FDA's decision *not* to treat added sugar as a "disqualifying" nutrient that bars manufacturers from including health claims on their products.[5]  This Court has previously relied on this language in determining that Plaintiff's claims "are preempted to the extent they are based on . . . health claims that are allegedly misleading because of the presence of added sugar."  *Hadley v. Kellogg Sales Co.,* 273 F. Supp. 3d 1052, 1073 (N.D. Cal. 2017).  And to the extent

---

[5] *See* 58 Fed. Reg. at 2491 (noting that the FDA found "no sound basis" for treating added sugar as a "disqualifying" nutrient); Ex. 15 ("Fortin Report") at 7 ("The FDA has several times reviewed whether sugar should be a disqualifying nutrient.  Each time the FDA has found the totality of the scientific evidence did not support placing sugar as a disqualifying nutrient[.]").

1    there is any conflict between the general requirements of 21 C.F.R. § 101.14(d)(2)(iii) and the specific

2    claims authorized by 21 C.F.R. § 101.75, the Court should resolve that conflict in favor of the more specific

3    regulation.  *See generally Barboza v. Cal. Ass'n of Prof. Firefighters*, 651 F.3d 1073, 1079 (9th Cir. 2011).

4         <u>Fourth</u>, Plaintiff asserts that the Kellogg Heart Health Claims violate a *separate* regulation, 21

5    C.F.R. § 1.21, because they fail to reveal "facts that are . . . material in light of other representations" —

6    namely, the health risks purportedly associated with added sugar.  Opp'n at 16-17.  But when a regulation

7    specifically permits a manufacturer to make a labeling claim and prescribes what information it must

8    include in that labeling claim, a plaintiff cannot claim that it unlawfully violated 21 C.F.R. § 101.21 by

9    omitting supposedly "material" information.  *See, e.g.*, *Gustavson v. Wrigley Sales Co.*, No. 12-1861, 2014

10   WL 60197, at *8 (N.D. Cal. Jan. 7, 2014) (Koh, J.) (holding that omission of statement "not a low calorie

11   food" did not violate 21 C.F.R. § 1.21 when the FDA specifically exempted manufacturers from including

12   this disclaimer).  It would be particularly inappropriate to apply 21 C.F.R. § 101.21 here, as the basis for

13   Plaintiff's claim — Kellogg's failure to disclose the purported health risks associated with "excessive"

14   added sugar consumption — defies the FDA's conclusion that there *are no such health risks*.

15        Plaintiff's reliance on *Dachauer v. NBTY, Inc.*, 913 F.3d 844 (9th Cir. 2019), is misplaced.

16   *Dachauer* did not involve health claims on food products, which must be "based on" health claims

17   expressly authorized by the FDA.  *See* 21 C.F.R. § 101.14(e).  Instead, it involved a structure/function

18   claim on a dietary supplement, which does *not* require FDA pre-approval.  And because structure/function

19   claims do not require the FDA's blessing, a manufacturer cannot invoke preemption to defend itself against

20   a claim that the supplement "increase[s] the risk of all-cause mortality."  *Dachauer*, 913 F.3d at 849.

21        That reasoning does not apply to approved health claims on food labeling: if a manufacturer uses a

22   health claim that the FDA has specifically authorized and disclosed all information that the FDA requires,

23   a plaintiff cannot claim that the manufacturer violated FDA regulations by failing to disclose material

24   information.  Taken to its logical extension, Plaintiff's reading of *Dachauer* would permit a plaintiff to

25   challenge *any* FDA-approved labeling claim by claiming that a product is "unhealthy" (even when the

26   FDA has determined it is not).  Other courts have declined to extend *Dachauer* to any case where a plaintiff

27   alleges that the defendant's representations "are false and misleading and therefore his state law claims are

28   not inconsistent with the federal requirements."  *Kroessler v. CVS Health Corp.*, No. 19-277, 2019 WL

1   2164054, at \*5 (S.D. Cal. May 16, 2019).  This Court should not be the first to endorse that theory.

