UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN HADLEY, | Case No. 16-CV-04955-LHK |
| Plaintiff, | |
| | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER RE: PARTIES' MOTIONS TO STRIKE** |
| v. | |
| KELLOGG SALES COMPANY, | |
| Defendant. | |
| | Re: Dkt. Nos. 256, 257, 258, 259, 270, 271, 272, 273 |

Plaintiff Stephen Hadley ("Plaintiff") brings the instant class action against Defendant Kellogg Sales Company ("Kellogg") for allegedly misleading statements on Kellogg's food product packaging. Before the Court are the parties' partial motions for summary judgment and six motions to strike expert reports and expert testimony. Having considered the parties' briefing, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Kellogg's motion for partial summary judgment. The Court GRANTS Plaintiff's motion for partial summary judgment.

The Court DENIES Kellogg's motion to strike the testimony of Dr. Robert Lustig;

1

Kellogg's motion to strike the testimony of Bruce Silverman; Kellogg's motion to strike the testimony of Colin Weir; and Plaintiff's motion to strike portions of the expert report of Dr. Itamar Simonson. The Court GRANTS Plaintiff's motion to strike the expert reports of Neal D. Fortin, J.D., and Ricardo Carvajal, J.D. The Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to strike portions of the expert reports of Ronald T. Wilcox, Ph.D., James Rippe, M.D., and to partially exclude the testimony of Dr. Itamar Simonson.

## I. BACKGROUND

### A. Factual Background

Kellogg is a "multi-billion dollar food company that manufactures, markets, and sells a wide variety of cereals and bars, among other foods." ECF No. 62 ("SAC") ¶ 108. Plaintiff alleges that Kellogg has "positioned itself in the market as a purportedly 'healthy' brand of processed food, by using various labeling statements to suggest its foods, especially its cereals and bars, are healthy choices." *Id.* ¶ 112.

Plaintiff "has been a frequent cereal eater for many years." *Id.* ¶ 249. Over the past several years, Plaintiff has purchased Kellogg's breakfast cereals and cereal bars. *Id.* ¶ 250–51. During that time period, Plaintiff allegedly "tried to choose healthy options, and has been willing to pay more for cereals he believes are healthy." *Id.* ¶ 249.

This case concerns statements on the packaging for breakfast cereals and cereal bars sold by Kellogg that indicate that Kellogg's products are healthy when excess added sugar allegedly causes those products to be unhealthy. Plaintiff alleges that several of Kellogg's product lines are sold with misleading packaging. *See* SAC ¶¶ 120–85. Three of Kellogg's products are relevant to the instant order: (1) Kellogg's Raisin Bran cereal; (2) Kellogg's Raisin Bran Crunch cereal; and (3) Kellogg's Smart Start—Original Antioxidants cereal. *See id.*; ECF No. 256 at 1; ECF No. 273 at 1. Specifically, the parties' motions for partial summary judgment concern the following statements found on those three products:

- "Heart Healthy";

2

- "+ Heart Health + / Kellogg's Raisin Bran / With crispy bran flakes made from whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber"; and

- "Heart Healthy / Whole grains can help support a healthy lifestyle."

ECF No. 256 at 1; ECF No. 273 at 1.

## B. Pending Motions

### 1. Kellogg's Motion for Partial Summary Judgment and Motions to Strike

On May 24, 2019, Kellogg filed its instant motion for partial summary judgment. ECF No. 246 ("Kellogg MSJ"). On June 14, 2019, Plaintiff filed his opposition. ECF No. 282 ("Plt. Opp'n"). On June 21, 2019, Kellogg filed its reply. ECF No. 290 ("Kellogg Reply").

On May 24, 2019, Kellogg filed motions to: (1) strike the testimony of Dr. Robert Lustig, ECF No. 257; (2) strike the testimony of Bruce Silverman, ECF No. 258; and (3) strike the testimony of Colin Weir, ECF No. 259. On June 14, 2019, Plaintiff filed oppositions to Kellogg's motions to strike. ECF Nos. 283, 284, 285.

### 2. Plaintiff's Motion for Partial Summary Judgment and Motions to Strike

On May 24, 2019, Plaintiff filed his instant motion for partial summary judgment. ECF No. 272 ("Plt. MSJ"). On June 14, 2019, Kellogg filed its opposition. ECF No. 278 ("Kellogg Opp'n"). On June 21, 2019, Plaintiff filed his reply. ECF No. 289 ("Plt. Reply").

On May 24, 2019, Plaintiff filed motions to: (1) strike the expert reports of Neal D. Fortin, J.D., and Ricardo Carvajal, J.D., ECF No. 270; (2) strike portions of the expert reports of Ronald T. Wilcox, Ph.D., James Rippe, M.D., and to partially exclude the testimony of Dr. Itamar Simonson, ECF No. 271; and (3) strike portions of the expert report of Dr. Itamar Simonson, ECF No. 272. On June 14, 2019, Kellogg filed oppositions to Plaintiff's motions to strike. ECF Nos. 279, 280, 281.

### 3. Kellogg's Motion to Decertify

#### a. Plaintiff's Motion for Class Certification

3

On April 30, 2018, Plaintiff filed a motion for class certification. ECF No. 129. Kellogg filed an opposition on June 11, 2018, ECF No. 159, and Plaintiff filed a reply on July 2, 2018. ECF No. 194. On August 17, 2018, the Court granted in part and denied in part Plaintiff's motion for class certification. ECF No. 208. In particular, the Court certified the following Federal Rule of Civil Procedure 23(b)(3) class, which is composed of three subclasses:

> All persons in California who, on or after August 29, 2012, purchased for household use and not for resale or distribution:
>
> **Raisin Bran Subclass:** Kellogg's Raisin Bran (including Omega-3) or Kellogg's Raisin Bran Crunch Cereals in a 13.7 oz., 14.3 oz., 18.2 oz., 18.7 oz., 23.5 oz., 24.8 oz., 29 oz., 30.3 oz., 43.3 oz., 56.6 oz., or 76.5 oz. package stating "heart healthy."
>
> **Smart Start Subclass:** Kellogg's Smart Start Original Antioxidants cereal in a 17.3 oz. package.
>
> **Frosted Mini-Wheats Subclass:** Kellogg's Frosted Mini-Wheats Bite Size (Original, Maple Brown Sugar, Strawberry, or Blueberry varieties), Big Bites (Original variety), Little Bites (Chocolate or Cinnamon Roll varieties), or Touch of Fruit in the Middle (Mixed Berry and Raspberry varieties) cereals in a 15.2 oz., 15.5 oz., 15.8 oz., 16.5 oz., 18 oz., 21 oz., or 24 oz. package.

*Id.*

### b. 23(f) Petitions and Stay

On August 31, 2018, both parties filed Federal Rule of Civil Procedure 23(f) petitions for Ninth Circuit review of this Court's August 17, 2018 class certification order. *See* ECF Nos. 218, 216, 217. Thus, on October 5, 2018, the Court stayed the case pending any Ninth Circuit ruling on the two 23(f) petitions. ECF No. 235.

On November 11, 2018, the parties filed a statement informing the Court that the Ninth Circuit denied both Rule 23(f) petitions. ECF No. 237. The Clerk set a case management conference for January 16, 2019. The parties then made multiple representations that they were settling and requested three extensions of the case management conference, which the Court granted. *See* ECF No. 246. On March 8, 2019, the Court lifted the stay, *id.*, and on March 13, 2019, the Court held a case management conference, ECF No. 248.

### c. Motion to Decertify

On May 24, 2019, Kellogg filed a motion to decertify the class. ECF No. 262. Plaintiff opposed on June 14, 2019. ECF No. 286. Kellogg replied on June 28, 2019. ECF No. 292. Kellogg's motion to decertify is currently set for hearing on September 26, 2019.

### 4. Plaintiff's Motion for Civil Contempt

On June 14, 2019, Plaintiff filed a motion for civil contempt against Kellogg. ECF No. 288. Kellogg opposed on June 28, 2019. ECF No. 293. Plaintiff replied on July 3, 2019. ECF No. 295. Plaintiff's motion for civil contempt is currently set for hearing on October 3, 2019.

## II. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,

5

1158 (9th Cir. 1999).

### III. DISCUSSION

Both Kellogg and Plaintiff move for partial summary judgment. *See* Kellogg MSJ; Plt. MSJ. The parties also filed six motions to strike. The Court addresses Kellogg's motion for partial summary judgment first and Plaintiff's motion for partial summary judgment second. Third, the Court addresses the parties' six motions to strike.

#### A. Kellogg's Motion for Partial Summary Judgment

Kellogg's motion for partial summary judgment concerns two arguments by Kellogg: (1) that any of Plaintiff's claims arising out of the labeling statements "Heart Healthy" or "+ Heart Health +" are preempted by federal law; and (2) that Plaintiff is not entitled to punitive damages in connection with Plaintiff's claim under the CLRA. *See* Kellogg MSJ. The Court discusses each argument in turn.

##### 1. Preemption

Kellogg first argues that any of Plaintiff's claims arising out of the labeling statements "Heart Healthy" or "+ Heart Health +" are preempted by federal law. Kellogg MSJ at 6–18. The Court need not address the merits of Kellogg's argument because the Court previously dismissed Kellogg's preemption defense with prejudice. Further, Kellogg's belated assertion of a new preemption defense based on a regulation that Kellogg cited for the first time at summary judgment would prejudice Plaintiff. Below the Court first discusses the procedural history of this case with respect to Kellogg's preemption defense, including the Court's order dismissing the preemption defense with prejudice. Second, the Court considers—and rejects—Kellogg's argument that the Court should nonetheless consider Kellogg's preemption argument in Kellogg's instant motion for partial summary judgment.

###### a. The Court Dismissed Kellogg's Preemption Defense with Prejudice

In the paragraphs that follow, the Court discusses the procedural history of this case with respect to Kellogg's preemption defense.

### i. Plaintiff Files the Instant Lawsuit

Plaintiff first filed this lawsuit on August 29, 2016, and alleged that the "heart healthy" statements on Kellogg's Raisin Bran and Smart Start cereals are misleading or in violation of Food and Drug Administration ("FDA") regulations. ECF No. 1.

### ii. Kellogg's First Preemption Defense as Stated in Kellogg's Motion to Dismiss the Original Complaint

On October 31, 2016, Kellogg moved to dismiss the original complaint. ECF No. 22. Among other things, Kellogg argued that Plaintiff's claims are preempted. *Id.* at 14. However, Kellogg's preemption argument was very general and vague and failed to specify what regulations apply or how the claims comply with those regulations. Indeed, Kellogg's preemption argument was simply: "Plaintiff's claims based on nutrient claims (such as 'Heart Healthy,' 'Made with Real Fruit,' and 'No High Fructose Corn Syrup') and health claims (such as 'diets low in saturated fat and cholesterol may reduce the risk of heart disease') are [ ] expressly preempted." *Id.*

In lieu of filing an opposition to Kellogg's motion to dismiss the original complaint, Plaintiff filed a First Amended Complaint on November 14, 2016. ECF No. 27 ("FAC"). Thus, on November 15, 2016, the Court denied as moot Kellogg's motion to dismiss the original complaint. ECF No. 31.

