**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (*pro hac vice*)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Counsel for Plaintiffs & the Settlement Class***

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HADLEY, MELODY DIGREGORIO, ERIC FISHON, KERRY AUSTIN, and NAFEESHA MADYUN, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG SALES COMPANY,<br><br>Defendant. | Case No. 5:16-cv-04955-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**<br><br>[Fed. R. Civ. P. 23(e)]<br><br>Judge:  Hon. Lucy H. Koh<br>Date:  March 12, 2020<br>Time:  1:30 p.m.<br>Location:  Courtroom 8 – 4th Floor |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................iv

NOTICE OF MOTION........................................................................................................................x

ISSUES TO BE DECIDED .................................................................................................................x

MEMORANDUM ...............................................................................................................................1

I.      INTRODUCTION ......................................................................................................1

II.     FACTS & PROCEDURAL HISTORY ......................................................................2

III.    THE SETTLEMENT ...................................................................................................3

        A.      The Settlement Class..........................................................................................3

        B.      Benefits for the Settlement Class .......................................................................3

                1.      Kellogg will Establish a Settlement Fund Providing the Class
                        $20.25 Million in Direct Monetary Relief ...........................................3

                        a.      The Claims Process..................................................................3

                        b.      The Vouchers ...........................................................................4

                2.      Kellogg will Implement Prospective Injunctive Relief with
                        Measurable Value of More than $11.25 Million in Future Class
                        Savings ..................................................................................................5

                3.      Class Notice and Claims Administration................................................7

                        a.      The Proposed Class Administrator – Postlethwaite &
                                Netterville (P&N)....................................................................7

                        b.      Class Notice ............................................................................7

                        c.      CAFA Notice ...........................................................................8

        C.      The Settlement's Releases ..................................................................................8

        D.      Opting Out ..........................................................................................................8

i

E.      Objecting.................................................................................................8

F.      Attorneys' Fees, Costs, and Incentive Awards .....................................9

G.      Timeline ...............................................................................................9

IV.     LEGAL STANDARD..........................................................................................10

V.      ARGUMENT .......................................................................................................10

        A.      The Court Should Certify the Settlement Class....................................10

                1.      The Requirements of Rule 23(a) Are Satisfied............................11

                        a.      Numerosity........................................................................11

                        b.      Commonality.....................................................................11

                        c.      Typicality ..........................................................................11

                        d.      Adequacy ..........................................................................12

                2.      The Requirements of Rule 23(b)(3) Are Satisfied.......................12

                        a.      Predominance....................................................................12

                        b.      Superiority.........................................................................13

        B.      The Court Should Approve the Proposed Settlement ............................14

                1.      The Settlement is the Product of Serious, Informed, Non-
                        Collusive Negotiations...............................................................14

                2.      The Settlement Does Not Grant Preferential Treatment
                        Improperly..................................................................................15

                3.      The Settlement Falls within the Range of Possible Approval .....15

                        a.      The Monetary Relief is Substantial....................................15

                        b.      The Injunctive Relief is Appropriate and Meaningful.......18

ii

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR PRELIMINARY APPROVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.    The Fees, Costs, and Service Awards Likely to be Requested are Reasonable.................................................... 19

d.    The *Churchill Village* Factors Favor Preliminary Approval ............. 20

4.   The Settlement has no Obvious Deficiencies ................................. 24

C.    The Court Should Approve the Class Notice and Notice Plan ................................. 24

VI.    CONCLUSION..................................................................................................... 25

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR PRELIMINARY APPROVAL

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
4     2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ........................................................................ 22

5

*Allen v. Hyland's, Inc.*,
6     No. 12-cv-1150 DMG (MANx) (C.D. Cal.) ...................................................................... 22

7

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................................... 13
8

*Berger v. Home Depot USA, Inc.*,
9     741 F.3d 1061 (9th Cir. 2014) ........................................................................................... 12

10

*Brazil, v. Dole Packaged Foods, LLC*,
11     2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) .................................................................... 21

12

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ........................................................................................... 24
13

14

*Brown v. CVS Pharmacy, Inc.*,
    2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ................................................................... 17

15

*Bruno v. Quten Research Inst., LLC*,
16     2013 WL 990495 (C.D. Cal. Mar. 13, 2013) .................................................................... 19

17

*Churchill Village v. Gen. Elec.*,
18     361 F.3d 566 (9th Cir. 2004) ............................................................................................. 15

19

*Clark v. Perfect Bar, LLC*,
    2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) .................................................................. 20
20

21

*Coates v. Farmers Grp., Inc.*,
    2016 WL 5791413 (N.D. Cal. Sept. 30, 2016) ................................................................. 20

22

*Delgado v. MarketSource, Inc.*,
23     2019 WL 4059850 (N.D. Cal. Aug. 28, 2019) ................................................................. 24

24

*Deposit Guar. Nat'l Bank v. Roper*,
25     445 U.S. 326 (1980) ........................................................................................................... 13

26

*Dickey v. Advanced Micro Devices, Inc.*,
    2019 WL 4918366 (N.D. Cal. Oct. 4, 2019) .................................................................... 24

27

*DiGregorio et al. v. Kellogg Sales Co.*,
28     No. 19-cv-632-GTS (N.D.N.Y.) ........................................................................................ 2

*Edwards v. Nat'l Milk Producers Fed'n*,
  2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................................ 23, 25

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ......................................................................................... 13

*Farar v. Bayer AG*, Case No.
  3:14-cv-4601 (N.D. Cal.) ................................................................................. 22

*Feao v. UFP Riverside, LLC*,
  2019 WL 4137417 (C.D. Cal. Jan. 8, 2019) .................................................... 17

*Ferrington v. McAfee, Inc.*,
  2013 WL 12308314 (N.D. Cal. July 22, 2013) ................................................ 18

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  2015 WL 4463650 (N.D. Cal. July 21, 2015) .................................................. 24

*Hadley v. Kellogg Sales Co.*,
  2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) .................................................. 2

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ....................................................... 1, 18

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................... passim

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................ 10, 12, 14

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................ 24

*Harris v. Vector Mktg. Corp.*,
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................ 15, 21

*Hendricks v. StarKist Co.*,
  2015 WL 4498083 (N.D. Cal. July 23, 2015) .................................................. 18

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 24

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................... 14

*In re High-Tech Employee Antitrust Litig.*,
  2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) .............................................. 10, 16

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................... 10, 13

*In re LDK Solar Sec. Litig.*,
   2010 WL 3001384 (N.D. Cal. July 29, 2010) ....................................................... 16

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................. 17

*In re Mercury Interactive Corp. Secs. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ............................................................................... 9

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................ 25

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ......................................................................... 18, 24

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................... 19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) .......................................................................... 17

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................. 14

*In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ....................................................................... 16

*In re Yahoo Mail Litig.*,
   2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ........................................... 21, 22, 24

*Krommehnock v. Post Foods, LLC*,
   2018 WL 1335867 (N.D. Cal. Mar. 15, 2018) ..................................................... 18

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ............................................................................. 6

*Larsen v. Trader Joe's Co.*,
   2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................................................... 23

*Linner v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................... 23

*Manouchehri v. Styles for Less, Inc.*,
   2016 WL 3387473 (S.D. Cal. June 20, 2016) .......................................................... 18

*Martin v. Monsanto Co.*,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ..................................................... 11, 13

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................... 17

*McMorrow v. Mondelez Int'l, Inc.*,
   2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) ......................................................... 22

*Milan v. Clif Bar & Co.*,
   2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) ......................................................... 22

*Morales v. Kraft Foods, Inc.*,
   2017 WL 2598556 (C.D. Cal. June 9, 2017) ........................................................... 21

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) .............................................................................. 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Ca. 2004) .............................................................................. 10

*Reed v. 1-800 Contacts, Inc.*,
   2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ................................................................. 16

*Rigo v. Kason Indus., Inc.*,
   2013 WL 3761400 (S.D. Cal. July 16, 2013) ........................................................... 17

*Rodriguez v. Bumble Bee Foods, LLC*,
   2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) .......................................................... 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................. 15, 23

