United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN HADLEY, et al., <br> Plaintiffs, <br> v. <br> KELLOGG SALES COMPANY, <br> Defendant. | Case No. 16-CV-04955-LHK <br> **ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL** <br> Re: Dkt. No. 325 |

Plaintiffs Stephen Hadley, Melody DiGregorio, Eric Fishon, Kerry Austin, and Nafeesha Madyun ("Plaintiffs") bring a putative class action against Kellogg Sales Company ("Kellogg") for violations of California and New York law that arise from allegedly misleading statements on Kellogg's food product packaging. Before the Court is Plaintiffs' motion for preliminary approval of class action settlement. ECF No. 325. The Court held a hearing on this motion on February 6, 2020. Having considered Plaintiffs' motion, the arguments of counsel at the February 6, 2020 hearing, and the record in this case, the Court DENIES without prejudice Plaintiffs' motion for preliminary approval of class action settlement.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, in order to approve a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Where "the parties negotiate a settlement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (internal quotation marks and citations omitted). In such cases, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Signs of potential collusion include:

> (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant.

*Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (quoting *In re Bluetooth*, 654 F.3d at 947).

**II. DISCUSSION**

In the instant case, Plaintiffs allege violations of California and New York law that arise from allegedly misleading statements on Kellogg's food product packaging. ECF No. 324 ("TAC"). Plaintiffs seek preliminary approval of the settlement on behalf of a settlement class of "all persons in the United States who, between August 29, 2012 and the date a motion for preliminary approval is filed [*i.e.*, October 21, 2019], purchased in the United States, for household use and not for resale or distribution, one of the Class Products." ECF No. 325-1 Ex. A

2

("Settlement Agmt.") ¶ 4. Plaintiffs define the "Class Products," in turn, as various sizes and varieties of six different Kellogg products: Raisin Bran, Krave, Frosted Mini-Wheats, Smart Start, Crunchy Nut, and Nutri-Grain Bars. *Id.* at Appx. 1.

The Court DENIES without prejudice the motion for preliminary approval of class action settlement on several bases. First, the release of the claims is overbroad. Second, it is unclear whether certification of the settlement class is appropriate under Federal Rule of Civil Procedure 23(b)(3). Third, the parties fail to provide sufficient information to justify a proposed reversion to Kellogg. Fourth, the claim form, opt-out form, and notice forms contain numerous errors that result in inadequate disclosure of various aspects of the settlement to class members. Fifth, the settlement structure is currently inconsistent with the fact that the voucher portion of the settlement constitutes a coupon settlement under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712.

Any of these bases would be sufficient to deny the motion for preliminary approval. The Court discusses each in turn.

**A. The Proposed Release Is Overbroad.**

The Court concludes that the release contained within the proposed settlement agreement conflicts with Ninth Circuit precedent, which only allows release of claims "where the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) ("District courts in this Circuit have declined to approve settlement agreements where such agreements would release claims that are 'factually related' to the claims in the instant litigation.").

Under the settlement agreement, when class members decline to opt out of the settlement, the class members release "any and all claims, demands, rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action *of every nature and description whatsoever*, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or

3
Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

unmatured, at law or in equity, existing under federal or state law, that any Class member has or may have against the Released Kellogg Persons arising out of or *related in any way* to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Actions regarding the Class Products, which have been, or which could have been asserted in the Actions, and in connection with the conduct of the Actions, that have been brought, could have been brought, or are currently pending in any forum in the United States." ECF No. 325 ("Mot.") at 8 (emphasis added).

In light of this sweeping language, the settlement releases claims that are not "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse*, 598 F.3d at 590. The parties must narrow the scope of the release consistent with Ninth Circuit law in any future settlement.

### B. The Court Is Unable to Determine Whether the Settlement Class Satisfies Rule 23(b)(3).

"In deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc). This is especially so where, as here, the parties seek to certify a settlement class that was not previously certified by the Court. *See SFBSC Mgmt.*, 944 F.3d at 1048 (holding that where "the parties negotiate a settlement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)"); *Schneider v. Chipotle Mex. Grill*, No. 16-cv-02200-HSG, 2020 WL 511953, at *8 (N.D. Cal. Jan. 31, 2020) ("Because the parties seek to certify a nationwide Settlement Class that is broader than the certified class, the Court applies the heightened standard in assessing whether to grant preliminary approval of the class settlement."). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

Here, the Court cannot determine whether the settlement class satisfies the predominance

4

Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

requirement of Federal Rule of Civil Procedure 23(b)(3). The predominance "inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted).

