**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, California 92109
Phone: (619) 215-1741

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (*pro hac vice*)
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699

***Class Counsel***

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HADLEY, MELODY DIGREGORIO, ERIC FISHON, KERRY AUSTIN, and NAFEESHA MADYUN, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG SALES COMPANY,<br><br>Defendant. | Case No. 5:16-cv-04955-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Judge:     Hon. Lucy H. Koh<br>Date:      November 18, 2021<br>Time:      1:30 p.m.<br>Location:  Courtroom 8 – 4th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION ............................................................................................................... 1

ISSUES TO BE DECIDED ........................................................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES ................................................................... 1

I.     INTRODUCTION ......................................................................................... 1

II.     ARGUMENT ............................................................................................... 4

     A.     THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES ......................................................................................................... 4

          1.     Class Counsel's Fee Request is Reasonable Under the Percent-of-Fund Method ........................................................................................... 4

               a.     The Result Achieved ................................................................... 5

               b.     The Contingent Nature of the Representation and Risk Involved in the Litigation .......................................................... 9

               c.     The Skill Required and Quality of Class Counsel's Work ............... 12

               d.     Awards in Similar Cases ............................................................. 14

          2.     A Lodestar Crosscheck Shows Class Counsel's Fee Request is Reasonable ............................................................................................. 15

               a.     Class Counsel's Hours are Reasonable .......................................... 16

               b.     Class Counsel's Rates are Reasonable ........................................... 17

               c.     The Resulting Lodestar Multiplier is Reasonable ............................ 19

     B.     THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES ......................................................... 21

     C.     THE COURT SHOULD GRANT THE CLASS REPRESENTATIVES' REQUESTS FOR SERVICE AWARDS ....................................................... 22

III.     CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090512 (C.D. Cal. June 20, 2014) ........................................................... 17

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ........................................................... 17

*Alamilla v. Hain Celestial Group, Inc.*,
  30 F. Supp. 3d 943 (N.D. Cal. 2014) ........................................................................ 2

*Allen v. ConAgra Foods Inc.*,
  2020 WL 4673914 (N.D. Cal. Aug. 12, 2020) ........................................................ 10

*Allen v. ConAgra Foods, Inc.*,
  331 F.R.D. 641 (N.D. Cal. 2019) ............................................................................. 3

*Allen v. Hyland's, Inc.*,
  2021 WL 718295 (C.D. Cal. Feb. 23, 2021) ........................................................... 10

*Alvarez v. Farmers Ins. Exch.*,
  2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .......................................... 17, 21, 23, 25

*Arredondo v. Delano Farms Co.*,
  2017 WL 4340204 (E.D. Cal. Sept. 29, 2017) ........................................................ 22

*Bailey v. Kinder Morgan G.P., Inc.*,
  2020 WL 5748721 (N.D. Cal. Sept. 25, 2020) ......................................................... 5

*Bailey v. Rite Aid Corp.*,
  --- F.R.D. ----, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021) ................................... 3

*Beaty v. Ford Motor Co.*,
  2021 WL 3109661 (W.D. Wash. July 22, 2021) ....................................................... 3

*Beaver v. Tarsadia Hotels*,
  2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ........................................................ 17

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 11, 21, 24

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................. 17

*Bolton v. U.S. Nursing Corp.*,
  2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ........................................................... 5

ii

*Boyd v. Bank of Am. Corp.*,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)............................................................13

*Brazil v. Dole Packaged Foods, LLC*,
    2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) .................................................10, 13

*Broomfield v. Craft Brew Alliance, Inc.*,
    2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ..............................................3

*Brown v. Hain Celestial Group, Inc.*,
    2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ..............................................24

*Bruno v. Quten Research Inst., LLC*,
    2013 WL 990495 (C.D. Cal. Mar. 13, 2013)..............................................6

*Bruton v. Gerber Prods. Co.*,
    2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ..............................................13

*Buccellato v. AT & T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011) ..............................................21

*Burnthorne-Martinez v. Sephora USA, Inc.*,
    2018 WL 5310833 (N.D. Cal. May 16, 2018)..............................................9

*Bush v. Mondelez Int'l Inc.*,
    2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ..............................................2

*Carlin v. DairyAmerica, Inc.*,
    380 F. Supp. 3d 998 (E.D. Cal. 2019)..............................................23

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) ..............................................7

*Clark v. Perfect Bar, LLC*,
    2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)..............................................11

*Clark v. Perfect Bar, LLC*,
    816 Fed. App'x 141 (9th Cir. 2020) ..............................................11

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ..............................................23

*Corzine v. Whirlpool Corp.*,
    2019 WL 7372275 (N.D. Cal. Dec. 31, 2019)..............................................21

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..............................................2

*De Leon v. Ricoh USA, Inc.*,
    2020 WL 1531331 (N.D. Cal. Mar. 31, 2020)................................................................9

*de Mira v. Heartland Employment Serv., LLC*,
    2014 WL 1026282 (N.D. Cal. Mar. 13, 2014)..............................................................7

*Dennings v. Clearwire Corp.*,
    2013 WL 1858797 (W.D. Wash. May 3, 2013)...........................................................17

*Farrell v. Bank of Am. Corp., N.A.*,
    827 Fed. App'x 628 (9th Cir. 2020) .............................................................................15

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) .......................................................................................18

*Fontes v. Heritage Operating, L.P.*,
    2016 WL 1465158 (S.D. Cal. Apr. 14, 2016)..............................................................15

*Forsher v. J.M. Smucker Co.*,
    --- F. Supp. 3d ----, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) ............................2

*Fowler v. Wells Fargo Bank, N.A.*,
    2019 WL 330910 (N.D. Cal. Jan. 25, 2019)..........................................................24, 25

*Fresh Packing Corp. v. Guicho*,
    2016 WL 1718286 (N.D. Cal. Apr. 29, 2016)..............................................................16

*Fronda v. Staffmark Holdings, Inc.*,
    2018 WL 2463101 (N.D. Cal. June 1, 2018)................................................................24

*Gergetz v. Telenav, Inc.*,
    2018 WL 4691169 (N.D. Cal. Sept. 27, 2018).............................................................21

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
    2016 WL 6156076 (C.D. Cal. Aug. 16, 2016)...............................................................7

*Grace v. Apple Inc.*,
    2021 WL 1222193 (N.D. Cal. Mar. 31, 2021)..............................................................22

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015)..............................................................21

*Guttmann v. Ole Mexican Foods, Inc.*,
    2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) .............................................................7, 9

*Hadley v. Kellogg Sales Co.*,
    2018 WL 11341859 (N.D. Cal. Mar. 7, 2018)..............................................................13

iv

*Hadley v. Kellogg Sales Co.*,
  2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ...................................................... passim

*Hadley v. Kellogg Sales Co.*,
  2020 WL 3246335 (N.D. Cal. May 28, 2020) ............................................................... 3

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................................. 3, 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................................... 15

*Harris v. Mondelez Global LLC*,
  2020 WL 4336390 (E.D.N.Y. July 28, 2020) ................................................................. 2

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) .................................................................................. 17

*Hendricks v. Ference*,
  754 Fed. App'x 510 (9th Cir. 2018) ............................................................................. 15

*Hendricks v. Starkist Co.*,
  2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ............................................................. 15

*Hickcox-Huffman v. US Airways, Inc.*,
  2019 WL 1571877 (N.D. Cal. Apr. 11, 2019) .............................................................. 21

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ................................................................ 3

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................................... 11, 14, 18, 19

*Hopson v. Hanesbrands Inc.*,
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................................. 23

*Hudock v. LG Elecs. U.S.A., Inc.*,
  2020 WL 4676285 (D. Minn. Aug. 12, 2020) ................................................................ 3

*Huynh v. Housing Authority of County of Santa Clara*,
  2017 WL 1050539 (N.D. Cal., Mar. 17, 2017) ..................................................... 4, 17, 24

*In re Amtel Corp. Derivative Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 13, 2010) ............................................................... 7

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 396006 (N.D. Cal. Aug. 17, 2018) .................................................... 5, 7, 11, 14

*In re Apple Inc. Device Performance Litig.*,
  2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)..................................................4, 5

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................4, 15, 17, 19

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014)........................................................................2

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  109 F.3d 602 (9th Cir. 1997) ............................................................................18

*In re Facebook Biometric Info. Privacy Litig.*,
  --- F. Supp. 3d ----, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021).......................21

*In re Ferrero Litig.*,
  583 Fed. App'x 665 (9th Cir. 2014) ..................................................................8, 9

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................11

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...........................................15, 17, 22

*In re HPL Techs., Inc. Sec. Litig.*,
  366 F. Supp. 2d 912 (N.D. Cal. 2005) ...............................................................18

*In re Lenovo Adware Litig.*,
  2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) .....................................................15

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ..............................................passim

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ..................................................................22

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................................5

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................25

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ..............................................................................14

*In re TracFone Unlimited Serv. Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ...............................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ................................................................................. 6

*In re: Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................................. 20

*J & J Sports Prods., Inc. v. Duong*,
    2014 WL 1478498 (N.D. Cal. Apr. 14, 2014) ...................................................... 17

*Jacobson v. Persolve, LLC*,
    2016 WL 7230873 (N.D. Cal. Dec. 14, 2016) ...................................................... 16

*Johnson v. Quantum Learning Network, Inc.*,
    2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ......................................................... 5

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
    2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ..................................................... 3

*Kennedy v. Mondelez Global LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) ....................................................... 2

