**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
Fax: (619) 331-2943

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III (*pro hac vice*)
*sid@jacksonfosterlaw.com*
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

*Class Counsel*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN HADLEY, MELODY DIGREGORIO, ERIC FISHON, KERRY AUSTIN, and NAFEESHA MADYUN, on behalf of themselves, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>              v.<br><br>KELLOGG SALES COMPANY,<br><br>    Defendant. | Case No. 5:16-cv-04955-LHK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Fed. R. Civ. P. 23(e)]<br><br>Judge:      Hon. Lucy H. Koh<br>Date:       November 18, 2021<br>Time:       1:30 p.m.<br>Location:   Courtroom 8 – 4th Floor |

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

NOTICE OF MOTION ............................................................................................1

ISSUES TO BE DECIDED .....................................................................................1

MEMORANDUM OF POINTS & AUTHORITIES.................................................1

I.      INTRODUCTION .......................................................................................1

II.     LEGAL STANDARD...................................................................................3

III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR, REASONABLE, AND ADEQUATE FOR THE CLASS.....................................4

      A.     The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ........................................................4

      B.     The Amount of Settlement.........................................................................6

      C.     Extent of Discovery Completed and Stage of Proceedings ......................8

      D.     The Experience and Views of Class Counsel .........................................10

      E.     The Presence of a Governmental Participant..........................................10

      F.     The Reactions of the Class Members.......................................................11

      G.     The Risk of Maintaining Class Action Status Through Trial ..................13

IV.    CONCLUSION..........................................................................................13

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beck-Ellman v. Kaz USA, Inc.*,
   2013 WL 10102326 (S.D. Cal. June 11, 2013)...................................................................8

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015).......................................................................................7

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 6002919 (N.D. Cal. Oct. 15, 2015).....................................................................9

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979)....................................................................................10

*Brazil v. Dole Packaged Foods, LLC*,
   2014 WL 5794873 (N.D. Cal. Nov. 6, 2014)......................................................................6

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016).......................................................................................7

*Broomfield v. Craft Brew Alliance, Inc.*,
   2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)................................................................8, 12

*Cancilla v. Ecolab, Inc.*,
   2016 WL 54113 (N.D. Cal. Jan. 5, 2016)...........................................................................2

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal.2010)...............................................................................12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)..............................................................................................6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................................7

*Create-A-Card, Inc. v. Intuit, Inc.*,
   2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)..................................................................12

*Custom LED LLC v. eBay, Inc.*,
   2013 WL 6114379 (N.D. Cal. Nov. 20, 2013)..................................................................12

*De Leon v. Ricoh USA, Inc.*,
   2020 WL 1531331 (N.D. Cal. Mar. 31, 2020).....................................................................8

*Donald v. Xanitos, Inc.*,
   2017 WL 1508675 (N.D. Cal. Apr. 27, 2017).....................................................................6

*Edwards v. Andrews*,
   846 Fed. App'x 538 (9th Cir. 2021) ..................................................................11

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ....................................11, 12, 13

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) .....................................................................10

*Espinosa v. Cal. Coll. of San Diego, Inc.*,
   2018 WL 1705955 (S.D. Cal. Apr. 9, 2018) ..................................................3

*Fitzhenry-Russell v. Coca-Cola Co.*,
   2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ................................................8

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2017 WL 4685536 (C.D. Cal. May 8, 2017) ................................................13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..............................................11

*Gaudin v. Saxon Mortgage Servs., Inc.*,
   2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ...............................................9

*Hadley v. Kellogg Sales Co.*,
   2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ...........................................5, 6

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ....................................................5, 6

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................11

*Hendricks v. Starkist Co.*,
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ..............................................8

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .................................................8

*Holman v. Experian Info. Sols., Inc.*,
   2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) .............................................10

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................3

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) .......................................................................4

iii

*In re Heritage Bond Litig.*,
    546 F.3d 667 (9th Cir. 2008) ....................................................................................... 3

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir.1995) ......................................................................................... 10

*In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2020 WL 6688912 (N.D. Cal. Nov. 12, 2020) ............................................................ 6

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989) ............................................................................. 3

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ............................................................... 3

*Jarrell v. Amerigas Propane, Inc.*,
    2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ............................................................. 12

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................. 4, 7, 10, 12