2   **B.      The Court's Earlier Rulings Do Not Preclude Kellogg From Asserting Preemption.**

3          Unable to overcome Kellogg's preemption defense on its merits, Plaintiff attempts to convince the

4   Court to ignore it.  His arguments overlook the Ninth Circuit's repeated admonition that, "[w]henever it is

5   reasonably possible, cases should be decided upon their merits."  *Pena v. Seguros La Comercial, S.A.*, 770

6   F.2d 811, 814 (9th Cir. 1985); *see also, e.g.*, *In re Gilman*, 887 F.3d 956, 964 (9th Cir. 2018) ("[W]e prefer

7   to resolve cases on the merits."); *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615

8   F.3d 1085, 1091 (9th Cir. 2010) (holding that district court erred by "ignor[ing] our oft stated commitment

9   to deciding cases on the merits wherever possible").   And while Plaintiff raises various procedural

10  arguments to brush aside Kellogg's preemption defense, none of them are compelling.

11         Plaintiff initially argues that Kellogg should not be able to assert a preemption defense because this

12  Court has "fully adjudicated" that defense and dismissed it with prejudice.  Opp'n at 6.  But Plaintiff

13  concedes that the Court has *never* addressed — let alone "fully adjudicated" — the effect of 21 C.F.R. §

14  101.75 on this case.   The only time this Court addressed Kellogg's preemption argument was at the

15  pleading stage, where it made a preliminary determination that Kellogg had not "satisfied its burden of

16  demonstrating preemption as to the Heart Healthy statements *for purposes of the instant motion to dismiss*

17  . . . ."  273 F. Supp. at 1077 (emphasis added).  By virtue of the case's procedural posture, the Court did

18  not have crucial information — including the labeling and nutritional information — that it would have

19  needed to determine that Kellogg's products complied with the relevant regulations.  Moreover, the Court

20  did not reference 21 C.F.R. § 101.75 when it made that ruling; instead, it referenced another regulation —

21  21 C.F.R. § 101.77 — that neither party had cited.  There is no dispute that the Court's order on Kellogg's

22  motion to dismiss, standing alone, does not preclude Kellogg from asserting a preemption defense at this

23  time.[6]  *See Agricola Baja Best, S. De R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 986 n.6

24

---

25  [6] The notion that a party "waives" a defense by not raising it in a motion to dismiss is patently meritless.
26  And despite Plaintiff's claim to the contrary, Kellogg's statement at a case management conference that its
    preemption defense is "basically what we said in our briefs," (March 2018 Tr. at 39:3-6) is far from an
27  affirmative waiver of the right to rely on 21 C.F.R. § 101.75.  *See Owens v. Kaiser Found. Health Plan,*
    *Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (holding that there was no waiver "in the absence of any
28  representation by Kaiser that it did not intend to assert that defense before trial").

(S.D. Cal. 2014) (noting that the district court's earlier "determination that this issue was not appropriate for determination on a motion to dismiss does not bind this Court's decisions on summary judgment.").

Plaintiff's reliance on this Court's order "striking" Kellogg's preemption defense, (*see* ECF No. 123), is equally misplaced.  The Ninth Circuit has made clear that "[a] defendant may raise an affirmative defense for *the first time* in a summary judgment motion so long as there was no prejudice to the defendant."  *Moofly Prods., LLC v. Favila*, 682 F. App'x 584, 586 (9th Cir. 2007) (citing *Healy Tibbitts Constr. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982)) (emphasis added); *see also, e.g.*, *Magana v. Commonwealth of Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) (same).  As Plaintiff correctly acknowledges, the "underlying purpose" of this rule is to "encourag[e] resolution of disputes on their merits *rather than technical formalities*." [7]  *Alcarmen v. J.P. Morgan Chase Bank*, No. 13-1575, 2014 WL 3368647, at *5 (N.D. Cal. July 8, 2014) (emphasis added) (citations omitted).  That is exactly what Kellogg did here: it argued, for the *first time*, that its "Heart Healthy" claims are expressly permitted by 21 C.F.R. § 101.75.  Whether or not the Court used the nomenclature "with prejudice," there is no dispute that it never adjudicated, or even addressed, the effect of this regulation on the merits. [8]  Even if the Court generally addressed preemption in its motion to dismiss order, Plaintiff's assertion that Kellogg's preemption defense has been "raised and *fully* adjudicated," (Opp'n at 6), is manifestly false.