Plaintiff's FAC alleged five causes of action including (1) violation of the California False Advertising Law ("FAL"), (2) violation of the California Consumers Legal Remedies Act ("CLRA"), (3) violation of the California Unfair Competition Law ("UCL") under the fraudulent, unfair, and unlawful prongs, (4) breach of express warranty, and (5) breach of the implied warranty of merchantability. *Id.*

### iii. Kellogg's Second Preemption Defense as Stated in Kellogg's Motion to Dismiss the First Amended Complaint

On December 8, 2016, Kellogg filed its motion to dismiss the FAC. ECF No. 44. Among other things, Kellogg reasserted the same deficient preemption argument. *Id.* at 15. Again, Kellogg's preemption argument was simply: "Plaintiff's claims based on nutrient claims (such as

'Heart Healthy,' 'Made with Real Fruit,' and 'No High Fructose Corn Syrup') and health claims (such as 'diets low in saturated fat and cholesterol may reduce the risk of heart disease') are [ ] expressly preempted." *Id.* Thus, Kellogg's preemption argument was still very general and vague and failed to specify what regulations apply or how the claims comply with those regulations.

On January 5, 2017, Plaintiff filed an opposition, and argued that despite Kellogg's burden of establishing that its affirmative defense of preemption applies, "Kellogg never identifie[d] which portions of the claims it believes are preempted, what regulations apply, or how the claims comply with those regulations." ECF No. 49 at 21.

Kellogg's January 19, 2017 reply cited for the first time 21 C.F.R. § 101.77 and argued for the first time that Kellogg's health claims comply with that regulation. ECF No. 50 at 9. Kellogg also argued that "heart healthy" is "plainly a health claim because it characterizes a relationship between the ingestion of a Breakfast Product and heart health." *Id.* at 13.

The Court's 41-page March 21, 2017 order on Kellogg's motion to dismiss the FAC put Kellogg on notice that Kellogg's preemption argument was deficient. Specifically, the Court found that Kellogg's preemption argument failed because Kellogg did not satisfy its burden of persuasion to state how the wording of Kellogg's claims is similar to 21 C.F.R. § 101.77. ECF No. 56 at n.6. However, the Court was not even required to address Kellogg's 21 C.F.R. § 101.77 preemption argument because Kellogg raised this argument for the first time in its reply brief. *Id.* at 24. Pursuant to Ninth Circuit law, the Court is not required to address arguments raised for the first time in a reply brief because "arguments raised for the first time in reply briefs are waived." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1035 (N.D. Cal. Aug. 12, 2014); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (parties "cannot raise a new issue for the first time in their reply briefs").

### iv. Kellogg's Third Preemption Defense as Stated in Kellogg's Motion to Dismiss the Second Amended Complaint

On April 5, 2017, Plaintiff filed a Second Amended Complaint ("SAC"). *See* SAC.

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER RE: PARTIES' MOTIONS TO STRIKE

Plaintiff's SAC alleges five causes of action, including (1) violation of the FAL; (2) violation of the CLRA; (3) violation of the UCL under the fraudulent, unfair, and unlawful prongs; (4) breach of express warranty; and (5) breach of the implied warranty of merchantability. *Id.*

On April 19, 2017, Kellogg filed a motion to dismiss the SAC. ECF No. 63. Kellogg reasserted the identical deficient preemption argument from its motion to dismiss the original complaint and motion to dismiss the FAC. *Compare* ECF No. 44 at 15–18, *with* ECF No. 63 at 18–21. For the third time, Kellogg's preemption argument was simply: "Plaintiff's claims based on nutrient claims (such as 'Heart Healthy,' 'Made with Real Fruit,' and 'No High Fructose Corn Syrup') and health claims (such as 'diets low in saturated fat and cholesterol may reduce the risk of heart disease') are [ ] expressly preempted." ECF No. 63 at 18. Indeed, Kellogg did not even re-raise 21 C.F.R. § 101.77. *Id.* Thus, for the third time, Kellogg's preemption argument was very general and vague and failed to specify what regulations apply or how the claims comply with those regulations.

In his opposition, filed May 3, 2017, Plaintiff again noted the deficiency in Kellogg's argument: "But Kellogg does not even attempt to show that the statements . . . *are* nutrient content or health claims, failing to explain why the statements conform with, or even to identify applicable regulations. Accordingly, it would be inappropriate to find any claims preempted now." ECF No. 65 at 15.

Kellogg's May 10, 2017 reply did not identify any regulations or explain why Kellogg's statements are authorized by any FDA regulations. *See generally* ECF No. 66. Kellogg merely stated that "heart healthy" is "plainly a health claim because it characterizes a relationship between the ingestion of a Breakfast Product and cardiovascular health." *Id.* at 13.

On August 10, 2017, the Court granted in part and denied in part Kellogg's motion to dismiss the SAC, in a 64-page opinion. ECF No. 76. In the Court's order, as to Kellogg's preemption argument, the Court noted that to determine whether all of Kellogg's heart healthy statements were preempted, the Court would have to first to determine whether each of the heart

9

healthy statements were "health claims" pursuant to 21 C.F.R. § 101.14(a)(1). *Id.* at 27–28. However, the Court explained that it "need not rule definitively as to" whether all of Kellogg's heart healthy statements were "health claims" because Kellogg had failed to show that any of the "heart healthy statements are authorized by the FDA regulations." *Id.* at 28. Moreover, the Court noted that Kellogg had not even "argue[d] that the heart healthy statements on [Kellogg's] packaging are in compliance with FDA regulations." *Id.* at 29. Accordingly, the Court concluded that Kellogg had "not satisfied its burden of demonstrating preemption." *Id.*

### v. Kellogg's Fourth Preemption Defense as Stated in Kellogg's 149 Day Late Answer

Kellogg's answer was due on August 24, 2017, but Kellogg defaulted on this deadline.

On December 31, 2017, the Special Master, Judge Victor B. Kenton, requested a copy of the operative complaint and answer. ECF No. 111-1, Ex. 2 at 2. On January 2, 2018, Kellogg told Plaintiff it was "working on the [a]nswer now." *Id.* at 1. On January 5, 2018, Kellogg said the answer was "coming." *Id.* ¶ 4. Nonetheless, two weeks later, Kellogg still had not answered. Therefore, on January 19, 2018, at 12:16 p.m., Plaintiff advised he would seek entry of default, *id.* at Ex. 3. Kellogg then filed its answer two hours later, on January 19, 2018, at 2:11 p.m. *See* ECF No. 110 ("Answer"). However, despite the answer being 149 days or five months late, Kellogg did not first seek leave as required by the Federal and Local Rules. *See* Fed. R. Civ. P. 6(b)(1)(B); Civil L.R. 6-3(a).

Kellogg's answer raised several defenses, including a preemption defense. *See* Answer. Specifically, Kellogg's preemption defense consisted of only the following two sentences: "Plaintiff's claims are preempted in whole or in part under the federal Nutrition Labeling and Education Act, 21 U.S.C. § 341 *et seq.* Because the Complaint seeks to impose labeling requirements different than those required under the NLEA, Plaintiffs' claims are preempted." *Id.* at 128. Thus, Kellogg's preemption defense in the answer was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with

those regulations.

### vi. The Parties Stipulate What Products and Product Claims Remain in the Case

In this case, Plaintiff has challenged an unwieldy number of Kellogg's products and product claims. Indeed, the original complaint is 148 pages, and the FAC is 155 pages. In the March 21, 2017 order on the motion to dismiss the FAC, the Court noted that Plaintiff's FAC alleges that 12 of Kellogg's product lines are sold with allegedly misleading packaging. ECF No. 56 at 2. The FAC alleges that "[s]ome of the product lines have multiple variants such that there are 53 products total" that Plaintiff alleges are being sold with misleading packaging. *Id.* Even further, many of the product lines or products come in multiple flavor variations, like: "Raisin Bran, Raisin Bran Crunch, Raisin Bran Omega-3 250mg ALA From Flaxseed, Raisin Bran with Cranberries, Frosted Mini-Wheats in Original and Blueberry flavors, Frosted Mini-Wheats Little Bites in Original and Chocolate flavors, Frosted Mini-Wheats Fruit in the Middle in Raspberry flavor, and Frosted Mini-Wheats Harvest Delights in Blueberry with Vanilla Drizzle and Cranberry with Yoghurt Drizzle flavors." *Id.* at 29 n.8.

Moreover, the FAC alleges multiple claims on each variation of each product. Indeed, Plaintiff attached a 29-page appendix to its FAC to outline all of the product claims. ECF No. 27-1. In the briefing on the motion to dismiss the FAC, the parties focused their arguments on several of the causes of action and product claims, and thus the Court's March 21, 2017 order on the motion to dismiss the FAC addressed only those challenged causes of action and product claims. *See* ECF No. 56.

Similarly, the SAC is 109 pages. In the August 10, 2017 order on the motion to dismiss the SAC, the Court again noted how unwieldy Plaintiff's SAC is. For instance, Plaintiff's SAC alleges that 8 of Kellogg's product lines are sold with misleading packaging. ECF 76 at 2. The SAC alleges that "[s]ome of the product lines have multiple variants such that there are 29 products total that Plaintiff alleges are being sold with packaging that is misleading." *Id.* Again, the Court

noted the complexity of the challenged product lines, products, and flavor variations, e.g., Nutri-Grain SoftBaked Breakfast Bars – Cherry, Nutri-Grain Soft-Baked Breakfast Bars – Blueberry, Nutri-Grain Soft-Baked Breakfast Bars – Strawberry, Nutri-Grain Soft-Baked Breakfast Bars – Variety Pack, Nutri-Grain Harvest Hearty Breakfast Bars – Blueberry Bliss, NutriGrain Fruit & Oat Harvest Bars – Blueberry Bliss, and Nutri-Grain Fruit & Oat Harvest Bars – Country Strawberry. *Id.* at 51.

Moreover, the SAC challenges multiple claims on each variation of each product. Indeed, Plaintiff attached a 15-page appendix to its SAC to outline all of the product claims. ECF No. 62-1. In the Court's August 10, 2017 order, the Court granted Kellogg's motion to dismiss with respect to 5 products. *Id.* at 50. However, the Court denied Kellogg's motion to dismiss the other 24 products because the Court found that those products contain numerous actionable product claims. *Id.* at 51.

In anticipation of the November 29, 2017 case management conference, on November 22, 2017, the parties filed a joint case management statement. ECF No. 101. In the joint case management statement, Plaintiff represented that: "plaintiff—after reviewing sales figures and other information produced by Kellogg—advised Kellogg that he would no longer pursue class claims against *Crunchy Nut Cereal, Nutri-Grain Cereal Bars, and Nutri-Grain Fruit & Oat Harvest Bars*, reducing the case from 24 to 17 products (including flavor variations) at issue." *Id.* at 1 (emphasis in original).