*Saleh v. Valbin Corp.*,
   2018 WL 6002320 (N.D. Cal. Nov. 15, 2018) ......................................................... 23

*Shames v. Hertz Corp.*,
   2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........................................................... 18

*Slezak v. City of Palo Alto*,
   2017 WL 2688224 (N.D. Cal. June 22, 2017) .......................................................... 23

*Stanton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................... 15

vii

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ................................................................. 13

*Truxel v. Gen. Mills Sales, Inc.*,
    2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) .................................... 20, 22

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................................ 15

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .............................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................... 11

*Walsh v. CorePower Yoga LLC*,
    2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ...................................... 14, 18

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
    2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ............................................ 17

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .......................................... 21

*Wolf v. Permanente Med. Group, Inc.*,
    2018 WL 5619801 (N.D. Cal. Sept. 14, 2018) ......................................... 20

*Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ............................... 10, 14, 24

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .................................................................. 13

**Statutes**

28 U.S.C. § 1715(b) ........................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 10

Fed. R. Civ. P. 23(a)(2) .............................................................................. 11, 13

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 12

Fed. R. Civ. P. 23(b)(3)............................................................................................. 10, 13

Fed. R. Civ. P. 23(b)(3)(A)-(D) .................................................................................. 13

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................... 24

Fed. R. Civ. P. 23(e) ................................................................................................... 10

Fed. R. Civ. P. 23(h) ................................................................................................... 20

**Other Authorities**

Manual for Complex Litigation (Second) § 30.44............................................................ 14

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e) and the Northern District of California's Procedural Guidelines for Class Action Settlements ("Settlement Guidelines"), on March 12, 2020, at 1:30 p.m., or as soon thereafter as may be heard, in the Courtroom 8 of the United Stated District Court for the Northern District of California, 280 South 1st Street, San Jose, California, Plaintiffs will move the Court, the Honorable Lucy H. Koh presiding, for an Order preliminarily approving a proposed nationwide class action settlement (the "Settlement"). The Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed declarations of Jack Fitzgerald ("Fitzgerald Decl."), Hon. James F. Holderman (Ret.) ("Holderman Decl."), Colin B. Weir ("Weir Decl."), and Brandon Schwartz ("Schwartz Decl."), and all exhibits thereto, including the parties' October 21, 2019 Settlement Agreement;[1] all prior pleadings and proceedings; and any additional evidence and argument submitted in support of the Motion.

Plaintiffs seek an Order certifying the Settlement Class and appointing Class Representatives and Class Counsel; granting preliminary approval to the proposed nationwide class Settlement embodied in the parties' Settlement Agreement; approving the proposed Notice Plan and directing Class Notice to be made; and setting schedules and procedures for effecting Class Notice, making claims, opting out, objecting, and conducting a Final Approval Hearing.

**ISSUES TO BE DECIDED**

1.      Whether to certify, for settlement purposes, the proposed Settlement Class and appoint Class Representatives and Class Counsel.

2.      Whether the proposed Settlement falls within the range of reasonableness, such that preliminary approval is warranted.

3.      Whether the proposed Notice and Notice Plan is appropriate and should be implemented.

4.      The appropriate schedule and procedures for Class Notice, making claims, opting out, objecting, and conducting a Final Approval Hearing.

---

[1] The Settlement Agreement is attached to the Fitzgerald Declaration as <u>Exhibit A</u>, and is cited as "SA." All capitalized terms used throughout this brief have the same meaning as set forth in the Settlement Agreement.

**MEMORANDUM**

## I. INTRODUCTION

After more than three years of hotly-contested litigation and just a few months away from trial, Plaintiffs have obtained a settlement providing **$31,507,000** in relief, including $20,250,000 in direct, compensatory monetary benefits for the Settlement Class, and $11,257,000 in measurable future savings due to the substantial injunctive relief Plaintiffs secured.

The Settlement covers the Kellogg products challenged in Plaintiff Stephen Hadley's original Complaint: Raisin Bran, Frosted Mini-Wheats, Smart Start, Crunchy Nut, and Krave cereals, as well as Nutri-Grain snack bars (the "Class Products"). Its injunctive relief applies to any Class Product so long as more than 10% of its calories come from added sugar, and includes Kellogg's agreement to:

- *Remove* **"Heart Health"** claims on Smart Start, and *limit* the use of "Heart Health" claims on Raisin Bran for at least two years;

- Use the word **"Healthy"** *only* as an implied nutrient content claim, consistently with 21 C.F.R. § 101.65(d)(ii), *i.e.*, *only* in connection with an explicit or implicit claim about a nutrient of the type required to be labeled in the Nutrition Facts Box;[2]

- Remove the phrase **"Lightly Sweetened"** from Frosted Mini-Wheats and Smart Start for at least three years;

- Refrain from using the phrase **"No High Fructose Corn Syrup"** or any equivalent phrases, such as "No HFCS," for at least three years; and

- Use the words **"Wholesome," "Nutritious,"** or **"Benefits"** (and variations, such as "wholesomeness," "nutrition," or "beneficial") *only* in connection with a specific ingredient or nutrient, and not to describe any Class Product as a whole with these terms, for at least three years.

This is meaningful injunctive relief that Plaintiffs and Class Counsel fought hard to obtain. Combined with the its substantial monetary relief, the Court should find that the proposed Settlement falls within the range of reasonableness, and grant preliminary approval.

---

[2] This Court found that any legal challenge to such a use is preempted. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1077-78 (N.D. Cal. 2017) (Koh, J.). This provision nevertheless precludes Kellogg from using the word "healthy" in a manner challenged in this lawsuit, that is, as an *unregulated* labeling claim. *See* Dkt. No. 62, Second Am. Compl. ("SAC") ¶¶ 127(f)-(g), 130(d)-(e), 153(d)-(e) (challenges to claims including "Start with a healthy spoonful," and "Invest in your health, invest in yourself" on Raisin Bran, Raisin Bran Crunch, and Smart Start cereals).

## II.    FACTS & PROCEDURAL HISTORY

Plaintiffs Stephen Hadley, Melody DiGregorio, Eric Fishon, Kerry Austin, and Nafeesha Madyun bring this consumer class action alleging Kellogg labeled certain foods with health and wellness claims that were misleading in light of the products' high added sugar content. They assert causes of action for, *inter alia*, violations of various California and New York consumer protection statutes, and breach of express and implied warranties under California and New York law. *See* Dkt. No. 324, Third Am. Compl. ("TAC").

Plaintiff Stephen Hadley initially filed this action on August 29, 2016. Dkt. No. 1. As a result of Rule 12 proceedings, he filed a Second Amended Complaint in April 2017. Dkt. No. 62. In January 2018, Kellogg filed an untimely Answer. Dkt. No. 110. Hadley moved, *inter alia*, to strike Kellogg's affirmative defenses. Dkt. No. 111. In March 2018, the Court granted the motion. Dkt. No. 123. In August 2018, the Court certified a California Class and appointed Hadley's counsel Class Counsel. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) (Koh, J.) ["*Hadley III*"].

On May 28, 2019, Class Counsel filed on behalf of Plaintiffs DiGregorio, Fishon, Austin and Madyun, an action against Kellogg alleging similar claims on behalf of a New York class, styled *DiGregorio et al. v. Kellogg Sales Co.*, No. 19-cv-632-GTS (N.D.N.Y.).

Fact and expert discovery in *Hadley* was extensive. Fitzgerald Decl. ¶¶ 6-12. Discovery closed on April 12, 2019, and both parties moved for partial summary judgment. Dkt. Nos. 246, 272. On August 13, the Court issued an Order granting in part and denying in part Kellogg's motion, and granting Plaintiff Hadley's motion. *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) (Koh, J.).

During the pendency of this action, the parties attended six separate, mostly full-day mediation sessions—an initial one in June 2018 with court-sponsored mediator, Mark Petersen, *see* Dkt. No. 184, and five subsequent ones with JAMS mediator, the Honorable James F. Holderman (Ret.), former Chief Judge of the Northern District of Illinois, in Chicago on October 3 and November 27, 2018, and April 10, June 24, and September 9, 2019, *see* Holderman Decl. ¶¶ 3-8; Dkt. Nos. 220, 234, 238, 245, 254, 291, 294, 310, 320.