In the instant case, Plaintiff Stephen Hadley previously moved to certify a class that consisted of the following four subclasses:

> [A]ll persons in California who, on or after August 29, 2012, purchased for household use and not for resale or distribution:
>
> **Raisin Bran Subclass:** Kellogg's Raisin Bran (including Omega-3) or Kellogg's Raisin Bran Crunch Cereals in a 13.7 oz., 14.3 oz., 18.2 oz., 18.7 oz., 23.5 oz., 24.8 oz., 29 oz., 30.3 oz., 43.3 oz., 56.6 oz., or 76.5 oz. package stating "heart healthy."
>
> **Smart Start Subclass:** Kellogg's Smart Start Original Antioxidants cereal in a 17.3 oz. package.
>
> **Frosted Mini-Wheats Subclass:** Kellogg's Frosted Mini-Wheats Bite Size (Original, Maple Brown Sugar, Strawberry, or Blueberry varieties), Big Bites (Original variety), Little Bites (Chocolate or Cinnamon Roll varieties), or Touch of Fruit in the Middle (Mixed Berry and Raspberry varieties) cereals in a 15.2 oz., 15.5 oz., 15.8 oz., 16.5 oz., 18 oz., 21 oz., or 24 oz. package.
>
> **Nutri-Grain Soft-Baked Breakfast Bar Subclass:** Kellogg's Nutri-Grain Soft-Baked Breakfast Bars (Blueberry, Strawberry, Cherry, Raspberry, and Variety Pack varieties), in 8-bar, 9-bar, 16-bar, or 24-bar counts with packaging stating, "the wholesome goodness you need to shine your brightest!"

ECF No. 129.

Kellogg argued in opposition that many of the challenged statements in the instant case "did not appear on the packaging for a substantial portion of the class period." ECF No. 208 at 11. (internal quotation marks and alterations omitted). The Court noted, however, that Rule 23(b)(3)'s predominance requirement was met because the proposed subclass definitions contained "only those individuals who purchased versions of the products that included the challenged statements on the packaging." ECF No. 208 at 12 (internal quotation marks omitted). Hence, the Court was assured that class certification

5

Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

would "avoid the individualized issues that would have otherwise arisen from the variations in packaging" of the relevant products. *Id.* at 14. Even on the foregoing narrow definition, however, the Court declined to certify the Nutri-Grain subclass because the challenged statement on the product's packaging "was not sufficiently 'prominently displayed' to warrant an inference of class-wide exposure." *Id.* at 17 (quoting *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2016 WL 6662723, at *8 (C.D. Cal. Mar. 23, 2016)). Therefore, the Court granted in part and denied in part the motion to certify.

The settlement class is significantly broader than the classes the Court previously certified. The class definition in the settlement agreement consists of "all persons in the United States who, between August 29, 2012 and the date a motion for preliminary approval is filed [*i.e.*, October 21, 2019], purchased in the United States, for household use and not for resale or distribution, one of the Class Products." ECF No. 325-1 Ex. A ("Settlement Agmt.") ¶ 4. Plaintiffs define the "Class Products," in turn, as various sizes and varieties of six different Kellogg products: Raisin Bran, Krave, Frosted Mini-Wheats, Smart Start, Crunchy Nut, and Nutri-Grain Bars. *Id.* at Appx. 1.

The settlement class is thus no longer limited to individuals who purchased products that contain the challenged statements. On the contrary, the Class Products are defined more broadly to include even more packaging sizes that were not included in the previous motion to certify. ECF No. 325-1 ("Fitzgerald Decl.") ¶ 80. At the hearing, the parties represented to the Court that the statements on these additional packaging sizes varied across the more than seven year class period, like the statements on the packaging of the products included in Plaintiff Stephen Hadley's motion to certify.