*Kinney v. Int'l Bhd. of Elec. Workers*,
    939 F.2d 690 (9th Cir. 1991) ................................................................................. 16

*Krommenhock v. Post Foods, LLC*,
    2021 WL 2910205 (N.D. Cal. June 25, 2021) ........................................... 1, 3, 15

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020) ............................................................... 3, 9, 20

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ......................................... 9, 14, 22

*Lee v. JPMorgan Chase & Co.*,
    2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) .................................................... 24

*Lesevic v. Spectraforce Techs., Inc.*,
    2021 WL 1599310 (N.D. Cal. Apr. 23, 2021) ....................................... 16, 18, 24

*Luna v. Marvell Tech. Grp.*,
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ...................................................... 20

*Lusby v. GameStop Inc.*,
    2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ..................................................... 14

*Manchouk v. Mondelez Int'l Inc.*,
    2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ...................................................... 2

*Marshall v. Northrop Grumman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ................................................................. 13, 15

*Martinelli v. Johnson & Johnson*,
    2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ....................................................................... 3

*Mason v. Heel, Inc.*,
    2014 WL 1664271 (S.D. Cal. Mar. 13, 2014) ...................................................................... 15

*McMorrow v. Mondelez Int'l, Inc.*,
    2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ............................................................................ 3

*Milburn v. PetSmart, Inc.*,
    2019 WL 5566313 (E.D. Cal. Oct. 29, 2019) ...................................................................... 16

*Mohamed v. Kellogg Co.*,
    2019 WL 1330920 (S.D. Cal. Mar. 23, 2019) ........................................................................ 2

*Morales v. Kraft Foods Group, Inc.*,
    2017 WL 2598556 (C.D. Cal. June 9, 2017) .................................................................... 2, 10

*Morizur v. SeaWorld Parks & Entm't, Inc.*,
    2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) ...................................................................... 10

*Morris v. Lifescan, Inc.*,
    54 Fed. App'x 663 (9th Cir. 2003) ...................................................................................... 14

*Nevarez v. Forty Niners Football Co., LLC*,
    474 F. Supp. 3d 1041 (N.D. Cal. 2020) .............................................................................. 23

*O'Connor v. Uber Techs., Inc.*,
    2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ..................................................................... 23

*Ontiveros v. Zamora*,
    303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................................ 21

*Perez v. Rash Curtis & Assocs.*,
    2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ..................................................................... 15

*Perkins v. Linkedin Corp.*,
    2016 WL 61325 (N.D. Cal. Feb. 16, 2016) ......................................................................... 23

*Quezada v. Schneider Logistics Transloading & Distrib., Inc.*,
    2014 WL 12584436 (C.D. Cal. May 12, 2014) ................................................................... 25

*Quiruz v. Specialty Commodities, Inc.*,
    2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ...................................................................... 20

*Racies v. Quincy Bioscience, LLC,*
    2020 WL 2113852 (N.D. Cal. May 4, 2020) ............................................ 10

*Ries v. Ariz. Beverages USA LLC,*
    2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .......................................... 10

*Rodriguez v. W. Pub'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................. 6, 23

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
    944 F.3d 1035 (9th Cir. 2019) ...................................................................... 5

*Sandoval v. Tharaldson Empl. Mgmt., Inc.,*
    2010 WL 2486346 (C.D. Cal. Jun. 15, 2010) ............................................ 25

*Schenider v. Chipotle Mexican Grill, Inc.,*
    2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ................................................ 9

*Spector v. Mondelez Int'l, Inc.,*
    178 F. Supp. 3d 657 (N.D. Ill. 2016) .......................................................... 2

*Stanger v. China Elec. Motor, Inc.,*
    812 F.3d 734 (9th Cir. 2016) ..................................................................... 18

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .......................................................... 5, 15, 23

*Tait v. BSH Home Appliances Corp.,*
    2015 WL 4537463 (C.D. Cal. July 27, 2015) .............................................. 5

*Truxel v. Gen. Mills Sales, Inc.,*
    2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ........................................... 11

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir. 1990) ..................................................................... 17

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................ 16

*Villegas v. J.P. Morgan Chase & Co.,*
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................... 23

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ............................................................. 5, 15

*Walsh v. Kindred Healthcare,*
    2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ........................................... 17

*Washington v. CVS Pharm. Inc.*,
   No. 4:15-cv-3504-YGR (N.D. Cal.) ............................................................ 10

*Weeks v. Google LLC*,
   2019 WL 8135563 (N.D. Cal. Dec. 13, 2019) .......................................... 15

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 7148923 (N.D. Cal. Dec. 15, 2013) .......................................... 10

*Williams v. Apple, Inc.*,
   --- F.R.D. ----, 2021 WL 2186223 (N.D. Cal. May 28, 2021) ...................... 3

*Wilson v. TE Connectivity Networks, Inc.*,
   2019 WL 4242939 (N.D. Cal. Sept. 6, 2019) ............................................ 21

*Zakaria v. Gerber Prods. Co.*,
   2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ............................................. 10

*Zakaria v. Gerber Prods. Co.*,
   755 Fed. App'x 623 (9th Cir. 2018) .......................................................... 10

**Rules**

Fed. R. Civ. P. 23(h) .................................................................................... 21

**Other Authorities**

Martin J. Hahn & Samantha L. Dietle, "State and Federal Food-Labeling Reforms Impose
Unappreciated Complexities and Compliance Challenges," WLF Legal Backgrounder (May 18, 2018) ...... 8

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on November 18, 2021, at 1:30 p.m., or as soon thereafter as may be heard, Plaintiffs will move the Court, the Honorable Lucy H. Koh presiding, for an Order awarding attorneys' fees and costs, and Class Representative service awards. The Motion is based on this Notice of Motion; the below Memorandum; the concurrently-filed Declaration of Jack Fitzgerald ("Fitzgerald Decl.") and all exhibits thereto; all prior pleadings and proceedings, including the Settlement Agreement (Dkt. No. 378-1, "SA") attached to the Declaration of Jack Fitzgerald in Support of Preliminary Approval (Dkt. No. 378, "PA Fitzgerald Decl."), Plaintiffs' March 10, 2021 Motion for Preliminary Approval (Dkt. No. 377, "PA Mot."), the October 21, 2019 Declaration of Jack Fitzgerald in Support of Preliminary Approval (Dkt. No. 325-1, "October 2019 Fitzgerald Decl."), and the Court's June 15, 2021 Order Granting Preliminary Approval (Dkt. No. 395, "PA Order"); and any additional evidence and argument submitted in support of the Motion.

## ISSUES TO BE DECIDED

Whether and in what amounts to award attorneys' fees and costs and Class Representative service awards pursuant to a proposed nationwide class Settlement that the Court on June 15, 2021 preliminarily approved, *see* PA Order.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

The Settlement Agreement's $13 million non-reversionary common fund appears to be the second-largest amount any cereal company has ever paid to settle any class action—second only after the $15 million common fund Post agreed to pay in *Krommenhock*[1]—and one of the largest settlements in United States history resolving any food false advertising class action. Fitzgerald Decl. ¶¶ 2-3. To achieve this result, Class Counsel risked thousands of hours of work and more than $1 million in out-of-pocket expenses on a novel liability theory, reaching a resolution only after nearly five years of litigation. *See generally* October 2019 Fitzgerald Decl. ¶¶ 3-35 (detailing case background and investigation, fact and expert discovery, law and motion practice, and settlement negotiations).

---

[1] *See Krommenhock v. Post Foods, LLC*, 2021 WL 2910205 (N.D. Cal. June 25, 2021) ["*Krommenhock II*"].

1

Success was far from certain. When counsel filed this and its companion cases against Post and General Mills in 2016, the lawsuits were assailed as "problematic in numerous ways," "not . . . particularly strong on the merits," and "no less absurd than past lawsuits against cereal makers, such as those alleging consumers are misled to believe that FrootLoops contain real fruit," *see* Fitzgerald Decl. ¶¶ 4-6 & Exs 1-2. As late as 2018, one member of the defense bar predicted Plaintiffs in a similar case would "face serious challenges to certification as a class action." *See id.* ¶ 7 & Ex. 3. Kellogg, moreover, is a Fortune 500 company, with more than $13.7 billion in revenue in 2020, and was represented by one of the most accomplished teams of food lawyers in the nation at Jenner & Block.[2] Plaintiffs, by contrast, are lay consumers who were primarily represented by a small law firm with just three attorneys and one paralegal throughout most of the litigation. *Id.* ¶ 10.