*Krommenhock v. Post Foods, LLC*,
    2020 WL 2322993 (N.D. Cal. May 11, 2020) ............................................................. 5

*Krommenhock v. Post Foods, LLC*,
    2021 WL 750823 (N.D. Cal. Feb. 24, 2021) .............................................................. 1

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020) ................................................................................ 5

*LaGarde v. Support.com, Inc.*,
    2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ............................................................ 4

*Lane v. Brown*,
    166 F. Supp. 3d 1180 (D. Or. 2016) ........................................................................... 9

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ..................................................... passim

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. 1997) ........................................................................... 10

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass 1987) ............................................................................. 10

*Maldonado v. Apple, Inc.*,
    2021 WL 1947512 (N.D. Cal. May 14, 2021) ............................................................ 5

iv

*Mandujano v. Basic Vegetable Prods. Inc.*,
   541 F.2d 832 (9th Cir. 1976) ................................................................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................4, 7, 9, 11

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................................6

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ....................................................................11, 12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................................4

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................13

*Rael v. Children's Place, Inc.*,
   2020 WL 434482 (S.D. Cal. Jan. 28, 2020) .........................................................12

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .........................................................4, 6

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................7, 10

*Rojas v. Zaninovich*,
   2015 WL 3657172 (E.D. Cal. June 11, 2015) ........................................................4

*Schneider v. Chipotle Mexican Grill, Inc.*,
   2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) .......................................................12

*Schuchardt v. Law Office of Rory W. Clark*,
   314 F.R.D. 673 (N.D. Cal. 2016) ..........................................................................10

*Stonehocker v. Kindred Healthcare Operating LLC*,
   2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ......................................................12

*Thomas v. MagnaChip Semiconductor Corp.*,
   2018 WL 2234598 (N.D. Cal. May 15, 2018) ......................................................12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................3, 4

*Touhey v. United States*,
   2011 WL 3179036 (C.D. Cal. July 25, 2011) .......................................................13

v

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014).......................................................................6

*White v. Experian Info. Sols., Inc.*,
    2009 WL 10670553 (C.D. Cal. May 7, 2009)....................................................................10

*Zepeda v. PayPal, Inc.*,
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)...................................................................11

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................................................................13

Fed. R. Civ. P. 23(e) .......................................................................................................................3

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632-35...................................................................3

*Hadley et al. v. Kellogg Sales Company*, No. 16-cv-4955-LHK
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e), the Northern District of California's Procedural Guidelines for Class Action Settlements ("Settlement Guidelines"), and the Court's June 15, 2021 Order Granting Preliminary Approval (Dkt. No. 395, the "PA Order"), on November 18, 2021, at 1:30 p.m., or as soon thereafter as may be heard, Plaintiffs will move the Court, the Honorable Lucy H. Koh presiding, for an Order: (1) finally certifying the Settlement Class; (2) finally approving the Settlement as fair, reasonable, and adequate to the Class; (3) directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval; (4) entering Judgment; and (5) maintaining jurisdiction over this matter for purpose of enforcing the Judgment. This Motion is based on this Notice of Motion; the below Memorandum; the concurrently-filed declarations of Jack Fitzgerald ("Fitzgerald Decl.") and Brandon Schwartz ("Schwartz Decl."), and all exhibits thereto; the parties' March 9, 2021 Settlement Agreement ("SA"[1]); all prior pleadings and proceedings; and any additional evidence and argument submitted in support of the Motion.

### ISSUES TO BE DECIDED

Whether the Court should finally certify the Settlement Class, grant the proposed Settlement final approval, direct the parties to undertake the obligations set forth in the Settlement Agreement, enter Judgment, and maintain jurisdiction over the matter for purpose of enforcing the Judgment.

### MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

On June 15, 2021, the Court preliminarily approved a nationwide class action settlement between Plaintiffs Stephen Hadley, Melody DiGregorio, Eric Fishon, Kerry Austin, and Nafeesha Madyun, on the one hand, and Defendant Kellogg Sales Company, on the other. *See* PA Order ¶ 3 (Finding that the "Settlement Agreement is fair, reasonable, adequate," "is the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case," and "meets all applicable requirements of law."). The Settlement resolves allegations that Kellogg

---

[1] Attached as Exhibit 1 to Declaration of Jack Fitzgerald in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 378-1, the "PA Fitzgerald Decl.").

violated California and New York consumer protection laws, and breached warranties, by misleadingly and unlawfully marketing high-sugar cereals with health and wellness claims. *See generally* Dkt. No. 376, Fourth Am. Compl. ("FAC").