Plaintiff's efforts to manufacture a claim of prejudice are unpersuasive.  Kellogg clearly signaled in its opposition to Plaintiff's motion for class certification — which it filed over a year ago, and over three

---

[7] Plaintiff cites two cases in which courts have held that a plaintiff can only assert new defenses in a summary judgment motion if he does so before the deadline to amend the pleadings has passed.  ECF No. 282, at 7-8 (citing *Sadid v. Vailas*, 943 F. Supp. 2d 1125 (D. Idaho 2013) and *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500 (D. Nev. 2013)).  The Ninth Circuit has not adopted this requirement, as it defeats the purpose of the rule: encouraging the resolution of disputes on the merits rather than based on procedural technicalities.  For that reason, other courts have held that the dispositive motion deadline — rather than the deadline to amend the pleadings — is the relevant deadline for raising new affirmative defenses.  *See, e.g.*, *Smith v. Cobb*, No. 15-176, 2017 WL 2350443, at *3 (S.D. Cal. May 30, 2017).

[8] *Semtek International, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) and *Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002) are not on point.  These cases discuss when an adjudication is a "final judgment on the merits" for purposes of claim and issue preclusion.  They do not stand for the proposition that the Court's use of the term "with prejudice" means that it addressed Kellogg's preemption defense on the merits — especially since it is undisputed that Kellogg never raised 21 C.F.R. § 101.75 before the Court prior to moving for partial summary judgment.

months before the deadline for merits expert reports — that it would move for summary judgment on preemption grounds.  *See* ECF No. 159, at 34 n. 17 (noting that "this Court did not find preemption" at the motion to dismiss stage, but that Kellogg will "move to dispose of" Plaintiff's claims and argue that "it has met the FDA requirements for 'heart health'").  Kellogg also served the expert reports of Mr. Carvajal and Mr. Fortin, which specifically describe how the Kellogg Heart Healthy Claims comply with 21 C.F.R. § 101.75, over nine months ago.  By doing so, Kellogg put Plaintiff on notice that it would seek to raise this defense.  *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 709 F. App'x 440, 442 (9th Cir. 2017) ("AcademyOne informed CollegeSource numerous times . . . that it intended to raise a res judicata defense, and thus CollegeSource was not prejudiced by AcademyOne's assertion of the defense at summary judgment.").  Moreover, in ruling on Plaintiff's class certification motion, the Court expressly stated that it could not consider Kellogg's preemption argument "at this stage of the proceedings" because it was a "merits argument" — suggesting that it *could* consider this argument at summary judgment.  324 F. Supp. 3d at 1117.  Plaintiff cannot credibly claim to be surprised by Kellogg's assertion of a preemption defense.

Plaintiff's claim that he made tactical decisions based on the assumption that Kellogg would not re-assert its preemption defense also strains credulity.  For example, while Plaintiff claims that he dismissed claims and products that had "less upside" based on his belief that Kellogg would not assert a preemption defense, he did so in December 2017 — months *before* the Court "struck" Kellogg's preemption defense.  *See* ECF Nos. 106, 108.  Likewise, it is difficult to believe that Plaintiff limited the claims tested in his conjoint analysis based on the assumption that Kellogg would not assert a preemption defense.  It is far more likely that he did so because he concluded that the Kellogg Heart Healthy Claims carry a higher price premium than puffery-like claims such as "Start with a Healthy Spoonful" or "Invest in Your Health, Invest in Yourself."[9]  *See* ECF No. 108 (listing challenged statements still at issue).  And Plaintiff cannot credibly claim that he would have taken additional discovery to rebut Kellogg's preemption

---

[9] Indeed, Plaintiff's expert, Colin Weir, admitted in his deposition that he did not know whether could run a regression for statements other than "heart health."  *See* Reply Decl. Ex. 1 ("Weir Dep.") 231:23-232:3 ("Wholesome Goodness"), 233:1-7 ("Start with a Healthy Spoonful"), 234:13-20 ("Nutrients for Every Day").  And as Kellogg's expert Dr. Ronald Wilcox notes, the vague and idiosyncratic nature of statements like "Start with a Healthy Spoonful" or "Invest in Your Health, Invest in Yourself" makes it virtually impossible to run a regression on those claims.  *See* Reply Decl. Ex. 2 ("2018 Wilcox Report") ¶¶ 23-26.

defense, as preemption is a purely legal issue and requires no discovery besides the labeling and nutrition information.  *See generally ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 761-62 (9th Cir. 2014) ("Preemption is almost always a legal question, the resolution of which is rarely aided by development of a more complete factual record.").