At the November 29, 2017 case management conference, the Court noted that the number of products and product claims in the case were excessive. ECF No. 109 at 9:15–10:8. The Court asked the parties how many challenged product claims were in the case: "How many [product claims] are there? We started at, what 124 or something? And 56 in the next round of motion to dismiss. What are we up to now?" *Id.* In response, even Plaintiff's counsel admitted that he did not "know the exact number" of product claims. *Id.*

In the November 29, 2017 case management order, the Court ordered the parties to file by

December 6, 2017, a stipulation identifying what products and product claims the parties agreed to dismiss with prejudice. ECF No. 103. The Court also ordered the parties to file by December 13, 2017, a stipulation in chart form identifying what products and product claims remained in the case after the Court's March 21, 2017 and August 10, 2017 orders on the motions to dismiss and after the parties stipulated to dismiss certain products and product claims with prejudice. *Id.*

On December 5, 2017, the parties filed their stipulation outlining what products and product claims they agreed to dismiss from the case with prejudice. ECF No. 106. The dismissed products were the Crunchy Nut Cereal, Nutri-Grain Cereal Bars, and Nutri-Grain Fruit & Oat Harvest Bars that Plaintiff agreed to no longer pursue as stated in the November 29, 2017 joint case management statement. *See id.*

On December 13, 2017, the parties filed their stipulation outlining what products and product claims remain in the case. ECF No. 108. The parties specifically stipulated that the "heart healthy" claims remained in this case. *Id.* The parties also stipulated that 17 products remained in the case. *See id.*

### vii. Plaintiff's Motion to Strike Kellogg's Answer and Enter Default or to Strike Kellogg's Affirmative Defenses

On January 30, 2018, Plaintiff moved to strike Kellogg's 149 day late answer and enter default or to strike Kellogg's affirmative defenses. ECF No. 111. Plaintiff's motion explained how Kellogg's untimely assertion of defenses prejudiced Plaintiff. *Id.* Specifically, Plaintiff argued that if Kellogg's preemption defense in the answer is "based on arguments Kellogg did not advance in its Rule 12 motions, or on labeling claims, laws, or regulations Kellogg did not identify," then Plaintiff had "no notice of these bases." *Id.* at 10. Plaintiff further argued that "[e]specially when intentionally asserting the defense so late and without leave, Kellogg should not be permitted to sandbag plaintiff with new" preemption theories. *Id.*

### viii. Kellogg's Fifth Preemption Defense as Stated in Kellogg's Response to Plaintiff's Interrogatories

In the meantime, Plaintiff asked Kellogg to detail its preemption defense in interrogatory

13

responses. ECF No. 270-1, Ex. 6 at 7. Kellogg's March 6, 2018 response to Plaintiff's interrogatories (set four) was: "Plaintiff's claims under the 'unlawful' prong of the UCL fail because its labeling complies with all statutes and regulations identified in the SAC, including but not limited to 21 C.F.R. § 101.14, 21 C.F.R. § 1.21, and 21 U.S.C. § 343(a), as well as their parallel state law counterparts." *Id.* at 8. Kellogg further "refer[red] Plaintiff to the papers it submitted in support of Kellogg's three motions to dismiss for a fuller exposition of its position." *Id.* Thus, Kellogg's preemption defense in Kellogg's interrogatory response was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with those regulations.

### ix. Kellogg's Sixth Preemption Defense as Stated at the March 7, 2018 Case Management Conference

At the March 7, 2018 case management conference, Plaintiff noted that it was still unaware of what Kellogg's preemption defense theory is because Kellogg had failed to identify any specific regulations. *See* ECF No. 126 ("3/7/18 Transcript") at 36:25–37:25. In response, Kellogg's counsel stated that Kellogg told Plaintiff "in our briefs and oral conversations and interrogatory responses" that "those preemption defenses" pleaded in the answer were "basically what we said in our briefs." *Id.* at 39:2–6. Thus, Kellogg's preemption defense at the March 7, 2018 case management conference was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with those regulations.

### x. The Court Dismissed Kellogg's Preemption Defense with Prejudice But Did Not Strike the Answer or Enter Default

At the March 7, 2018 case management conference, the Court heard the parties' positions on Plaintiff's motion to strike Kellogg's 149 day late answer or affirmative defenses. ECF No. 120; 3/7/18 Transcript. Specifically, Plaintiff's counsel explained on the issue of prejudice that "we very much proceeded in making decisions based on our belief that a preemption case wouldn't be in the case." *Id.* at 34:25–35:4. After the Court asked, "what were you relying on," Plaintiff's counsel responded: "your Honor had considered [Kellogg's] preemption arguments and

14

found them to be legally insufficient. And then [Kellogg] didn't reassert the preemption defense. Rule 8 requires [Kellogg] to assert a defense, even if it's asserted in a Rule 12 motion, Rule 8 requires the assertion of a defense and an answer, or it's waived." *Id.* at 35:5–13. Plaintiff's counsel continued: "So [Kellogg] argued this purely legal issue of preemption, your Honor considered [Kellogg's] arguments and rejected them, and then [Kellogg] had a deadline to file an answer. And under Rule 8, if an affirmative defense is not stated with an answer, then it's waived." *Id.* at 36:8–12. Because "an affirmative defense of preemption was not timely stated" and because preemption "had been dismissed on the arguments that [Kellogg] made during the motion to dismiss," Plaintiff believed that Kellogg "either had waived [preemption] or would not pursue it." *Id.* at 36:8–18.

Plaintiff's counsel also noted that "Kellogg has represented a number of times" that the "preemption defense is limited to the arguments in [Kellogg's] Rule 12 briefing." *Id.* at 36:19–24. As a result, Plaintiff's counsel argued:

> [W]e really still have no idea what [Kellogg's] theory is. They haven't pointed to specific regulations, they had some x marks and a table on a declaration, but as my opposition pointed out, they actually did no analysis. What they said is to the extent that a challenged claim is a permitted health and wellness claim, it's not preempted by the presence of sugar, because sugar is not a disqualifying nutrient. That's a true statement. We agree with that. But that was just a conditional statement, "to the extent." They never actually gave any analysis to what extent those statements were. I think maybe in their reply brief they had addressed one or two statements, and your honor had noted that in your decision and addressed those statements, which by the way was in the reply, so we never even got a chance to respond.

*Id.* at 36:25–37:14. Plaintiff's counsel then stated:

> So they call these purely legal defenses, you've made your decision, maybe they have appeal rights on it, but I think number one, if you are going to keep the [preemption] defense in the case, [Kellogg] should be limited to the arguments they made in the Rule 12 briefing and not be allowed to surprise us with a new theory or a new statute or something like that.

*Id.* at 37:19–25.

The Court agreed "that certainly seems fair." *Id.* at 38:2. The Court noted it had gone

15

"through the effort to write these 64-page orders," and that "anything that's left in the case after the second round of motions to dismiss, which was filed on August 10, 2017, I found is not preempted." *Id.* at 38:18–23. The Court then struck the preemption defense. *Id.* at 38:25–39:1.

When Kellogg's counsel brought up the preemption defense again, the Court admonished Kellogg that "I've already ruled on them. You don't get to reassert them, I said there's no preemption as a matter of law." *Id.* at 39:2–9. Kellogg's counsel added: "we only reserve them, your Honor, in case—for example, if there's no [sic] case law that comes out." *Id.* at 39:10–12. The Court responded: "If there's new case law, then you can reassert it at that point." *Id.* at 39:13–15. The Court also reiterated: "I already ruled on them as a matter of law that there's no preemption." *Id.* at 39:23–24. Thus, the Court ordered the preemption affirmative defense, the fifth defense, to be "stricken with prejudice." *Id.* at 40:2–7. The Court reiterated, "the fifth affirmative defense is [ ] dismissed with prejudice." *Id.* at 40:8–11. The Court also dismissed the fourth, sixth, seventh, eighth, and ninth affirmative defenses. *Id.* at 6:7–8.

As for Kellogg's answer, the Court noted that the answer was 149 days or five months late. *Id.* at 5:21–22. The Court found that striking the entire answer after already striking several of the affirmative defenses would be "unduly harsh and unnecessary," but found that Kellogg "should [still] get some kind of [further] sanction." *Id.* at 4:18–19. Therefore, the Court stated: "what I was going to do would be to extend the deadline to file the class cert motion, and that additional time would come out of the Defendant's time to file an opposition. I think that's only fair. I mean a five-month delay is really inexcusable." *Id.* at 5:2–8. As for Plaintiff's request for entry of default, the Court found that the entry of default improper because Kellogg filed its answer before Plaintiff sought entry of default. *Id.* at 8:9–11.

The Court memorialized its ruling in the March 7, 2018 case management order. ECF No. 124. The Court stated: "the Court granted Plaintiff's motion to strike the fourth through ninth affirmative defenses." *Id.* Kellogg's preemption defense was its fifth affirmative defense. The Court also stated: "[t]he Court denied Plaintiff's motion to strike the answer and enter default." *Id.*

16

The Court also memorialized its ruling in the Court's March 7, 2018 order denying Plaintiff's motion to strike the answer and enter default, and granting in part and denying in part the motion to strike affirmative defenses. ECF No. 123. The Court wrote: "[t]he Court strikes the Fourth and Fifth Affirmative Defenses of safe harbor and preemption," as well as the Sixth, Seventh, Eighth, and Ninth Affirmative Defenses. *Id.* The Court also wrote: "the Court denies the motion to strike the answer" and "denies the motion for entry of default." *Id.*

Thus, Kellogg's preemption defense has been stricken and dismissed from the case with prejudice in its entirety. *See, e.g.*, *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("'[W]ith prejudice' is an acceptable form of shorthand for 'an adjudication upon the merits'" (citation and internal quotation marks omitted)); *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" (citation omitted)). Accordingly, Kellogg has no surviving preemption defense.

### b. The Court Will Not Consider Kellogg's Seventh Preemption Defense Based on a Never Before Cited Regulation

Although the Court dismissed Kellogg's preemption defense with prejudice, Kellogg asserts a new preemption argument in Kellogg's motion for partial summary judgment. Kellogg argues first that the Court's order striking the preemption defense merely removed the defense from Kellogg's answer as if Kellogg had never asserted the defense in the first place, and that Kellogg may raise an affirmative defense for the first time in a motion for summary judgment so long as the delay does not prejudice the Plaintiff. Kellogg MSJ at 16–18. Second, Kellogg argues that the Court should reconsider its ruling dismissing the preemption defense with prejudice. *Id.* at 17–18. The Court considers—and rejects—Kellogg's arguments in turn.

### i. The Court Will Not Consider Kellogg's New Preemption Argument

Kellogg's first argument is that the Court's order striking the preemption defense with prejudice merely removed the defense from Kellogg's answer as if Kellogg had never asserted the

defense in the first place, and that Kellogg "may raise an affirmative defense for the first time in a motion for summary judgment" so long as the "delay does not prejudice the plaintiff." Kellogg MSJ at 16–18. Kellogg argues that "[i]f Kellogg would have been entitled to raise its preemption defense for the first time at summary judgment, there is no reason that this Court's earlier order should preclude Kellogg from raising that defense now." *Id.* at 17.

In support of its argument, Kellogg cites *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997), *as amended* (May 1, 1997). In *Magana* the Ninth Circuit, cited the principle that "defendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." *Id.* However, in *Magana*, the Ninth Circuit also reiterated the general principle that "defendants must raise affirmative defenses in their initial pleadings." *Id.* Moreover, in *Magana*, the Ninth Circuit specifically found that the district court erred in granting summary judgment for defendants when the defendants raised their affirmative defense for the first time three months after filing their answer and where the district court failed to determine whether the defendants' delay in raising the affirmative defense prejudiced plaintiff. *Id.* Thus, the Ninth Circuit remanded to the district court to make the determination of whether the defendants' delay in raising the affirmative defense prejudiced plaintiff. *Id.*

### a. *Magana* is Inapplicable

As an initial matter, the principle in *Magana* does not apply to the instant situation because in this case, Kellogg is not "rais[ing] an affirmative defense for the first time" at summary judgment. *See Magana*, 107 F.3d at 1446. In the instant case, Kellogg previously raised its preemption defense six times: in its three motions to dismiss, in its 149 day late answer, in its response to Plaintiff's interrogatories, and at the March 7, 2018 case management conference. On March 7, 2018, the Court dismissed Kellogg's preemption defense with prejudice in its entirety. Thus, the Court has already ruled against Kellogg's preemption defense, and the Court finds Kellogg's attempts to reassert a preemption defense improper. *See, e.g.*, *Semtek Int'l Inc.*, 531 U.S.

18

at 505 ("'[W]ith prejudice' is an acceptable form of shorthand for 'an adjudication upon the

merits'" (citation and internal quotation marks omitted)); *Stewart*, 297 F.3d at 956 ("The phrase

'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'"

(citation omitted)).