Ultimately, the parties reached a settlement agreement on September 16, 2019, executing a term sheet more than three years after the case was filed, and less than three months away from trial. *See* Fitzgerald Decl. ¶¶ 16-35; Dkt. No. 321; Holderman Decl. ¶ 11. Kellogg and the New York plaintiffs stipulated to dismissing the New York case and amending the Complaint in this case to add their claims. *See* TAC at 1.

III.    THE SETTLEMENT

    A.    The Settlement Class

The Settlement Class is defined as all persons in the United States who, between August 29, 2012 and the date this motion was filed (the "Class Period"), purchased in the United States, for household use and not for resale or distribution, one of the Class Products. SA ¶ 4; *see also id.* ¶ 4.3 & Appx. 1 (identifying Class Products with specificity); *id.* Ex. 1, Long Form Notice at 12-13 (same).

    B.    Benefits for the Settlement Class

The Settlement provides both direct monetary relief, and injunctive relief to the Class, including some with measurable, concrete value in the form of future savings.

        1.    Kellogg will Establish a Settlement Fund Providing the Class $20.25 Million in Direct Monetary Relief

The Settlement provides the Class $20,250,000 in direct monetary relief from Kellogg (the "Settlement Fund"), which is comprised of a Cash Component and a Voucher Component. *See id.* ¶ 27. The Cash Component is $12,000,000 (the "Cash Fund"), and will be used to pay Class Notice and Claims Administration; Court-approved attorneys' fees and expenses, and service awards; and certain Class Member claims. *Id.* ¶ 29. The Voucher Component of the Settlement Fund is $8,250,000, and will be used to pay certain Class Member claims. *Id.* ¶ 30.

        a.    The Claims Process

Because of the nature and ubiquity of the Class Products, and the Class's damages models, the parties were aware of a need to develop a claims process that would meet several goals in order to most fully and fairly compensate Class Member claimants and ensure a seamless claims and distribution process. *See* Fitzgerald Decl. ¶¶ 44-63.

To obtain monetary relief, a Class Member must make a claim by filling out and submitting an online Claim Form. SA ¶ 31. After providing identifying information, the claimant will be asked to identify which of the six Class Products he or she has purchased since August 2012, the beginning of the Class Period. For each product, the claimant will be asked to state his or her number of purchases in the preceding three months (or in the case of Crunchy Nut cereal, the last three months it was sold), and the year that he or she began purchasing the product. *Id.* ¶ 31(a)-(b). An equation running "behind the scenes" will calculate the

3

extrapolated number of units of each Class Product purchased by the claimant during the Class Period, subject to per-product caps based on a reasonable average use for the products. The equation will then calculate a "Base Refund" amount by multiplying the number of units of each Class Product purchased by a standardized refund amount for each product based on the Class's price premia damages models. Depending on the Base Refund calculated, the claimant will be placed into one of four possible "buckets," with each bucket providing the claimant a standardized initial refund offer in both Voucher value and Cash, as follows:

| Base Refund Range | $0 - $10.00 | $10.01 - $32.50 | $32.51 - $55.00 | $55.01+ |
|---|---|---|---|---|
| Voucher Offer | $5 | $10 | $15 | $20 |
| Cash Refund Offer | $2.50 | $5 | $7.50 | $10 |

*Id.* ¶ 31(c)-(d). The claimant must then choose between the offers. *Id.* ¶ 31(e). Cash and Voucher refund amounts are subject to supplemental distributions or *pro rata* reductions if, in the case of the Cash Fund, claims exceed or are less than the money remaining in the Cash Fund after subtraction of all Cash Expenses; or in the case of the Voucher Fund, the value of Vouchers claimed exceed or is less than the amount of the Voucher Fund. Any such "supplemental" distribution will be calculated prior to distribution of funds (*i.e.*, will be made in a single distribution). *Id.* ¶ 35. Claimants will be advised during the claims process that the actual Cash Refund or Voucher they will receive will depend on the number of claims, and may be lower or higher than the amount initially offered during the claims process. *See id.* ¶ 31(e).

### b.    The Vouchers

Vouchers can be used to obtain from any retailer of Kellogg products various Kellogg cereal products including (i) Variety 10-Pak, (ii) Fun 8-Pak, (iii) Raisin Bran (all five flavors), (iv) Smart Start, (v) All Bran (all three flavors), (vi) Crispix, and (vii) Mueslix. *Id.* ¶ 30.1 & Ex. 1, Long Form Notice at 5-7 (depicting Voucher products). Kellogg products that the Vouchers can purchase range from $0.62 to $7.34, and average $3.55. *See id.* ¶ 30.1, table. Vouchers expire four months after issuance; their value must be used in a single transaction, with any unused value forfeited; and they are fully transferrable, and stackable to the extent permitted by retailers. *See id.* ¶¶ 30.2 - 30.4. Vouchers will be printed in increments up to the amount to which the claimant is entitled, and sent to claimants by mail. *Id.* ¶ 36.1. Kellogg will be solely responsible for printing Vouchers, and the cost shall be borne by Kellogg separate and apart from the Settlement Fund. *Id.* In reimbursing retailers for product obtained by claimants using Vouchers, Kellogg will incur a cost

equivalent to the retail price that the Claimant would otherwise have had to pay. *Id.* ¶ 30.

### 2. Kellogg will Implement Prospective Injunctive Relief with Measurable Value of More than $11.25 Million in Future Class Savings

Kellogg has agreed to modify the Class Products' labels in numerous ways that address the concerns Plaintiffs raised in the Actions. *See id.* Section E.[3]

**"Heart Healthy" Claims.** So long as more than 10% of their calories per serving come from added sugar, Kellogg will remove or modify references to heart health on Smart Start and Raisin Bran. *Id.* ¶ 37. On Smart Start, Kellogg will remove and, for a period of no less than two years, not use any heart health references on Smart Start's packaging. *Id.* ¶ 37.1. For Raisin Bran, Kellogg will limit any "heart health" claims on Raisin Bran's packaging to approximately the bottom half of the principal and reverse display panels. *Id.* ¶ 37.2. In so doing, Kellogg will not increase the size of any "heart health" claim beyond what was in use relative to a given box size during the Class Period. *Id.* ¶ 37.2.1.

**"Healthy" Claims.** Except as relates to "Heart Health" claims discussed above, for a period of no less than three years, so long as more than 10% of their calories per serving come from added sugar, Kellogg will use the term "healthy" on the Class Products *only* consistently with 21 C.F.R. § 101.65(d)(ii), *i.e.*, in connection with an explicit or implicit claim about a nutrient of the type required to be labeled in the Nutrition Facts Box. SA ¶ 38.

**"Lightly Sweetened" Claims.** Kellogg will remove, and, for a period of no less than three years, not use the term "lightly sweetened" to describe Frosted Mini-Wheats and Smart Start cereals, so long as more than 10% of their calories per serving come from added sugar. *Id.* ¶ 39.

**"No High Fructose Corn Syrup" Claims.** For a period of no less than three years, Kellogg will not to use the statement "No High Fructose Corn Syrup" (or any equivalent phrases, such as "No HFCS," or

---

[3] In implementing injunctive relief, Kellogg shall have a reasonable period of time to make and implement the commitments noted in Section E of the Settlement Agreement, and shall be permitted to "sell through" all existing inventory, *i.e.*, need not recall or destroy packaging already in the marketplace or printed. The time periods noted in Paragraphs 37-41 of the Settlement Agreement, setting forth the various forms of injunctive relief, refer to time in market, and may be measured from the date of one relevant final label proof to another. For example, if the final label proof for new Smart Start packaging that does not contain any heart health claims is dated June 30, 2020, then—to the extent Kellogg resumes using heart health claims on Smart Start after the two-year injunctive relief period noted in Paragraph 37.1 has expired—the final label proof for the subsequent packaging should be dated June 30, 2022 or later.