Accordingly, the Court cannot conclude that the settlement class satisfies the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). Plaintiffs cite the Ninth Circuit's recent decision in *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019), for the proposition that issues associated with consumer fraud claims,

6

"which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions." 926 F.3d at 559. However, in *In re Hyundai*, the Ninth Circuit explained that "class members were exposed to uniform fuel-economy misrepresentations and suffered identical injuries." *Id.* Indeed, the Ninth Circuit emphasized the district court's finding "that the alleged misrepresentations were 'uniformly' made via 'Monroney stickers and nationwide advertising.'" *Id.*

In the instant case, by contrast, the Court did not find that the alleged misrepresentations were "uniformly" made to settlement class members. On the contrary, the Court found that Plaintiff Stephen Hadley's earlier subclass definitions had been defined "narrowly in order to avoid the individualized issue that *would have otherwise arisen* from the packaging" of the relevant products. ECF No. 208 at 14 (emphasis added).

Further, even with the narrower subclass definitions, the Court had previously *denied* the motion to certify the Nutri-Grain Bars subclass because the Court concluded that "class-wide exposure to the 'wholesome goodness' phrase on Nutri-Grain packaging cannot be inferred." *Id.* at 17. Plaintiffs do nothing to reconcile the settlement class definition with the Court's previous decision. Yet the purported value of the injunctive relief that corresponds to the use of the word "wholesome" on Nutri-Grain Bars comprises nearly half of the total value of injunctive relief that Plaintiffs purport to have secured for the class. Mot. at 6.

In light of Plaintiffs' and Kellogg's representations about variations of the packaging of the Class Products over the course of the more than seven year class period, the Court's previous decisions on predominance, and the increased breadth of the settlement class, the Court cannot conclude that the settlement class satisfies the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). In any subsequent motion for preliminary approval, the parties must more clearly explain how the settlement class satisfies the predominance requirement of Federal Rule of Civil Procedure 23(b)(3), or define the settlement class more narrowly.

### C. The Settlement Fails to Comply with Northern District Procedural Guidance on Reversions.

Ninth Circuit case law demands heightened scrutiny of reversionary clauses in settlements "because they create perverse incentives" for the parties. *SFBSC Mgmt., LLC*, 944 F.3d at 1058. Accordingly, the Northern District of California's guidance for class action settlements requires parties to provide courts with sufficient information to assess whether a reversionary clause is justified. *Procedural Guidance for Class Action Settlements*, N.D. Cal., https://cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018) (hereinafter "N.D. Cal. Proc. Guidance for Class Action Settlements"). The parties fail to do so here.

The settlement in the instant case contains reversionary aspects. Specifically, the settlement secures an $8,250,000 "voucher component" for the class. Mot. at 3. Each voucher that makes up this component of the settlement expires after four months. Settlement Agmt. ¶ 30.2. When a voucher expires, the value of the voucher effectively "reverts" to Kellogg, as Kellogg is then under no obligation to make any payment. Indeed, the Ninth Circuit has held that arrangements of this kind, in a case that involved vouchers that expired after two years, and not just four months, are reversionary in nature. *See SFBSC Mgmt.*, 944 F.3d at 1041 ("The dance fee payment vouchers were set to expire in two years, at which time the 'value' of any unredeemed claims . . . would revert to the defendant nightclubs.").

Although the Ninth Circuit does not disallow reversionary settlements outright, the Ninth Circuit does "generally disfavor them because they create perverse incentives." *Id.* at 1058. "This cautionary approach to reversionary clauses is also reflected in the Northern District of California's own guidance for class action settlements." *Id.* at 1059 n.22. In particular, and "[i]n light of Ninth Circuit case law disfavoring reversions," the Northern District of California's procedural guidance dictates that parties should state in their motion for preliminary approval "whether and under what circumstances money originally designated for class recovery will revert to any defendant, *the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case*." *Id.* (emphasis added and internal quotation marks omitted) (quoting N.D. Cal. Proc. Guidance for Class Action

8

Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

Settlements).