---

[2] Kellogg's lead counsel, Dean Panos, "is nationally recognized in representing several of the largest food and beverage and consumer product manufacturers in class action and complex commercial litigation," and "is ranked in *Chambers* in the Nationwide, Food & Beverages: Regulatory & Litigation category. . . . In 2017, he was recognized by *Law360* as an 'MVP' in the food and beverage category." *See id.* Ex. 4. Until appointed to the United States Court of Appeals for the Ninth Circuit in May 2019, Kellogg was also represented by Mr. Panos' former partner, Hon. Kenneth K. Lee, who in 2014 was named by the *Daily Journal* "as one of the Top 20 lawyers under 40 in the state for his class action defense work on behalf of food companies." *See id.* Ex. 5. Together, Messrs. Panos and Lee and their colleagues have been quite effective over a long period of time in representing food manufacturer defendants in similar lawsuits. *See, e.g.*, *Harris v. Mondelez Global LLC*, 2020 WL 4336390 (E.D.N.Y. July 28, 2020) (prejudicial dismissal of class action challenging labeling of Oreos as "Made with Real Cocoa"); *Kennedy v. Mondelez Global LLC*, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) (recommendation, later adopted, to dismiss class action challenging "graham" representations on crackers); *Forsher v. J.M. Smucker Co.*, --- F. Supp. 3d ----, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) (prejudicial dismissal of class action challenging "natural" on Jif Peanut Butter); *Mohamed v. Kellogg Co.*, 2019 WL 1330920 (S.D. Cal. Mar. 23, 2019) (denial of certification of class challenging advertising of Gardenburgers as "natural"); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177 (E.D.N.Y. 2018) (dismissal of action challenging slack fill of Swedish Fish); *Morales v. Kraft Foods Group, Inc.*, 2017 WL 2598556 (C.D. Cal. June 9, 2017) (decertification of Rule 23(b)(3) damages class and summary judgment for defendant on damages in action challenging representation that shredded cheese was "natural"); *Bush v. Mondelez Int'l Inc.*, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) (prejudicial dismissal of action challenging slack fill of mini cookie packs); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657 (N.D. Ill. 2016) (dismissal of action alleging Mondelez deceptively omitted that milk must be consumed with belVita Breakfast Biscuits to obtain labeled "4 hours of nutritious steady energy"); *Alamilla v. Hain Celestial Group, Inc.*, 30 F. Supp. 3d 943 (N.D. Cal. 2014) (prejudicial dismissal of class action challenging "raw" and "unpasteurized" representations on juice); *In re Clorox Consumer Litig.*, 301 F.R.D. 436 (N.D. Cal. 2014) (denial of motion for certification of class challenging odor elimination efficacy claims for cat litter); *Manchouk v. Mondelez Int'l Inc.*, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) (prejudicial dismissal of class action challenging "made with real fruit" representations on Nabisco cookies); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) (denial of class certification in action challenging health and wellness claims on cookies and crackers containing artificial trans fat).

Despite these challenges—and before finally obtaining Kellogg's very reluctant acquiescence to the Settlement—in August 2018, Plaintiffs and Class Counsel obtained certification of a California Class. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ["*Hadley*"] (Koh, J.). In a recent Rule 23(f) Petition filed on behalf of Mondelez International, Kellogg's counsel characterized *Hadley* "in particular" as one of the "leading authorities on class certification issues," Fitzgerald Decl. Ex. 6 at 4; *see also id.* at 18 n.8 (noting that "[o]ther courts" have "rel[ied] primarily on the district court's ruling in *Hadley*" in "accept[ing] similar conjoint analysis models").[3] After defeating Kellogg's Rule 23(f) Petition, *see* Dkt. No. 236, Plaintiffs survived Kellogg's summary judgment motion and—in a rare occurrence—even obtained partial summary judgment against Kellogg, with the Court finding it liable under the UCL's "unlawful" prong for certain misbranding. *See Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *17-24 (N.D. Cal. Aug. 13, 2019) ["*Hadley II*"] (Koh, J.), *reconsideration denied*, 2020 WL 3246335 (N.D. Cal. May 28, 2020) (Koh, J.).

Given Plaintiffs' novel theory, the case's complex scientific evidence, Kellogg's vigorous defense, Class Counsel's skillful lawyering, and the excellent result Class Counsel obtained—all in the face of enormous risk—the Court should grant Class Counsel's request for fees of $3.9 million representing 30% of the common fund, which is the same proportion Hon. William H. Orrick recently awarded in *Krommenhock II. See* 2021 WL 2910205, at *2 ("The Court grants Class Counsel's application for attorney fees in the amount of 30% of the gross settlement fund"). The Court should also award Class Counsel costs of $1,157,501, which were necessary to prosecute the action so as to achieve an excellent outcome for the Class.

---

[3] In the three years since the *Hadley* decision, it has been cited by other courts more than 40 times. Moreover, at least 10 district courts—including this Court—have certified other consumer fraud class actions relying on *Hadley's* succinct, two-part test for whether a conjoint analysis satisfies *Comcast. See Beaty v. Ford Motor Co.*, 2021 WL 3109661, at *4-5 (W.D. Wash. July 22, 2021); *Williams v. Apple, Inc.*, --- F.R.D. ----, 2021 WL 2186223, at *21 (N.D. Cal. May 28, 2021) (Koh, J.); *Bailey v. Rite Aid Corp.*, --- F.R.D. ----, 2021 WL 1668003, at *16-17 (N.D. Cal. Apr. 28, 2021); *McMorrow v. Mondelez Int'l, Inc.*, 2021 WL 859137, at *4-5 (S.D. Cal. Mar. 8, 2021); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *6 (C.D. Cal. Sept. 23, 2020); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020) ["*Krommenhock I*"]; *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 673-74 (N.D. Cal. 2019); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *15 (S.D. Cal. Nov. 29, 2018); *Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *19 (N.D. Cal. Sept. 25, 2018); *cf. Earl v. The Boeing Co.*, 2021 WL 3140545, at *3, *6, *9 (E.D. Tex. July 26, 2021) (citing *Hadley* multiple times in decision denying *Daubert* motion to strike conjoint analysis); *Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *4 (D. Minn. Aug. 12, 2020) (relying on *Hadley* to deny motion for summary judgment based on purported failure of conjoint analysis to properly consider supply-side factors).

Finally, the Court should grant Class Representative service awards of $10,000 to Stephen Hadley and $5,000 each to Melody DiGregorio, Eric Fishon, Kerry Austin, and Nafeesha Madyun, which are reasonable considering their contributions to the case, the personal risks they faced, and the size of the Settlement.

## II.    ARGUMENT

### A.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES

"Rule 23(h) of the Federal Rules of Civil Procedure provides that '[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.'" *Huynh v. Housing Authority of County of Santa Clara*, 2017 WL 1050539, at \*4 (N.D. Cal., Mar. 17, 2017) (Koh, J.). "[A]wards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct." *Id*. (internal quotes and citation omitted). "In considering whether requested attorney's fees are reasonable, a court should consider 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ["*Bluetooth*"]).

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method," so long as "their discretion . . . [is] exercised so as to achieve a reasonable result." *Bluetooth*, 654 F.3d at 942. Here, Class Counsel requests that the Court apply the percent-of-fund method and award fees of $3.9 million, representing 30% of the common fund. That amount is also justified by a lodestar-multiplier crosscheck analysis, as it represents a modest 1.40 multiplier to Class Counsel's reasonable lodestar of nearly $2.8 million.

### 1.    Class Counsel's Fee Request is Reasonable Under the Percent-of-Fund Method

"The use of the percentage-of-the-fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at \*2 (N.D. Cal. Mar. 17, 2021) (alteration and quotation omitted). The method "confers 'significant benefits . . . including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and

4

reducing the burden on the courts that a complex lodestar calculation requires.'" *Id.* (quoting *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015)); *see also In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) (Koh, J.) ["*Anthem*"] ("By tying the award to the recovery of the Class, Class Counsel's interests are aligned with the Class," so that "Class Counsel are incentivized to achieve the best possible result." (citation omitted)). By contrast, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class," *Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *5 (N.D. Cal. Oct. 18, 2013).

"Although 25% is the benchmark for a reasonable fee award, 'in most common fund cases, the award exceeds that benchmark.'" *Bailey v. Kinder Morgan G.P., Inc.*, 2020 WL 5748721, at *7 (N.D. Cal. Sept. 25, 2020) (quoting *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)). While the "usual range for fee awards in percentage cases . . . is generally 20 to 30 percent," in "cases involv[ing] extensive litigation prior to settlement," as here, courts "have awarded 30% or more of the common fund." *See Johnson v. Quantum Learning Network, Inc.*, 2017 WL 747462, at *4 (N.D. Cal. Feb. 27, 2017) (Koh, J.) (internal quotation marks and citations omitted). Thus, "district courts may depart from the 25% benchmark rate" and "[t]he Ninth Circuit has identified five factors which may be probative: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Anthem*, 2018 WL 3960068, at *9 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). Each of these factors supports Class Counsel's request for fees here in the amount of 30% of the common fund.

### a.    The Result Achieved

"First, the Court considers the overall result and benefit to the Class. This factor has been called 'the most critical factor in granting a fee award.'" *Id.*, at *9 (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046). In conducting this analysis, "[t]he fact that counsel obtained injunctive relief in addition to monetary relief for their clients is . . . a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055-56 (9th Cir. 2019) (alteration and emphasis omitted) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 946 (9th Cir. 2003)).

Considering its monetary and injunctive relief, the Settlement here is an excellent result achieved by Class Counsel for the Class, supporting the requested fee award. First, the Settlement's monetary relief is entirely in the form of an all-cash, non-reversionary common fund, which is the gold standard for class action settlements because it provides the most transparent and concrete value to class members while minimizing the chances and impact of collusion. *See Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("cash . . . is a good indicator of a beneficial settlement"); *cf. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("A reversion can benefit both defendants and class counsel, and thus raise the specter of their collusion.").

Second, the monetary relief is substantial. Our research suggests the Settlement is (i) the second-largest any cereal company has ever paid regarding any type of representative claim; (ii) the second-largest non-reversionary common fund in a food false advertising case involving a price premium damages model in United States history; and (iii) the third-largest non-reversionary common fund settlement of a food false advertising class action in United States history (and likely the third-largest in real value) involving *any kind* of damages model. The only larger settlements in these regards were in *Krommenhock* and *Suchanek*; but while the Settlement here is moderately less than *Krommenhock* in terms of absolute dollars, it is a proportionally better recovery for the smaller Settlement Class here. *See* PA Mot. at 20-21. And *Suchanek* was an underfill case with damages equal to 94% of the purchase price. *See* Fitzgerald Decl. ¶¶ 2-3.