Notice has now been provided to the Class in accordance with the approved Notice Plan. *See* Schwartz Decl. ¶¶ 2-3. This included (1) a media notice plan resulting in 432,596,170 digital impressions; (2) publication notice in *People* Magazine and a press release through PR Newswire's US1 and National Hispanic Newsline, picked up by 208 media outlets, reaching a total potential audience of 134,000,000; and (3) notices with third-party websites TopClassActions.com and ClassAction.org, which drove 324,738 class members to the Settlement Website. *See* Schwartz Decl. ¶¶ 5-8 & Exs. B-E. As a result, the Notice Plan "delivered a 76.89% reach with an average frequency of 2.54," for "a total reach *exceeding* the originally estimated 75% reach." *Id.* ¶ 15. The Settlement Website, informational email address, and toll-free hotline (IVR) that P&N set up also received significant use. *See id.* ¶¶ 10-11, 14 (As of September 17, 2021, more than 999,000 unique users have made more than 5.5 million views of the Settlement Website, and hundreds of calls have been made to the IVR).

The Class's response to the Settlement has been overwhelmingly positive. While 513,342 Class Members made valid claims—representing a robust 3.21% claims rate[2]—only 3 have opted out, and none have objected. *Id.* ¶¶ 17-20 & Ex G. If the Court awards the attorneys' fees, costs, service awards, and Class Administrator fees requested, claimants will receive between $2.35 and $31.23, depending on their quintile, *see id.* ¶ 22 & Table 3, with an average refund of approximately $14.09, *see* Fitzgerald Decl. ¶ 2.

As reflected by the high number of claims, few exclusions, and lack of objections, this is a fair, reasonable, and adequate Settlement for the Class, while eliminating inherent risk after more than four years of hotly-contested litigation, and months away from trial.[3] Because the settlement provides an excellent result

---

[2] The Class Administrator estimated the class size to be 16 million. *See* Dkt. No. 381, Declaration of Brandon Schwartz in Support of Motion for Preliminary Approval ¶ 12. The claims rate here is more than the 2.82% predicted, *see* PA Fitzgerald Decl. ¶¶ 14-17, and almost double the 1.78% claims rate in *Krommenhock v. Post Foods, LLC*, *see* Fitzgerald Decl. ¶ 4.

[3] The procedural, litigation, and settlement history was detailed in Plaintiffs' initial Motion for Preliminary Approval (which was denied without prejudice), *see* Dkt. No. 325 at 2, and that history was referenced in Plaintiffs' renewed Motion for Preliminary Approval, which was granted, *see* Dkt. No. 377 ("PA Mot.") at 2-3. The Court should finally certify the Settlement Class for the same reasons set forth therein. *See Raquedan v. Volume Servs., Inc.*, 2020 WL 10574547, at *2 (N.D. Cal. Oct. 28, 2020) (Koh, J.) ("For the

for the Class and eliminates the risk and expense of continued litigation and lengthy appeals, Plaintiffs respectfully request the Court grant the Settlement final approval and enter Judgment.

## II.   LEGAL STANDARD

"Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Espinosa v. Cal. Coll. of San Diego, Inc.*, 2018 WL 1705955, at *5 (S.D. Cal. Apr. 9, 2018) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989)). A class action settlement must be approved by the Court before it can become effective. *See* Fed. R. Civ. P. 23(e). The process for court approval of class action settlements is comprised of three steps: (1) preliminary approval, (2) dissemination of notice to the class which provides class members the opportunity to object or opt out and, (3) a final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class and whether plaintiff's request for attorneys' fees, expense reimbursement and service awards should be approved. *See* Manual for Complex Litigation (Fourth) § 21.632-35; *see also In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *16 (N.D. Cal. Jan. 28, 2016). The first two steps are complete; Plaintiffs now seek an Order finally approving the Settlement.