Ultimately, Plaintiff's claims of prejudice boil down to one thing: he wants to avoid summary judgment on his "Heart Healthy" claims without engaging with the merits of Kellogg's preemption defense.  But as court after court has acknowledged, "being forced to litigate on the merits is not considered prejudice."  *Coen Co. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 504 (N.D. Cal. 2015) (citation and internal quotation marks omitted); *see also, e.g.*, *Yan v. Gen. Pot, Inc.*, 78 F. Supp. 3d 997, 1005 (N.D. Cal. 2015) (same).  Absent a showing of prejudice, nothing in the Court's earlier order precludes Kellogg from raising its preemption defense now.

### C.    Alternatively, This Court Can — and Should — Reconsider Its Earlier Order.

Even if Plaintiff were correct that the Court would need to revisit its earlier Order to consider Kellogg's preemption defense, the Court has ample latitude to do so.  It is well-established that "[a]ll rulings of a trial court are subject to revision before the entry of judgment."  *United States v. Houser*, 804 F.2d 565, 657 (9th Cir. 1986); *see also, e.g.*, *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787-88 (9th Cir. 2011) (noting that "a district court has the inherent power to revisit its non-final orders"); *Perry v. Brown*, 667 F.3d 1078, 1086 (9th Cir. 2012) ("As a case progresses and circumstances change, a court may sometimes properly revise a prior exercise of its discretion . . . .").  In this case, there is overwhelming evidence that the use of the Kellogg Heart Healthy Claims complies with 21 C.F.R. §§ 101.54 and 101.75.  To the extent that the Court must exercise its discretion to consider Kellogg's preemption defense, there are at least two compelling reasons it should do so:

First, a finding that the Kellogg Heart Healthy Claims are authorized by federal law would significantly narrow the scope of the case.  The Raisin Bran subclass would have no viable class-wide claims if this Court determined that these statements are authorized by federal law.  The Smart Start subclass also would not have any viable class-wide claims, as Plaintiffs have not offered any evidence of the purported price premium associated with the statement "Lightly Sweetened" on Smart Start.  The practical effect of this ruling would be to narrow the class-wide claims to one product (Frosted Mini-

Wheats) and one challenged statement ("Lightly Sweetened").[10]

Second, a finding that the Kellogg Heart Healthy Claims are authorized by federal law is necessary to vindicate Congress's goal of nationwide uniformity in food labeling. Congress "grant[ed] . . . authority to the FDA to establish a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers." *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 939 (N.D. Cal. 2014) (citation and internal quotation marks omitted). To that end, the NLEA preempts any effort to hold manufacturers liable under state law for using claims authorized by federal law. *See* 21 U.S.C. § 343-1. The FDA recognized that this provision reflects a deliberate policy choice: "Congress decided that even though Federal requirements may preempt more restrictive State requirements in certain instances, the net benefits from national uniformity in these aspects of the food label outweigh the loss in consumer protection that may occur as a result."[11] 58 Fed. Reg. 2462, 2462 (Jan. 6, 1993).

Here, because the Kellogg Heart Healthy Claims are authorized by federal law, holding Kellogg liable for using those statements — or enjoining it from doing so — would undermine nationwide uniformity in food labeling, as Kellogg would be liable for using these statements in California but not in 49 other states. It would also mean that Kellogg would be prohibited from using these statements in California, even though other food manufacturers — including those who manufacture the dozens of "Heart Healthy" cereals used in Mr. Weir's regression (*see* Ex. 40) — can do so. Plaintiff's claim that it is "not the Court's responsibility" to enforce Congress's expressed intent (Opp'n at 10) — and that it should refuse to do so based on Kellogg's supposed "litigation choices" (*id.*) — is meritless. *See Leicester v. Warner Bros.*, 232 F.3d 1212, 1224 (9th Cir. 2000) ("[I]t is our task . . . to effectuate congressional intent.").