### b. Plaintiff Would Be Prejudiced

Moreover, *Magana* also requires that Kellogg demonstrate that its "delay does not

prejudice the plaintiff." *Magana*, 107 F.3d at 1446. Here, the Court finds that permitting Kellogg

to assert a preemption defense for the seventh time at this late stage would be prejudicial to

Plaintiff. This case was filed on August 29, 2016 and is almost three years old. ECF No. 1. Fact

discovery closed on August 30, 2018. ECF No. 124. Expert discovery closed on May 3, 2019.

ECF No. 248. This order rules on the parties' motions for partial summary judgment and the

parties' motions to strike expert reports and expert testimony. Only the October 31, 2019 final

pretrial conference and the December 6, 2019 trial remain. *Id.*

Courts have recognized that "[t]he failure to raise a defense is prejudicial if the party

against whom the issue is raised may have tried its case differently or advanced distinct legal

arguments against the issue." *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 675 (D.

Haw. 2017) (citing *Sram Corp. v. Shimano, Inc.*, 25 F. App'x. 626, 629 (9th Cir. 2002)). Here,

Plaintiff made numerous strategy and resource allocation decisions during this litigation based on

Kellogg's preemption defenses in Kellogg's three motions to dismiss. For instance, on December

5, 2017, Plaintiff voluntarily dismissed with prejudice products and product claims that he would

not have dismissed had he believed that some of the remaining product claims, including the

"heart healthy" claims, were subject to a preemption defense. *See* ECF Nos. 106 & 111-1

("Fitzgerald Decl.") ¶¶ 7–16; 3/7/18 Transcript at 34:25–36:18. Plaintiff made those decisions

without the benefit of Kellogg's answer, which was due on August 24, 2017, but was not filed

until January 19, 2018.

Moreover, Plaintiff further made numerous strategy and resource allocation decisions

Case No. 16-CV-04955-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND
ORDER RE: PARTIES' MOTIONS TO STRIKE

based on the fact that the Court had dismissed Kellogg's preemption defense with prejudice. For instance, Plaintiff invested significant resources to prepare Plaintiff's class certification motion, including the Class's damages models, to address the "heart healthy" claims that remained in the case. ECF No. 287 ¶ 4. Moreover, Plaintiff specifically made the decision to limit the claims tested in the actual conjoint surveys based on Plaintiff's understanding that Kellogg's preemption defense had been dismissed with prejudice and could not be reasserted. *Id.* ¶ 5. Indeed, Kellogg even uses this as a basis to assert that if Kellogg is allowed to reassert and prevail on its preemption defense, "the Raisin Bran subclass would no longer have any viable class-wide claims," and the "Smart Start subclass would similarly have no viable class-wide claims." Kellogg MSJ at 8 n.8. Such a result certainly would cause prejudice to Plaintiff.

### c. Kellogg's Six Failed Preemption Defenses

Moreover, Plaintiff asserts that Kellogg's instant motion for partial summary judgment raises a new preemption defense based on a regulation Kellogg never before cited, 21 C.F.R. § 101.75. Plt. Opp'n at 10–11. Kellogg concedes that it has never cited 21 C.F.R. § 101.75 before. *See* Kellogg MSJ. The Court agrees that it would be further prejudicial to allow Kellogg to assert a new preemption theory based on a never before cited regulation at this late stage, especially when Kellogg had at least the following six opportunities to articulate Kellogg's preemption defense.

First, Kellogg had three opportunities to articulate its preemption defense in Kellogg's (1) October 31, 2016 motion to dismiss the original complaint; (2) December 8, 2016 motion to dismiss the FAC; and (3) April 19, 2017 motion to dismiss the SAC. ECF Nos. 22, 44, 63. In each of these three motions to dismiss, Kellogg's preemption argument was simply: "Plaintiff's claims based on nutrient claims (such as 'Heart Healthy,' 'Made with Real Fruit,' and 'No High Fructose Corn Syrup') and health claims (such as 'diets low in saturated fat and cholesterol may reduce the risk of heart disease') are [ ] expressly preempted." In each of these three motions to dismiss, Kellogg's preemption argument was very general and vague and failed to specify what regulations apply or how the claims comply with those regulations.

20

Only in its reply to the motion to dismiss the FAC did Kellogg cite for the first time 21 C.F.R. § 101.77 to argue that Kellogg's claims comply with that regulation. ECF No. 50 at 9. The Court's March 21, 2017 order found that Kellogg's preemption argument failed because Kellogg did not satisfy its burden of persuasion to state how the wording of Kellogg's claims is similar to 21 C.F.R. § 101.77. ECF No. 56 at n.6. Kellogg then abandoned 21 C.F.R. § 101.77 and did not raise that regulation ever again. Nowhere in Kellogg's briefing on the three motions to dismiss did Kellogg cite the regulation, 21 C.F.R. § 101.75, that Kellogg now cites for the first time in Kellogg's instant motion for partial summary judgment.

Kellogg's fourth opportunity was its answer, which asserted a preemption defense. But like Kellogg's three motions to dismiss, Kellogg's preemption defense in the answer was deficient. Moreover, Kellogg's answer, which was due on August 24, 2017, was filed 149 days or five months late on January 19, 2018. *See* Answer. In its 149 day late answer, Kellogg's preemption defense consisted of only the following two sentences: "Plaintiff's claims are preempted in whole or in part under the federal Nutrition Labeling and Education Act, 21 U.S.C. § 341 *et seq.* Because the Complaint seeks to impose labeling requirements different than those required under the NLEA, Plaintiffs' claims are preempted." *Id.* at 128. Thus, Kellogg's preemption defense in the 149 day late answer was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with those regulations. Further, nowhere in Kellogg's answer did Kellogg cite the regulation, 21 C.F.R. § 101.75, that Kellogg now cites in its instant motion for partial summary judgment.

Kellogg's fifth opportunity was its March 6, 2018 response to Plaintiff's interrogatories (set four). ECF No. 270-1, Ex. 6 at 7. Specifically, Kellogg responded with the following interrogatory response: "Plaintiff's claims under the 'unlawful' prong of the UCL fail because its labeling complies with all statutes and regulations identified in the SAC, including but not limited to 21 C.F.R. § 101.14, 21 C.F.R. § 1.21, and 21 U.S.C. § 343(a), as well as their parallel state law counterparts." *Id.* at 8. Kellogg further "refer[red] Plaintiff to the papers it submitted in support of

21

Kellogg's three motions to dismiss for a fuller exposition of its position." *Id.* Thus, Kellogg's preemption defense in the response was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with those regulations. Nowhere in Kellogg's response did Kellogg cite the regulation, 21 C.F.R. § 101.75, that Kellogg now cites for the first time in Kellogg's instant motion for partial summary judgment.

Kellogg's sixth opportunity was at the March 7, 2018 case management conference. There, Plaintiff noted that it was still unaware of what Kellogg's preemption defense theory is because Kellogg had failed to identify any specific regulations. *See* 3/7/18 Transcript at 36:25–37:25. In response, Kellogg's counsel stated that Kellogg told Plaintiff "in our briefs and oral conversations and interrogatory responses" that "those preemption defenses" pleaded in the answer were "basically what we said in our briefs." *Id.* at 39:2–6. Thus, Kellogg's preemption defense at the March 7, 2018 case management conference was very general and vague and failed to specify which claims are preempted, what regulations apply, or how the claims comply with those regulations. Further, at no time during the March 7, 2018 case management conference did Kellogg's counsel cite the regulation, 21 C.F.R. § 101.75, that Kellogg now cites for the first time in Kellogg's instant motion for partial summary judgment.

Thus, Kellogg has had at least six opportunities over the past three years to articulate a legally sufficient preemption defense, and Kellogg has failed to do so. Therefore, the Court will not allow Kellogg to sandbag Plaintiff with a new preemption defense at summary judgment after Kellogg repeatedly failed to articulate a legally sufficient preemption defense in three years of litigation. *See, e.g.*, *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500, 505 (D. Nev. 2013) ("A plaintiff is not permitted to raise a new or inadequately pled claim at the summary judgment stage without meeting Rule 16(b) and Rule 15(a)'s requirements. A defendant should fare no better." (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006))).

Indeed, courts have repeatedly recognized that *Magana* does not allow a defendant to introduce a new defense at summary judgment when the defendant had previous opportunities to

22

raise the defense or when defendant's delay prejudiced plaintiff. *See, e.g.*, *Larson v. Warner Bros Entm't, Inc.*, 640 F. App'x 630, 633 (9th Cir. 2016) (finding that new defense would substantially prejudice plaintiff because plaintiff "would have to change its defense strategy, conduct new discovery, and the litigation would effectively have to begin all over. The rescission and acquiescence affirmative defenses are therefore waived."); *Karoun Dairies, Inc. v. Karlacti, Inc.*, 2014 WL 3340917, at *4–5 (S.D. Cal. July 8, 2014) ("[T]his Court finds Plaintiff's lack of diligence inexcusable. In the instant case, Plaintiff had replied to counterclaims by asserting nineteen other affirmative defenses. Moreover, Plaintiff had sufficient time to raise the Inheritance Theory Defense at a much earlier stage. . . . However, Plaintiff failed to do so and waited until the '11th hour' instead of the earliest possible moment to properly raise it. . . . Additionally, the Court finds that as a result of the delay, Defendants will likely suffer prejudice, further supporting the conclusion that Plaintiff should be precluded from asserting the Inheritance Theory Defense."); *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, at *8 (S.D. Cal. July 19, 2010) ("The Court finds Defendants waived their FLSA defense by failing to raise it in a timely manner, and that the delay caused prejudice to Plaintiffs." Defendants "raised the defense for the first time in their motion for summary adjudication. Defendants' general denial of liability under the FLSA in the Answer was insufficient to put Plaintiffs on notice of this particular defense. Plaintiffs did not have notice of this defense until after the parties had already taken depositions and produced requested documents, and Plaintiffs were prejudiced by their inability to conduct discovery on this issue."); *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1106–07 (N.D. Cal. 2016) ("The record demonstrates that Defendant did not raise its reasonable procedures defense in response to Plaintiff's 1681i(a)(1) claim prior to Defendant's opposition to the instant motion. Plaintiff would be prejudiced if Defendant were allowed to raise the affirmative defense for the first time at summary judgment and after the close of discovery. For this reason, the court finds that Defendant has waived an affirmative defense of reasonable procedures."); *Helton v. Factor 5, Inc.*, 26 F. Supp. 3d 913, 921 (N.D. Cal. 2014) (prohibiting individual defendants from

asserting affirmative defense raised for the first time two years and nine months after complaint was amended to add the relevant claims; finding that plaintiffs would be prejudiced because they would have no opportunity to conduct discovery on the issue); *Ulin v. Lovell's Antique Gallery*, 2010 WL 3768012, at *13 (N.D. Cal. 2010) (prohibiting the defendants from raising FLSA exemption defense at summary judgment; finding that plaintiff would be prejudiced because he could not conduct discovery on the defense); *Tyco Thermal Controls LLC v. Redwood Industrials*, 2010 WL 1526471, at *11 (N.D. Cal. Apr. 15, 2010) (rejecting plaintiff's attempt to assert innocent landowner defense after three years of litigation during which defendants had no opportunity to conduct discovery on facts that could support or defeat the defense).

In sum, to allow Kellogg to assert a new preemption defense based on a never before cited regulation after Kellogg had at least six opportunities to articulate its preemption defense, after Plaintiff dismissed some of the products and products claims, after the Court dismissed Kellogg's preemption defense with prejudice, after fact and expert discovery closed, and after two summary judgment motions and six motions to strike expert reports and expert testimony were fully briefed would be prejudicial to the Plaintiff. Therefore, the Court finds that under *Magana*, Kellogg cannot demonstrate that its "delay does not prejudice the plaintiff." *Magana*, 107 F.3d at 1446. Accordingly, the Court rejects Kellogg's *Magana* argument.