"made without high fructose corn syrup") on any Class Product, so long as more than 10% of its calories per serving come from added sugar. *Id.* ¶ 40.

**"Wholesome," "Nutritious," and "Benefits" Claims.** For a period of no less than three years, Kellogg will only use the words "wholesome," "nutritious," or "benefits" (and variations, such as "wholesomeness," "nutrition," or "beneficial") on the Class Products in connection with a specific ingredient or nutrient, and shall not use those words to describe any Class Product as a whole, so long as more than 10% of its calories per serving come from added sugar. A typical permitted use would be "[made with] or [contains] _____ [ingredient] or [nutrient]," where the "wholesome," "nutritious," or "beneficial" would appear in the blank. *Id.* ¶ 41.

The parties' agreement on injunctive relief covers several claims at issue in the case, and in some cases, Kellogg has agreed to remove and refrain from using claims that Plaintiff Hadley tested for damages. His measurements of these claims' market values were through damages models that survived Kellogg's *Daubert* and *Comcast* challenges. This work was for trial, and Hadley labored to ensure it provided as reliable a reasonable "approximation" of damages as possible, as required by California law. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 170 (2019). Thus, some of the agreed-upon injunctive relief has concrete, measurable value, and it is reasonable to use the price premia that survey expert, Steven Gaskin measured, to estimate the Settlement Class's future savings due to the Settlement's injunctive relief.[4]

Here, damages expert Colin B. Weir has done that for the Class Products and the Settlement's injunctive relief. *See* Weir Decl. ¶¶ 11-29. As Mr. Weir testifies, for those injunctive relief provisions whose value can be reasonably approximated, the measurable future savings to the Class is as follows:

| Injunctive Provision | Projected Nationwide Sales | Premium Measured | Class Savings |
|---|---|---|---|
| FMW (no "lightly sweetened" for 3 years) | $437,079,899 | 1.3% | $5,682,039 |
| Smart Start (no "lightly sweetened" for 3 years) | $16,835,456 | 1.3% | $218,861 |
| Smart Start (no "heart health" for 2 years) | $11,469,121 | 4.59% | $526,433 |
| Nutri-Grain (no "wholesome" for 3 years) | $482,971,212 | 1.0% | $4,829,712 |
| | | Total = | $11,257,044 |

---

[4] The remaining injunctive relief is also likely to save the Class money on the Class Products over time, but we do not speculate as to its potential additional value to the Class.

1 | *See id.* ¶ 26, Table 1.

2 | **3.**     **Class Notice and Claims Administration**

3 | **a.**     **The Proposed Class Administrator – Postlethwaite & Netterville (P&N)**

4 | Following a thorough vetting process, *see* Fitzgerald Decl. ¶¶ 36-41, subject to the Court's approval,

5 | the Parties have retained Postlethwaite & Netterville, APAC ("P&N") as the Class Administrator to effect

6 | Class Notice and Claims Administration. *See* SA ¶ 44 (listing duties of Class Administrator). P&N has been

7 | administering class action notice and claims since 1999, and has extensive experience in state and federal

8 | courts. *See* Schwartz Decl. ¶¶ 2-5 & Exs. A-B. Several courts in this District have approved P&N as a class

9 | administrator. *See id.* Ex. B at 2-5.

10 | Based on the number of units of Class Products and reasonable average use estimates, P&N estimates

11 | that a 5% claims rate in this case would mean about 525,000 claims, and a 10% rate, 1,050,000 claims.

12 | Assuming 78% of claimants choose Vouchers, *see* Fitzgerald Decl. ¶ 60, the estimated cost of administration

13 | for 1,000,00 claims (*i.e.*, an approximately 9.5% claims rate) would be $623,314, plus an additional $298,000

14 | in postage, *see id.* ¶ 43.

15 | **b.**     **Class Notice**

16 | Class Notice will be effectuated through a Notice Plan designed by the Class Administrator to comply

17 | with the requirements of Rule 23, and approved by the Parties and Court. SA ¶ 45.1. P&N has identified the

18 | Target Audience as "Adults 18 years old and older in the United States that have grocery shopped," which

19 | is broader than the Class and, therefore, encompasses Class Members. Schwartz Decl. ¶ 9. The Notice Plan

20 | is multifaceted, engineered through a combination of (1) print media, (2) online display, (3) social media, (4)

21 | national press release, (5) toll-free settlement hotline, and (6) Settlement Website. *Id*. ¶ 12. This plan will

22 | have a reach of a minimum of 75 percent of the Target Audience and, by inclusion, the Class, with a 2.39

23 | average frequency. *Id*. ¶ 13. P&N has thoroughly examined the Target Audience's demographics and media

24 | consumption habits, and has developed specific print, digital, and press release notice plans to target them,

25 | with the digital notice plan alone designed to provide 360 million impressions. *See id.* at ¶¶ 14-22. The

26 | estimated cost of this notice is $231,075. Fitzgerald Decl. ¶ 42. Moreover, given the ubiquity of the products

27 | here, it is highly likely that notice of the Settlement will spread both "virally," through traditional media

28 | channels that highlight the Settlement, and on class action settlement aggregating blogs and similar websites.

### c. CAFA Notice

P&N on behalf of Kellogg will serve CAFA notice upon the appropriate officials within 10 days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 45.2.

### C. The Settlement's Releases

Upon the Settlement's Effective Date, each Class Member who has not opted out will be deemed to have released Kellogg and related entities from:

> any and all claims, demands rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action of every nature and description whatsoever, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Class Member has or may have against the Released Kellogg Persons arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions regarding the Class Products, which have been, or which could have been asserted in the Actions, and in connection with the conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States.

*Id.* ¶ 51. The Settlement includes a mutual release by Kellogg of Plaintiffs and their attorneys for any claims relating to the transactions underlying, and the conduct of the Actions. *See id.* ¶ 52.

### D. Opting Out

Settlement Class Members who wish to be excluded from the Settlement must download from the Settlement Website an Opt-Out Form, and mail the personally-completed form to the Class Administrator no later than the end of the 60-day Notice Period, or as otherwise ordered by the Court. *Id.* ¶ 46 & Ex. 3. "Mass" or "class" opt outs are not allowed. *Id.* ¶ 46.

### E. Objecting

Class Members who wish to object must file and serve a written objection by the Objection Deadline. *Id.* ¶ 47.1. An objection must contain (i) a caption or title that clearly identifies the Action, and that the document is an objection; (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, if represented; and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection. *Id.* ¶ 47.2. Class Members who object through an attorney must sign either the Objection itself, or execute a separate declaration authorizing the Objection. *See id.* ¶ 47.3. Class Members who both object and opt out will be deemed to have opted out, and thus be ineligible to object. *Id.* ¶ 47.4. Objecting Class Members are requested, but not required to indicate whether

8

they intend to appear at the Final Approval Hearing. *Id.* ¶ 47.5. The Parties may, but are not required to respond to objections. *Id.* ¶ 47.6.