In the instant motion for preliminary approval, Plaintiffs do not include any estimate of the amount of unclaimed vouchers that will expire after four months and thereby revert to Kellogg, nor do Plaintiffs provide any explanation as to why a reversion is appropriate in the instant case. Accordingly, the Court is unable to "satisfy its procedural obligation to probe more closely the reversionary clauses, by investigating whether those clauses are justified by unique benefits to the class and supported by provisions that ameliorate concerns about perverse incentives." *SFBSC Mgmt.*, 944 F.3d at 1060. In any subsequent motion for preliminary approval, in order to allow the Court to determine whether the instant settlement is "fundamentally fair, adequate, and reasonable," *Hanlon*, 150 F.3d at 1026, the parties must provide the reversion information outlined in the Northern District of California's procedural guidance.

### D. The Claim Form, Opt-Out Form, and Notice Forms Provide Inadequate Notice to Class Members.

The Court also concludes that the proposed claim form, opt-out form, and notice forms provide inadequate notice to class members. Federal Rule of Civil Procedure 23(e)(1) requires a court to "direct notice [of a proposed settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e) requires notice that describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted). Notice is inadequate if it misleads potential class members. *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). The Court appreciates the parties' efforts to secure relief for the class members in the instant case. However, here, numerous errors in the proposed claim form, opt-out form, and notice forms render the proposed notice to class members misleading.

First, the Court discusses numerous inconsistencies across the various forms. The Court then turns to certain issues with the proposed claim form. Finally, for the sake of completeness,

9

the Court discusses various remaining notice-related issues.

*First*, there are numerous inconsistencies between the various forms that render the notice to class members inadequate. Specifically, the opt-out form notifies class members that those who submit the opt-out form "will not be eligible to receive any money that may result from *any trial or settlement of this lawsuit*, if there is one." Settlement Agmt. Ex. 3 ("Opt-Out Form") (emphasis added). The opt-out form further indicates that class members who submit the opt-out form "do not wish to receive compensation under the terms of *any judgment or settlement* or to *otherwise participate in this Class Action*." *Id.* (emphasis added). By contrast, the settlement agreement indicates that class members who submit an opt-out form only "opt out of and [are] excluded from *the Settlement*." Settlement Agmt. ¶ 46 (emphasis added). Thus, the settlement agreement states that submission of the opt-out form results in exclusion from the settlement only, but the opt-out form states that submission results in exclusion from "participat[ion] in this Class Action" more broadly. Opt-Out Form. In light of these conflicting statements, the impact of the opt-out form is unclear to class members.

Similarly, the requirements for objecting to the settlement are inconsistent across forms. The settlement agreement contemplates that "[a]ny objection to the Settlement must be in writing, filed with the Court, *with a copy served on Class Counsel and counsel for Kellogg*." Settlement Agmt. ¶ 47.1 (emphasis added). Yet neither the long-form nor short-form notice contains any mention of the requirement that class members who wish to object must serve a copy of the objection on all counsel. *See* Settlement Agmt. Ex. 2 ("Long-Form Notice") at 1; Short-Form Notice. Instead, the short-form notice form simply directs class members to the long-form notice. *Id.* ("You may also object to any part of this Settlement. Details about how to object are available at www.CerealClaims.com."). The long-form notice, meanwhile, suggests to class members that no such service is necessary: "If you wish to object, you must, no later than [Objection Deadline], electronically file via the Court's ECF system, or deliver to the Clerk of the Court by mail, express mail, or personal delivery, a written objection." Long-Form Notice ¶ 20. Thus, the notice forms mislead class members about how objections may be made. More generally, the Court notes that

10

Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

requiring objectors to file their objections and to serve their objections on all counsel imposes an unnecessary burden on class members who wish to object.[1]

Further, the settlement agreement contemplates that "[o]bjecting Class Members may appear at the Final Approval Hearing and be heard. Such Class Members are requested, but not required to file a Notice of Intent to Appear." Settlement Agmt. ¶ 47.6. By contrast, the long-form notice suggests that class members should also serve a Notice of Intent to Appear "on Class Counsel and Defense Counsel" if the class members wish to appear at the final approval hearing. Long-Form Notice ¶ 20. Thus, the long-form notice does not provide adequate notice to class members about the procedure to appear at the final approval hearing . Further, as with objections, requiring filing and service on all counsel imposes an unnecessary burden on class members who wish to appear at the final approval hearing.