Third, the Settlement's injunctive relief is significant. Anticipating that the parties' initial settlement would be approved and take effect, in late 2019, Kellogg began removing or modifying certain challenged labeling claims. *See* Dkt. No. 379, Decl. of Thomas Monroe ¶¶ 2-4; SA ¶¶ 5.1, 5.3. As part of the instant Settlement, Kellogg has agreed, so long as 10% or more of a Class Product's calories come from added sugar, to continue to refrain from using those and other labeling claims for at least one year following preliminary approval. *See* SA ¶¶ 5.1-5.5. This includes references to statements like "heart healthy," "healthy," "lightly sweetened," "no high fructose corn syrup," "wholesome," "nutritious," and "benefits." *Id.*

"[T]here is a high value to the injunctive relief obtained" where "[n]ew labeling practices affecting hundreds of thousands of [units] per year . . . bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products." *Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). Plaintiffs' expert Colin B. Weir previously estimated—based on the results of

6

Plaintiffs' *Daubert*- and *Comcast*-tested conjoint and hedonic regression damages models—that the value of the injunctive relief for the Class Products was more than $5 million, with ongoing value if Kellogg does not revive the enjoined claims. *See* Dkt. No. 325-3, Decl. of Colin B. Weir ¶ 26 & Table 1.[4]

Plaintiffs do not ask the Court to make a factual finding of the value of the injunctive relief *per se*, but instead to, "based on the record, determine the significance of this benefit, and employ it as a qualitative factor in deciding whether a[n upward departure from the benchmark] is warranted." *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 664 (9th Cir. 2020); *compare In re Amtel Corp. Derivative Litig.*, 2010 WL 9525643, at *11-12 (N.D. Cal. Mar. 13, 2010) (considering "corporate governance reforms" as a factor justifying upward departure from the 25% benchmark); *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, 2016 WL 6156076, at *4 (C.D. Cal. Aug. 16, 2016) (Where "the settlement has substantial monetary and nonmonetary components," "[t]his factor weighs heavily in favor of an upward departure from the benchmark"); *cf. Anthem*, 2018 WL 3960068, at *8, *11 (injunctive relief is a "relevant circumstance" in determining what percent of the common fund to award (citation omitted)); *de Mira v. Heartland Employment Serv., LLC*, 2014 WL 1026282, at *3 (N.D. Cal. Mar. 13, 2014) (Koh, J.) ("[T]he significant risk and non-monetary results achieved by Class Counsel . . . warrant an upward departure from the 25% benchmark" even where "Class Counsel . . . did not engage in motion practice before settlement, engaged in some written discovery, reviewed 1,700 pages of documents, and attended two depositions.").

The injunctive relief here is especially significant because, by reducing or eliminating the suggestion that the products are healthy, it "provides substantial *health* benefits to all purchasers . . . in light of the evidence offered by Plaintiff[s] about the health effects of [added sugar]." *See Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016) (emphasis added) (record citation omitted). In similar circumstances, the Ninth Circuit held that an "attorneys' fee award . . . stands up when evaluated using the factors set forth in *Vizcaino*," and that "counsel's procurement of monetary and injunctive relief appears to have been an exceptional result," where the injunctive relief was "meaningful and consistent with the relief requested in plaintiffs' complaint: As a result of the settlement, Ferrero must include extra

---

[4] Mr. Weir had estimated additional injunctive relief value relating to Nutri-Grain, but that product is not included in the present Settlement.

nutritional information on Nutella's packaging and follow new protocols in its Nutella advertising," *In re Ferrero Litig.*, 583 Fed. App'x 665, 668 (9th Cir. 2014).

That reasoning applies with more force here. As some commentators have noted, the injunctive relief Plaintiffs obtained—which was no simple feat, *see* October 2019 Fitzgerald Decl. ¶¶ 17, 21-22, 25—"lends credence to the legal theory that a product's added sugars render health-and-wellness claims printed on the product label misleading under consumer-protection laws." *See* Fitzgerald Decl. Ex. 7 at 3. Moreover, "the process of changing product labeling and associated marketing campaigns requires an enormous amount of time and financial resources." *Id.* at 2-3 (citing Martin J. Hahn & Samantha L. Dietle, "State and Federal Food-Labeling Reforms Impose Unappreciated Complexities and Compliance Challenges," WLF Legal Backgrounder (May 18, 2018)).[5] The Settlement thus disincentives other manufacturers to toe the line.

As a result, the Settlement has already had salutary effects beyond its express relief. A Law360 article, "Kellogg's Deal Highlights Sugar Focus in Label Class Actions," for example, advised manufacturers to "be wary of making claims inconsistent with current thoughts on what constitutes a healthy food," and to "review[] [their] labels to determine if the claims align with scientific consensus and consumer expectations," warning that "[i]f a product has added sugar, [the] manufacturer may benefit from evaluating whether claims about the healthy aspects of the product are appropriate and consistent with consumers' current understanding of the term." Fitzgerald Decl. Ex. 8 at 3. Similarly, a March 2021 article about the *Krommenhock* Settlement (and mentioning this case) in the National Law Review warns manufacturers that because "complex issues surround the impact of health of added sugars in a single product and a product's role in the total diet, nutrition claims that could imply the product is healthy seem risky for foods with added sugars." *Id.* Ex. 9 at 1-2. In short, the Settlements here and in *Krommenhock* have had industry-wide impact.

Finally, the Settlement offers benefits to those who would not otherwise see them because the Settlement Class is comprised of purchasers nationwide, rather than in California only. While it is possible that, absent settlement, some Settlement Class Members could eventually see relief through additional lawsuits brought in other states, other Settlement Class Members would be left without remedies, since some states preclude class actions and others require individual proof of reliance for consumer fraud claims,

---

[5] *Available at* https://www.wlf.org/2018/05/18/publishing/state-and-federal-food-labeling-reforms-impose-unappreciated-complexities-and-compliance-challenges

making them impossible to adjudicate on a classwide basis. That "Class Counsel successfully negotiated direct payments for a class of individuals that in all likelihood may have never received any compensation or redress for the conduct complained [sic] of" weighs in favor of granting Class Counsel's fee request. *See Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *3 (N.D. Cal. May 16, 2018).

Considering these circumstances, the Court should find this factor supports Class Counsel's request. *See Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *8-9 (N.D. Cal. July 11, 2014) (factor favored upward departure where "Class members who ha[d] made claims w[ould] receive cash" and "[t]he Settlement Agreement also provide[d] the equitable relief that [defendant] will stop using the disputed labels," which were "significant benefits to the class").

### b.     The Contingent Nature of the Representation and Risk Involved in the Litigation

Class Counsel "assume[d] substantial risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts." *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *9 (N.D. Cal. Jan. 31, 2020); *compare* Fitzgerald Decl. ¶ 15. This involved considerable sacrifice: because the firm representing Plaintiffs is "small . . . consisting of only [three] attorneys, [it] w[as] [ ] precluded from taking other fee generating employment." *See De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *15 (N.D. Cal. Mar. 31, 2020) (docket quotation omitted); *compare* Fitzgerald Decl. ¶ 16.

Besides the inherent risk in all contingency fee litigation, numerous things made this case especially treacherous. Kellogg is one of the largest food manufacturers on earth, experienced in defending class actions, and was represented by highly-skilled counsel who defended the action vigorously at every step. *See In re Ferrero Litig.*, 583 Fed. App'x at 668-69 ("counsel took on considerable risk as Ferrero is well financed and had facially valid defenses"). In addition, as one court in this district has opined, "food labeling claims are difficult to maintain" where plaintiffs "would need to prove that Defendant's labels . . . were misleading entirely by virtue of the product containing" an allegedly harmful nutrient. *See Guttmann*, 2016 WL 9107426, at *3; *compare Krommenhock I*, 334 F.R.D. at 566 & n.10 (plaintiffs had "a complex case to prove given its breadth and scope" because they had "to prove that reasonable consumers would be misled by each particular

label used for each Product during the class period," and also had to "prove . . . materiality for each Challenged Statement on each different Product for each subclass").

Evincing the difficulty in establishing liability on these types of claims, there are numerous examples of California courts, including this Court, initially certifying food labeling cases, then later decertifying or granting defendants summary judgment. *See, e.g., Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) (Koh, J.) (decertifying class); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2013) (Koh, J.) (same); *Allen v. ConAgra Foods Inc.*, 2020 WL 4673914 (N.D. Cal. Aug. 12, 2020) (granting defendant's motion for summary judgment after having previously decertified several state subclasses); *Ries v. Ariz. Beverages USA LLC*, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) (granting defendant's motion for summary judgment and decertifying class); *see also Morales*, 2017 WL 2598556 (decertifying class and granting defendant partial summary judgment); *Zakaria v. Gerber Prods. Co.*, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) (decertifying class and granting defendant summary judgment), *aff'd* 755 Fed. App'x 623 (9th Cir. 2018). At the first Case Management Conference in this case in November 2016, the Court even noted that "in all my food cases, I did either dismiss or grant summary judgment on about nine or ten of them." Dkt. No. 46, Nov. 30, 2016 Hrg. Tr. at 14:12-14.