"In evaluating a proposed class action settlement under Federal Rule of Civil Procedure 23(e), the standard is whether the settlement 'is fundamentally fair, adequate and reasonable.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316–17 (N.D. Cal. 2018) (Koh. J.) ["*Anthem*"] (citing *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors,'" namely:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

---

reasons stated in the Preliminary Approval Order, the Court finds and determines that the proposed Class, as defined in the definitions section of the Settlement Agreement and conditionally certified by the Preliminary Approval Order, meets all of the legal requirements for class certification,").

1   *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021)  (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654

2   F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004));

3   *see also Anthem*, 327 F.R.D. at 317 (same).

4         Courts need not weigh all factors, "and different factors may predominate in different factual

5   contexts." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (quoting *Torrisi*, 8 F.3d

6   at 1376).  Further:

7           While considering all these interests, "the court's intrusion upon what is otherwise a private

8           consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

        necessary to reach a reasoned judgment that the agreement is not the product of fraud or

9           overreaching by, or collusion between, the negotiating parties, and that the settlement, taken

        as a whole, is fair, reasonable and adequate to all concerned."

10

11   *Id.*, at *4 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

12   **III.   THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR, REASONABLE, AND**

13          **ADEQUATE FOR THE CLASS**

14         A consideration of the *Churchill* factors demonstrates the Settlement is fair, reasonable, and adequate,

15   warranting final approval.

16         **A.   The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of**

17            **Further Litigation**

18         "In determining whether the settlement is fair, reasonable, and adequate" the Court first "balance[s]

19   the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the

20   benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com,*

21   *Inc.*, 283 F. Supp. 3d 823, 831-32 (N.D. Cal. 2017) (citing *Larsen v. Trader Joe's Co.*, 2014 WL 3404531,

22   at *4 (N.D. Cal. July 11, 2014); *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *4 (N.D. Cal. Mar.

23   26, 2013)). Given "all the normal perils of litigation as well as the additional uncertainties inherent in

24   complex class action." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979), "unless [a

25   proposed] settlement is clearly inadequate," a court should normally find "its acceptance and approval are

26   preferable to lengthy and expensive litigation with uncertain results." *Knapp*, 283 F. Supp. 3d at 832 (citing

27   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation

28   marks omitted)); *see also Rojas v. Zaninovich*, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (Courts

consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages,").

Here, "[w]hile [ ] [P]laintiffs . . . believe their claims are strong, they acknowledge," as detailed in their Motion for Preliminary Approval, "that they would face significant risks should the case proceed through litigation." *See Larsen*, 2014 WL 3404531, at *4 (record citation omitted); *compare* PA Mot. at 17-18. Moreover, as the Honorable William H. Orrick noted with respect to the similar case against Post, this would necessarily be "a complex case to prove [at trial] given its breadth and scope," requiring "pro[of] that reasonable consumers would be misled by each particular label used for each Product during the class period." *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 566 (N.D. Cal. 2020); *see also Krommenhock v. Post Foods, LLC*, 2020 WL 2322993, at *3 (N.D. Cal. May 11, 2020) (noting that "the expert work and trial in this case will be extensive and complex" (record citation omitted)). Of course, Kellogg "vigorously denied liability and challenged all of [ ] [P]laintiffs' claims." *See Larsen*, 2014 WL 3404531, at *4 (record citation omitted).

For example, Kellogg argued that the evidence supporting Plaintiffs' claims that the cereals are unhealthy is "minority" science, or that there is a "controversy" about the health effects of excess sugar consumption, and supported its position with the testimony of Dr. James Rippe, who has performed clinical studies involving sugar consumption. *Compare Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *16-17 (N.D. Cal. Aug. 13, 2019) ["*Hadley II*"] (relying on similar argument to grant summary judgment in favor of Kellogg on punitive damages). Kellogg also argued that the challenged labeling claims were immaterial and supported its position with the testimony of Stanford and University of Virginia professors, Dr. Itamar Simonson and Dr. Ronald Wilcox. In addition, Kellogg had numerous arguments for why it would be difficult or impossible for Plaintiffs to reliably prove any amount of damages, including both fundamental and numerous methodological challenges to Plaintiffs' damages models.[4] Finally, even if Plaintiffs prevailed at