Plaintiff asserts that the Court *cannot* consider these concerns because the law of the case doctrine

---

[10] Although Plaintiff claims that "[o]ne can hardly imagine a more prejudicial outcome," (Opp'n at 7 n.2), he is wrong. Just as it is not prejudicial for the Court to resolve this issue on the merits, it is similarly not prejudicial to conclude on the merits that most of Plaintiff's class-wide claims are preempted.

[11] *See also, e.g.*, *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 620 (4th Cir. 2015) (noting that Congress "struck a necessary balance . . . between uniform federal labeling standards and potentially more stringent laws in individual states"); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy.").

precludes this Court from reconsidering its previous order. But while Plaintiff insists that the law of the case doctrine "applies to interlocutory orders," (Opp'n at 8), the Ninth Circuit has expressly held that it does not preclude a district court from reconsidering its own orders before judgment is entered:

> To the extent that [earlier case law] purported to hold that the law of the case doctrine bars district courts from reconsidering pretrial rulings, we overrule it. ***Pretrial rulings, often based on incomplete information, don't bind district judges for the remainder of the case.*** Given the nature of such motions, it could not be otherwise.

*Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (*en banc*) (emphasis added); *see also United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) ("The law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction.") (quoting *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2000)).[12]

Despite Plaintiff's claim to the contrary, the doctrine applies *only* when "an issue has been decided by a higher court" or where "the issue has been previously decided and is binding on the parties — for example, where the district court has previously entered a final decree or judgment." *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018) (emphasizing that "[t]he law of the case doctrine does not . . . bar a court from reconsidering its own orders before judgment is entered"). When judgment has *not* been entered, a district court is "free to correct any errors or misunderstandings without having to find . . . clear error, changed law, new evidence, new evidence, changed circumstances, or manifest injustice." *Id.* at 1043 (citation omitted). Plaintiff's claim that Kellogg "ignore[d]" the law of the case doctrine, (Opp'n at 9), is accordingly misplaced: the doctrine simply does not apply at all.[13]

---

[12] Furthermore, the Ninth Circuit has expressly held that the denial of a motion to dismiss is *never* the law of the case. *Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965); *cf. Peralta*, 744 F.3d at 1088 (noting that "the denial of a summary judgment motion is never law of the case").

[13] Plaintiff's invocation of the law of the case doctrine is misplaced for a separate reason: the "doctrine merely expresses the practice of courts generally to refuse to reopen what *has been decided*." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (citation and internal quotation marks omitted) (emphasis added). Here, however, the Court *has not decided* whether 21 C.F.R. § 101.75 expressly authorizes the "Heart Healthy" statements at issue in this case. The law of the case doctrine plainly does not preclude the Court from addressing the effect of a regulation that it has never examined. *See, e.g.*, *Figueroa v. Berryhill*, No. 17-26, 2018 WL 2176386, at *5 (C.D. Cal. May 10, 2018) (holding that the law of the case doctrine was inapplicable because "this issue has not been decided previously, either explicitly or by necessary implication").

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**II.      The Court Should Grant Summary Judgment on Plaintiff's Punitive Damages Claim.**

2

To obtain damages under the CLRA, Plaintiff must establish by clear and convincing evidence that

3

Kellogg is "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a).  Plaintiff does not dispute

4

that this requires a showing of intentional or knowing conduct, as the "mere carelessness or ignorance of

5

the defendant does not justify the imposition of punitive damages." *PG&E Co. v. Superior Court*, 24 Cal.

6

App. 4th 1150, 1170 (2018) (citation and internal quotation marks omitted).  Nor is it enough to offer

7

"evidence that is *merely consistent* with the hypothesis of malice, fraud . . . or oppressiveness." *Tomaselli*

8

*v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n.14 (1994) (emphasis added).  Rather, Plaintiff

9

must show that Kellogg's conduct is "*inconsistent* with the hypothesis that the tortious conduct was the

10

result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other

11

such noniniquitous human failing." *Id.*

12

To meet this standard, Plaintiff must offer evidence that Kellogg *knew* of the alleged dangers of

13

consuming added sugar.  Plaintiff attempts to meet this standard by mustering evidence that Kellogg was

14

aware of the purported dangers of added sugar, as well as the scientific research showing that excessive

15

added sugar consumption is unhealthy.   But Plaintiff does not — and cannot — dispute that there is

16

scientific literature that establishes that added sugar is no more harmful than any other source of calories.