### ii. The Court's Dismissal with Prejudice of Kellogg's Preemption Defense is Law of the Case

Kellogg also asserts that the Court should reconsider its previous order that dismissed Kellogg's preemption defense with prejudice. Kellogg MSJ at 17–18; Kellogg Reply at 11–13. Plaintiff opposes on the grounds that the Court's preemption decision is law of the case. Plt. Opp'n at 8–10. In response, Kellogg cites *Askins v. U.S. Dep't of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018), to assert that the law of the case doctrine does not apply to this Court's previous decision in this case. Kellogg Reply at 13. However, Kellogg misreads *Askins*.

In *Askins*, the Ninth Circuit found that the law of the case doctrine did not apply where the

24

district court dismissed the plaintiff's claim in the original complaint but did so without prejudice and explicitly granted plaintiff leave to amend that claim. 899 F.3d at 1043. After the plaintiff filed an amended complaint, "[i]nstead of ruling on the merits of the government's motion to dismiss the amended complaint, the district court invoked the law of the case doctrine, holding that it was 'precluded' from considering the amended complaint." *Id.* The Ninth Circuit held that was error. *Id.* The Ninth Circuit explained: "The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was 'clearly erroneous.'" *Id.* Nonetheless, the Ninth Circuit in *Askins* recognized that "[b]y contrast, where a final legal determination has been made by a higher court, or by the district court in the same or a related case, the law of the case doctrine allows the court to impose a heightened burden on the [party]— to show clear error, changed law, new evidence, changed circumstances, or manifest injustice." *Id.* In the instant case, as discussed, the Court made a final legal determination that Kellogg's preemption defense is dismissed with prejudice. *See* Section III.A.1.a. Thus, the law of the case doctrine applies to the instant case.[1]

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) (citing *Jeffries v. Wood*, 114 F.3d 1484, 1488–89 (9th Cir. 1997) (en banc)). Under this standard, the prior decision should be followed unless: (1) "the decision is clearly erroneous and its enforcement would work a manifest injustice;" (2) "intervening controlling authority makes reconsideration appropriate"; or (3) "substantially different evidence

---

[1] Even if the law of the case doctrine did not apply, the Court would nonetheless decline to reconsider its previous order dismissing Kellogg's preemption defense with prejudice for the reasons stated above.

was adduced at a subsequent trial." *Id.* (quoting *Jeffries*, 114 F.3d at 1489). In the paragraphs that follow, the Court explains why none of these exceptions to the law of the case doctrine apply in the instant case.

As an initial matter, the third exception, that "substantially different evidence was adduced at a subsequent trial," does not apply because there has been no trial. Moreover, the second exception, that "intervening controlling authority makes reconsideration appropriate" also does not apply because Kellogg fails to cite any intervening law that would make it appropriate for the Court to reconsider its previous order granting the motion to strike the preemption defense with prejudice. *See, e.g.*, *Davis v. United States*, 2016 WL 6997168, at *6 (N.D. Cal. Sept. 6, 2016) (applying the law of the case doctrine when plaintiffs "made no showing that the law of the case should not be followed, and have not presented any new evidence or argued that there has been any change in law").

Moreover, on March 7, 2018 when the Court struck Kellogg's preemption defense with prejudice, the Court specifically explained that Kellogg could it reassert its preemption defense if there was new case law. 3/7/18 Transcript at 39:7–9. Kellogg's counsel stated: "we only reserve [the preemption defense], your Honor, in case —for example, if there's no [sic] case law that comes out." *Id.* at 39:10–12. The Court responded: "If there's new case law, then you can reassert it at that point." *Id.* at 39:13–15. Kellogg has failed to cite any new law warranting a reassertion of Kellogg's preemption defense.

Finally, Kellogg does not assert that the first exception, that the Court's order striking Kellogg's preemption defense with prejudice "is clearly erroneous and its enforcement would work a manifest injustice," applies. Moreover, the Court's order striking Kellogg's preemption defense with prejudice is not clearly erroneous. The Court struck Kellogg's preemption defense with prejudice because Kellogg failed to advance a legally sufficient preemption defense six times, including in Kellogg's 149 day late answer. *See* 3/7/18 Transcript. Second, enforcement of the Court's order striking Kellogg's preemption defense with prejudice would not work a "manifest

26

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER RE: PARTIES' MOTIONS TO STRIKE

injustice." Because Kellogg's repeated failure to advance a legally-sufficient preemption defense and its failure to timely answer were Kellogg's own fault, no "manifest injustice," would result by the Court enforcing its decision. *See, e.g., Am. Auto. Ins. Co.*, 2017 WL 5892255, at *8 (finding no manifest injustice and stating that "[n]ot applying the law of the case here would allow 'a party dissatisfied with a prior ruling [to] reargue the point, without end, and without new evidence or new controlling law.'" (quoting *United States v. Real Prop. Located at Incline Vill.*, 976 F. Supp. 1327, 1354 (D. Nev. 1997)).

Instead, Kellogg argues that the Court should consider Kellogg's newly cited regulation, 21 C.F.R. § 101.75, because the Court did not consider that regulation in its March 7, 2018 order striking Kellogg's preemption defense with prejudice. Kellogg Reply at 16–17. Kellogg effectively asks the Court to reward Kellogg for not citing this regulation in three years of litigation in six versions of Kellogg's preemption defense. In this Court's review, rewarding Kellogg for effectively sandbagging Plaintiff would be clearly erroneous and a manifest injustice. On December 5, 2017, Plaintiff dismissed some of the products and products claims based on Kellogg's deficient preemption defenses in Kellogg's three motions to dismiss. Fact discovery closed on August 30, 2018. ECF No. 124. Expert discovery closed on May 3, 2019. ECF No. 248. This order rules on the parties' motions for partial summary judgment and six motions to strike expert reports and expert testimony. Only the October 31, 2016 final pretrial conference and the December 6, 2019 trial remain. *Id.* "[W]here a party has had the opportunity to fully and fairly litigate an issue, the law of the case doctrine prevents a party 'from offering new theories going to the same issue it already litigated.'" *Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, 2017 WL 5892255, at *8 (D. Haw. Sept. 27, 2017); *Karoun Dairies, Inc.*, 2014 WL 3340917, at *4–5 ("[T]his Court finds Plaintiff's lack of diligence inexcusable. . . . Plaintiff had sufficient time to raise the Inheritance Theory Defense at a much earlier stage. . . . However, Plaintiff failed to do so and waited until the '11th hour' instead of the earliest possible moment to properly raise it.").

Thus, after finding that none of the three exceptions apply, the Court finds that Kellogg's

27

preemption argument is barred under the law of the case doctrine. *See, e.g.*, *Simmons First Nat'l Bank v. Lehman*, 2015 WL 1737879, at *2–4 (N.D. Cal. Apr. 10, 2015) (finding that where "five affirmative defenses sounding in fraud in the inducement failed as a matter of law," additional defenses based on similar allegations were "contrary to" and "barred under the law of the case"). Therefore, the Court rejects Kellogg's second argument that the Court should reconsider its previous order that dismissed Kellogg's preemption defense with prejudice.

Thus, the Court DENIES Kellogg's motion for partial summary judgment based on preemption.

### 2. Punitive Damages

Kellogg also argues that the Court should grant summary judgment on Plaintiff's punitive damages claim under the CLRA. Kellogg MSJ at 18–22; Kellogg Reply at 14–15. The CLRA allows punitive damages upon "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code §§ 1780(a)(4), 3294(a).

Here, Plaintiff argues that punitive damages are available for Kellogg's fraud or malice. Plt. Opp'n at 17. However, Plaintiff's SAC does not identify the basis of Plaintiff's punitive damages claim and simply states that Plaintiff seeks "punitive damages" as "permitted under the causes of action alleged herein." *See* SAC.

In Plaintiff's opposition to Kellogg's instant motion for partial summary judgment, Plaintiff states that Plaintiff's punitive damages theory is that "Kellogg knew long before consumers of the dangers of added sugar consumption, knew consumers were ignorant of those dangers, and intentionally obscured those dangers, misleading consumers through both affirmative misrepresentations and deceptive omissions, encouraging Class Members to consume its products, putting their health at risk in pursuit of profit." Plt. Opp'n at 18–19. Plaintiff repeatedly refers generally to the "dangers of added sugar consumption" without specifying what the dangers are. *See, e.g.*, *id.* at 19 ("Kellogg has long known the dangers of added sugar consumption"); 21 ("Kellogg knew consumers lacked adequate knowledge of added sugar's dangers"). Ultimately,

28

Plaintiff's opposition asserts that there is an association between added sugar consumption and diabetes, heart disease, obesity, and chronic disease. *See id.* at 20–24.

However, in the instant case, the FDA has taken the position that "inadequate evidence exists to support the direct contribution of added sugars to obesity or heart disease." 79 Fed. Reg. 11880, 11904 (Mar. 3, 2014) ("[N]either the 2010 DGA nor the IOM macronutrient report concluded that added sugars consumption from all dietary sources, in itself, increases obesity. In fact, the 2010 DGA states that added sugars do not contribute to weight gain more than any other source of calories. The evidence submitted by CSPI supporting the contribution of added sugars to heart disease failed to show a direct association between added sugars consumption and heart disease risk."). Consistent with this, Kellogg's Senior Director of Global and Regulatory Science, Nelson Almeida, testified that the "majority of the studies" of sugar consumption conclude that "excess energy intake," meaning caloric intake, rather than added sugar per se, is responsible for obesity and chronic disease. ECF No. 267-14, Ex. 28 ("Almeida Decl.") at 68:17–69:8.

Moreover, in the instant case, Plaintiff's own expert, Dr. Robert Lustig, admitted that he cannot find one study that finds that cereal consumption increases the risk of coronary heart disease, diabetes, or obesity. ECF No. 267-13, Ex. 27 ("Lustig Dep.") at 304:10–22. Furthermore, Dr. Lustig admitted that his view on the dangers of consuming added sugar to heart health (referring to heart disease) is a minority view. Indeed, Dr. Lustig specifically testified at his deposition that his opinion about the dangers of consuming added sugar to heart health "is not the majority view of researchers." *Id.* at 248:9–250:5.

To obtain punitive damages under California law, a plaintiff must meet the high standard of demonstrating by clear and convincing evidence that the defendant has been guilty of "fraud" or "malice." *Pac. Gas & Elec. Co. v. Superior Court*, 24 Cal. App. 5th 1150, 1158 (Ct. App. 2018), *as modified on denial of reh'g* (July 26, 2018), *review denied* (Oct. 17, 2018) (explaining that the higher burden of proof for punitive damages must be taken into account when ruling on a motion for summary judgment). "Fraud" means "an intentional misrepresentation, deceit, or concealment

of a material fact." Cal. Civ. Code § 3294(a)(3). "Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(a)(1). The California Court of Appeal has recognized that "[p]unitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy." *Pac. Gas & Elec. Co.*, 24 Cal. App. 5th 1150 at 244 (finding plaintiffs failed to present sufficient evidence to raise a triable issue of fact as to punitive damages). Plaintiff has failed to set forth facts to raise a triable issue as to this high standard in the instant case.

Moreover, the case Plaintiff cites in support of his argument that the Court should deny summary judgment on punitive damages, *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1133–34 (S.D. Cal. 2014), is inapposite. In that case, the United States District Court for the Southern District of California denied defendant's motion for summary judgment on punitive damages when plaintiff had cited evidence of defendant's knowledge of the dangers of asbestos and had shown that defendant's "personnel supervised the removal and replacement of an asbestos refractory, which generated extensive dust and which [defendant] personnel failed to warn of, despite OSHA asbestos dust standards requiring employers to provide a warning on jobsites." *Id.* at 1134. However, unlike in the instant case, the dangers of asbestos were known and documented in *Willis*, and OSHA had even set forth exposure to asbestos dust standards. *Id.*

Thus, the Court finds that the instant record does not create a genuine dispute of material fact as to whether Plaintiff is entitled to punitive damages. Accordingly, the Court GRANTS Kellogg's motion for partial summary judgment on punitive damages.