### F.    Attorneys' Fees, Costs, and Incentive Awards

Class Counsel and the Class Representatives will request attorneys' fees and costs, and incentive awards, to be paid from the Cash Fund. *Id.* ¶ 29.3.[5]

### G.    Timeline

Assuming the Court grants preliminary approval, the following proposed schedule leading to a Final Approval Hearing gives absent Class Members sufficient time to receive Notice of the Settlement, and to make a claim, opt out, and object; and sufficient time to review Plaintiffs' and Class Counsel's Final Approval and Fee Motions. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010); Settlement Guidelines ("The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs.").

| Event | Day | Approximate Weeks After Preliminary Approval | Example Hypothetical Schedule Assuming PA Granted November 18 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | Monday, November 18, 2019 |
| Deadline to commence 60-day notice period | 14 | 2 weeks | Monday, December 2, 2019 |
| Notice completion date, and deadline to make a claim or opt out | 60 | 8 weeks | Thursday, January 16, 2020 |
| Deadline for plaintiffs to file Motions for Final Approval, Attorneys' Fees, and Incentive Awards | 74 | 10 weeks | Thursday, January 30, 2020 |
| Deadline for objections | 125 | 15 weeks | Thursday, March 5, 2010 |
| Deadline for replies to objections | 132 | 16 weeks | Thursday, March 12, 2020 |
| Final Approval Hearing | 146 | 19 weeks | Thursday, April 2, 2020 |

---

[5] The Settlement Agreement includes a "quick pay" provision by which the Class Administrator shall pay to Class Counsel the amount of attorneys' fees and costs awarded by the Court within seven calendar days of entry of Judgment, notwithstanding the filing of any appeals, or any other proceedings which may delay the Effective Date of the Settlement or a final judgment in the case, with Class Counsel obligated to return to the Cash Fund, in the event that any fee award, is overturned, reduced, vacated, or otherwise modified, any difference between the amount of the original award and any reduced award. *See id.*

9

## IV.   LEGAL STANDARD

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "[T]o approve a class action settlement under Rule 23, a district court must conclude that the settlement is 'fundamentally fair, adequate, and reasonable.'" *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019) (Koh, J.) ["*Yahoo!*"] (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Rule 23(e) . . . require[s] a two-step process for the approval of class action settlements: 'the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'" *In re High-Tech Employee Antitrust Litig.*, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014) (Koh, J.) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Ca. 2004)).

## V.   ARGUMENT

### A.   The Court Should Certify the Settlement Class

The Court previously found the Rule 23(a) and 23(b)(3) elements met on behalf of a Class of California consumers of Raisin Bran, Smart Start, and Frosted Mini-Wheats cereals. *See Hadley III*, 324 F. Supp. 3d 1084. The Settlement Class differs from the certified Class in that (1) it is a nationwide class, rather than a California-only class, and (2) it includes Crunchy Nut and Krave cereals, and Nutri-Grain snack bars, which were challenged in Plaintiff Hadley's original Complaint, but not certified.

The Court should certify the Settlement Class for the same reasons it certified the California litigation Class, and notwithstanding these differences, since, because this is a settlement class, the lack of differences will not result in manageability issues; moreover, "a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *See In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ["*Hyundai*"]. "The criteria for class certification are applied differently in litigation classes and settlement classes. . . . [M]anageability is not a concern in certifying a settlement class . . . ." *Id.* at 556-57.

Like the California class already certified, the proposed nationwide Settlement Class meets all the criteria for certification. Under Rule 23(a), numerosity, commonality, typicality, and adequacy are all present. Predominance and superiority under Rule 23(b)(3) are also satisfied.

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR PRELIMINARY APPROVAL

**1.      The Requirements of Rule 23(a) Are Satisfied**

**a.      Numerosity**

The Court has already found that numerosity was satisfied when considering only California purchasers because the evidence "suggest[ed] at least thousands of Class Members bought these products during the class period." *Hadley III*, 324 F. Supp. 3d at 1093. Numerosity is undoubtedly satisfied with the addition of consumers from the remaining 49 states. *See also* Fitzgerald Decl. Ex. I.

**b.      Commonality**

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As with numerosity, the Court has already determined that "there are numerous common questions of law and fact, such as whether the challenged health statements are unlawful, unfair, deceptive, or misleading when affixed to products containing 9 to 18 grams of sugar per serving. *See Hadley III*, 324 F. Supp. 3d. at 1093-94. Nothing about the differences in the Settlement Class changes that analysis.

**c.      Typicality**

"Under Rule 23(a)(3), a representative party must have claims or defenses that are "typical of the claims or defenses of the class." *Id.* at 1118 (citing Fed. R. Civ. P. 23(a)(3)). "This requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Id.* (internal quotations and citation omitted). Here, Plaintiffs' claims are typical of the Class Members' claims because each purchased the Kellogg Class Products and were exposed to the same challenged labeling claims, losing money as a result of overpaying for a product that contained material misrepresentations. *See Martin v. Monsanto Co.*, 2017 WL 1115167, *4 (C.D. Cal. Mar. 24, 2017) ("Plaintiffs' claims are sufficiently typical of the class claims" where "Plaintiff alleges that she and all class members were exposed to the same statement . . . and that they were all injured in the same manner . . . ."). As it did previously, the Court should find that "Plaintiff has satisfied Rule 23(a)'s typicality . . . requirement. *Hadley III*, 324 F. Supp. 3d. at 1121.

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR PRELIMINARY APPROVAL

### d.     Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, the Court has already determined that the Law Office of Jack Fitzgerald and Plaintiff Stephen Hadley are adequate as Class Counsel and Class Representative, respectively. *Hadley III*, 324 F. Supp. 3d. at 1121. The additional named Plaintiffs also have no conflict of interest with other Class Members, and participated in this litigation, bringing the New York action, and approving the Settlement Agreement. *See* SA at 17. In addition to re-appointing The Law Office of Jack Fitzgerald, PC as Class Counsel for the nationwide Settlement Class, Plaintiffs request that the Court appoint Sidney W. Jackson, III, of Jackson and Foster, LLP, as co-Class Counsel. On September 6, 2019, Plaintiff Hadley moved to amend Class Certification Order to add Mr. Jackson as Class Counsel to assist with trial. *See* Dkt. No. 317. He spent dozens of hours learning the case, was present at the September 9 mediation, and was a material factor in obtaining the Settlement because he helped Plaintiffs pose a credible trial threat, and contributed important insight and ideas during settlement negotiations. Fitzgerald Decl. ¶ 34 n.3. Mr. Jackson has dedicated some significant time and work into the case. *See id.* ¶ 67 & Ex. D at 70-71. Kellogg has not opposed the application, and represented that it does not oppose Mr. Jackson's being so appointed, *id.* ¶ 34 n.3.

### 2.     The Requirements of Rule 23(b)(3) Are Satisfied

### a.     Predominance

Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

"Considering whether 'questions of law or fact common to class members predominate' begins . . .

1   with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S.

2   804, 809 (2011). Plaintiffs bring claims for consumer fraud and breach of warranty under California and New

3   York law. Because these claims include objective elements that are subject to common proof, they are readily

4   amenable to certification. *See Martin.*, 2017 WL 1115167 at *7 ("In light of the elements of the claims for

5   breach of express warranty, and violations of the CLRA, FAL, and UCL, the Court concludes that 'the

6   questions of law or fact common to the class members predominate over any questions affecting only

7   individual members.'"); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012)

8   (objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class

9   certification because they will not require the court to investigate class members' 'individual interaction with

10  the product'" (quotation omitted)); *accord Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)

11  ("Predominance is a test readily met in certain cases alleging consumer . . . fraud"). "[T]hese types of

12  common issues, which turn on a common course of conduct by the defendant, can establish predominance in

13  nationwide class actions." *Hyundai*, 926 F.3d at 559.

14      The Court has already found that a California Class is sufficiently cohesive to warrant adjudication

15  by representation. *Hadley III*, 324 F. Supp. 3d at 1118. That additional products are included in the Settlement

16  Class is no bar to certification here because "[t]he criteria for class certification are applied differently in

17  litigation classes and settlement classes." *Hyundai*, 926 F.3d at 556. When considering whether to certify a

18  Settlement Class, the Court "presumes that the existence of common issues of fact or law have been

19  established pursuant to Rule 23(a)(2)," and focuses on whether the "common questions present a significant

20  aspect of the case and they can be resolved for all members of the class in a single adjudication," *id*. at 557,

21  which of course is the very nature of a settlement.

22            **b.**    **Superiority**

23      "A consideration of the[] factors [set forth in Rule 23(b)(3)(A)-(D)] requires the court to focus on the

24  efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those

25  that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253

26  F.3d 1180, 1190 (9th Cir. 2001) (quotation omitted). The superiority requirement "is met '[w]here recovery

27  on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D.

28  at 486; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Previously, the "Court agree[d]

that superiority is met," for the California Class, finding "individual class members are likely to have little interest in controlling individual actions because the product[s]" at issue cost "under about $5." *Hadley III*, 324 F. Supp. 3d at 1094. This is equally true for the Settlement Class. Thus, superiority is satisfied here.