*Second*, the claim form presents a misleading choice between vouchers and cash to class members. As an initial matter, Plaintiffs propose that class members submit a claim form online. Mot. at 3. The proposed online claim form asks each class member to select which of the Class Products the class member purchased since August 2012, and estimate how many of the Class Products the class member purchased within the preceding three months. *Id.* An equation then places the class member into one of four "buckets," which depends on the extrapolated frequency of the class member's Class Product purchases:

| Base Refund Range | $0 - $10.00 | $10.01 - $32.50 | $32.51 - $55.00 | $55.01+ |
|---|---|---|---|---|
| Voucher Offer | $5 | $10 | $15 | $20 |
| Cash Refund Offer | $2.50 | $5 | $7.50 | $10 |

The voucher offer thus suggests that class members that select vouchers will receive a

---

[1] Further, it is not clear that a lay person would understand how to file and serve his or her objection.

11
Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

voucher with twice the value of cash. Plaintiffs assume, based on their expert's calculations, that roughly 78% or 79% of class members will select the voucher offer when presented with the preceding options. Mot. at 7; Fitzgerald Decl. ¶ 57.

Plaintiffs further assume a 10% claims rate, which Plaintiffs describe as "an unusually robust, but not unheard-of claims rate in such a case." *Id.* ¶ 61. Plaintiffs' assumption about the 10% claims rate derives from an unknown source. Plaintiffs merely state that "a 10% claims rate is an unusually robust, but not unheard-of claims rate in such a case." Fitzgerald Decl. ¶ 61. The Northern District of California's procedural guidance dictates that the estimate of the claims rate should derive "from other recent settlements of similar cases," and the parties should supply "the identity of the examples used for the estimate, and the reason for the selection of those examples." N.D. Cal. Proc. Guidance for Class Action Settlements ¶ 1(g). The sole example of a claims rate in a similar case that Plaintiffs provide is for *Boswell v. Costco Wholesale Corp.*, 16-CV-278-DOC (C.D. Cal.), in which the claims rate was only 2.9 %. Fitzgerald Decl. ¶ 79. Thus, Plaintiffs have failed to provide the claims rate information required by the Northern District of California's procedural guidance.

Moreover, the parties' own documents show that if Plaintiffs' assumptions are correct, then based on the availability of funds, the class members that select the cash refund will in fact receive a cash sum that is *higher* than the value of the corresponding voucher. *See id.* ¶ 63. Specifically, Plaintiffs' assumptions result in the following distribution:

| Bucket | Initial Cash Offer | Actual Cash Received | Initial Voucher Offer | Actual Voucher Received |
|---|---|---|---|---|
| 1 | $2.50 | $6.68 | $5.00 | $5.29 |
| 2 | $5.00 | $13.36 | $10.00 | $10.58 |
| 3 | $7.50 | $20.03 | $15.00 | $15.87 |
| 4 | $10.00 | $26.71 | $20.00 | $21.15 |

*Id.* Plaintiffs attempt to remedy this issue by proposing that the short-form notice and the claim form explain that "[t]he actual value of the Voucher or Cash Refund may be more or less than the initial offer amount depending on the final number of claims approved." Settlement Agmt. Ex. 2 ("Short-Form Notice"); Fitzgerald Decl. Ex. C ("Claim Form"). However, the clear implication of the proposed claim form, which requires class members to repeatedly choose between cash and a voucher that is twice the value of the cash, is that the choice of cash will result in receipt of a 50% *lower* amount than the choice of a voucher. To the extent that the opposite is in fact true, the claim form is misleading to class members.

*Third*, the Court notes several other flaws in the proposed claim form, opt-out form, and notice forms render notice to class members inadequate. Specifically, the short-form notice fails to inform class members of the $12,000,000 "cash component" of the settlement, and the short-form notice also fails to disclose the amount of attorney's fees, expenses, and administrative and notice costs that counsel will seek from the cash component of the settlement. The long-form notice discloses the amount of attorney's fees and expenses, but fails to disclose administrative and notice costs. Additionally, the long-form notice fails to clearly disclose the identity of the individual Plaintiffs.