There are also recent examples of consumer fraud trials ending in defense verdicts. *See, e.g., Washington v. CVS Pharm. Inc.*, No. 4:15-cv-3504-YGR (N.D. Cal.) (June 23, 2021 defense verdict in action alleging overcharging for generic drugs); *Allen v. Hyland's, Inc.*, 2021 WL 718295 (C.D. Cal. Feb. 23, 2021) (defense verdict following jury and bench trial on claims that homeopathic remedies were falsely advertised as effective); *Morizur v. SeaWorld Parks & Entm't, Inc.*, 2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) (defense verdict after bench trial on false advertising claims concerning treatment of orcas by SeaWorld); *cf. Racies v. Quincy Bioscience, LLC*, 2020 WL 2113852 (N.D. Cal. May 4, 2020) (decertifying after trial a false advertising class action alleging misleading advertising of memory supplement and noting "the Court found Plaintiff's case at trial underwhelming").

The litigation was also risky because its subject matter was complex, involving the intersection of scientific evidence regarding physiology and nutrition, and various aspects of marketing and consumer perception, which resulted in the parties offering the testimony of 10 experts in sugar science, marketing, survey design, economics, and FDA regulations. *See* October 2019 Fitzgerald Decl. ¶ 12. This is especially

10

true where Kellogg vehemently argued Plaintiffs' position on the science was "a minority view." *See Hadley II*, 2019 WL 3804661, at *17 (granting Kellogg summary judgment on punitive damages on this basis).

That the case theory was risky is manifest. Two different courts in this district held that two other actions brought on the same theory were implausible as a matter of law. *See Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), *aff'd on other grounds*, 816 Fed. App'x 141 (9th Cir. 2020); *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019). And at least some members of a Ninth Circuit panel hearing the *Truxel* appeal—which Plaintiffs ultimately dismissed—seemed to express skepticism at the theory. *See* PA Fitzgerald Decl. ¶¶ 28-30 & n.4. In addition, Class Counsel "pitched" the case to another firm in 2017, seeking assistance in prosecuting and financing the case, but the firm declined based on its risk assessment. Fitzgerald Decl. ¶ 17. Finally, there have been no copycats of this or the cases against Post and General Mills, indicating the plaintiffs' bar views them as difficult or risky. *Id.*

"[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)). "[C]ourts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Id.* (citation omitted); *see also Anthem*, 2018 WL 3960068, at *14 (upward departure warranted where the "case was conducted on a contingent-fee basis against well-represented Defendants," "the financial risk of litigation was assumed by Class Counsel throughout the pendency of the action," and "the representation ha[d] lasted for nearly three years and the case schedule was compressed, thereby requiring Class Counsel to forego work on other matters" (citation omitted)); *Johnson*, 2017 WL 747462, at *5 (Factor supported upward departure where "Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery," "bore the risk of litigation," and "was, to an extent, precluded from taking and devoting resources to other cases or potential cases, with no guarantee that the time expended would result in any recovery or recoupment of costs."); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *2-3 (N.D. Cal. Feb. 6, 2013) (Koh, J.) (

> There were significant risks of litigation here. . . . Defendant was represented by a defense firm that zealously litigated this action from its inception. Had Class Counsel failed to vigorously prosecute this case, or had Class Counsel not been successful in obtaining class certification,

11

it is unlikely that this substantial settlement could have been achieved. . . . This case was conducted on an entirely contingent fee basis against a well-represented Defendant. All of the financial risk of litigation was therefore assumed by Class Counsel, who[] . . . b[ore] all of the costs of litigation and the costs of attorney and paralegal time, which was substantial. Class Counsel took a significant risk in investing in this case and was able to secure a substantial victory on behalf of the class, resulting in the creation of a common fund . . . .).

### c.      The Skill Required and Quality of Class Counsel's Work

There are several reasons Class Counsel needed to be skilled to prosecute this case successfully. The theory was novel and the subject matter technical, requiring expert testimony about scientific evidence. The number of products and statements Plaintiffs challenged required careful organization and management at every step, for example, whether preparing for depositions or working with damages experts. And Kellogg's attorneys were strategic, persuasive, and highly-skilled and accomplished lawyers who could easily have leveraged any shortcoming in Class Counsel's representation of the Class. Counsel also needed to be skilled in managing this case as one in a portfolio brought on the same theory, where differences in facts and procedural posture would (and did) inevitably emerge and present cross-case risk.

The Court should find Class Counsel displayed skillful lawyering by managing such a complex case. Although challenging multiple products and claims in a single lawsuit was demanding, Class Counsel did so in hopes that skillfully managing the case would ultimately present the public and judiciary with a more efficient resolution of a larger number of claims, fulfilling the goals of Rule 23 by aggregating in this litigation, not just the claims of individual class members, but effectively those of several different classes, while minimizing the risk, if each product were challenged in a separate lawsuit, that an unfavorable decision in one case could scuttle the chances of success in them all.[6]

The most substantial part of managing a case like this is discovery, which was extensive here. Class Counsel worked diligently to develop the factual record necessary to support the Class's claims and to convince Kellogg of the risks of trial. This included reviewing over 60,000 pages of documents produced by Kellogg, subpoenaing additional documents from 52 third parties, taking 15 depositions and defending

---

[6] We nevertheless recognize the Court's admonishment that the case was over-pleaded and have "take[n] seriously into account," as promised, the Court's advice against taking a "kitchen sink" approach. *See* Dkt. No. 61, Mar. 22, 2017 Hrg. Tr. at 6:21-9:19. In a similar case we filed in March 2020 against Welch, for example, we challenged just one labeling claim on three juices, cutting the Complaint to just 35 pages. *See* Fitzgerald Decl. Ex. 10.

another 10, and retaining 5 experts who collectively authored 11 reports, which were opposed by Kellogg's 5 experts and their collective 8 reports. *See* October 2019 Fitzgerald Decl. ¶¶ 6-12; PA Fitzgerald Decl. ¶ 45 (showing 1,937 hours dedicated to written discovery, depositions, and related motions). Nevertheless, Class Counsel, who are experienced in this area, brought this large case nearly to trial in similar or less time than other attorneys have put into simpler actions. *See* Fitzgerald Decl. ¶ 21; *see also infra* n.10; *compare Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *3 (C.D. Cal. Sept. 18, 2020) ("[A] one-third fee is appropriate where '[c]ounsel litigated effectively, and their experience was essential for obtaining the result.'" (quoting *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014))).

Evincing Class Counsel's skill, during the litigation, counsel:

- Obtained the prejudicial dismissal of several of Kellogg's defenses, crucially including its preemption defense, *see Hadley v. Kellogg Sales Co.*, 2018 WL 11341859, at *2 (N.D. Cal. Mar. 7, 2018) (Koh, J.); *see also Hadley II*, 2019 WL 3804661, at *3-10 (detailing procedural history);

- Obtained certification of a California Class, *Hadley*, 324 F. Supp. 3d 1084;[7]

- Obtained approval of a hedonic regression damages model, *Hadley II*, 2019 WL 3804661, at *24, despite the Court having previously found similar models in other consumer fraud cases insufficient, *see Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *10 (N.D. Cal. Feb. 13, 2018) (Koh, J.); *Werdebaugh*, 2014 WL 7148923, at *9-13; *Brazil*, 2014 WL 5794873, at *6-14;

- Survived virtually all of Kellogg's summary judgment arguments (with Kellogg obtaining summary judgment only on punitive damages);

- Successfully defended against all of Kellogg's *Daubert* motions, *see Hadley*, 324 F. Supp. 3d at 1106-110; *Hadley II*, 2019 WL 3804661, at *24;

- Obtained an order striking the testimony of two Kellogg experts entirely, and portions of three more Kellogg experts' opinions, *Hadley II*, 2019 WL 3804661, at *25; and

- Obtained on behalf of a certified class summary judgment *against* Kellogg on UCL "unlawful" prong liability for some misbranding claims, *id.*, at *17-24.

---

[7] Moreover, the Court later indicated that, despite declining to certify a Nutri-Grain Subclass based on Kellogg's argument that the challenged claim was not sufficiently prominent, the Court had "come around" and was later "persuaded" by Plaintiffs' unsuccessful argument regarding prominence and exposure. *See* Dkt. No. 365, Nov. 12, 2020 Hrg. Tr. at 25:23-25 ("I can be and am persuaded that on the prominence of the statements, I can be convinced by Judge Orrick's Order"); *id.* at 30:22-25 ("I've kind of come around, Mr. Fitzgerald has convinced me on the predominance, the prominence of the statement on the box").

It was "prevail[ing] in a hard-fought, complex motion for class certification after extensive discovery"—and largely prevailing on summary judgment, too—that enabled Class Counsel "to achieve such results for the class" here. *See Hopkins*, 2014 WL 1026282, at *3.

"This Court and other courts within this district have recognized that litigating complicated matters, especially unprecedented issues, is a circumstance that points in favor of a larger percentage." *Anthem*, 2018 WL 3960068, at *13 ("Class Counsel demonstrated skillful preparation and adept work" where they "performed significant factual investigation prior to bringing these actions; engaged in motion practice, including opposing two motions to dismiss and fully briefing a motion for class certification and reply; engaged in written discovery; and participated in protracted negotiations," and where "the subject matter [wa]s highly technical," such that "[t]he parties planned to employ ten expert witnesses in the case"); *Hopkins*, 2013 WL 496358, at *2-3 ("Significant skill and quality work were involved" where "[t]he discovery that was undertaken by Class Counsel brought to light evidence of Defendant's violations of California labor and unfair competition laws," and where counsel had "employed the services of three experts to assist in a proper evaluation of this case" and "investigated, researched, and filed a comprehensive motion for class certification" that was granted "[d]espite [ ] strong opposition"); *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (factor favored award of one-third of common fund where Class Counsel had "litigated a large number of [similar] class actions," "achiev[ing] class certification in many different scenarios," had "developed an extensive factual record to obtain the evidence needed to convince Defendant of the risks of continued litigation," and its "history of successful prosecution of similar cases made credible its commitment to pursue this action through trial and beyond"). Given the considerations discussed above, the Court should find this factor supports Class Counsel's fee request.