---

[4] The Court approved of Plaintiffs' conjoint damages model and set out a succinct, two-part test for whether such a model adequately accounts for supply-side considerations. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018) ["*Hadley I*"]. But defendants have continued to vigorously contest whether that is correct, *see Maldonado v. Apple, Inc.*, 2021 WL 1947512, at *21-23 (N.D. Cal. May 14, 2021) (discussing issue in detail and noting split in case law), scoring occasional victories, *see, e.g., In re Volkswagen 'Clean Diesel' Mktg., Sales Practices, & Prod. Liab. Litig.*, 2020 WL 6688912, at *7 (N.D. Cal.

trial, Kellogg would press numerous issues on appeal, especially relating to class certification, Plaintiffs' conjoint damages model, and NLEA preemption of the challenged "heart healthy" claims.

The Settlement, by contrast, "achieves a definite and certain result for the benefit of the Settlement Class[]," making it "preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost." *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017). Thus, in light of "the significant risks that lie ahead . . . [at] trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results." *See Larsen*, 2014 WL 3404531, at *4. Because "[t]he settlement avoids the risks that the [P]laintiffs would not succeed in demonstrating that [Kellogg] failed to comply with state consumer protection laws," "this factor weighs in favor of final approval of the settlement." *See id.*; *see also Rieckborn*, 2015 WL 468329, at *4-5 (the "first two [*Churchill*] factors weigh in favor of approval" where "Plaintiffs contend that their claims have significant merit but acknowledge a number of risks and uncertainties should they proceed," including that "Defendants have adamantly denied liability and have asserted from the outset that they possess absolute defenses to all of plaintiffs' claims," and that "[p]roving damages would also entail substantial uncertainty . . . depend[ing] . . . on which, if any, of the four alleged partial corrective disclosures plaintiffs are ultimately able to rely," making "further litigation . . . likely to be costly and time-intensive, with no guarantee of a more beneficial outcome for class members as a result"); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (finding first two *Churchill* factors met where, "although [the plaintiffs'] claims were quite strong," there were factual challenges facing them at trial, including "challenges [with] [ ] damages").

## B.   The Amount of Settlement

"This factor examines the benefits to class members." *Larsen*, 2014 WL 3404531, at *4 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 574 (9th Cir. 2004)). "Assessing the fairness, adequacy,

---

Nov. 12, 2020). The Court also approved Plaintiffs' hedonic regression damages model, which doubled the damages for "heart healthy" claims compared to their conjoint damages model. *See Hadley II*, 2019 WL 3804661, at *24. But the Court had been skeptical of such models in the past, *see Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *11 (N.D. Cal. Nov. 6, 2014); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *12 (N.D. Cal. Dec. 15, 2014), had deferred ruling on the model in its Class Certification Order, *see Hadley I*, 324 F. Supp. 3d at 1111, and noted the "Kellogg's criticisms go to the weight of Mr. Weir's regression analysis," 2019 WL 3804661, at *24, so that Kellogg would have ample fodder for cross-examination.

and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Instead, "[w]hen considering the fairness and adequacy of the amount offered in settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527). Further, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527; *cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Finally, that a "Settlement Agreement also provides for injunctive relief" is an important consideration in evaluating its benefit, since "class members that choose to continue doing business with [the defendant] will benefit from this aspect as well." *See Knapp*, 283 F. Supp. 3d at 833.

Here, the Settlement's $13,000,000 common fund for a nationwide Class of approximately 16 million Members, is fair, reasonable, and adequate—especially in light of the robust injunctive relief obtained for public and Class's benefit, *see* PA Mot. at 5-6, 23. Assuming the Court approves or awards the full amount of notice and administration costs, attorneys' fees and costs, and service awards requested, Class Member claimants will divide the remaining approximately $7.2 million for cash refunds of between $2.35 and $31.23 per claimant (with an average refund of $14.09 per claimant). *See* Schwartz Decl. ¶ 22 & Table 3;[5] Fitzgerald Decl. ¶ 2. These amounts claimants will receive represent significant recoveries in relation to potential trial damages, where Plaintiffs would have to show "the difference between the prices customers paid and the value of the [products] they bought—in other words, the 'price premium' attributable to [Defendant's advertising claims]." *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). Plaintiffs' expert, Colin B. Weir, estimated maximum trial damages of $10 million to $13.6 million (with maximum trial damages for a hypothetical nationwide class of $113 million to $156 million). *See* Dkt. No.