17

In fact, there is no genuine dispute that this is the mainstream scientific position.  The FDA has taken the

18

position, based on an exhaustive review of the scientific literature on both sides, that "inadequate evidence

19

exists to support the direct contribution of added sugars to obesity or heart disease."  79 Fed. Reg. 11880,

20

11904 (Mar. 3, 2014).  And even noted anti-sugar evangelist Dr. Robert Lustig admits that his opinion

21

about the dangers of consuming added sugar is "not the generally accepted view" among the scientific or

22

medical community.  Ex. 27 ("Lustig Dep.") at 249:8-250:5, 304:10-22.

23

Plaintiff suggests that the existence of a scientific dispute about the effects of added sugar raises a

24

factual dispute for trial.  In fact, it does just the opposite: when there is a "genuine dispute in the scientific

25

community" about the danger of the defendant's product, and no consensus among regulators that the

26

defendant's product is unsafe, "no reasonable jury [can] conclude . . . that this is an 'extreme case' meriting

27

punitive damages . . . ."  *Satcher*, 52 F.3d at 1317; *see also, e.g.*, *Berroyer v. Hertz*, 672 F.2d 334, 342 (3d

28

Cir. 1982) (reversing award of punitive damages when the "record shows a difference of medical opinion

on the degree of the cancer risk"); *Fornoff v. Parke Davis & Co.*, 434 N.E.2d 793, 803 (Ill. Ct. App. 1982) (holding that punitive damages were unavailable when the plaintiffs offered "at least two studies" showing the challenged drug was unsafe, but "[o]ther studies disputed such findings").  Plaintiff's reliance on *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117 (S.D. Cal. 2014), is misplaced: unlike asbestos, whose dangers have been known and well-documented for decades, there is genuine scientific disagreement about whether added sugar is more harmful than any other nutrient.[14]  Whether or not this Court permits Plaintiff to present his side of the debate to the jury, there is no genuine dispute that there *is a debate*.

Plaintiff also ignores another independent basis for summary judgment on Plaintiff's punitive damages claim — Kellogg has complied with all applicable regulations and industry guidelines.  *See generally* PROSSER & KEETON ON TORTS, § 36 at 233 n.41 (5th ed. 1984) (noting that "compliance with a statutory standard" generally "bar[s] liability for punitive damages"); *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (holding that compliance with regulatory standards and industry guidelines weighed against finding of "wanton" conduct).  Kellogg has put forth undisputed evidence from two FDA labeling experts who, based on their decades of experience, agree that the Kellogg Heart Healthy Claims comply with all applicable FDA regulations.  *See* Fortin Report at 11-12; Ex. 14 ("Carvajal Report") at 6.  There is also undisputed evidence that Kellogg maintains a dedicated group that "evaluates claims" — including "FDA-regulated health claims" such as "Heart Healthy" — and advises Kellogg on how to "create the labeling in a compliant fashion." Ex. 29 ("Jursinic Dep.") 15:2-11, 60:17-25.  Whether or not this Court grants Kellogg's motion for summary judgment on preemption, there is no genuine dispute that Kellogg had a good-faith basis for using the labeling claims at issue, which makes it impossible for Plaintiff to prove — let alone with the clear and convincing evidence required by California law — that Kellogg intentionally misled consumers about the healthiness of its products.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Kellogg's motion for partial summary judgment.

---

[14] *Roybal v. Equifax*, No. 05-1207, 2008 WL 4532447 (E.D. Cal. Oct. 9, 2008), *In re Yahoo! Inc. Consumer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018), and *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2019 WL 693224 (N.D. Cal. Feb. 19, 2019) are not remotely on point.  Unlike this case, there was no good-faith scientific basis in those cases to believe that the defendant's conduct was appropriate.

1     Dated: June 21, 2019                          JENNER & BLOCK LLP

2

3                                                   By: /s/          Dean N. Panos
                                                         Dean N. Panos
4
                                                    Attorneys for Defendant
5                                                   Kellogg Sales Company

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF KELLOGG'S MOTION FOR PARTIAL SUMMARY JUDGMENT