## B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment seeks to find Kellogg liable to the Class for violating the "unlawful" prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, with respect to the labeling of Raisin Bran and Raisin Bran Crunch with the claims "+ Heart Health + / Kellogg's Raisin Bran / With crispy bran flakes made from

30

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND ORDER RE: PARTIES' MOTIONS TO STRIKE

whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber"

("Statement 1") and "Heart Healthy / Whole grains can help support a healthy lifestyle"

("Statement 2"). Plaintiff argues that the labels of Raisin Bran and Raisin Bran Crunch bear

Statement 1 and Statement 2 in violation of federal and state food labeling laws and regulations.

Plt. MSJ at 1.[2]

The unlawful prong of the UCL prohibits "anything that can properly be called a business

practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns Inc. v. L.A. Cellular*

*Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (quotation marks and citations omitted). "By

proscribing any unlawful business practice, section 17200 borrows violations of other laws and

treats them as unlawful practices that the unfair competition law makes independently actionable."

*Id.* (internal quotations and citations omitted). Thus, a "[v]iolation of almost any federal, state, or

local law may serve as the basis for a UCL claim." *Plascencia v. Lending 1st Mortg.*, 259 F.R.D.

437, 448 (N.D. Cal. 2009), order clarified, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) (citing

*Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994)). Here, Plaintiff asserts that the

predicate laws for his UCL unlawful prong violation are the Federal Food, Drug, and Cosmetic

Act, 21 U.S.C. §§ 301 *et seq.*, ("FDCA"), and California's Sherman Food, Drug, and Cosmetic

Law, Cal. Health & Safety Code §§ 109875 *et seq.*, ("Sherman Law"), which incorporates the

federal food labeling laws and regulations into state law. *See* Cal. Health & Safety Code §

110100(a) ("All food labeling regulations and any amendments to those regulations adopted

pursuant to the federal act . . . shall be the food labeling regulations of this state."); *id.* § 110670

("Any food is misbranded if its labeling does not conform with the requirements for nutrient

content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and

regulations adopted pursuant thereto."); *id.* at § 110765 ("It is unlawful for any person to misbrand

any food."). Because the Sherman Law finds food misbranded only to the extent the FDCA finds

---

[2] Plaintiff's motion for partial summary judgment specifically reserves for trial the question of the proper remedies for Kellogg's UCL unlawful prong violation. Plt. MSJ at 7 n.4.

food misbranded, both parties focus their arguments on whether Kellogg violated the FDCA.

The FDCA, codified at 21 U.S.C. §§ 301 *et seq.*, "gives the FDA the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled,' and the FDA has promulgated regulations pursuant to this authority." *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (quoting 21 U.S.C. § 393(b)(2)(A)). 21 U.S.C. § 331(a)-(c), (k) of the FDCA expressly prohibits the misbranding of food in interstate commerce, while 21 U.S.C. § 343 sets forth conditions under which food is considered "misbranded." The FDCA specifically contemplates that foods may be misbranded under 21 U.S.C. § 343 when their labels "characterize[ ] the relationship of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food to a disease or health-related condition unless the claim is made in accordance with subparagraph (3) or (5)(D)." 21 U.S.C. § 343(1)(B). Relevant here, subparagraph 3 provides that a claim may only be made "if the claim meets the requirements of the regulations of the Secretary promulgated under clause (B)." 21 U.S.C. § 343(3)(A)(i).

The regulations implementing the FDCA are found in part 101 of title 21 of the Code of Federal Regulations. 21 C.F.R. § 101.14 sets out "general requirements" governing health claims. 21 C.F.R. § 101.14(a)(1) provides that a health claim is "any claim made on the label or in the labeling of a food . . . that expressly or by implication, . . . characterizes the relationship of any substance to a disease or health-related condition." An implied health claim "include[s] those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition." *Id.*

21 C.F.R. 101.14(e) provides that "[n]o expressed or implied health claim may be made on the label or in the labeling for a food," unless "[t]he claim is specifically provided for in subpart E of this part;" and "conforms to all general provisions of this section as well as to all specific provisions in the appropriate section of subpart E." Subpart E is found at 21 C.F.R. §§ 101.70–

32

United States District Court
Northern District of California

101.83.

Relevant here, 21 C.F.R. § 101.71 is the provision of Subpart E that sets forth "claims not authorized for foods in conventional form or dietary supplements." The linking of "[d]ietary fiber and cardiovascular disease" is specifically listed as an unauthorized claim. 21 C.F.R. § 101.71(a).

In the sections below the Court discusses the parties' arguments regarding whether Statement 1 and Statement 2 violate the FDCA.

### 1. Statement 1

Statement 1 is the statement "+ Heart Health + / Kellogg's Raisin Bran / With crispy bran flakes made from whole grain wheat, all three varieties of Kellogg's Raisin Bran are good sources of fiber." Statement 1 appeared on the back of Raisin Bran boxes in the 13.7 oz., 18.7 oz., and 23.5 oz. packaging at various times between approximately November 2013 and September 2014. ECF No. 136-1, Ex. 5 ("Raisin Bran Label Timeline") at 2, 10–11, 20–21. Statement 1 also appeared on the back of Raisin Bran Crunch boxes in the 24.8 oz. packaging between approximately November 2013 to January 2014 and again in April 2014. ECF No. 136-3 ("Raisin Bran Crunch Timeline") at 6–7. The following is an example of Statement 1 on one of Kellogg's Raisin Bran Crunch products:



*See* Plt. MSJ at 3 (Citing Kellogg-00114).

Plaintiff argues that summary judgment with respect to his UCL unlawful prong claim

United States District Court
Northern District of California

based on Statement 1 is appropriate because Statement 1 violates 21 C.F.R. § 101.71(a). Plt. MSJ at 7; Plt. Reply at 1–2. Specifically, Plaintiff argues that Statement 1 links "[d]ietary fiber and cardiovascular disease" and is therefore "not authorized" by 21 C.F.R. § 101.71(a).

In opposition, Kellogg argues that Statement 1 does not violate 21 C.F.R. § 101.71(a) because, rather than consisting of a single unauthorized labeling claim, Kellogg argues that Statement 1 actually consists of two separate claims, which are each "expressly authorized by the FDA regulations."[3] Kellogg Opp'n at 8–9. Specifically, Kellogg divides the "+ Heart Health +" claim from the "good sources of fiber" claim and argues that the "+ Heart Health +" claim is expressly authorized by 21 C.F.R. § 101.75, and that the "good sources of fiber" claim is expressly authorized by 21 C.F.R. § 101.54. *Id.* at 1, 8–10. Kellogg argues that "[e]ven if these two statements are in close proximity to one another, Plaintiff does not identify a single FDA regulation requiring them to be a certain distance apart from one another," and therefore that Statement 1 is permitted. *Id.* at 10.

In reply, Plaintiff argues that this Court has already considered Statement 1 and found that it consists of a single labeling claim because the Court found in its August 10, 2017 Order on Kellogg's motion to dismiss the SAC that Statement 1 "directly link[s] cardiovascular health with fiber" and "thus [is a] health claim[]." Plt. Reply at 2 (citing ECF No. 76 at 28). Moreover, Plaintiff argues that 21 C.F.R. § 101.71(a) *is* a "FDA regulation requiring" statements about dietary fiber and cardiovascular disease to be a certain distance apart from one another because 21 C.F.R. § 101.71(a) requires the statements to not directly link cardiovascular health with fiber. Plt. Reply at 2 (citing 21 C.F.R. § 101.71(a)). Finally, Plaintiff argues it would be contrary to the regulations to find Statement 1 authorized by 21 C.F.R. § 101.54 when 21 C.F.R. § 101.71(a) expressly prohibits health claims associating dietary fiber with heart disease and does not contain an exception for when the reference to dietary fiber, considered alone, is an otherwise authorized

---

[3] Kellogg's arguments also include preemption arguments that have been discussed above.

nutrient content claim. *Id.*

The Court agrees with Plaintiff. As an initial matter, the Court rejects Kellogg's attempt to divide Statement 1 into two parts in order to find each individual part authorized by the regulations. This Court's August 10, 2017 Order on Kellogg's motion to dismiss Plaintiff's SAC found Statement 1 to be a health claim specifically because Statement 1 "directly link[s] cardiovascular health with fiber." ECF No. 76 at 28. Thus, Kellogg's attempts to now divide Statement 1 into two separate claims conflicts with this Court's prior order. Moreover, 21 C.F.R. § 101.71(a) identifies "claims not authorized for foods in conventional form or dietary supplements." 21 C.F.R. § 101.71(a) specifically identifies the linking of "[d]ietary fiber and cardiovascular disease" as an unauthorized claim. 21 C.F.R. § 101.71(a). Thus, because Statement 1 links "cardiovascular health with fiber," Statement 1 violates 21 C.F.R. § 101.71(a).

### 2. Statement 2

Statement 2 is the statement "Heart Healthy / Whole grains can help support a healthy lifestyle." Statement 2 appeared on the back of Raisin Bran boxes in the 13.7 oz., 14.3. oz., 18.7 oz., 23.5 oz., and 30.3 oz. packaging between approximately November 2015 and September 2017. Raisin Bran Label Timeline at 5, 7, 13–16, 24–26; ECF No. 136-2 at 3–4. Statement 2 also appeared on the back of Raisin Bran Crunch boxes in the 18.2 oz. packaging sold from approximately April 2016 to May 2016; and on the 24.8 oz. packaging sold approximately in part of November 2015, from December 2015 to April 2016, and again from December 2016 to April 2017. Raisin Bran Crunch Label Timeline at 2, 11–12, 15. The following is an example of

Statement 2 on one of Kellogg's Raisin Bran Crunch products:



See Plt. MSJ at 3 (Citing Kellogg-00114).

Plaintiff argues that summary judgment with respect to his UCL unlawful prong claim based on Statement 2 is appropriate because Statement 2 violates 21 C.F.R. § 101.14(e), which provides that "[n]o expressed or implied health claim may be made on the label or in the labeling for a food," unless "[t]he claim is specifically provided for in subpart E of this part."[4] Plt. MSJ at 6–7; Plt. Reply at 2–6. Specifically, Plaintiff argues that Statement 2, which links whole grains and cardiovascular disease, is not authorized by any regulation in subpart E, and therefore Statement 2 violates 21 C.F.R. § 101.14(e). Plt. MSJ at 6–7 (citing 21 C.F.R. §§ 101.70–101.83); Plt. Reply at 3.

In opposition, Kellogg concedes that "the FDA has not promulgated a formal regulation authorizing food manufacturers to associate consumption of whole grains with cardiovascular disease." Kellogg Opp'n at 4. Nonetheless, Kellogg argues that Statement 2 is instead authorized because it is similar to two claims (referred to below as "FDAMA health claims") that the FDA approved via the streamlined process outlined in the Food & Drug Administration Modernization

---

[4] Plaintiff asserts that Statement 2 is also an unlawful health claim because Statement 2 violates 21 C.F.R. § 101.71(a), which prohibits claims that link "[d]ietary fiber and cardiovascular disease." See Plt. Reply at 6. Because the Court finds that Statement 2 violates 21 C.F.R. § 101.14(e), the Court need not consider Plaintiff's alternative argument.

36

Act of 1997 ("FDAMA"). Kellogg Opp'n at 5–6, 11 (citing 21 U.S.C. § 343(r)(3)(C)).