### B.   The Court Should Approve the Proposed Settlement

Preliminary approval of a settlement and notice to the class is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."

*Yahoo!*, 2019 WL 387322, at *4 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation (Second) § 30.44)). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *6 (N.D. Cal. Feb. 14, 2017) (citing *Hanlon*, 150 F.3d at 1027).

### 1.   The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

It six mediations for this case to resolve, and it did not settle until after a California Class was certified, fact and expert discovery were closed, and summary judgment and the parties' *Daubert* motions were briefed and decided. Discovery was significant. *See* Fitzgerald Decl. ¶¶ 6-12; *see also id.* ¶¶ 3-5 (describing early research about the claims, including through focus groups and consumer interviews). Law and motion practice was significant. *See id.* ¶¶ 13-15. The docket has over 325 entries. All that was left in this case was trial. Thus, the parties were as fully informed as they were ever going to be. The Settlement also lacks any typical signs of collusion, such as a lack of monetary relief to the class, a "clear sailing" provision, or the reversion of unclaimed funds to Kellogg. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). And Judge Holderman has attested to the parties' contentious negotiations, which he observed over the course of a year. *See* Holderman Decl. ¶ 11 ("[E]ach side's Counsel conducted their mediated settlement negotiations at all times in an adversarial, arm's-length, good faith and non-collusive manner."). Finally, the Court saw firsthand the adversarial nature of the parties' litigation and settlement negotiations. Accordingly, the Court should find the Settlement is the result of the parties' serious, informed, and non-collusive negotiations. *See Walsh*, 2017 WL 589199, at *10.

**2.      The Settlement Does Not Grant Preferential Treatment Improperly**

The Settlement does not treat the Class Representatives or any subset of Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same Cash or Voucher remedy based on the claimant's purchase history. That the Class Representatives will move for service awards does not change this analysis. *See Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009)).

**3.      The Settlement Falls within the Range of Possible Approval**

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted)).

> Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Id.* (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted)).

**a.      The Monetary Relief is Substantial**

Here, Plaintiffs and Class Counsel secured for the Settlement Class a settlement that provides measurable relief of over $31.5 million, and direct monetary benefits of $20.25 million. Judge Holderman avers he believes the Settlement is "the best settlement for the Plaintiff Class to which Kellogg would agree," Holderman Decl. ¶ 12. Besides its substantial absolute size, the Settlement Fund is also reasonable in relation to the Settlement Class's potential damages.

**i.      The Relief is Fair in Relation to Potential Damages**

By the time of the parties' final mediation on September 9, 2019, Plaintiff Hadley's damages models on behalf of the California class were highly-refined, indeed, trial-ready. And just before providing Kellogg

15

his mediation brief prior to the final mediation, Plaintiff obtained updated sales figures from IRI, so that the sales figures used were current through the end of August 2019. Accordingly, he was able to provide very precise information about the damages the California Class would seek at trial. Fitzgerald Decl. ¶¶ 30-31.

Specifically, given the alternate damages models (conjoint analysis and hedonic regression), and the varying claims and theories of liability, Plaintiff was prepared to go to trial with damages of between $9,192,049 and $12,125,257 if all of his claims were successful. *See id.* ¶ 30. Thus, the $20.25 million Settlement Fund is 167% to 220% of the maximum judgment the California Class could have obtained at trial *if successful on all claims*. *See id.* ¶ 82.

This is, however, a nationwide settlement. Applying the *Hadley* damages models to the nationwide sales shows damages ranging between $67,407,258, and $119,312,054. *Id.* ¶ 31 & Ex. B. The $20.25 million Settlement Fund thus represents between approximately 17% and 30% of the nationwide Settlement Class's damages based on the damages models and products certified in *Hadley*. *See id.* ¶ 82.

The Settlement, however, includes additional products not certified in *Hadley*, namely Crunchy Nut, Krave, and Nutri-Grain. On a nationwide basis, this increases the total sales at issue from about $3.5 billion to $5.3 billion, and increases damages to between $74,088,294 and $124,066,987 applying the *Hadley* damages models where applicable, and assuming a 1% premium otherwise. *See id.* ¶¶ 80-81 & Ex. I.

Thus, a reasonable estimate is that the $20.25 million Settlement Fund represents between approximately 16.3% and 27.4% of the *nationwide* Settlement Class's maximum possible damages based on a price premium theory, as advanced in the *Hadley* litigation. *Id.* ¶ 82.

This "confirm[s]" the "reasonableness of the Settlement," since "[d]istrict courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages." *See In re High-Tech Employee Antitrust Litig.*, 2015 WL 5159441, at *4 & n.5 (finding reasonable a settlement that "exceed[ed] 14 percent of Plaintiffs' proposed single damages estimate" (citing *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting about 3% of possible recovery); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery); *In re LDK Solar Sec. Litig.*, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval where settlement was 5% of estimated

16

damages))); *see also Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement representing 27 percent of possible recovery); *Feao v. UFP Riverside, LLC*, 2019 WL 4137417, at *7 (C.D. Cal. Jan. 8, 2019) (Settlement that "represents approximately 21 to 30 percent of the estimated potential recovery. . . . is well within the range of possible approval." (citations omitted)); *Rigo v. Kason Indus., Inc.*, 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation."). *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (citation omitted)).

The recovery of a relatively high proportion of hypothetical nationwide damages is significant because, given the existing legal precedents, it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. *See, e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel." (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (noting that "[w]hile numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk"))); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018) (That "[t]he parties acknowledge[d] that obtaining a nationwide class may be difficult in light of recent case law . . . . weigh[ed] in favor of settlement."). Instead, numerous lawsuits, all costing the respective state classes millions of dollars to prosecute, and coming at significant inherent risk, would be needed to obtain relief for all U.S. consumers.

### ii.     The Voucher Relief is Fair, Appropriate, and Likely to be Attractive to Class Members

Plaintiffs and Class Counsel agreed to a voucher component for this settlement because it substantially increased the benefits they were able to obtain for the Class. In addition, Plaintiffs and Class Counsel believed the nature of cereal—a small-value, household good that is repeatedly purchased by habitual consumers in 90% of U.S. households—made a voucher component appropriate for a settlement in

17

this case. *See* Fitzgerald Decl. ¶ 51. This Court has previously approved settlements structured similarly, providing claimants with the "option to receive either cash for a voucher for a free product," *see Ferrington v. McAfee, Inc.*, 2013 WL 12308314, at *5 (N.D. Cal. July 22, 2013) (Koh, J.). Other courts in this district have also found such settlements fair, reasonable, and adequate. *See Walsh*, 2017 WL 589199, at *3 (granting preliminary approval to settlement in which "Class Members may elect to receive a gift card for double the value of their respective Settlement Award . . . in lieu of a settlement check"); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *1, *7-9 (N.D. Cal. July 23, 2015) (granting preliminary approval to settlement comprising "$8,000,000 to be paid in cash and $4,000,000 in StarKist vouchers" whereby "claimants [were] permitted to elect either a $25 [cash] payment . . . or a $50 payment in StarKist vouchers"); *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015) (affirming approval of a settlement where "the claimants . . . had the option of obtaining cash . . . [or] a gift card"); *Manouchehri v. Styles for Less, Inc.*, 2016 WL 3387473, at *2-3, *10 (S.D. Cal. June 20, 2016) (approving settlement as "within the range of reasonableness" where claimants could choose between $10 cash or $15 product voucher); *Shames v. Hertz Corp.*, 2012 WL 5392159, at *3, *7 (S.D. Cal. Nov. 5, 2012) (granting final approval to settlement involving a cash or voucher payment option, noting "that the [one-day car] rental vouchers provide real value to class members who choose that payment option").