The procedure for submission of the opt-out form is also needlessly burdensome for class members. Specifically, the long-form notice provides that class members who wish to submit an opt-out form must "download an Opt-Out Form from the Settlement Website, www.CerealClaims.com, complete the form, and mail it to the Class Administrator." Long-Form Notice at 8.

In light of the foregoing deficiencies, the Court concludes that the settlement fails to provide adequate notice "to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (internal quotation marks omitted). The parties should remedy these deficiencies in any future motion for preliminary approval.

**E. The Vouchers Are Coupons Under CAFA.**

Finally, the Court turns to the application of the Class Action Fairness Act ("CAFA"), 28

13
Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

1 U.S.C. § 1712, in the instant case. First, as the Court explains, the voucher component of the
2 settlement amounts to a coupon settlement under CAFA. The Court then provides guidance in
3 light of the Court's determination.

### 1. CAFA Analysis.

As discussed, the settlement secures an $8,250,000 "voucher component" для the class. Mot. at 3. The Court concludes that the vouchers contemplated by the settlement constitute relief in the form of coupons under CAFA, 28 U.S.C. § 1712.

The Ninth Circuit has provided three factors that the Court must examine in order to determine whether a settlement component amounts to a coupon settlement under CAFA: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (quoting *In re Online DVD*, 779 F.3d 934, 951 (9th Cir. 2015)). In the instant case, Plaintiffs propose that class members receive $8,250,000 worth of vouchers that may be used to purchase Kellogg cereal products from a limited list. While the vouchers are freely transferrable, the vouchers expire in a mere four months, must be used in a single transaction, and are only "stackable to the extent permitted by retailers." Settlement Agmt. ¶¶ 30–30.4.

Thus, only the first factor listed by the *In re Easysaver Rewards* court weighs against determining that the vouchers in the instant case are coupons. The estimated value of the vouchers that class members would receive under the settlement ranges between roughly $5 and $20. ECF No. 325-1 Ex. D. Meanwhile, the approximate retail price of the cereal products that the vouchers can purchase ranges between roughly $0.62 and $7.34. Settlement Agmt. ¶ 30.1. Under the settlement, class members therefore likely would not need to spend their own money to take advantage of the vouchers.

However, both of the other two *In re Easysaver Rewards* factors weigh in favor of finding the vouchers to be coupons under CAFA. With respect to the second *In re Easysaver Rewards*

14
Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

factor, the vouchers may only be used to purchase Kellogg products from a limited list. *Id.* Indeed, the vouchers may be exchanged for only seven different Kellogg products of different sizes and varieties. *Id.* Those seven Kellogg products consist of the following: (i) Kellogg's Variety Pack, (ii) Kellogg's Fun Pack, (iii) Raisin Bran (five varieties), (iv) Smart Start, (v) All Bran (three varieties), (vi) Crispix, and (vii) Mueslix. Settlement Agmt. ¶ 30.1.

The vouchers are therefore a far cry from Walmart gift cards, which the Ninth Circuit held not to be coupons in *In re Online DVD*. 779 F.3d at 951 ("Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer."); *see also In re Easysaver Rewards*, 906 F.3d at 757 n.8 ("[A] range of 15–25 products is in a different realm than the enormous number of products that Walmart sells for under $12."). Indeed, here, class members are even unable to use the vouchers on certain Class Products like Nutri-Grain Bars and Frosted Mini-Wheats.

Finally, with respect to the third *In re Easysaver Rewards* factor, the vouchers "are also far less flexible than those available in *In re Online DVD*." 906 F.3d at 757. Although the vouchers are freely transferrable, the vouchers expire within a mere four months, must be used in a single transaction, and are only "stackable to the extent permitted by retailers." Settlement Agmt. ¶¶ 30–30.4. Thus, the vouchers "cannot be used in anywhere near the same way as cash." 906 F.3d at 757.