### d.      Awards in Similar Cases

"[A] fee award of one-third is within the range of awards in this Circuit." *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) ["*Lidoderm*"] (citing *Larsen*, 2014 WL 3404531, at *9 (collecting cases awarding fees of 32% or greater); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33%)); *see also Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, 664 (9th Cir. 2003) (in settlement of class action alleging defendant failed to disclose defects in glucose monitors that caused inaccurate readings, district court "did not abuse its discretion in finding an award of 33 percent to be

14

reasonable"). Consistent with this, several California courts have recently awarded fees of 30% in settlements of similar consumer fraud class actions. *See Krommenhock II*, 2021 WL 2910205, at *2; *Weeks v. Google LLC*, 2019 WL 8135563, at *3 (N.D. Cal. Dec. 13, 2019); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *8-9 (N.D. Cal. Apr. 24, 2019); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom.*, *Hendricks v. Ference*, 754 Fed. App'x 510 (9th Cir. 2018); *Fontes v. Heritage Operating, L.P.*, 2016 WL 1465158, at *5-6 (S.D. Cal. Apr. 14, 2016); *Mason v. Heel, Inc.*, 2014 WL 1664271, at *6, *12 (S.D. Cal. Mar. 13, 2014). None of these cases, other than *Krommenhock*, involved the complexities, investment, risk, and excellent result of this case, demonstrating the reasonableness of Class Counsel's request. *Compare Marshall*, 2020 WL 5668935, at *2-3 ($12.375 million common fund, representing 29% of trial damages, and fact that "case was litigated to trial," which "required [plaintiffs' counsel] to devote enormous efforts and resources to this matter" supported "an award of one third of the settlement fund").

### 2.    A Lodestar Crosscheck Shows Class Counsel's Fee Request is Reasonable

Though not required, *see Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. App'x 628, 630 (9th Cir. 2020), "courts in the Ninth Circuit sometimes examine the lodestar calculation as a crosscheck on the percentage fee award to ensure the reasonableness of the percentage award." *Perez v. Rash Curtis & Assocs.*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) (citing *Vizcaino*, 290 F.3d at 1050). "Under the lodestar method, a 'lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (Koh, J.) ["*High-Tech*"] (quoting *Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003))). "Although the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* (citation and internal quotation marks omitted). These factors "largely mirror the considerations" discussed above with respect to the percent-of-fund method, *Lidoderm*, 2018 WL 4620695, at *3, and include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues present, and the risk of nonpayment," *id.*, at *2 (quoting *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998))). Based on these factors, a "lodestar

multiplier is typically applied[]," and those "'in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'" *Milburn v. PetSmart, Inc.*, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019)  (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)).

As detailed below, Class Counsel's reasonable lodestar here is at least $2,795,633, so that the request for $3.9 million in fees represents at most a 1.40 multiplier, which is reasonable—even modest—under the circumstances of this case and considering the applicable factors.

### a.      Class Counsel's Hours are Reasonable

As evidenced in Plaintiffs' Preliminary Approval Motion, "[t]he total time spent by Class Counsel on this matter though March 4, 2021" was "5,457.7 hours." *See* PA Fitzgerald Decl. ¶ 45 & Exs. 21-22. For proffering a reasonable lodestar for a cross-check, however, Class Counsel is exercising billing discretion in several regards. *First*, in recognition that some "fees would not have been incurred had the parties not filed multiple insufficient motions," *see Jacobson v. Persolve, LLC*, 2016 WL 7230873, at *12 (N.D. Cal. Dec. 14, 2016) (Koh, J.), Class Counsel is deducting the 408.3 hours spent on Plaintiffs' July 2020 Motions to Enforce the Settlement Agreement, and Renewed Motion for Preliminary Approval. This deduction results in 5,049.4 total hours. Fitzgerald Decl. ¶ 20. *Second*, in recognition of the Court's concerns that Class Counsel has over-litigated the case at times, and to otherwise account for any inefficiencies, counsel is applying an additional 10% "haircut" to its lodestar, reducing the amount by another 505 hours, for a total of **4,544.4 hours** for purposes of this application. *See id.*; *compare Fresh Packing Corp. v. Guicho*, 2016 WL 1718286, at *7 (N.D. Cal. Apr. 29, 2016) (Koh, J.) (In light of inefficiencies, "the Court exercises its discretion to reduce by 10% the hours requested."). *Third*, Class Counsel is not counting time spent after March 4, 2021, including preparing for and participating in the June 10, 2021 Preliminary Approval hearing; working with the Claims Administrator on notice and claims issues; drafting the motion for final approval; responding to any objections; preparing for and participating in the Final Approval Hearing; and post-judgment work, such as overseeing the post-distribution accounting and any supplemental distribution of unclaimed funds. *See* Fitzgerald Decl. ¶ 33.[8]

---

[8] Class Counsel also recognizes that "[f]ees are not awarded for fee litigation in common fund cases," *Lesevic v. Spectraforce Techs., Inc.*, 2021 WL 1599310, at *6 (N.D. Cal. Apr. 23, 2021) (Koh, J.) (quoting *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 694 n.5 (9th Cir. 1991)), and has not included in its lodestar calculation any of its time dedicated to this motion. *See* Fitzgerald Decl. ¶ 34.

This 4,544.4 hours after cuts is a reasonable amount of time to have expended on the litigation. After deducting Mr. Fitzgerald's 36.3, and Ms. Nguyen's 23.7 pre-filing hours, the remaining 4,484.4 hours was expended between August 29, 2016 and March 4, 2021—a total of 1,649 days, or about 55 months. This is equivalent to about 81.5 hours per month, or 20.4 hours per week. *See* Fitzgerald Decl. ¶ 21.[9] The Court should find these hours were reasonable and necessary to the litigation, especially considering the result obtained for the Class. *Compare High-Tech*, 2015 WL 5158730, at \*10 ("36,215 hours is a reasonable amount of time for Class Counsel to have spent on this litigation . . . . [i]n the more than four years that this case has been pending").[10]

## b. Class Counsel's Rates are Reasonable

The second part of the lodestar calculation is multiplying the hours spent by a "reasonable hourly rate for the region and for the experience of the lawyer." *High-Tech*, 2015 WL 5158730, at \*9 (quoting *Bluetooth*, 654 F.3d at 941). A reasonable hourly rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *J & J Sports Prods., Inc. v. Duong*, 2014 WL 1478498, at \*2 (N.D. Cal. Apr. 14, 2014) (Koh, J.) (citing *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984)). "[R]ate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *cf. Huynh*, 2017 WL 1050539, at \*4 ("for each

---

[9] For comparison, we also show the statistics for our "raw" hours (5,397.7 hours after deducting pre-filing work), before making cuts.

[10] *See also Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at \*5 (N.D. Cal. Jan. 18, 2017) (finding "reasonable and necessary" 4,727.6 hours "over nearly three years of litigation"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) ("Given the complexity of the case," 5,995.4 hours was "reasonable," with the time "representing approximately . . . 28 hours per week for a four year time period"); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) (finding reasonable "more than 5,000 hours" expended over two years); *Walsh v. Kindred Healthcare*, 2013 WL 6623224, at \*2 (N.D. Cal. Dec. 16, 2013) (finding reasonable 5,728 hours expended over 3 years); *Dennings v. Clearwire Corp.*, 2013 WL 1858797, at \*5 (W.D. Wash. May 3, 2013) (finding reasonable 4,265.2 hours over 2.5 years of litigation, or approximately 142.1 hours per month); *Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at \*16-17 (C.D. Cal. Apr. 29, 2014) (finding reasonable 4,673.2 hours over 31 months, or approximately 150.7 hours per month), *objections overruled*, 2014 WL 4090512 (C.D. Cal. June 20, 2014); *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at \*13-14 (S.D. Cal. Sept. 28, 2017) (finding reasonable 9,104 hours over more than six years (73 months), or approximately 124.7 hours per month).

biller who worked on this action, Class Counsel must specify whether any court within the Northern District of California has approved the biller's billable rate"). Here, Class Counsel's rates are as follows.

| Timekeeper | Position | Rate |
|---|---|---|
| Jack Fitzgerald | Principal | $825 |
| Trevor Flynn | Associate | $625 |
| Melanie Persinger | Associate | $600 |
| Tran Nguyen | Associate | $400 |
| Sid Jackson | Principal | $825 |
| Christian Harben | Associate | $400 |
| Val Erze | Paralegal | $205 |
| Julie Hinton | Paralegal | $205 |

Fitzgerald Dec. ¶ 22.