---

[5] As reflected in Table 3, depending on their quintile, nearly all claimants (i.e., other than those few who submitted receipts for purchases that exceed the highest quintile) will receive the following refunds: Quintile 1: $2.35; Quintile 2: $6.90; Quintile 3: $11.85; Quintile 4: $18.83; and Quintile 5: $31.23. *See id.*

380, Declaration of Colin B. Weir in Support of Mot. for Preliminary Approval ¶ 14, Tables 2 & 3. Using the largest number, $156 million divided among 16 million Class Members is $9.75 each. Claimants' average recovery under the Settlement, almost 50% higher, is therefore excellent, particularly given the risks and expenses associated with trial and appeals.

Because the Settlement amount is a fair, reasonable, and adequate result for the Class, this factor weighs in favor of approval. *See Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (approving settlement where Class Members would receive between $1.25 to $2.75 per unit purchased, for a maximum of $10 without proof of purchase); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *6 (N.D. Cal. Oct. 3, 2019) (approving settlement fund of $2,450,000 that would pay restitution of $0.80 per unit, up to $10.40 (thirteen units) without proof of purchase); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *5 (N.D. Cal. Sept. 29, 2016) (approving settlement in which class members would receive $1.97 cash or $4.43 voucher per claim, and noting that the "settlement amount, while constituting only a single-digit percentage of the maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted"); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) (finding $1.00 recovery per bottled purchased to be "an excellent result" considering the fraction of purchase price recoverable at trial); *Beck-Ellman v. Kaz USA, Inc.*, 2013 WL 10102326, at *6 (S.D. Cal. June 11, 2013) (Factor weighed in favor of approval where "Class members may each recover up to $20 in reimbursements, although Kaz Heating Pads sold during the class period for around $10 to $20 per pad" and "[t]he settlement also include[d] substantial injunctive relief relating to Plaintiffs' claims, valued by economics professor Anthony Cox to be worth as much as $10,726,000." (record citations omitted)); *cf. De Leon v. Ricoh USA, Inc.*, 2020 WL 1531331, at *9 (N.D. Cal. Mar. 31, 2020) (granting final approval where "[i]n granting preliminary approval the Court concluded that the estimated payout to class members was fair in relation to the risks of continued litigation . . . and there [wa]s nothing in the final approval materials that change[d] the Court's analysis on that score").

### C.     Extent of Discovery Completed and Stage of Proceedings

"The extent of discovery completed and the state of the proceedings at the time of settlement is a strong indicator of whether the parties have sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D.

Or. 2016). Thus, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks and citation omitted). "For that reason, '[a] settlement following sufficient discovery and genuine arms-length negotiation is *presumed fair.*'" *Lane*, 166 F. Supp. 3d at 1190 (emphasis added) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).

A presumption of fairness applies here because the parties litigated for more than four years, including extensive motion practice; fact and expert discovery were complete; only trial remained; and the Settlement was reached through *seven* in-person arms-length negotiations with the assistance of court-sponsored mediator, Mark Petersen; JAMS mediator, Hon. James F. Holderman (Ret.); and Magistrate Judge Hon. Nathanael Cousins. *See* PA Mot. at 15-16. Yet even absent such a presumption, it is clear that "[b]y th[e] late stage of the litigation" at which the Settlement was reached, "both sides had a strong understanding of the strengths and weaknesses of each other's case," such that this factor "strongly favors approval." *See Lane*, 166 F. Supp. 3d at 1185, 1190 (granting final approval where "[a]fter almost four years of litigation, extensive fact and expert discovery, and prior unsuccessful efforts to resolve the dispute, the parties engaged in lengthy settlement negotiations a few months before trial and signed a Proposed Settlement Agreement"); *see also Gaudin v. Saxon Mortgage Servs., Inc.*, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (factor supported final approval where plaintiff "conduct[ed] extensive discovery and investigation (before and after class certification), reviewing approximately 25,000 pages of [Defendant's] documents, and participating in three separate rounds of settlement negotiations" (internal quotation marks and record citations omitted)); *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919, at *5 (N.D. Cal. Oct. 15, 2015) (factor favored final approval where "among other things, [plaintiffs] review[ed] more than 150,000 pages of documents produced by Defendants and non-parties, analyz[ed], with the assistance of an expert, data produced by Defendants, prepar[ed] for and participat[ed] in mediation, and negotiat[ed] the details of the Settlement Agreement for over two months" (internal quotation marks and record citations omitted)).