In reply, Plaintiff argues that Kellogg's Statement 2 is not similar to either of the two authorized FDAMA health claims, and that summary judgment is appropriate because Kellogg's Statement 2 violates 21 C.F.R. § 101.14(e). Plt. Reply at 3–6.

For the reasons given below, the Court agrees with Plaintiff. Below the Court first explains the FDAMA and its requirements. Second, the Court discusses the two FDAMA health claims that Kellogg identified. Third, the Court explains why Kellogg's Statement 2 is not authorized by the two FDAMA health claims.

### a. The FDAMA

Congress passed the FDAMA in 1997. The FDA has explained that the FDAMA provides an alternative avenue for obtaining approval of health claims that are not specifically authorized by FDA regulations:

> Prior to the Food and Drug Administration Modernization Act of 1997 (FDAMA), companies could not use a health claim or nutrient content claim in food labeling unless the Food and Drug Administration (FDA) published a regulation authorizing such a claim. Two new provisions of FDAMA . . . will now permit distributors and manufacturers to use claims if such claims are based on current, published, authoritative statements from certain federal scientific bodies, as well as from the National Academy of Sciences. These provisions are intended to expedite the process by which the scientific basis for such claims is established.

ECF No. 278-3, Ex. 2. Relevant here, the FDAMA amended the FDCA to permit health claims "not authorized by the Secretary in a regulation" if certain requirements are met. 21 U.S.C. § 343(r)(3)(C). Those requirements are: (i) "a scientific body" must have published an "authoritative statement" "about the relationship between a nutrient and a disease or health-related condition;" (ii) a manufacturer must, "at least 120 days" before using a health claim, submit to the FDA "the exact words used in the claim," as well as support for its validity; (iii) "the claim and the food must be in compliance" with other requirements; and (iv) the claim must be "stated in a manner so that the claim is an accurate representation of the authoritative statement," and "so that the claim enables the public to comprehend the information provided in the claim and to understand the

37

relative significance of such information in the context of a total daily diet." *Id.* § 343(r)(3)(C)(i)-(iv); *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527, at *8–9 (N.D. Cal. Jan 2, 2014) (describing the FDAMA petition process). If those criteria are satisfied, then "[a] claim submitted under the requirements of clause (C) may be made until" the claim is later prohibited, modified, or found by a district court not to have complied with clause (C) in the petition process. 21 U.S.C. § 343(r)(3)(D).

### b. The Two FDAMA Health Claims

Kellogg argues that Statement 2—"Heart Healthy / Whole grains can help support a healthy lifestyle"—is authorized because it is similar to two FDAMA health claims that the FDA authorized pursuant to the FDAMA. Kellogg Opp'n at 5–6, 11 (citing 21 U.S.C. § 343(r)(3)(C)).

The first FDAMA health claim that Kellogg cites is a FDAMA Health Claim Notification for Whole Grain Foods from July 8, 1999 ("1999 FDAMA Health Claim") based on a notification submitted to the FDA by General Mills, Inc. ECF No. 278-4, Ex. 3. That 1999 FDAMA Health Claim specifically states that "[d]iets rich in whole grain foods and other plant foods and low in total fat, saturated fat, and cholesterol, may help reduce the risk of heart disease and certain cancers." *Id.*

The second FDAMA health claim that Kellogg cites is a FDAMA Health Claim Notification for Whole Grain Foods with Moderate Fat Content from December 9, 2003 ("2003 FDAMA Health Claim") based on a notification submitted to the FDA by Kraft Foods. ECF No. 278-5, Ex. 4. The 2003 FDAMA Health Claim specifically states that "[d]iets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease." *Id.*

### c. Kellogg's Statement 2 is Not Authorized by the FDAMA Health Claims

For the reasons given below, the Court finds that Kellogg's Statement 2 is not authorized by the two FDAMA health claims.

The 1999 FDAMA Health Claim provides that "[d]iets rich in whole grain foods and other

38

plant foods and low in total fat, saturated fat, and cholesterol, may help reduce the risk of heart disease and certain cancers." ECF No. 278-4, Ex. 3.

The 2003 FDAMA Health Claim specifically states that "[d]iets rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol, may help reduce the risk of heart disease." ECF No. 278-5, Ex. 4.

Here, Statement 2 states that "Heart Healthy/ Whole grains can support a heart-healthy lifestyle."

A comparison of Statement 2 and the two FDAMA health claims shows that the language in Statement 2 does not contain the "exact words" from the 1999 FDAMA Health Claim and the 2003 FDAMA Health Claim. Statement 2 is missing at least the following words from the two FDAMA health claims: "diets rich in," "and other plant foods," "and low in total fat, saturated fat and cholesterol," and "may help reduce the risk of heart disease and certain cancers." In its opposition to Plaintiff's motion for partial summary judgment, Kellogg concedes that Statement 2 does not "precisely track" the 1999 FDAMA Health Claim and the 2003 FDAMA Health Claim. Kellogg Opp'n at 11–12.

Nonetheless, Kellogg argues that Kellogg's failure to "precisely track the language approved by the FDA [ ] does not render" its Statement 2 "an unauthorized claim" because when "read alongside the FDA-compliant disclaimer language," the "message is substantively identical to an approved FDAMA claim." *Id.* Specifically, Kellogg cites to an asterisk next to the words "Heart Healthy" in Statement 2 that directs the reader to a claim that is separate from Statement 2. Statement 2 appears in the middle left of the box in larger font. *See* ECF No. 278-7. The asterisk statement is found in very small font at the top of the cereal box under the statement that appears in extremely large "GREAT TASTE / THAT DOES YOUR HEART GOOD." *See id.* The asterisk statement states: "[w]hile many factors affect heart disease, diets low in saturated fats and cholesterol may reduce the risk of heart disease." Kellogg Opp'n at 11–12 (citing ECF No. 278-7, Ex. 6). Kellogg argues that this asterisk statement renders Statement 2 authorized by the FDAMA

39

health claims. *Id.*

Even if the Court assumes that the use of an asterisk to direct the reader to the text of a separate disclaimer is proper in evaluating whether Statement 2 is authorized by the FDAMA health claims, Statement 2 with the asterisk still does not use the "exact words" of the 1999 FDAMA Health Claim and the 2003 FDAMA Health Claim. Specifically, the asterisk statement is missing the following: diets must be "rich in whole grains and other plant foods," "low in total fat," and "may help reduce the risk of heart disease." *Compare* ECF No. 278-7, Ex. 6, *with* ECF No. 278-4, Ex. 3, *and* ECF No. 278-5, Ex. 4.

Indeed, the asterisk's statement "may reduce the risk of heart disease" is different from the two FDAMA health claims, which state "may help reduce the risk of heart disease." The FDAMA required that General Mills, Inc. and Kraft Foods submit support for the validity of their statement "may help reduce the risk of heart disease" to get approval of their FDAMA health claims. 21 U.S.C. § 343(r)(3)(C). Thus, General Mills, Inc. and Kraft Foods submitted support for the validity of "may help reduce the risk of heart disease" to the FDA. *See* ECF No. 278-4, Ex. 3 (permitting 1999 FDAMA Health Claim that states "may help reduce" because of scientific literature about the association between diets rich in whole grains and "a lower occurrence of coronary heart disease and cancers"); ECF No. 278-5, Ex. 4 (permitting 2003 FDAMA Health Claim that states "may help reduce" because of scientific literature about the association between "whole grains" and a "lower occurrence of coronary heart disease"). General Mills, Inc. and Kraft Foods did not submit support for the validity of "may reduce the risk of heart disease" to the FDA.

Kellogg fails to cite any authority that permits Kellogg to claim "may reduce the risk of heart disease" without providing the FDA support for the validity of that statement. *See* 21 U.S.C. § 343(r)(3)(C) (stating that the manufacturer must submit "a balanced representation of the scientific literature relating to the relationship between a nutrient and a disease or health-related condition to which the claim refers."). Thus, the Court finds that Kellogg's Statement 2 is not authorized by the two FDAMA health claims that do not even make the claim "may reduce the

40

risk of heart disease" and did not submit any support for the validity of that claim.

The Court also finds that Kellogg's Statement 2 is not authorized by the two FDAMA health claims because it does not use the "exact words" of the two FDAMA health claims. Indeed, the plain language of the FDAMA, found at 21 U.S.C. § 343(r)(3)(C), provides that a manufacturer must, before using a health claim, submit to the FDA "the exact words used in the claim." In the "Guidance for Industry Notification of a Health Claim or Nutrient Content Claim Based on an Authoritative Statement of a Scientific Body," the FDA similarly explains that an FDAMA application must set forth "the exact words" of the proposed claim. ECF No. 278-3, Ex. 2 at 2–3. Moreover, the FDAMA appears to contemplate that after receiving FDA approval, a manufacturer must use the "exact words" of the FDAMA health claim. For instance, the FDA quotes the exact words that may be used in the 1999 FDAMA Health Claim, and states that "manufacturers may use the following claim on the label and in the labeling of any product that meets the eligibility criteria described in the notification." Smith Decl., Ex. 3 at 2. Kellogg fails to cite authority that Kellogg can rely on a FDAMA claim but not use the "exact words."

Kellogg's reliance on *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017), and *In re Quaker Oats Labeling Litig.*, 2012 WL 1034532 (N.D. Cal. Mar. 28, 2012), to argue that the FDAMA authorizes Statement 2 is misplaced. *See* Kellogg Opp'n at 11. The section of *Krommenhock* that Kellogg cites is merely the *Krommenhock* defendant's argument, *not* the *Krommenhock* court's holding, and the *Krommenhock* court never addressed the defendant's argument. *See* 255 F. Supp. 3d at 959. *In re Quaker Oats* does not even address the FDAMA. S*ee* 2012 WL 1034532. Therefore, *Krommenhock* and *In re Quaker Oats* are inapplicable.

Finally, Kellogg fails to cite any authority that Kellogg can rely on a FDAMA claim submitted by different manufacturers regarding different products and different product claims. *See, e.g.*, *Ogden*, 2014 WL 27527, at *9 ("Bumble Bee offers no support for the proposition that a food manufacturer may rely on a Section 343(r)(2)(G) notification submitted by one manufacturer to place a materially different nutrient content claim on its own product labels."). Thus, the Court

41

cannot conclude that Statement 2 is authorized by the two FDAMA health claims.

In sum, Kellogg's argument that Statement 2 does not violate the FDCA because Statement 2 is similar to two FDAMA health claims fails. Moreover, Kellogg concedes that "the FDA has not promulgated a formal regulation authorizing food manufacturers to associate consumption of whole grains with cardiovascular disease." Kellogg Opp'n at 4. Therefore, the Court finds that Statement 2, which links whole grains and cardiovascular disease, is not authorized by any regulation in subpart E, and therefore Statement 2 violates 21 C.F.R. § 101.14(e).

### 3. Policy Arguments

Finally, in its opposition to Plaintiff's motion for partial summary judgment, Kellogg also advances policy arguments for why the Court should deny Plaintiff's motion for summary judgment as to Statements 1 and 2. In particular, Kellogg argues that "Plaintiff offers no evidence" that Kellogg's statements are "likely to deceive reasonable consumers or that Kellogg acted with deceptive intent." Kellogg Opp'n at 12.

The Court rejects Kellogg's policy arguments because Kellogg misstates the law. The Ninth Circuit has specifically held that "the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 471–72 (9th Cir. 2017). Here, the predicate violation is Kellogg's violation of FDA regulations. The Ninth Circuit in *Bruton* addressed the violation of FDA regulations as a predicate violation for a UCL unlawful prong claim. The Ninth Circuit in *Bruton* held that the "FDA regulations include no requirement that the public be likely to experience deception," and thus, the "reasonable consumer test" is not an element of a violation of FDA regulations. *Id.* at 472.