### b.   The Injunctive Relief is Appropriate and Meaningful

Plaintiffs and Class Counsel fought hard to obtain the Settlement's substantial injunctive relief, which appropriately addresses what Plaintiffs have always maintained are the most explicit ways in which Kellogg represents that the challenged cereals and bars are healthy. This includes restricting or limiting references to "heart health," "healthy," "wholesome," "nutritious," "beneficial," "lightly sweetened," and "no high fructose corn syrup."[6] "[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal.

---

[6] Although this Court dismissed Hadley's challenges to this claim, *see Hadley*, 273 F. Supp. 3d at 1080-81, in the similar case against Post, Judge Orrick permitted the challenge to proceed, *see Krommehnock v. Post Foods, LLC*, 2018 WL 1335867, at *5 (N.D. Cal. Mar. 15, 2018). Survey expert Steven Gaskin later measured premia associated with that claim between 3.47% and 7.67%, *see* Weir Decl. ¶ 25, demonstrating these claims are material and have measurable value to Class Members.

Mar. 13, 2013). This includes benefits not just to Class Members, but also to "the marketplace and competitors who do not mislabel their products." *Id*.

The injunctive relief obtained here is especially noteworthy because it effectively espouses Plaintiffs' theory of the case, prohibiting Kellogg from making certain health and wellness claims based on the contribution of added sugar to the products' calories. In effect, Plaintiffs have obtained through litigation what the current FDA regulations are conspicuously missing, essentially a disqualifying amount of added sugar—at least for the products and claims to which the injunctive relief applies.

> ### c.    The Fees, Costs, and Service Awards Likely to be Requested are Reasonable

Though "[t]he court will not approve a request for attorneys' fees until the final approval hearing, [ ] class counsel should include information about the fees they intend to request and their lodestar calculation in the motion for preliminary approval." Settlement Guidelines. Here, Plaintiffs' counsel anticipates petitioning the Court for a fee award of $6,750,000, based on the common fund method of calculation. This is one-third (33⅓%) of the value of the Settlement Fund, *i.e.*, the direct monetary benefit to the Class,[7] and 21.4% of the Settlement's total measurable value. *See In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) ("a fee award of one-third is within the range of awards in this Circuit" (collecting cases)); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same). While invoking the common fund method of determining fees, the application will evidence for a lodestar cross-check over 4,800 hours of time into the case for a lodestar of over $2,650,000, such that the request, if granted, would represent an approximately 2.5 multiplier. *See* Fitzgerald Decl. ¶ 72 & Exs. E-F.

In support of the fee application, Class Counsel anticipate arguing and evidencing that at least the following factors support the request: the benefit obtained for the class; the quality of representation (as evidenced by, among other things, counsel obtaining certification of a California Class, having a key affirmative defense stricken, and obtaining summary judgment against Kellogg on behalf of the certified Class); the complexity and novelty of the issues presented; and the contingent nature of the representation

---

[7] This does not include the money Kellogg is spending to print the Vouchers, which is a direct benefit to Class Members.

and risk of nonpayment as evidenced by, for example, the recent dismissal under Rule 12 of the companion action against General Mills, *see Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019), and a similar action against Perfect Bar, *see Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018). A fee that "results in a multiplier [of] 2.75-3.0 . . . falls within the range of fee multipliers courts routinely approve" and "is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the results obtained the Class, the contingent nature of the fee and risk of no payments, and the range of fees that are customary," particularly because courts "routinely approve similar or higher lodestar multipliers in comparable common fund cases," *see Wolf v. Permanente Med. Group, Inc.*, 2018 WL 5619801, at *2-3 (N.D. Cal. Sept. 14, 2018) (collecting cases).

In addition, "[a]ttorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013); *see also* Fed. R. Civ. P. 23(h). Here, Class Counsel anticipates seeking reimbursement of expenses totaling $1,141,499, plus any additional costs incurred after preliminary approval. The vast majority of this, over 80%, relates to expert witness expenses. *See* Fitzgerald Decl. ¶ 73 & Exs. F-G.

Finally, Plaintiffs will petition the Court for service awards of $7,500 for Stephen Hadley, and $2,500 each for Melody DiGregorio, Eric Fishon, Kerry Austin, and Nafeesha Madyun ($17,500 total in service awards). In support of this application, Plaintiffs will evidence Mr. Hadley's substantial time into the matter and the personal risks he faced, and all of the Plaintiffs' contribution to this sizable settlement. *See, e.g.*, *Coates v. Farmers Grp., Inc.*, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) (Koh, J.) ("The request for service awards to [named] Plaintiffs . . . in the amount of $10,000 each, and to opt-in Plaintiffs . . . in the amount of $5,000 each, is reasonable given the risks these Plaintiffs assumed and the amount of time they spent in conjunction with prosecuting this case.").

### d.   The *Churchill Village* Factors Favor Preliminary Approval

Though Plaintiffs will expound on these factors more fully in moving for final approval, the *Churchill Village* factors also favor preliminary approval.

***The Strength of Plaintiffs' Case.*** Plaintiffs and their counsel believe this case was strong on the merits, and the Settlement reflects that. But the case was by no means perfect, or without risk. Some claims may not have been compelling to a jury. Kellogg argues that the science is unsettled and inconclusive.

1   Numerous appeal issues remained.

2   **The Risk, Expense, Complexity, and Duration of Further Litigation.** Trial was scheduled to take

3   place over 7 days between December 6 and December 20, 2019. Plaintiffs' counsel estimated it would cost

4   an additional $1 million in lodestar, and $500,000 in out-of-pocket expenses, mostly relating to preparing

5   and taking testimony from the *nine* expert witnesses, and to bring this case through trial. Fitzgerald Decl. ¶

6   30. Of course, Kellogg would have also expended significant additional resources. Moreover, for even the

7   possibility of obtaining the nationwide relief conferred by the Settlement, the parties would have had to

8   continue to litigate the *DiGregorio* action in New York, and Class Counsel or other attorneys file and

9   prosecute actions in all other states. Such litigation would continue for years, not including any appeals,

10   which seem likely given the hotly-contested nature of the litigation thus far. *See In re Yahoo Mail Litig.*,

11   2016 WL 4474612, at *6 (N.D. Cal. Aug. 25, 2016) (Koh, J.) (factor "weighs in favor of final approval"

12   where "the Settlement obviates the need for a final pretrial conference and six-day jury trial," and "[t]he

13   numerous documents that were filed in connection with Yahoo's motion to dismiss, Plaintiffs' motion for

14   class certification, the parties' cross-motions for summary judgment, and the parties cross-*Daubert* motions

15   indicate that the final pretrial conference and the six-day jury trial would have been contested and expensive

16   for both sides"); *Harris*, 2011 WL 1627973, at *15 (factor favored approval where "continued litigation of

17   this case posed significant risks to both parties and would have substantially increased the fees and costs

18   incurred to date," and "[i]f summary judgment were denied, the parties would expend considerable time and

19   money preparing for trial" and "the losing party could well appeal the verdict").

20   There also remained substantial risk, including Kellogg's pending motion for decertification. *See* Dkt.

21   No. 262 at 17 (citing *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *12 (N.D. Cal. Dec. 15,

22   2014) (Koh, J.) (decertifying class when the plaintiff "failed to show how the damages model controls for

23   advertising"); *Brazil, v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *11 (N.D. Cal. Nov. 6, 2014)

24   (decertifying class when plaintiff "failed to show how the Regression Model controls for other variables

25   affecting price[,]" including advertising)); *compare Morales v. Kraft Foods, Inc.*, 2017 WL 2598556 (C.D.

26   Cal. June 9, 2017) (Kellogg's counsel obtaining decertification in a similar action). Further, even if Plaintiff

27   Hadley maintained the Class through trial, there remained the risk that the Class could lose at trial and recover

28   nothing—as has happened in two seemingly meritorious consumer class actions that have recently gone to

21

trial in California with judgments returned for defendants. *See Farar v. Bayer AG*, Case No. 3:14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.).