The fact that under the settlement agreement, the class members would be able to choose between cash and the vouchers does not alter the Court's conclusion. In *In re Online DVD*, class members "had to choose either a $12 gift card *or* $12 in cash." *In re Easysaver Rewards*, 906 F.3d at 758 (citing *In re Online DVD*, 779 F.3d at 952). However, because class members were offered gift cards or cash at the same value, the Ninth Circuit was able to conclude that "[c]lass members who selected gift cards must have valued them at close to face value, because they selected them over essentially the same value in cash." *Id.* Here, by contrast, the settlement agreement contemplates that class members will be presented a choice between cash and a

15

Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

voucher that appears to *bear twice the dollar amount of the cash offered*. Mot. at 4. The choice between cash and vouchers in the instant case would thus not permit the Court to conclude that "any class member, let alone all class members, would have viewed [a] $20 [voucher] as equivalently useful to $20 in cash." *In re Easysaver Rewards*, 906 F.3d at 758. On the contrary, here, the value of the cash and the vouchers are not equivalent. As stated previously, the claim form indicates that the vouchers are double the value of the cash. However, the parties' own documents show that the cash has greater value than the vouchers. *See supra* Section II.D.

Thus, in light of the factors laid out by the Ninth Circuit in *In re Easysaver Rewards*, the Court must conclude that the voucher component of the settlement amounts to a coupon settlement under CAFA. The Court now assesses the impact of that determination on the settlement.

### 2. Impact of the Application of CAFA to the Settlement.

Plaintiffs indicate that Plaintiffs will seek $6,750,000 in attorney's fees. Plaintiffs argue that the attorney's fee request amounts to 21.4% of the settlement's total value of $31,507,000. Mot. at 19. However, this figure includes the alleged $11,257,000 value of injunctive relief, which is highly speculative. Further, nearly half of the injunctive relief value, or $4,829,712, derives from packaging changes for Nutri-Grain Bars, a product for which the Court previously denied class certification, and which the Court cannot conclude satisfies Rule 23(b)(3)'s predominance requirement here. *Id.* at 6; *see, e.g.*, *Fraley v. Facebook, Inc.*, No. C 11–1726 RS, 2013 WL 4516806, at *3 (N.D. Cal. Aug. 26, 2013) ("[A]dopting any particular dollar calculation offered by plaintiffs is unwarranted, and the 'value' of injunctive relief will not be deemed part of the settlement fund against which a benchmark percentage will be applied.").

Accordingly, Plaintiffs also argue that the attorney's fees represent roughly 33.3% of the value of the $20,250,000 in monetary relief secured for the settlement class. Mot. at 19. However, CAFA dictates that because the proposed vouchers are coupons, "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons *that are redeemed*." 28 U.S.C. § 1712(a), (b) (emphasis added).

16
Case No. 16-CV-04955-LHK
ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL

As the settlement agreement is currently structured, and unless the Court orders otherwise, the vouchers will not be distributed until after the entry of final judgment. Settlement Agmt. ¶¶ 10, 36. Thus, the settlement contemplates that the motion for attorney's fees will be filed before the vouchers have been distributed, and before the Court has the opportunity to determine the portion "of the coupons that are redeemed" by class members. 28 U.S.C. § 1712(a), (b). "A proposed settlement that precludes the calculation of the redemption value of the coupons is not compatible with CAFA." *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1133 (S.D. Cal. 2018). In order to address this difficulty, the parties may consider bifurcation of the proposed fee award "to take into account the speculative nature of at least a portion of [the] class recovery." *In re Easysaver Rewards*, 906 F.3d at 760 n.13 (internal quotation marks and citation omitted). Alternatively, the parties may also consider "amend[ment of] the settlement so that the redemption rate [of the vouchers] will be ascertainable before the entry of final judgment." *Id.*

## III. CONCLUSION

In sum, based on the parties' current filings and in light of the foregoing deficiencies, the Court cannot conclude that the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. Accordingly, for the foregoing reasons, the Court DENIES without prejudice Plaintiffs' motion for preliminary approval of class settlement.

**IT IS SO ORDERED.**

Dated: February 20, 2020

_____
LUCY H. KOH
United States District Judge