These rates are reasonable. Since filing this action in August 2016, other than recently in *Krommenhock*, Class Counsel has not made a fee application to another court in this district (in part because work on this case limited counsel in bringing new cases); but these are the same rates Class Counsel provided in *Krommenhock*. *See id.* ¶ 23 & Ex. 11. And rates approved for Class Counsel by courts in other markets show that these rates are reasonable. *See id.* ¶¶ 24-25. The rates also compare favorably to those recently awarded by other courts in this district in other consumer fraud class actions. *See id.* ¶¶ 26-31 & Exs. 12-16.[11]

---

[11] The Ninth Circuit has held that "[a]ttorneys in common fund cases must be compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002), and that "failure to do so is an abuse of discretion." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016). "The district court may choose one of two methods to compensate attorneys for a delay in payment: (1) the court may apply 'the attorneys' current rates to all hours billed during the course of the litigation'; or (2) the court may use the attorneys' historical rates and add a prime rate enhancement." *Id.* (citing *Fischel*, 307 F.3d at 1010, and quoting *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir. 1997)). During the hearing on Plaintiffs' Motion for Preliminary Approval, the Court said, "[o]ne request I would make for final approval, where I'm assuming I will get a motion for attorneys' fees, I would like to know, for each counsel, *if* you're charging different hourly rates and when those rate changes took place, and then . . . the work that each person did within that rate, or I guess that year of experience." Dkt. No. 397, June 10, 2021 Hrg. Tr. at 9:7-12 (emphasis added). Class Counsel—as it has always done in the past—had planned to use current rates, which is much simpler; and Class Counsel does not object to the Court doing so here, especially if it awards fees based on the percent-of-fund method and "use[s] a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *See Hopkins*, 2013 WL 496358, at *4; *compare In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919-20 (N.D. Cal. 2005) ("[T]he court [may] simply use current . . . hourly rates [as] doing so simplifies the calculation and accounts for the time value of money in that lead counsel has not been paid contemporaneously with their work in this case."); *Lesevic*, 2021 WL 1599310, at *3 (where "the lodestar is being used as a cross-check, courts may do a rough calculation"). Nevertheless, Class Counsel have provided

18

### c.     The Resulting Lodestar Multiplier is Reasonable

"Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." *Hopkins*, 2013 WL 496358, at *4 (citation omitted). Here, "'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,'" *Bluetooth*, 654 F.3d at 942 (quotation omitted), all support the 1.40 lodestar multiplier (or 1.36 should the Court use historic rates plus the prime rate enhancement) resulting from Class Counsel's $3.9 million fee request.

*The Quality of Representation.* As discussed above, "Class [C]ounsel provided their clients with diligent and skilled representation in this matter," including "litigat[ing] numerous complex issues[,] and their efforts produced substantial benefits for the [ ] Class." *See Lidoderm*, 2018 WL 4620695, at *3.

*The Benefit Obtained for the Class.* The Settlement provides Class Members with millions of dollars in relief, including a hefty $13 million non-reversionary cash fund and significant prospective injunctive relief. As discussed above and previously, this compares favorably both to other settlements in similar cases (including *Krommenhock* even though nominally larger), and to the Class's likely recovery at trial, particularly considering the risks involved in continuing litigation. *See* PA Mot. at 17-21.

*The Complexity and Novelty of the Issues Present.* In addition to the complexities and novel claims discussed above, this case involved several difficult legal and factual issues. For example, Kellogg raised preemption as a defense against Plaintiffs' allegations surrounding "Heart Healthy" labeling numerous times. *See Hadley II*, 2019 WL 3804661, at *4-16 (detailing the seven times Kellogg raised the preemption defense). Because Class Counsel demonstrated "Kellogg . . . sandbag[ged] Plaintiff with a new preemption defense at summary judgment after Kellogg repeatedly failed to articulate a legally sufficient preemption defense in three years of litigation," *id.*, at *13, and persuaded the Court to find "Kellogg's preemption argument is barred under the law of the case doctrine," *id.*, at *16, Class Counsel was able to maintain and continually advance challenges to Kellogg's "Heart Health" claims for Raisin Bran and Smart Start. Had Class Counsel

---

historical rates starting in 2015 (during counsel's pre-filing investigation), divided each timekeeper's time (after deductions) by year, and applied historical prime rates, to determine an alternative lodestar under the second permissible method. *See* Fitzgerald Decl. ¶¶ 35-43. The result is a lodestar of $2,848,863, which is about $53,230 more than Class Counsel's lodestar using current rates ($2,795,633). *Id.* ¶ 44. This would reduce the multiplier from 1.40 to 1.36 if Class Counsel is awarded 30% of the common fund. The similarity between the results applying both methods further shows that Class Counsel's current rates are reasonable.

not succeeded in this regard, the potential damages and leverage Plaintiffs exerted over Kellogg to obtain the Settlement would have been significantly less.

Class Counsel also brought this case at a time when "[t]he science and research around the impacts of high sugar consumption [wa]s continuing to develop." *See Krommenhock I*, 334 F.R.D. at 583. This meant Class Counsel had to repeatedly defend against Kellogg's claim that the scientific evidence that the "dangers of consuming added sugar to heart health (referring to heart disease) is a minority view," and that even "the FDA has taken the position that 'inadequate evidence exists to support the direct contribution of added sugars to obesity or heart disease.'" *See Hadley II*, 2019 WL 3804661, at *16. Regardless, the scientific evidence supporting Plaintiffs' case theory was complex, leading Class Counsel to engage two scientific experts to explain in different ways the health detriments of added sugar consumption.

***The Risk of Nonpayment.*** "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also id.* at 1302 (finding abuse of discretion where district court did not apply a multiplier when case was "fraught with risk and recovery was far from certain"). As discussed above, and in Plaintiffs' Motion for Preliminary Approval, Class Counsel took this case on a contingency basis and faced a very real risk of non-payment—including non-reimbursement of significant out-of-pocket expenses, the vast majority of which were incurred before Plaintiffs survived summary judgment—as evidenced by the outcomes in *Clark* and *Truxel*, and even by the Settlement here nearly falling apart after the parties' initial agreement was denied preliminary approval. "Because counsel worked on a contingent-fee basis despite risks of litigation, this weighs in favor of awarding more than the lodestar." *See Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (applying 2.0 multiplier); *see also Lidoderm*, 2018 WL 4620695, at *3 (factor favored applying a positive multiplier where "Class Counsel litigated this action without pay for several years, even though recovery was uncertain" (quotation omitted)); *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *11 (N.D. Cal. Nov. 9, 2020)  (1.95 multiplier warranted where counsel "faced a significant risk of nonpayment given the contingent nature of the representation").

*          *          *

Considering the relevant factors, the Court should find that a lodestar crosscheck supports an award of 30% of the common fund, showing this amount represents at most a modest 1.40 multiplier to Class

Counsel's reasonable lodestar. *See Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *11 (N.D. Cal. Dec. 31, 2019) ("a lodestar multiplier of 1.86 is modest"); *compare Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (Koh. J.) (A "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary." (citation omitted)).[12] Notably, the $4.5 million fees Judge Orrick awarded in *Krommenhock* (30% of the $15 million fund) was a 1.60 multiplier to counsel's $2,809,363 lodestar in that case. Fitzgerald Decl. ¶ 23.

## B.   THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Bellinghausen*, 306 F.R.D. at 265 (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014)); *see also Alvarez*, 2017 WL 2214585, at *5 ("Class counsel is entitled to reimbursement of reasonable expenses." (quoting Fed. R. Civ. P. 23(h)). Here, Class Counsel seeks reimbursement of expenses in the amount of **$1,157,501**, the majority of which relates to expert witness expenses (and then the majority of that to Plaintiffs' damages models). *See* PA Fitzgerald Decl. ¶ 52 & Exs. 26-27; Fitzgerald Decl. ¶¶ 45-50.

---

[12] *See also In re Facebook Biometric Info. Privacy Litig.*, --- F. Supp. 3d ----, ----, 2021 WL 757025, at *12 (N.D. Cal. Feb. 26, 2021) (applying 4.71 multiplier and noting that "empirical data on lodestar multipliers in all cases shows average multipliers in the range of 1.42 and 3.89" (record citation omitted)); *cf. Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (applying 2.0 multiplier to fees incurred by firm that made "many blunders" and whose "lack of experience and crude effort nearly wrecked th[e] class action," but "[n]evertheless . . . ended up taking on a seven-year risk of non-payment and delay in fees by commencing th[e] lawsuit," but applying 5.5 multiplier to fees incurred by counsel that had "rescued the case"); *Wilson v. TE Connectivity Networks, Inc.*, 2019 WL 4242939, at *8 (N.D. Cal. Sept. 6, 2019) (Since in "the Ninth Circuit . . . most multipliers range between 1.0 and 4.0 . . . . a multiplier of 2.38[, which] yields almost exactly the amount of the requested fee award, [ ] suggests that approving the award is reasonable under the lodestar method, as well."); *Hickcox-Huffman v. US Airways, Inc.*, 2019 WL 1571877, at *1 (N.D. Cal. Apr. 11, 2019) ("a multiplier of 3.11" was "justified based on[] [ ] the difficult and novel legal challenges faced . . . the risks and financial burdens that Class Counsel undertook in litigating this case on a fully contingent basis[,] and [ ] the significant benefits that are being made available to the class"); *Gergetz v. Telenav, Inc.*, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) ("appl[ying] a multiplier of 2.625 in light of the facts that Class Counsel accepted this case on a contingency basis, had to forego other work to litigate this case, and achieved a truly excellent result for the class").