**D.      The Experience and Views of Class Counsel**

The Ninth Circuit "ha[s] held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation,'" *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). In determining whether a settlement is fair and reasonable, "[t]he judgment of experienced counsel regarding the settlement is [therefore] entitled to great weight." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)). As a result, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Here, Class Counsel has considerable experience in consumer class actions, and particularly those involving the false advertising of foods, especially as healthy. Moreover, Class Counsel has been litigating several similar cases during the pendency of this action and has therefore been exposed to a wide variety of information about the claims and defenses, and ultimately the potential upside and risks attendant to this. PA Fitzgerald Decl. ¶¶ 36-37. Because Class Counsel has substantial experience with complex class actions generally, and an intimate understanding of the relevant facts and issues here, and strongly endorses the Settlement, *id.* ¶ 36, this factor favors final approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored final approval where "Plaintiffs' counsel ha[d] successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believe[d] approval [wa]s in the best interests of the putative settlement class.").

**E.      The Presence of a Governmental Participant**

"There is no governmental participant here." *See Knapp*, 283 F. Supp. 3d at 833. Because, however, P&N "notified officials of the proposed settlement pursuant to CAFA . . . and no government entity has raised an objection," this factor "favors settlement." *See id.* (citing *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016); *Holman v. Experian Info. Sols., Inc.*, 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *14 (N.D.

Cal. Apr. 22, 2010)); *compare* Schwartz Decl. ¶ 4 (No state Attorney Generals have objected after receiving CAFA notice of the Settlement).

### F.      The Reactions of the Class Members

"The reaction of the class to the settlement is overwhelmingly positive," with a robust 513,324 valid claims filed (representing a 3.21% rate compared to the 2.82% rate predicted, *see* PA Fitzgerald Decl. ¶¶ 14-17), only three opt-outs, and no objections;[6] this factor thus "strongly favors final approval." *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *2, *8 (N.D. Cal. June 26, 2017) (Factor favored approval where "307,396 class members had submitted claims online, and an additional 125 class members had submitted paper claim forms," yet "only eight objections and one request for exclusion were received out of the millions of class members receiving notice."), *aff'd sub nom.*, *Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021). That is because "[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness")); *see also Larsen*, 2014 WL 3404531, at *5 ("The participation rate and positive response of the class weigh[ed] in favor of finding that the settlement is favorable to the class members" where "a total of 59,830 class members [ ] submitted claim forms, twenty-three [ ] opted out, and sixteen [ ] objected"); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *15 (N.D. Cal. Mar. 24, 2017) ("The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered." (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976))).

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members," *Larsen*, 2014 WL 3404531, at *5 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529), and courts "appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members

---

[6] Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards and supporting Declaration (Dkt. Nos. 398-99) were publicly filed on August 3, 2021 and posted to the Settlement Website the next morning. Class Members thus had full access to the motion for five weeks before the objection deadline, but no Class Member has objected to any aspect of the motion. Fitzgerald Decl. ¶ 3.

11

object to it," *id.* (quoting *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at \*15 (N.D. Cal. Sept. 22, 2009)). "This 'strong presumption' of fairness arises here, because . . . [no] objections and [only three] request[s] for exclusion were received out of the millions of class members receiving notice." *See Edwards*, 2017 WL 3623734, at \*8; *see also* Schwartz Decl. ¶¶ 5-9, 17-20; *supra* n.2.

The absence of any objections and exceedingly low opt-out rate (0.00001875%) strongly favors final approval here, since "[t]hese statistics indicate a favorable reaction by class members and their overall satisfaction with the Settlement." *See Noll*, 309 F.R.D. at 608 (factor favored approval where "of over 1,188,000 potential Class Members, only 97 [ ] opted out" and "only three objections were filed (including one that was not timely), translating into an objection rate of 0.00025%" (citing *Custom LED LLC v. eBay, Inc.*, 2013 WL 6114379, at \*9 (N.D. Cal. Nov. 20, 2013) (granting final approval and characterizing 0.04% exclusion rate, with one objection, as "overwhelmingly positive" reaction); *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal.2010) (4.86% opt-out rate strongly supported approval))); *see also Knapp*, 283 F. Supp. 3d at 834 (factor favored final approval where "[t]he settlement administrator received valid opt-outs from 452 class members, which amount[ed] to less than .03 percent of the class members who received notice," making "[i]t [ ] apparent that the 'overwhelming majority of the class' had nothing to say about the fairness of the settlement." (quotation omitted)).[7]

While the low opt-out and nonexistent objection rates indicate the majority of the Class approved of the Settlement and chose to remain in the Settlement Class, the 3.21% claims rate is fairly strong, and at least "on par with other consumer cases, and does not otherwise weigh against approval." *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 6484833, at \*9 (N.D. Cal. Nov. 4, 2020) (approving settlement with 0.83% claims rate) (citing *Broomfield*, 2020 WL 1972505, at \*7 (approving settlement with response rate of "about two percent")). Because "consumer class actions tend to result in claims rates in the low single digits," *Rael v. Children's Place, Inc.*, 2020 WL 434482, at \*9 (S.D. Cal. Jan. 28, 2020), the Court should

---

[7] *See also Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at \*5 (N.D. Cal. Apr. 27, 2021) (finding "[t]he reaction of the class was overwhelmingly positive" where "the Court received only three opt-outs and no objections"); *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at \*2-3 (N.D. Cal. May 15, 2018) (finding "[t]he reaction of the class was overwhelmingly positive" where "[n]o class members objected, and only one class member submitted a request for exclusion"); *Jarrell v. Amerigas Propane, Inc.*, 2018 WL 1640055, at \*2 (N.D. Cal. Apr. 5, 2018) (finding "[t]he reaction of the class was overwhelmingly positive" where "[n]o objections were received, and only three class members, or approximately 1% of the class, opted out." (record citation omitted)).

find that the 3.21% claims rate supports final approval here, particularly in light of the low opt-out rate and lack of objections. *See Touhey v. United States*, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (approving settlement where only 38 claims were filed, which was "approximately 2%" claims rate, based in part on "the lack of objections"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of about 1.2%); *see also* PA Fitzgerald Decl. Ex. 9 (discussing *Bayol v. Health-Ade LLC*, No. 18-cv-1462 (N.D. Cal.) (approving settlement with 1.09% claim rate); *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-1027 (N.D. Cal.) (approving settlement with 1.83% claim rate)).

### G.    The Risk of Maintaining Class Action Status Through Trial

"This factor, which concerns the risk of maintaining class certification, also favors settlement." *Larsen*, 2014 WL 3404531, at *4. While "[t]he Court already granted class certification," "and conditionally certified a class for settlement purposes only in granting preliminary approval," "[u]nder Federal Rule of Civil Procedure 23(c)(1)(C), an 'order that grants . . . class certification may be altered or amended before the final judgment.'" *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *4 (C.D. Cal. May 8, 2017) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Thus, "[a]lthough Plaintiffs believe they would be successful in maintaining class action status through trial and appeal," because Kellogg "vigorously opposed class certification, previously filed a [23(f) petition to appeal certification], and indicated its intention to challenge certification again," "the risk that Defendant may prove successful in attacking class certification, . . . favors final approval of the Settlement Agreement." *See id.*; *see also Edwards*, 2017 WL 3623734, at *7 ("Although plaintiffs are confident the class would remain certified through trial, the risk 'was not so minimal that this factor could not weigh in favor of the settlement.'" (quotation and citation omitted)).

## IV.    CONCLUSION

Each of the *Churchill* factors favors granting the Settlement final approval. Plaintiffs respectfully request the Court do so, and enter Judgment.

Dated: September 23, 2021                  Respectfully Submitted,

                                           /s/ Jack Fitzgerald
                                           _____

                                           **THE LAW OFFICE OF**
                                           **JACK FITZGERALD, PC**
                                           JACK FITZGERALD

1

*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
Fax: (619) 331-2943

**JACKSON & FOSTER, LLC**
SIDNEY W. JACKSON, III
*sid@jacksonfosterlaw.com*
75 St. Michael Street
Mobile, Alabama 36602
Phone: (251) 433-6699
Fax: (251) 433-6127

***Class Counsel***