In the August 10, 2017 Order on Kellogg's motion to dismiss the SAC, this Court held that Kellogg's argument that Plaintiff was required to plead a violation of the reasonable consumer test to state a UCL unlawful prong claim failed per *Bruton*. ECF No. 76 at 62. Thus, as the Court did

in the August 10, 2017 Order on Kellogg's motion to dismiss the SAC, the Court again rejects

Kellogg's argument that Plaintiff needs to offer evidence that Kellogg's statements are "likely to

deceive reasonable consumers" to prove Plaintiff's UCL unlawful prong claim. *See id.*

### 4. Summary

In summary, the Court finds that Kellogg's Statement 1 violates 21 C.F.R. § 101.71(a), and

thus violates the FDCA. The Court also finds that Kellogg's Statement 2 violates 21 C.F.R. §

101.14(e), and thus violates the FDCA. Kellogg's Statement 1 and Statement 2 are therefore also

in violation of California's Sherman Law. *See* Cal. Health & Safety Code § 110100(a) ("All food

labeling regulations and any amendments to those regulations adopted pursuant to the federal act .

. . shall be the food labeling regulations of this state."). Accordingly, Kellogg violated and is liable

under the UCL's "unlawful" prong with respect to Statement 1 and Statement 2. Thus, the Court

GRANTS Plaintiff's motion for partial summary judgment.

### C. Motions to Strike

The Court rules as follows on the parties' various motions to strike.

### 1. Kellogg's Motions to Strike

#### a. Kellogg's Motion to Strike the Testimony of Dr. Robert Lustig

The Court DENIES Kellogg's motion to strike the testimony of Dr. Robert Lustig. ECF

No. 257. Kellogg argues that Dr. Lustig's opinions on added sugars are unreliable. However, Dr.

Lustig's opinions are based on his medical training, his experience treating obese children, his

academic research, and his review of the scientific record. Kellogg's arguments as to why Dr.

Lustig should be excluded go to weight and not admissibility. *See Primiano v. Cook*, 598 F.3d

558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("When an expert meets the threshold

established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how

much weight to give that testimony.").

#### b. Kellogg's Motion to Strike the Testimony of Bruce Silverman

The Court DENIES Kellogg's motion strike the testimony of Bruce Silverman. ECF No.

258. Kellogg challenges Mr. Silverman's opinions about consumer behavior and the challenged claims for failing to conduct a consumer survey. However, Mr. Silverman's opinions are based on his many years of marketing experience and his review of Kellogg's own internal consumer research and other documents. *See Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6460573, at *4 (N.D. Cal. Dec. 10, 2018) ("[E]xperience-based expert testimony is reliable if the expert 'explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" (quoting *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003))). Moreover, Kellogg's argument is at odds with the principle that "surveys and expert testimony regarding consumer expectations are not required." *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 7206633, at *5 (N.D. Cal. Dec. 18, 2014), *aff'd in part, rev'd in part on other grounds*, 703 F. App'x 468 (9th Cir. 2017); ECF No. 208 ("California courts have explicitly 'reject[ed] [the] view that a plaintiff must produce' extrinsic evidence 'such as expert testimony or consumer surveys" in order 'to prevail on a claim that the public is likely to be misled by a representation'" (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 662, 681–82 (2006))). Finally, the rest of Kellogg's criticisms go to "weight" and not admissibility. *See Primiano*, 598 F.3d at 565.

### c. Kellogg's Motion to Strike the Testimony of Colin Weir

The Court DENIES Kellogg's motion to strike the testimony of Colin Weir. ECF No. 259. Mr. Weir offers a hedonic regression showing a 4.59% price premium for the "Heart Healthy" statement. Kellogg challenges the reliability of Mr. Weir's regression analysis, including Mr. Weir's dataset and the variables used or omitted in his regression. However, Kellogg's criticisms go to the weight of Mr. Weir's regression analysis and not admissibility. *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037–38 (9th Cir. 2010) (holding that criticisms about a survey's "fail[ure] to replicate real world conditions"— "valid as they may be"—go to 'issues of methodology, design, reliability, . . . and critique of conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'" (quoting

44

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2010))); *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (appeal filed) ("[C]hallenges to [an expert's] dataset do not sufficiently undermine the reliability of [the expert's] regression analysis to warrant exclusion.").

### 2. Plaintiff's Motions to Strike

#### a. Plaintiff's Motion to Strike the Expert Reports of Neal D. Fortin, J.D., and Ricardo Carvajal, J.D.

The Court GRANTS Plaintiff's motion to strike the expert reports of Neal D. Fortin, J.D., and Ricardo Carvajal, J.D. ECF No. 270. Both Mr. Fortin and Mr. Carvajal offer an opinion in support of Kellogg's preemption theory based on a regulation that Kellogg never cited before. However, for all of the reasons given in Section III.A.1., the Court finds that Plaintiff would be prejudiced by allowing Kellogg at this late stage to assert a new preemption theory based on a regulation that Kellogg never cited before. Moreover, the Court already struck Kellogg's preemption defense with prejudice on March 7, 2018. Finally, Mr. Fortin and Mr. Carvajal opinions are purely legal in nature, and thus are not the proper subject matter of an expert opinion. *See, e.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("Fed. R. Evid. 704(a) provides that expert testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. (emphasis in original) (citation omitted)).

#### b. Plaintiff's Motion to Strike Portions of the Expert Reports of Ronald T. Wilcox, Ph.D., James Rippe, M.D., and to Partially Exclude the Testimony of Dr. Itamar Simonson

The Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to strike portions of the expert reports of Ronald T. Wilcox, Ph.D., James Rippe, M.D., and to partially exclude the testimony of Dr. Itamar Simonson. ECF No. 271. Plaintiff raises two main arguments in this motion to strike: (1) that the Court should strike the opinions of Dr. Wilcox, Dr. Rippe, and

United States District Court
Northern District of California

Dr. Simonson as to Kellogg's compliance with FDA regulations; and (2) that the Court should

strike Dr. Wilcox's opinion that Plaintiff's proposed damages models are not tied to Plaintiff's

theory of harm. The Court discusses each argument in turn.

First, the Court GRANTS Plaintiff's motion to strike the opinions of Dr. Wilcox, Dr.

Rippe, and Dr. Simonson as to Kellogg's compliance with FDA regulations. *See id.* at 1–2; *see*

April 12, 2019 Wilcox Report (stating "in order for any food product to have a label indicating

that the product is healthy for the heart, it must meet certain FDA requirements" and further

opines that meeting certain requirements authorizes Kellogg to label its cereals as "healthy for the

heart."); Rippe Report ¶ 11 ("The 'heart healthy' statement on Raisin Bran, Raisin Bran Crunch,

and Smart Start identifies them as the type of foods that can be part of a 'heart healthy' diet as set

forth in Federal guidelines for this term as promulgated by the FDA"); Simonson Dep. at 32:9–12

(stating "heart health means a — certain things, which the — I understand the FDA defined and

are clearly provided by these products."). These opinions about Kellogg's compliance with FDA

regulations opinions are purely legal in nature, and thus are not the proper subject matter of an

expert opinion. *See, e.g.*, *Hangarter*, 373 F.3d at 1016 ("Fed. R. Evid. 704(a) provides that expert

testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue

to be decided by the trier of fact. That said, an expert witness cannot give an opinion as to her

*legal conclusion*, i.e., an opinion on an ultimate issue of law. (emphasis in original) (citation

omitted)). Further, these three experts are not qualified to give an opinion on Kellogg's

compliance with FDA regulations. Dr. Wilcox is a marketing expert, Dr. Rippe is a cardiologist,

and Dr. Simonson's expertise is in marketing and consumer research.

Second, the Court DENIES Plaintiff's motion to strike Dr. Wilcox's opinion that

Plaintiff's proposed damages models are not tied to Plaintiff's theory of harm, which is that

Kellogg's products at issue were not healthy because of their added sugar content. ECF No. 271 at

2–5. Plaintiff claims that Dr. Wilcox's opinion is untimely because it was not disclosed in Dr.

Wilcox's June 2018 Report. However, this opinion was in paragraph 106 of Dr. Wilcox's June

2018 Report. In his June 2018 Report, Dr. Wilcox specifically stated that "[t]he price premium analyses assume that the entire price premium of any health label is entirely attributable to a perception about sugar content," and that Plaintiff's experts damages models do not actually address the portion of the price premium "attributable to a perception of a certain sugar content." *Compare* ECF No. 281-4 (2018 Wilcox Report) ¶ 106, *with* ECF No. ECF No. 271–1, Ex. 1 (April 12, 2019 Wilcox Report) ¶¶ 14–17.

Plaintiff's other criticisms of Dr. Wilcox's report go to "weight" and not admissibility, and thus do not warrant exclusion of Dr. Wilcox's opinion. *See Primiano*, 598 F.3d at 565 ("When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony."). Moreover, in this Court's class certification order, the Court found that the proper measure of damages is the "price premium" consumers paid due to Kellogg's use of the challenged statements. ECF No. 208. The Court explicitly noted that "some of Kellogg's critiques regarding Gaskin's survey methodology appear to be valid," and that Kellogg "will be free to attack [Gaskin's] conjoint study as inflating the price premium at trial." *Id.* at 32–33.

### c. Plaintiff's Motion to Strike Portions of the Expert Report of Dr. Itamar Simonson

The Court DENIES Plaintiff's motion to strike portions of the expert report of Dr. Itamar Simonson. ECF No. 272. Specifically, Plaintiff challenges three surveys that Dr. Simonson conducted regarding the challenged claims and argues that the surveys are flawed and irrelevant. Plaintiff's criticisms go to weight not admissibility. *See, e.g.*, *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("[C]hallenges to survey methodology go to the weight given the survey, not its admissibility."); *see also Microsoft Corp. v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1120 (W.D. Wash. 2012) ("Microsoft's criticisms of Mr. Sukumar's survey go to issues of methodology, survey design, reliability . . . [and] critique of conclusions, and therefore go to the weight of the survey rather than its admissibility." (internal quotation marks omitted)). Moreover,

Dr. Simonson's opinions are relevant to assessing materiality. *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) ("[M]ateriality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" (citation omitted)). Further, the Ninth Circuit has made clear that consumer surveys are relevant because they are typically "adequate evidence" of whether consumers were deceived or injured by an advertisement. *See, e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) ("[T]he consumer survey testimony of Struman and the market analysis testimony of Wagner provides adequate evidence for a reasonable jury to conclude that Plaintiffs suffered actual injury as a result of Defendants' advertisements."); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) ("Surveys and expert testimony regarding consumer assumptions and expectations may be offered.").

### CONCLUSION

For the foregoing reasons, the Court DENIES Kellogg's motion for summary judgment based on preemption, but GRANTS Kellogg's motion for summary judgment on punitive damages. The Court GRANTS Plaintiff's motion for partial summary judgment.

The Court DENIES Kellogg's motion to strike the testimony of Dr. Robert Lustig; Kellogg's motion to strike the testimony of Bruce Silverman; and Kellogg's motion to strike the testimony of Colin Weir.

The Court DENIES Plaintiff's motion to strike portions of the expert report of Dr. Itamar Simonson; and Plaintiff's motion to strike Dr. Wilcox's opinion that Plaintiff's proposed damages models are not tied to Plaintiff's theory of harm.

The Court GRANTS Plaintiff's motion to strike the expert reports of Neal D. Fortin, J.D., and Ricardo Carvajal, J.D.; and Plaintiff's motion to strike the opinions of Dr. Wilcox, Dr. Rippe, and Dr. Simonson as to Kellogg's compliance with FDA regulations.

**IT IS SO ORDERED.**

48

Dated: August 13, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California