While Plaintiffs remain optimistic about their chances of success at trial, the novelty and complexity of the issues here mandate that they realistically acknowledge the risks involved in taking the case to trial. This case was initially filed as one of three companion cases premised on the novel theory that the excess added sugar content of various foods rendered their health and wellness claims false and misleading. While this may at first blush seem simple, here it involved testimony from nine competing experts regarding complex topics, such as the various metabolic processes involved in the consumption and processing of added sugar; conjoint analysis and hedonic regression damages models; and the materiality of the challenged labeling statements. That one of the three companion cases was recently dismissed in its entirety on a Rule 12 motion, *see Truxel*, 2019 WL 3940956, is demonstrative of the risk involved in the theory advanced here.[8] Further, *Truxel* and *Clark* are currently on appeal, and a decisions by the Ninth Circuit upholding those opinions could theoretically eliminate Plaintiffs' chances of recovery in this case. Accordingly, this factor weighs in favor or granting preliminary approval. *Cf. Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *3 (N.D. Cal. Oct. 15, 2018) (In finding this factor weighed in favor of granting final approval, noting that "[t]he Court is . . . mindful that all litigation, and class litigation in particular, carries substantial risk, and that Plaintiff would have to . . . persuade a jury of [defendant's] liability, and retain a judgment through appeal for the class to recover anything at all.").

**The Risk of Maintaining Class Action Status Through Trial.** At the time the Settlement was reached, Kellogg had pending a motion to decertify the Class, Dkt. No. 262, which "weighs in favor of final approval." *See In re Yahoo Mail Litig.*, 2016 WL 4474612, at *6 (factor favored approval where defendant had "requested that the Court de-certify the class" in its motion for summary judgment). Further, a "district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966. This factor thus favors approval of the

---

[8] Class Counsel filed three analogous cases relating to several bar products—Clif bars, Perfect Bars, and belVita Breakfast Biscuits—and one of those cases was likewise dismissed on a Rule 12 motion. *Compare Milan v. Clif Bar & Co.*, 2019 WL 3934918 (N.D. Cal. Aug. 20, 2019) (denying motion to dismiss) *and McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022 (S.D. Cal. Aug. 17, 2018) (granting in part and denying in part motion to dismiss) *with Clark*, 2018 WL 7048788 (granting motion to dismiss). Thus, of all these cases involving challenges to health and wellness statements based on the presence of excess added sugar, Class Counsel have thus far experienced an approximately 67% success rate or, conversely, a 33% failure rate.

Settlement, particularly since Kellogg "vigorously opposed certification of a . . . class, sought (albeit unsuccessfully) to take an interlocutory appeal from that order, and would undoubtedly have appealed certification if there were a final, adverse judgment." *See id.*; *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *7 (N.D. Cal. June 26, 2017) (factor "support[ed] final approval" where "defendants vigorously opposed class certification, including an appeal to the Ninth Circuit and then to the Supreme Court . . . and filed a motion to decertify that was pending at the time of settlement").

**The Settlement Amount.** The Settlement Amount is both large in an absolute sense for this type of case, and large relative to the Settlement Class's potential damages. *See* Fitzgerald Decl. ¶¶ 75-82.

**The Extent of Discovery Completed and Procedural Posture.** Because fact and expert discovery were completed, with only trial remaining, "the parties ha[d] sufficient information to make an informed decision about settlement." *See Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor thus favors preliminary approval. *See, e.g., Saleh v. Valbin Corp.*, 2018 WL 6002320, at *3-4 (N.D. Cal. Nov. 15, 2018) (Koh, J.) (Noting that "[s]o long as the parties have 'sufficient information to make an informed decision about settlement,' this will weigh in favor of approval,'" and concluding that was the case because "'the parties engaged in discovery including interrogatories, document production, admissions, and depositions'" and had "briefed and the Court ruled on collective action certification," such that "the parties have a very good sense of the merits of their respective positions." (quotations omitted)).

**The Experience and Views of Counsel.** "In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (Koh, J.) (quoting *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014)). Class Counsel in this case has a great deal of experience in consumer class actions, and particularly those involving the false advertising of foods, especially as healthy. Moreover, counsel has been litigating two similar cases during the pendency of this action, and thus has been exposed to a wide variety of information about the claims and defenses, and ultimately the potential upside and risks attendant to this case. Class Counsel strongly endorses the Settlement. Fitzgerald Decl. ¶ 83. Accordingly, this factor favors preliminary approval. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (Koh,

23

J.) (finding "the views of Class Counsel weigh in favor of final approval" because "[t]he Court appointed competent and experienced counsel who have done extensive work in all types of complex class actions" and "are thus able to make educated assessments about the risks and possible recoveries in the current dispute" and had "endorse[d] the Settlement as fair, adequate, and reasonable"); *Delgado v. MarketSource, Inc.*, 2019 WL 4059850, at *5 (N.D. Cal. Aug. 28, 2019) (Koh, J.) (finding "[t]his factor favors approval" because "[t]he parties here are represented by competent and experienced counsel who favor settlement").

*Governmental Participation.* There is no governmental participant, so this factor is inapplicable. *See*, *e.g.*, *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *7.

*Class Member Reaction.* Because the class has not yet been notified of the Settlement, which was not made public before this motion was filed, "[t]he Court must wait until the final approval hearing to assess class members' reactions to the settlement." *See Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 4463650, at *6 (N.D. Cal. July 21, 2015). Nevertheless, the provision of a choice between Cash and Voucher, and the results of Mr. Weir's survey, suggest Class Members will react positively to the Settlement, including its Voucher Component. *See* Weir Decl. ¶¶ 33-38, 43-45; Fitzgerald Decl. ¶¶ 51-59.

### 4. The Settlement has no Obvious Deficiencies

Plaintiffs and Class Counsel submit that, given the foregoing, there are no obvious deficiencies in the Settlement. *See Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 4918366, at *5 (N.D. Cal. Oct. 4, 2019); *contra. Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 967 (N.D. Cal. 2019) (finding "a number of obvious deficiencies that prevent the Court from granting preliminary approval at this time").

### C. The Court Should Approve the Class Notice and Notice Plan

"Due process requires adequate notice before the claims of absent class members are released." *Yahoo!*, 2019 WL 387322, at *5 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 946). "Rule 23 requires only the 'best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort.*'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128-29 (9th Cir. 2017) (quoting Fed. R. Civ. P. 23(c)(2)(B) (emphasis added)). P&N's proposed Notice Plan is reasonable under the circumstances. It includes targeted print ads, website banners, social media ads, and targeted press releases to more than 20,000 media outlets, and will reach an estimated minimum 75 percent of Class Members, and more than twice each. *See* Schwartz Decl. ¶ 26; *see also Edwards*, 2017 WL

24

3623734, at *4 ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.").

The proposed Notice itself is also appropriate, since it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Here, the Notice sufficiently informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement Agreement, including the gross settlement awards and net settlement payments class members can expect to receive for their release of Kellogg, (3) information about how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Cash Component of the Settlement Fund, (4) how to make a claim, opt out, or object to the settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Ex. 1, Long Form Notice. The Notice also satisfies the Settlement Guidelines' requirements to advise Class Members of the Settlement Website, and instructions on how to access the case docket. *See id.*

## VI.    CONCLUSION

The Court should issue a Preliminary Approval Order substantially in the form of the Proposed Order submitted herewith: (1) preliminarily certifying the Settlement Class and appointing Plaintiffs and their counsel as Class Representatives and Class Counsel; (2) preliminarily approving the proposed Settlement; (3) approving the Class Notice and Notice Plan, and directing that Class Notice be disseminated pursuant to the Notice Plan; and (4) setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

Dated: October 21, 2019                    Respectfully Submitted,

                                           /s/ Jack Fitzgerald

                                           **THE LAW OFFICE OF**
                                           **JACK FITZGERALD, PC**
                                           JACK FITZGERALD
                                           *jack@jackfitzgeraldlaw.com*
                                           TREVOR M. FLYNN
                                           *trevor@jackfitzgeraldlaw.com*
                                           MELANIE PERSINGER

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III
*sid@jacksonfosterlaw.com*
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Counsel for Plaintiffs and the
Settlement Class***

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR PRELIMINARY APPROVAL