As the Court requested, Class Counsel has attached receipts for hotels and air travel. Fitzgerald Decl. ¶ 46 & Exs. 17-18.[13] As they demonstrate—with one exception that could not be avoided, *see id.* ¶ 46— Class Counsel used standard or economy travel and accommodations. Thus, the Court is not being asked to approve reimbursement of "unreasonable costs, such as 'first class airplane tickets, luxury hotel accommodations, [or] gourmet dinner meetings' at the expense of a common fund recovery." *See Arredondo v. Delano Farms Co.*, 2017 WL 4340204, at *6 (E.D. Cal. Sept. 29, 2017) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1372 (N.D. Cal. 1996)).

Because "[t]he categories of expenses for which plaintiffs' seek reimbursement are the type of expenses routinely charged to hourly clients," *Larsen*, 2014 WL 3404531, at *10 (citation omitted), including "expert witness fees; [ ] mediators' fees; . . . court reporting and videographer services . . . [;] and [ ] case-related travel for Plaintiffs, witnesses, experts, and counsel," the full amount should be reimbursed. *See Hi-Tech*, 2014 WL 10520478, at *2; *see also Grace v. Apple Inc.*, 2021 WL 1222193, at *6 (N.D. Cal. Mar. 31, 2021) (Approving reimbursement of $1,090,393.14 in expenses where "[a]bout 91% . . . are attributable [to] expert fees, Class Counsel's on-line document database, court reporters, and mediation," and "the remainder is attributable to travel, including economy-class airfare and hotels."). In *Krommenhock*, Judge Orrick granted counsel's request for reimbursement of costs in its entirety. Fitzgerald Decl. ¶ 23.

## C.     THE COURT SHOULD GRANT THE CLASS REPRESENTATIVES' REQUESTS FOR SERVICE AWARDS

Class Counsel, on behalf of the Class Representatives, request that the Court award $10,000 to Mr. Hadley, and $5,000 to each of the other named Plaintiffs. "In the Ninth Circuit, '[i]ncentive awards are fairly typical in class action cases,'" and "'are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes,

---

[13] Plaintiffs' Preliminary Approval Motion noted Class Counsel would seek reimbursement for meals while traveling in the amount of $2,144.78. *See* PA Fitzgerald Decl. ¶ 52. However, because of the small amount and difficulty locating receipts, counsel is no longer seeking reimbursement for these expenses. Fitzgerald Decl. ¶ 47. In addition, consistent with cutting time spent on the July 2020 Renewed Motion for Preliminary Approval, Class Counsel is deducting from its reimbursement request the $21,775.25 spent for Colin Weir to perform a survey relating to a revised claim form, which was described in his declaration filed with that motion. *See* Dkt. No. 347-1 (Weir Decl.); Dkt. No. 378-27 at p.12 of 29 (ECF header) (showing $9,731.50 and $12,043.75 payments to ETI on July 20 and October 6, 2020, relating to survey); *compare* Fitzgerald Decl. ¶ 48.

to recognize their willingness to act as a private attorney general.'" *Alvarez*, 2017 WL 2214585, at *1 (quoting *Rodriguez*, 563 F.3d at 958-59). "In evaluating whether representative plaintiffs are entitled to reasonable incentive payments, district courts 'must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."'" *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *17 (N.D. Cal. Feb. 16, 2016) (Koh, J.) (quoting *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998))).

The Court has noted that "$5,000 is considered 'presumptively reasonable' in this district." *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020) (Koh. J.) (citing *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)). "[B]ut courts have approved higher awards where class representatives can make a strong showing on one or more of the *Staton* factors." *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019) (citing *Villegas*, 2012 WL 5878390, at *7). Moreover, when amounts above the presumptively-reasonable $5,000 service award are requested, "some courts have considered the ratio between the service awards and class members' average recovery [in] determin[ing] the propriety of any amount awarded," *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1025 (E.D. Cal. 2019) (citing *Hopson v. Hanesbrands Inc.*, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)). However, even a "'very large differential in the amount of damage awards between the named and unnamed class members'" is appropriate if "that differential is justified by the record," through evaluation of the *Staton* factors. *See id.* (quoting *Staton*, 327 F.3d at 978; additional citations omitted).

The service awards requested here are justified by the record, which shows the Class Representatives' active participation in the litigation, including reviewing pleadings, the Settlement Agreement, and other relevant documents. *See* Fitzgerald Decl. ¶¶ 52-53.

In Mr. Hadley's case, this also includes, over the last five years, collecting and producing documents, responding to interrogatories, and sitting for a deposition during which he was subjected to invasive questions about his personal relationships, medical history, drug and alcohol use, diet, lifestyle choices, and criminal history. *See id.* ¶ 52 & Ex. 19. Mr. Hadley also personally attended the first mediation, discussed settlement negotiations and the proposed settlements with counsel many times, and stayed in regular contact with Class Counsel and informed about the progress of the case. *Id.* His participation and contributions justify a $10,000

service award. *See Huynh*, 2017 WL 1050539, at *8 (Finding "that the *Staton* factors justify granting each of the named Plaintiff households a $10,000 incentive award" where they "have devoted substantial time to the case" including being "deposed and particpat[ing] in two full days of settlement conferences," as well as "disclosing potentially embarrassing information," thereby "help[ing] to obtain an important benefit for the class, including $3,200,000 in damages and meaningful injunctive relief.") *Lesevic*, 2021 WL 1599310, at *8 ($5,000 award reasonable where named plaintiff "merely responded to written discovery and produced 131 pages of documents . . . did not attend the mediation[,] [n]or was he deposed," but $10,000 award may be appropriate "[w]here . . . the Class Representative did [] testify, sit for deposition, or participate in . . . mediation[ ]" (internal quotation marks omitted) (citing *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *14 (N.D. Cal. June 1, 2018))).

Moreover, in one of their most important contributions to the case, to help the parties reach the Settlement and ensure finality, all of the Class Representatives, including Mr. Hadley, agreed to, without any additional consideration, voluntarily and prejudicially dismiss their individual claims regarding Kellogg products that are not included in the Settlement. *See* Fitzgerald Decl. ¶ 53; *compare* Dkt. Nos. 324 & 376. This justifies the requested awards. *See Bellinghausen*, 306 F.R.D. at 268 (awarding the named plaintiffs each $15,000, "amounting to an above-average $10,000 incentive award and . . . $5,000 [for] release of claims"); *Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659, at *9 (C.D. Cal. Apr. 28, 2015) ("The enhancement awards proposed for these Plaintiffs are also reasonable on the grounds that these Plaintiffs release additional claims against Defendants that other Participating Claimants are not required to release.").

Plaintiffs' active involvement in this long-running litigation, the excellent result their efforts helped achieve, and the risk that their private medical and other personal information would be a focus of the lawsuit all support granting their request for service awards. *See Lidoderm*, 2018 WL 4620695, at *4 ($10,000 service award reasonable where "Class Representative actively participated in the litigation, including staying abreast of the progress of the case, collecting and produced documents, and responding to interrogatories and, in the case of two of the class representatives, preparing to testify at trial"); *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) ($7,500 service awards to plaintiffs that had "consult[ed] with counsel, attend[ed] mediations, [were] deposed, and otherwise participat[ed] in the litigation"); *Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *8 (N.D. Cal. Jan. 25, 2019) ($7,500

award to plaintiff who had "participated in the litigation by assisting counsel in obtaining loan documents, []

reviewing the complaint as well as relevant motions," "responding to discovery," "attend[ing] the mediation

in the case," and participating in "follow-up calls and emails with counsel" (record citations omitted)).

Moreover, the aggregate service award amount requested, $30,000, is just 0.2% of the Settlement

Fund and is thus "significantly less than the approximately 1% of the total settlement awarded by some

courts." *See Fowler*, 2019 WL 330910, at *8 (citing *Sandoval v. Tharaldson Employee Mgmt., Inc.*, 2010

WL 2486346, at *10 (C.D. Cal. June 15, 2010) (awarding $7,5000 incentive payment to named plaintiff,

comprising 1% of gross settlement amount)); *see also Alvarez*, 2017 WL 2214585, at *1 (awarding a $10,000

service award per plaintiff, totaling $90,000, "constitut[ing] 1.8% of the total settlement value"); *Quezada v.

Schneider Logistics Transloading & Distrib., Inc.*, 2014 WL 12584436, at *12 (C.D. Cal. May 12, 2014)

(awarding $10,000 to each named plaintiff where "the total requested service awards—$40,000—

represent[ed] less than 1% of the total settlement amount of $4.7 million"). Because the focus of this inquiry

is on "the number of class representatives, the average incentive award amount, and the proportion of the

total settlement that is spent on incentive awards," the Court should find this fact weighs in favor of finding

the requested incentive awards reasonable. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th

Cir. 2015).

## III.    CONCLUSION

The Court should grant Class Counsel's request for an award of 30% of the common fund, or $3.9

million in attorneys' fees, and $1,157,501 in costs; and grant the Class Representatives' requests for service

awards of $10,000 to Mr. Hadley and $5,000 each to Ms. DiGregorio, Mr. Fishon, Ms. Austin, and Ms.

Madyun.


Dated: August 3, 2021                          Respectfully Submitted,

                                               /s/ Jack Fitzgerald

                                               **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                               JACK FITZGERALD
                                               *jack@jackfitzgeraldlaw.com*
                                               TREVOR M. FLYNN
                                               *trevor@jackfitzgeraldlaw.com*
                                               MELANIE PERSINGER

*melanie@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, California 92109
Phone: (619) 215-1741

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

*Class Counsel*

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS